

**David McCraw**
**Vice President &**
**Deputy General Counsel**

620 Eighth Avenue
New York, NY 10018
tel 212.556-4031
fax 212.556-4634
mccraw@nytimes.com

October 11, 2018

**VIA FEDERAL EXPRESS**

Judge William H. Pauley, III
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   <u>United States v. Cohen</u>, 18-cr-602 – Request to Unseal Materials

Dear Judge Pauley:

I write on behalf of The New York Times Company ("The Times") to seek an order unsealing materials (the "Materials") related to searches conducted in the above-referenced case, *United States v. Cohen*. Specifically, The Times seeks copies of the search warrants, search warrant applications, supporting affidavits, court orders, and returns on executed warrants related to searches done on Michael's Cohen's residence, hotel room, office, cell phones, and safe deposit boxes on April 9, 2018, as well as similar applications and supporting documents pertaining to searches of Mr. Cohen's electronic communications pursuant to 18 U.S.C. § 2703. If Your Honor prefers, we are prepared to move by formal motion to intervene and seek the unsealing. We make this request pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment.[1] Both the Government and the defense oppose this application.

---

[1] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

## I. BACKGROUND

The Materials sought here relate to searches conducted by the Government in its investigation of Defendant Michael Cohen. On April 9, 2018, the FBI executed warrants for the residence, hotel room, office, safe deposit boxes, and two cell phones of Mr. Cohen. (*Cohen v. United States*, 18-mj-3161, Dkt. 1, at 3.) In addition, searches of Mr. Cohen's electronic communications were also conducted. (*Id.* at 12-13.)[2] Mr. Cohen quickly moved for a temporary restraining order preventing the Government from reviewing the seized records, claiming that the documents were subject to the attorney-client privilege. (*Id.*) The Government opposed the motion. It argued that Mr. Cohen was being investigated not for his conduct as a lawyer, but "for criminal conduct that largely centers on his personal business dealings." (*Id.* at 1.) The Government also disclosed that it had previously obtained search warrants for several of Mr. Cohen's email accounts, and that a privilege review of those emails revealed that Mr. Cohen was "performing little to no legal work." (*Id.* at 13.) Ultimately, the Court appointed a special master to conduct a privilege review of the seized materials. (*Id.*, Dkt. 30.) The special master filed her final report on August 16, 2018, and the Court adopted its recommendations on August 20. (*Id.*, Dkts. 101, 103.)

Subsequently, Mr. Cohen pleaded guilty to eight criminal charges. (*United States v. Cohen*, 18-cr-602, docket entry for August 21, 2018.) Five of those counts relate to Mr. Cohen's purely "personal business dealings" – namely, his failure to pay taxes on income he earned through ownership of taxi medallions. (*United States v. Cohen*, 18-cr-602, Dkt. 2, at 2-6.) The other three counts, which relate to bank transactions and improper contributions to President Trump's election campaign, implicate Mr. Cohen's conduct in his capacity as the President's lawyer and so-called "fixer." (*Id.* at 10-19.) At his plea hearing, Mr. Cohen declared that he made the campaign contributions "in coordination with and at the direction" of President Trump.[3]

Mr. Cohen is due to be sentenced on December 12, 2018. (*Id.*, docket entry for August 21, 2018.)

## II. ARGUMENT

Both the federal common law and First Amendment endow the public with a right of access to judicial documents, including search warrant materials. While that right can be overcome by certain countervailing interests at times, the parties face a particular heavy burden in trying to justify shielding judicial documents from public view where, as here, the Government's investigation has concluded and the public interest in the materials is immense. For the reasons set forth below, The Times respectfully requests that the Court unseal the Materials.

---

[2] We understand that additional searches related to the case were also conducted. They are not included in this application but we reserve the right to seek access to materials from those searches at a later date.

[3] William Rashbaum, et al. *Michael Cohen Says He Arranged Payments to Women at Trump's Direction*," The New York Times (Aug. 21, 2018), https://www.nytimes.com/2018/08/21/nyregion/michael-cohen-plea-deal-trump.html.

A. <u>The Common Law Right of Access Requires that the Materials Be Unsealed</u>

Second Circuit law governing the public's common law right of access to judicial records is well established. Any "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit – among other federal appellate courts – has squarely held that search warrant materials are judicial documents to which the common law right of access attaches. *See In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (affirming order releasing search warrant affidavit based on common law right of access to judicial records); *see also, e.g.*, *In re Boston Herald, Inc.*, 321 F.3d 174, 194 n.9 (1st Cir. 2003); *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1194 (9th Cir. 2011). And the only appellate court to have considered the question has held that court orders issued under 18 U.S.C. § 2703(d) – as well as motions seeking such orders – are subject to a common law right of access. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). Under *Lugosch*, judicial documents must be released unless countervailing interests require withholding. *Lugosch*, 435 F.3d at 119.

### 1. *The presumption of access to the Materials is particularly weighty*

The weight of the presumption of access turns on the nature of the specific document at issue, taking into account "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal marks omitted). Once the court has determined the weight of that presumption, it must then balance the value of public disclosure against "countervailing factors." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). Courts within the Circuit have explained that the presumption of access to materials related to search warrants in concluded cases is not lightly set aside. Indeed, search warrant materials "go to the heart of the judicial function": they inform the judicial determination to grant a search warrant, which in turn affects the rights of individuals to be free from unreasonable searches and seizures of their property. *In re Search Warrant*, 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016); *see also United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009); *In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *3 (N.D.N.Y. July 14, 2008) (noting that documents "filed in connection with the two search warrants adjudicated the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause," a right "held among this country's highest values"). The result is that the presumption of access to search warrant materials carries "the maximum possible weight." *In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *3; *see also In re Search Warrant*, 2016 WL 7339113, at *3; *All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 584.

The public interest in openness is particularly high in this case. The Materials relate to the Government's criminal investigation of a person who was for a long time the personal lawyer to and close associate of the President of the United States. Mr. Cohen undertook some of his criminal conduct in his capacity as the President's associate, and – he alleges – at his direction. Even if the focus of this investigation was initially on Mr. Cohen's "personal business dealings,"

3

#63586

its scope ultimately became much bigger than that. At the same time, the President and his supporters have suggested that the investigation was politically motivated and not based on the rule of law.[4] Simply put, the public interest in knowing the underlying bases for the investigation could not be higher.

### 2. *The countervailing factors do not overcome the presumption of access to the Materials*

The burden rests on the parties to establish that some countervailing factors should set aside the public's right of access. We know of none in the record as it stands. Typically, the "countervailing factors" that can overcome the presumption of access to a judicial document are "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. Neither factor appears to have anything more than marginal weight here.

*First*, any risk of impairing law enforcement interests is minimal because the Government's investigation of Mr. Cohen has concluded. *See id.* (interests favoring secrecy were "weak" because disclosure would not "reveal details of an ongoing investigation"). More to the point, Mr. Cohen has pleaded guilty to all the charges against him. And to the extent there are any ongoing investigations related to Mr. Cohen's, any sensitive law enforcement information in the documents can be redacted. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

*Second*, the legitimate privacy interests in the Materials appear negligible or nonexistent. These are business records from a highly public prosecution, not records of a personal or intimate nature. *See, e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (assertion of "generalized 'privacy interests'" insufficient to overcome right of access); *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (extent of public knowledge of sealed material factors into a court's decision to grant access). Any information that *is* genuinely private can be protected through targeted redactions.

### B. The First Amendment Right of Access Equally Compels Unsealing of the Materials

The legal principles governing the First Amendment right of access to judicial records are equally well settled. The First Amendment right provides a second and independent basis for unsealing. The right attaches to a large array of judicial records and gives the public a constitutional right to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g., Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *Pellegrino*, 380 F.3d at 92-93 (unsealing of court dockets under the First Amendment); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

---

[4] Michael D. Shear, *Trump Denounces F.B.I. Raid on His Lawyer's Office as 'Attack on Our Country'*, The New York Times (April 9, 2018), https://www.nytimes.com/2018/04/09/us/politics/trump-fbi-raid-michael-cohen.html.

The Supreme Court has developed a two-part test, based on "experience" and "logic," for determining whether the First Amendment right attaches to particular documents. *See Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the press and the public. *Press-Enterprise*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

The Second Circuit has not decided whether a First Amendment right of access applies to search warrant materials. *See Newsday*, 895 F.2d at 78. The argument that it does is compelling, however, both in terms of "experience" and "logic." Though "the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). And as discussed above, access to search warrant materials aids the public in monitoring the Government's use of its extraordinary search and seizure powers. Unsurprisingly, a number of courts have concluded that a First Amendment right of access attaches to search warrant materials. *See id.* ("[T]he qualified first amendment right of public access extends to the documents filed in support of search warrants."); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193 (D. Ariz. 2011) (finding a First Amendment right of access to search warrant documents at the "post-investigation, post-indictment" stage of a criminal proceeding); *In the Matter of the Application of The New York Times Company For Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 94 (D.D.C. 2008) (granting access to sealed search warrants, warrant applications and supporting materials under the First Amendment).

For the same reasons set forth above in respect to the common law right, the First Amendment right of access to the Materials is not overcome by any countervailing interest. Where the First Amendment applies, it can be "overcome only by an overriding interest based on finding that [sealing] is essential to preserve higher values and is narrowly tailored to serve the interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984); *see also Lugosch*, 435 F.3d at 124 (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). That is a heavier burden than the one imposed by the common law. *Lugosch*, 435 F.3d at 126.

### III. CONCLUSION

For all of the foregoing reasons, The Times respectfully requests that the Materials be made public, or, alternatively, that the Government and Mr. Cohen be required to demonstrate why the records should remain under seal. If they seek to do so, The Times respectfully requests an opportunity to reply and otherwise be heard.

#63586

We thank the Court for its consideration of this matter.

Respectfully submitted,

David E. McCraw

cc:     Counsel of Record (by email)

#63586