UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA            :

   -v.-                              :     18 Cr. 602 (WHP)

MICHAEL COHEN,                       :

        Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**THE GOVERNMENT'S OPPOSITION TO NON-PARTY *THE NEW YORK TIMES'S*
MOTION TO UNSEAL CERTAIN SEARCH WARRANT MATERIALS**


                ROBERT S. KHUZAMI
                Attorney for the United States,
                Acting Under Authority Conferred
                by 28 U.S.C. § 515
                Southern District of New York
                One St. Andrew's Plaza
                New York, New York 10007

Andrea Griswold
Rachel Maimin
Thomas McKay
Nicolas Roos
Assistant United States Attorneys
    -Of Counsel-

## PRELIMINARY STATEMENT

On October 11, 2018, non-party *The New York Times* (the "Times") filed a request to unseal certain materials (the "Materials") relating to searches conducted in connection with the above-referenced case. As phrased, the Times's request seeks the unsealing of affidavits, warrants, and riders associated with several different searches that were conducted in connection with a grand jury investigation into Michael Cohen and others, which remains ongoing. As set forth in detail below, unsealing of the Materials at the present time would interfere with this investigation, and would implicate significant privacy concerns for numerous uncharged third parties who are named in the Materials. For these reasons, and as set forth more fully in the Government's supplemental submission, which is being filed under seal and *ex parte* ("Sealed Br."), the Times's motion should be denied.[1]

## I.  FACTUAL BACKGROUND

### a.  The April 9th Searches and Cohen's Guilty Plea

On April 9, 2018, the Federal Bureau of Investigation ("FBI") executed judicially-authorized search warrants for the residence, hotel room, office, safety deposit box, and two cell phones of Cohen. These searches were the first investigative step taken publicly in what was by then a months-long investigation that related both to Cohen's personal business dealings and Cohen's participation in suspected campaign finance violations.

---

[1] The supplemental submission identifies specific portions of the warrant affidavits and other facts pertinent to the ongoing government investigation, as well as to the privacy interests of uncharged parties, that are discussed more generally herein. Public filing of the matters discussed in the supplemental submission would undercut the very investigative and privacy interests the Government seeks to protect by its opposition to the Times's motion. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

On April 12, 2018, Cohen filed a motion in Part I to enjoin the Government from reviewing the evidence seized during the April 9th searches and to require that the materials first be subjected to a privilege review by counsel for Cohen, an attorney, and counsel for his clients. The application was heard by the Honorable Kimba M. Wood, who ultimately appointed a special master to conduct a privilege review of the evidence seized during the searches. The non-privileged evidence was periodically released by the special master to the Government in the following weeks and months, and the special master completed her review on or about August 16, 2018.

After the April 9th searches, the Government continued its grand jury investigation. On August 21, 2018, Cohen consented to the filing of an eight-count criminal information, and pleaded guilty to (1) five counts of tax evasion, relating to his failure to report income in tax years 2012-2016; (2) one count of making a false statement to a financial institution, relating to false statements Cohen had made on a loan application; and (3) two campaign finance counts, relating to Cohen's involvement in payments made to two women who claimed to have had extramarital affairs with a candidate for federal office, in order to ensure that the women did not publicize their stories before the 2016 presidential election and thereby influence the election. Cohen's sentencing is scheduled for December 12, 2018.

As set forth in the Government's supplemental submission, the Government's grand jury investigation is ongoing. *See* Sealed Br. 1-5.

      **b.**      **The Requested Materials**

The Times's request seeks "copies of the search warrants, search warrant applications, supporting affidavits, court orders, and returns on executed warrants related to searches done on Michael Cohen's residence, hotel room, office, cell phones, and safe deposit boxes on April 9,

2018, as well as similar applications and supporting documents pertaining to searches of Mr. Cohen's electronic communications pursuant to 18 U.S.C. § 2703." (Times Br. 1). This request encompasses materials that, if disclosed, would reveal a substantial amount of non-public, sensitive detail about an ongoing grand jury investigation, as well as information about numerous uncharged third parties. *See* Sealed Br. 1-5.

## II.     APPLICABLE LAW

### a.     The Common Law Right of Access

The Supreme Court has recognized a common law right of public access to judicial documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). The Second Circuit has held that this right attaches to Rule 41 search warrant applications and orders in the case of a closed criminal investigation. *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79 (2d Cir.), *cert. denied*, 496 U.S. 931 (1990). In so holding, the Second Circuit noted that the defendant had pleaded guilty in that case and that the government conceded that the "need for secrecy is over." *Id.* The Second Circuit thus distinguished its holding factually from a case in which the Ninth Circuit had found *no* common law right of access in the context of an *ongoing* investigation. *Id.* at 78-79 (distinguishing *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)).

The common law right of access attaches with different weight depending on two factors: (a) "the role of the material at issue in the exercise of Article III judicial power" and (b) "the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* Courts in this Circuit have

3

concluded that search warrants and associated documents go to the heart of the judicial function, and that the common law presumption of access to search warrants and related materials is thus entitled to significant weight. *See In re Search Warrant*, 16 Misc. 464 (PKC), 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016); *United States v. All Funds on Deposit at Wells Fargo Bank in Account No. 7986104185 (All Funds)*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009).

After determining the weight afforded to the presumptive right of access, the common law right is balanced against countervailing interests favoring secrecy. "[T]he fact that a document is a judicial record does not mean that access to it cannot be restricted." *United States v. Amodeo (Amodeo I)*, 44 F.3d 141, 146 (2d Cir. 1995). Noting that it is difficult to "identify all the factors to be weighed in determining whether access is appropriate," the Supreme Court has further observed that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99.

The Second Circuit has recognized certain categories of countervailing factors to be balanced against the presumption of access, including: (i) the danger of impairing law enforcement or judicial efficiency and (ii) the need to protect privacy interests. *Amodeo I*, 44 F.3d at 147. The Circuit has identified the law enforcement privilege as an interest worthy of protection, noting that the privilege is designed:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

*Id.* (citing *In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988)). In addition, the court in *Amodeo II* found that the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency." 71 F.3d at 1050. Thus, "[i]f release [of a judicial

document] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

The Second Circuit has also held that "[t]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure. . . should weigh heavily in a court's balancing equation." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also In re Newsday, Inc.*, 895 F.2d at 79-80 (holding that the "common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed"). The Circuit has identified such interests as "a venerable common law exception to the presumption of access." *Amodeo II*, 71 F.3d at 1051. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (listing "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" as weighing more heavily against access than conduct affecting a substantial portion of the public); *see also In re Newsday, Inc.*, 895 F.2d at 79 (holding that disclosure of "intimate relations" qualifies the common law right of access). "The nature and degree of injury must also be weighed." *Amodeo II*, 71 F.3d at 1051. Finally, in balancing the qualified right of public access against privacy interests, courts must consider "the sensitivity of the information and the subject," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

b.     **The First Amendment Right of Access**

The First Amendment presumptive right of access applies to civil and criminal proceedings and "protects the public against the government's arbitrary interference with access to important information." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.* ("*NYCTA*"), 684

5

F.3d 286, 298 (2d Cir. 2012) (internal quotation marks omitted).  The Second Circuit has not directly reached the question of whether a First Amendment right of access exists for search warrants and supporting materials.  *In re Newsday, Inc.*, 895 F.2d at 79-80 (To determine whether there is a right of access to, courts "first look to the common law, for [they] need not, and should not, reach the First Amendment issue if judgment can be rendered on some other bases.").

The Circuit has applied two different approaches when deciding whether the First Amendment right applies to particular material.  The "experience-and-logic" approach asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted).  The second approach—employed when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings."  *Id.* (internal quotation marks and alteration omitted).

Even when it applies, however, the First Amendment right creates only a *presumptive* right of access.  "What offends the First Amendment is the attempt to [exclude the public] without sufficient justification," *NYCTA*, 684 F.3d at 296, not the simple act of exclusion itself.  Thus, the presumptive right of access may be overcome by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."  *Lugosch*, 435 F.3d at 124.

    c.    **Redactions to Documents Subject to Right of Access**

Finally, in any case in which some sealing of a judicial document is appropriate, the

6

Second Circuit has directed that the court must determine whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter." *Amodeo II*, 71 F.3d at 1053; *see also In re Newsday, Inc.*, 895 F.2d at 80 (noting that "a district court has the authority to redact a document to the point of rendering it meaningless, or not to release it at all, but such drastic restrictions on the common law right of access are not always appropriate."). Where redactions are necessary to protect the interests described above, the Second Circuit has considered whether the portions of the document that remain intact are intelligible and informative, or are more likely to be confusing and misleading. *Amodeo II*, 71 F.3d at 1053. Where partial redaction is not a viable option, the Circuit has indicated that the entire document may remain under seal. *Id.*

### III.  DISCUSSION

#### a.  Any Common Law Right of Access is Outweighed by Countervailing Factors Recognized By the Second Circuit

As noted, the Second Circuit has recognized a common law right of access to Rule 41 search warrants and applications, in the context of a closed investigation where the Government acknowledged that "its need for secrecy is over." *In re Newsday, Inc.*, 895 F.2d at 79. Here, as set forth in more detail in the Government's sealed submission, the investigation is ongoing, a factual situation expressly distinguished by the Second Circuit. *Id.* at 78 (distinguishing its holding from a Ninth Circuit opinion on the right of access to search warrant in the context of an ongoing investigation).[2]  For this reason, the Court may deny the Times's motion as premature.

But even assuming, *arguendo*, that the common law right of access does extend to this context, and indeed that it is "particularly weighty," as the Times contends, the right is a

---

[2] In addition, the Second Circuit's holding in *In re Newsday, Inc.* related to Rule 41 search warrant materials, whereas the Times's request encompasses both Rule 41 search warrant

7

qualified one, which in this case is overcome by countervailing factors – the need to protect an ongoing law enforcement investigation and judicial efficiency, and the need to protect privacy interests.

### 1. Law Enforcement Interests

It is well-settled that the need to prevent interference with a law enforcement investigation may outweigh any right of access. *See All Funds*, 643 F. Supp. 2d at 585 (collecting cases). Courts have recognized numerous different ways in which the disclosure of sealed materials could interfere with an investigation. Search warrant materials often reveal "the identities of persons of interest in criminal investigations." *In re Search Warrant*, 2016 WL 7339113, at *4; *In Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 294 (4th Cir. 2013) (citing fact that "documents at issue set forth sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation"). The disclosure of sealed materials could also jeopardize the cooperation of persons in either the particular investigation or in future cases. *Amodeo II*, 71 F.3d at 1050. And even when *some* aspect of a criminal investigation is public, disclosure of a detailed affidavit could "disclose to the subjects the full range of potential criminal violations being investigated, the evidence obtained by the United States prior to the searches, and the information which the subjects and other individuals had provided to the United States or had failed or declined to provide." *In re Sealed Search Warrants Issued June 4 and 5, 2008*, 08-M-208 (DRH), 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn (Gunn)*, 855 F.2d 569, 574 (8th Cir. 1988) (public access outweighed by

---

materials and Stored Communications Act ("SCA") search warrant materials. However, even assuming, *arguendo*, that the common law right of access applies to both Rule 41 and SCA warrants, that right is outweighed for the reasons set forth herein.

fact that disclosure would reveal the "nature, scope and direction of the government's investigation").

Here, as set forth in detail in the Government's supplemental submission, disclosure of the Materials could cause several of these forms of prejudice. *See* Sealed Br. 5-8. Thus, it is simply not correct, as the Times asserts, that "any risk of impairing law enforcement interests is minimal." (Times Br. 4). To the contrary, at present, there is a significant interest in maintaining the Materials under seal, because disclosure could prejudice an ongoing investigation in concrete, identifiable ways.

### 2. Privacy Interests

In addition to the law enforcement interests cited above, the privacy rights of third parties provide another compelling justification for sealing, one which outweighs any common law right of access that may attach. It is well established that the need to protect privacy interests may outweigh the right of access. *See generally Giuffre v. Maxwell*, 15 Civ. 7433 (RWS), 2018 WL 4062649, at *5-*8 (S.D.N.Y. Aug. 27, 2018). The Second Circuit has held that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Amodeo II*, 71 F.3d at 1050 (quoting *In re Newsday, Inc.*, 895 F.2d at 79-80). And in the specific context of third parties named in search warrant applications, that interest is especially weighty, because "a person whose conduct is the subject of a criminal investigation but is not charged with a crime should not have his or her reputation sullied by the mere circumstance of an investigation." *In re Search Warrant*, 2016 WL 7339113, at *4. Moreover, unlike charged defendants, uncharged third parties whose involvement in or association with criminal activity is alleged in search warrant materials may find themselves harmed by the disclosure but without

9

recourse to respond to the allegation. *See In re Newsday, Inc.*, 895 F.2d at 80; *Amodeo II*, 71 F.3d at 1051.[3]

Here, as set forth in the Government's supplemental submission, many uncharged individuals and entities are named in the Materials. Although the Times contends that the Court may consider whether the information in question has already been publicized by other means (Times Br. 4), the detailed evidence set forth in the Materials goes well beyond what has otherwise been made public. *See* Sealed Br. 1-5, 8-10. For these reasons, the privacy interests of third parties provides an additional basis to maintain the Materials under seal.

### b. The First Amendment Right of Access Does Not Apply and Is Outweighed by the Same Countervailing Factors

The Times argues that this Court should recognize a First Amendment right of access to search warrant materials as an alternative basis for unsealing the Materials. The Second Circuit has not yet recognized such a right, however – in an ongoing investigation or otherwise – and the weight of authority is against the Times's position. Two circuit courts have held that no First Amendment right of access attaches to search warrant materials. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989) (so holding in context of an ongoing investigation); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989) (same). *But see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 572-74 (8th Cir. 1988) (recognizing right of access). And it appears that every district court in this Circuit to have considered the issue has similarly found no First Amendment right of access. *See United States*

---

[3] The Government has not notified the uncharged third parties that they were named in the Materials, in part because disclosure of that fact to certain of the uncharged third parties would itself impair the ongoing investigation. The Court may nevertheless recognize the privacy rights of these third parties. *See In re Search Warrant*, 2016 WL 7339113, at *4 (court *sua sponte* ordered redactions to protect privacy rights of third party named in search warrant materials).

*v. Pirk*, 282 F. Supp. 3d 585, 597-600 (W.D.N.Y. 2017) (collecting cases); *see also In re Search Warrant*, 2016 WL 7339113, at *3 (Castel, J.); *All Funds*, 643 F. Supp. 2d at 581-83 (Swain, J.); *United States v. Paloscio*, 09 Cr. 1199 (LMM), 2002 WL 1585835, at *3 (S.D.N.Y. July 17, 2002); *In re San Francisco Chronicle*, 07-00256-MISC (TCP), 2007 WL 2782753, at *2-*3 (E.D.N.Y. Sept. 24, 2007).

As Judge Swain has explained in applying the governing "experience and logic test," no First Amendment right of access attaches to search warrant materials because "[w]arrant application proceedings are highly secret in nature and have historically been closed to the press and public." *All Funds*, 643 F. Supp. 2d at 583. And based on similar reasoning in an analogous context, the Second Circuit found no First Amendment right of access to wiretap materials. *See In re the Application of the New York Times Co. to Unseal Wiretap & Search Warrant Materials (In re Wiretap)*, 577 F.3d 401, 410 (2d Cir. 2009). Thus, the Court should find that no First Amendment right of access attaches here.

In any event, even assuming such a right did attach, it is undisputedly a qualified right, which may be outweighed by countervailing factors. To be sure, the First Amendment right of access "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption," such that the Court must make "specific, on-the-record findings that higher values necessitate narrowly tailored sealing." *Lugosch*, 435 F.3d at 126. But the law enforcement and privacy concerns described above are undoubtedly higher values that may outweigh any First Amendment right of access, and the balancing analysis is the same under either framework. *See All Funds*, 643 F. Supp. 2d at 586 n.8 (collecting cases). Thus, for the reasons stated in Part III(a), *supra*, as well as in the Government's supplemental submission, there is an ample basis for the Court to make on-the-record findings that any First Amendment

11

right of access that may attach is outweighed by (a) the risk of interference with an ongoing law enforcement investigation and (b) the privacy rights of uncharged third parties.

**c. Redactions Are Not a Viable Remedy At This Time**

The Times argues that, in the alternative, the Materials should be released with any sensitive law enforcement information or information implicating privacy interests redacted. (Times Br. 4). Releasing the Materials in redacted form is not a viable remedy at the present time, for at least two reasons.

First, such disclosure would require a line-by-line review of the Materials – which are substantial – to identify which information must be redacted to protect the integrity of the ongoing investigation; which information constitutes protected grand jury material; and which information must be redacted to protect privacy interests of uncharged individuals. While this cumbersome exercise might be appropriate at the conclusion of the investigation, to require it in this context would set a precedent that is contrary to the public interest, by requiring the Government to engage in such a time-consuming exercise in the midst of ongoing investigations. Moreover, as the investigation develops, certain information might become public by other means, or the disclosure of certain specific information might no longer be an impediment to the investigation, requiring the constant revisiting of decisions about what to redact. If such piecemeal unsealing were permitted, it could give rise to repeated or periodic motions to unseal in investigations of media interest, placing a burden on both the Government to constantly rejustify sealing and the Court to constantly review unsealing applications. From the standpoint of protecting judicial efficiency and law enforcement interests, it makes far more sense to permit the Government to conclude its ongoing investigation before proposing redactions. *See Amodeo II*, 71 F.3d at 1050 (relying on both law enforcement interests and judicial efficiency).

Second, the release of a partially redacted version of the Materials could be more damaging to uncharged third parties than wholesale release, because the redactions would lead to rampant speculation. The Second Circuit addressed this concern in *Amodeo II*, which concerned a request to unseal an investigative report filed with the court by a court officer appointed pursuant to a consent decree. 71 F.3d at 1047. Part of the report consisted of accusatory information about an uncharged individual, who had since been appointed to a prominent position in the Clinton administration. The Second Circuit initially authorized certain redactions in the report to protect an ongoing investigation and the privacy interests of certain parties. *Id.* It then held, however, that the report should not be released in its partially redacted form, because the redacted version "would provide little meaningful information to the public." *Id.* at 1048. Moreover, because the names of the sources of information had to be redacted, the Court reasoned, the redacted report was "more likely to mislead than to inform the public," because "[i]t would circulate accusations that cannot be tested by the interested public because the sources and much of the subject matter are shrouded by the redactions." *Id.* at 1052. This would leave the uncharged third parties "in the unfair position of choosing between suffering the accusations in silence or revealing redacted information." *Id.*

The same concerns apply here. The Materials include detailed information about the conduct of third parties. As the Court is surely aware, this case has been the subject of an unusual amount of public attention and speculation about the nature and scope of the Government's investigation. If the Materials were unsealed in redacted form, such redactions would likely need to be extensive to protect the ongoing investigation and the privacy interests of the numerous uncharged third parties. As a result, the disclosures "would provide little meaningful information to the public." *Id.* at 1048. What is more, the disclosure would almost

13

certainly result in a very public guessing game in which the media and members of the public attempted to guess the identities of the uncharged parties described in the Materials – particulary the campaign finance portions. This would leave those individuals in the unfair position of defending against speculation that they were or currently are under investigation. *Id.* at 1052.

For these reasons, release of partially redacted versions of the Materials is not a viable remedy at this time.

## CONCLUSION

At present, disclosure of the Materials would jeopardize an ongoing law enforcement investigation in concrete ways. In addition, disclosure would infringe on the privacy interests of numerous third parties. For these reasons, and those set forth in the Government's supplemental submission, the Government respectfully requests that the Court deny the Times's motion.

Dated:   October 25, 2018
         New York, New York

Respectfully submitted,

ROBERT S. KHUZAMI
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515

By: _____
Andrea Griswold
Rachel Maimin
Thomas McKay
Nicolas Roos
Assistant United States Attorneys

14