# EXHIBIT 2

# GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

ATTORNEYS AT LAW

ANDREW W. ALBSTEIN*
ARNOLD I. MAZEL
STEVEN R. UFFNER
HARVEY L. GOLDSTEIN
NEAL M. ROSENBLOOM
KEVIN J. NASH
IRIS A. ALBSTEIN
BARRY E. ZWEIGBAUM
DOUGLAS TAUS
ROBERT W. LO SCHIAVO*
ELIZABETH SMITH*♦†
MATTHEW E. HEARLE
AUBREY E. RICCARDI*
STEPHEN BORDANARO
ANTHONY J. SCHLUR
DANIEL J. SLATZ

J. TED DONOVAN
DORAN I. GOLUBTCHIK
MICHELLE A. McLEOD°
ARTHUR A. HIRSCHLER
ELI D. RAIDER
HOWARD S. BONFIELD
SERGIO J. TUERO*
JAY E. SIMENS
STEWART A. WOLF*
YAN LAURENCY
ERIK ZARATIN
JOHN P. HOGAN
AVROHOM C. POSEN*
ZACHARY D. KUPERMAN*
JASON D. WEADERHORN
ANNA ARELLANO
NEIL I. ALBSTEIN*
GREGORY C. RICHMAND
VASILIOS VLAHAKIS

22ND FLOOR
1501 BROADWAY
NEW YORK, N.Y. 10036
(212) 221-5700
TELECOPIER (212) 730-4518

BENJAMIN C. KIRSCHENBAUM
ROBERT A. KANDEL
(OF COUNSEL)

EMANUEL GOLDBERG (1904-1988)
JACK WEPRIN (1930-1996)
BENJAMIN FINKEL (1905-1986)

* ALSO MEMBER OF NEW JERSEY BAR
♦ ALSO MEMBER OF TEXAS BAR
† ALSO MEMBER OF MASSACHUSETTS BAR
° ALSO MEMBER OF FLORIDA AND WASHINGTON DC BAR

September 27, 2018

Hon. William H. Pauley III
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Courtroom: 20B
New York, NY 10007

Re:   Michael D. Cohen

Dear Judge Pauley:

    I am an attorney in New York City, having been admitted in 1982. I am admitted to practice before the Southern District, as well as the Second Circuit Court of Appeals. I am a partner at the law firm of Goldberg Weprin Finkel Goldstein LLP, a firm specializing in real estate and real estate-related transactions. I have held the position of managing partner since 1996 when the prior managing partner, Jack Weprin, died. My practice consists of a high volume of transactional work and I personally am familiar with many attorneys and real estate owners in New York. I am also active and involved in many charities, and I am aware of those persons who are committed to helping others.

    Based upon my background, I respectfully write to you to provide to you my thoughts and opinion of Michael Cohen, who I understand will be the subject of a sentencing hearing before you. I am aware that there are numerous charges to which Michael pled guilty and that you will determine the appropriate penalty. I hope and trust that this letter provides some insight to and information about Michael that will, in part, inform the determination that profoundly will affect Michael and his family.

I have known Michael for approximately nine years. Our relationship has evolved in many areas, mostly through representing Michael in transactions where he was a principal or where he provided guidance to others.

One of the initial transactions on which I worked with Michael was a sales transaction where a somewhat disparate family intended to sell a property that in several years would be right for development in order to acquire another more currently income-generating property. Michael was engaged as a consultant. The family that owned the property was unfamiliar with real estate transactions, including unaware of the developer community that would be interested in purchasing the property for its potential value. Michael suggested the family retain my office as counsel. Michael was designated to act on behalf of the family, without any formal agreement on whether he would be paid. Michael accepted the responsibility and served the family for many months with the highest degree of commitment, responsibility and professionalism that could ever be expected. He was eloquent, intelligent, forthright and, above all, responsible. Michael solicited bids from many of the more significant and responsible developers in the geographic location where the property was located. He placed the likely bidders in an "auction type" setting, bidding one against the other to increase their offers. He used his keen and astute knowledge of real estate to negotiate a contract most favorable to the property owner yet nevertheless fair to the prospective buyers. He ultimately worked with the family on selecting an active real estate developer, who closed without issue in a timely manner. Throughout the process, Michael responded promptly to every call I made, provided considered advice on every question that arose and guided the family in a meaningful and responsible way to a great result. His commitment to excellence and to helping others shined throughout this transaction. More importantly, although Michael was paid at the end of the transaction, payment was not an issue throughout, and Michael provided his help without any assurance of compensation of any kind. I quickly learned that Michael was a dynamic individual, a good negotiator, a fair and responsible person and extremely capable – and that he was generous and kind, and would use these qualities/talents to help others.

At or about this time, I also represented Michael on acquisitions of properties for entities in which he held interests. While Michael approached every transaction attempting to achieve the business deal that was originally agreed upon, he remained unfailingly fair and considerate in regard to each of his seller's specific needs. Although the sellers may not have had fine feelings for the zeal in which I represented Michael, every seller of a transaction on which I represented Michael would say, without equivocation, that Michael was and is an honest, responsible and fair businessman. These type of comments and feelings are not particularly customary in my practice.

Over the next few years, I represented Michael on four or five acquisitions, each of which resulted in a closed sale, with a content seller. I also believe that the sellers' lawyers respected Michael throughout each of the transactions.

While we were together working on Michael's deals, Michael often received telephone calls from his employer at the time. Michael almost always would interrupt our conversations or negotiations and take the call, being respectful in the manner in which he addressed his employer, providing quick and clear responses, taking notes and proceeding with the same zeal in which he seemed to address all his personal transactions.

After working with Michael for several years, we once decided to go to dinner. We went to a restaurant on the upper East Side. Each person at the restaurant seemed to have a different relationship with Michael, all having fondness for him, showing him the utmost courtesy and exchanging stories with him. It was obvious that Michael indeed had his own special relationship with each person that worked at the restaurant, one of mutual respect and friendship. It was truly nice to see Michael outside of his "business" relating to others. In fact, as we were leaving, Michael had a lengthy conversation with one of the employees who sought business advice. Michael had me wait while that discussion took place, as it was obviously of personal importance to the employee. I left dinner that evening amazed at Michael's warmth and interpersonal skills.

For approximately six years I served on the board of the Alzheimer's Association of the City of New York. About five years ago, I decided that I would prefer to raise money for research, rather than for programming which is the focus of the Association's efforts. I created a fund in honor of my mother and arranged with Johns Hopkins University for all donations to be used for brain research. Michael and I talked about this endeavor at great length and Michael provided personal guidance and financial assistance as well. Michael has described to me his commitment to St. Jude Children's Research Hospital in Memphis, Tennessee, where he has committed many hours of charitable work and has enlisted the help of his children – his daughter worked there for two summers and his son has contributed time and effort. Michael was also the Chairman of the Board at Columbia Grammar & Preparatory School, where he designed a project and was personally responsible to raise funds to provide scholarships to those financially unable to pay tuition. Michael has a record of helping those in need.

Over the years I have spoken with Michael about his wife and children. Michael's family is most important to him. He did everything in his life to provide for them – emotionally, as a role model and financially. And, until now, Michael has been a success story.

There is another side of Michael that I have also witnessed on television talk shows, where he has been the tough, sarcastic and often arrogant defender of then-candidate for President, Donald Trump. Michael was used to provide tough, almost unbelievable, responses to situations in which candidate Trump found himself. Michael did well for candidate Trump, as President Trump was a victor in the election. Unfortunately, because of his unwavering and zealous commitment to provide excellence for his employer, Michael soon became the easiest person to blame, by those who needed a person to blame. Regrettably for Michael, this public demonization of him has led many to believe that Michael should be sentenced most severely for the crimes to which he has pled guilty. I, on the other hand, fervently believe that Michael was performing as he was directed, and excellently carrying out a job for which he was hired – giving his 100% commitment to satisfy his employer. However, I believe that outside of his job – where I have seen Michael – the humble and considerate person that Michael is, is revealed.

I have discussed the crimes with Michael, who acknowledges that his actions were wrong, and he expresses only contrition for them. He will not allow me to humor him in any manner. Michael has stated to me, which I know to be true, that he will not engage in any further improper conduct towards anyone: business, politics or in any other way. The conduct, although it occurred, is clearly not the Michael that the business people with whom we had transactions, or I, know. I do believe that Michael has learned much from these travails and that he will from this point forward proceed in a manner that would be expected of a responsible person in society.

I am also aware of the great power of this Court to determine the proper penalty. The purpose of this letter is not to excuse Michael's misdeeds. It is to present a picture of the true Michael – someone who had many complicated matters before him, and who tried to deal with each in the best way he could. Michael was a good attorney, a good parent, a good friend, and was and is a good man. I believe that he is deserving of a sentence reflective of the good life he has led and what he has tried properly to accomplish.

I trust that, in over thirty-five years of practice in the New York area and having been the managing partner of my firm for over twenty years, I can fairly assess the likelihood that Michael will proceed as he has promised. Having heard Michael acknowledge his misconduct and having Michael clearly acknowledge that he will not engage in such conduct in the future, one thing is clear: Michael has learned from this situation and will be circumspect and self-aware; he will, I am confident, err on the side of legality and professionalism and avoid any

further instance of misconduct. I personally implore you to give Michael the minimum sentence possible and to allow him a chance of regaining some of the respect to which I believe he is entitled. He will earn your compassion – I am certain.

Very truly yours,

Andrew W. Albstein