# 18 MAG   2957

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Warrant and Order For Prospective and Historical Location Information and Pen Register Information for the Cellphones Assigned Call Numbers ▮▮▮▮▮▮ and ▮▮▮▮▮,
USAO Reference No. 2018R00127

**WARRANT AND ORDER**

**18 Mag. _____**

---

### Warrant and Order
### for Cellphone Location Information and Pen Register Information
### and for Sealing and Non-Disclosure

TO:   AT&T ("Service Provider"), and any subsequent provider of service to the Target Cellphones specified below ("Subsequent Service Provider")

United States Attorney's Office and Federal Bureau of Investigation ("Investigative Agencies")

Upon the Application and Agent Affidavit submitted by the Government in this matter:

## I.  Findings

The Court hereby finds:

1.  The Target Cellphones (the "Target Cellphones") that are the subject of this Order are assigned call numbers ▮▮▮▮▮ and ▮▮▮▮▮, are subscribed to in the name of Michael Cohen (the "Subscriber") and are currently serviced by the Service Provider.

2.  Pursuant to 18 U.S.C. § 2703(c)(1)(A) and the applicable provisions of Rule 41 of the Federal Rules of Criminal Procedure, the Government's application sets forth probable cause to believe that the prospective and historical location information for the Target Cellphone will reveal evidence, fruits, or instrumentalities of suspected violations of 52 U.S.C. §§ 30116(a)(1)(A) and 30109(d)(1)(A)(1) ("the Subject Offense").

3.  Pursuant to 18 U.S.C. § 2703(d), the Government's application also sets forth specific and articulable facts showing that there are reasonable grounds to believe that the historical

location information and toll records for the Target Cellphone are relevant and material to an ongoing criminal investigation.

4. Pursuant to 18 U.S.C. § 3123(b)(1), the Government has certified that the pen register information for the Target Cellphones is relevant to an ongoing investigation by the Investigating Agencies of Michael Cohen and others unknown in connection with suspected violations of the Subject Offense.

5. Pursuant to 18 U.S.C. § 2705(b), there is reason to believe that notification of the existence of this Warrant and Order will result in destruction of or tampering with evidence, danger to the physical safety of an individual, flight from prosecution, and/or intimidation of potential witnesses, or otherwise will seriously jeopardize an ongoing investigation.

NOW, THEREFORE, pursuant to Fed. R. Crim. P. 41, 18 U.S.C. §§ 3121 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*, and 18 U.S.C. § 3103a, IT IS HEREBY ORDERED:

## II. Order to Service Provider

6. **Service Provider.** This Order shall apply to the Service Provider specified above, and to any subsequent provider of service to the Target Cellphones without need for further Order of this Court.

7. **Prospective Location Information**. The Service Provider shall provide to the Investigating Agencies on a prospective basis, for a period of 45 days from the date of this Order (or the date that the Target Cellphones are seized, whichever comes first), information concerning the location of the Target Cellphones ("Prospective Location Information"), including all available:

a. precision location information, including GPS data, E-911 Phase II data, and latitude-longitude data; and

2

b.  cell site data, including any data reflecting (a) the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphones, and (b) the approximate range of the target phone from the cell towers during the communication (including per-call measurement ("PCM") or round-trip time ("RTT" or "NELOS") data);

8.  **Historical Location Information and Toll Records**. The Service Provider shall provide to the Investigating Agency all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphones, and the approximate range of the target phone from the cell towers during the communication (PCM/RTT or NELOS data), for the period from October 1, 2016 ~~through the date of this Order~~, as well as all available toll records (including call detail, SMS detail, or data session detail records) for the communications.

[handwritten: through November 8, 2016 and January 1, 2018 to present]

9.  **Pen register with caller identification and/or trap and trace device.**  The Service Provider shall provide to the Investigating Agencies, for a period of 60 days from the date of this order (or the date that the Target Cellphones are seized, whichever comes first), all dialing, routing, addressing, or signaling information associated with each voice, text, or data communication transmitted to or from the Target Cellphones, including but not limited to:

a.  any unique identifiers associated with the phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, MIN, or MAC address;

b.  source and destination telephone numbers and/or Internet protocol ("IP") addresses;[1]

---

[1] The Service Provider is not required to provide post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Phone has been connected.  If possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigative Agency. However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigative Agency, the Investigative Agency will only decode and

3

    c.   date, time, and duration of the communication; and

    d.   cell-site information as specified above.

10. **Technical Assistance.** The Service Provider shall furnish the Investigating Agency all information, facilities, and technical assistance necessary to accomplish the disclosure of all of the foregoing information relating to the Target Cellphones unobtrusively and with the minimum interference to the service presently provided to the Subscriber.

11. **Non-Disclosure to Subscriber.** The Service Provider, including its affiliates, officers, employees, and agents, shall not disclose the existence of this Warrant and Order, or the underlying investigation, to the Subscriber or any other person, for a period of 180 days from the date of this Warrant and Order, subject to extension upon application to the Court, if necessary.

## III.   Additional Provisions

12. **Compensation for Costs.** The Investigating Agency shall compensate the Service Provider for reasonable expenses incurred in complying with the Warrant and this Order.

13. **Sealing.** This Warrant and Order, and the supporting Application and Agent Affidavit, shall be sealed until otherwise ordered by the Court, except that the Government may without further order of this Court: serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to

---

forward to the agents assigned to the investigation, the numbers that are dialed before the call is cut through.

2017.02.09

personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

<u>4-7-18</u>
Date Issued

<u>1:58 PM</u>
Time Issued

UNITED STATES MAGISTRATE JUDGE
Southern District of New York

5

# 18 MAG 2957

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------
In re: Warrant and Order For
Prospective and Historical Location
Information and Pen Register
Information for the Cellphones
Assigned Call Numbers ▮▮▮▮▮▮
and ▮▮▮▮▮▮▮▮ USAO Reference
No. 2018R00127
--------------------------------------------------------------------

**APPLICATION**

**18 Mag.** _____

### Application for Warrant and Order
### for Cellphone Location and Pen Register Information

The United States of America, by its attorney, Robert Khuzami, Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515, ▮▮▮▮▮▮ Assistant United States Attorney, of counsel, respectfully requests that the Court issue the accompanying proposed Warrants and Orders for prospective and historical location information and pen register information for two cellphones (the "Target Cellphones"). As grounds for this Application the Government relies on the following facts and authorities.

## I. Introduction

1. I am an Assistant United States Attorney in the U.S. Attorney's Office for the Southern District of New York. This Application is submitted in conjunction with the accompanying affidavit of a law enforcement agent ("Agent Affidavit"), to be sworn before this Court, and incorporated by reference herein. I make this Application based on information and belief, including the Agent Affidavit, my review of other documents in the case, and information received from investigative personnel.

2.   The Investigating Agency, Target Cellphones, Subscriber, Target Subject(s), Service Provider, Subject Offenses, Successor Service Provider, and Successor Cellphones referenced in this Application are as specified in the Agent Affidavit.

## II.  Legal Authority

### A.  Prospective Location Information

3.   The Government seeks to obtain both precision location information and cell site data for the Target Cellphones on a prospective basis (the "Prospective Location Information") for a period of 45 days from the date of this order – the same period of time for which a warrant for a tracking device may be granted under Rule 41(e)(2)(C).  It bears noting, however, that while the Prospective Location Information may permit "tracking" the user of the phone in the colloquial sense, this is not an application for a warrant for a "tracking device" as defined in Fed. R. Crim. P. 41(a)(2)(E) and 18 U.S.C. § 3117(b).  Those provisions only apply where an agent is seeking to physically install a tracking device on a given object.   Instead, the Prospective Location Information will be obtained by requiring the Service Provider to provide the information.

4.   The authority for this application is found in 18 U.S.C. §§ 2703(c)(1), which authorizes a court of competent jurisdiction to require any electronic communication service provider (which includes a cellular telephone service provider[1]) to disclose any "record or other information pertaining to a subscriber" other than the "contents of communications," when the government obtains, *inter alia*, a warrant under the procedures of Rule 41.  *See* 18 U.S.C. § 2703(c)(1)(A).[2]

---

[1] *See* 18 U.S.C. § 2711(1) (incorporating by cross-reference statutory definitions set forth in 18 U.S.C. § 2510); 18 U.S.C. § 2510(15) (defining "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications").

[2] Another provision of 18 U.S.C. § 2703(c)(1), specifically, § 2703(c)(1)(B), enables the Government to compel an electronic communication service provider to disclose non-content information pertaining to a subscriber by obtaining an order issued under 18 U.S.C. § 2703(d),

1

Because data concerning a subscriber's location, such as precision location information and cell site data, constitutes "information pertaining to a subscriber" that does not include the "contents of communications," that data is among the types of information available under § 2703(c)(1)(A).[3] Further, as specified in 18 U.S.C. § 2711(3), this Court is a court of competent jurisdiction under the Stored Communications Act because it has jurisdiction over the Subject Offenses.

5. The Government's request for cell site data also implicates the pen register statute, because such data constitutes signaling information used by the Service Provider to route communications to and from the Target Cellphones. In order to collect such data, a valid pen register order is required.[4] Accordingly, I hereby certify pursuant to 18 U.S.C. § 3122 that such

---

instead of a warrant. Rather than requiring a showing of probable cause, a § 2703(d) order requires only a showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. However, given that continued monitoring of an individual's specific location through precision location information arguably implicates Fourth Amendment interests, *see United States v. Jones*, 565 U.S. 400, 418 (2012) (Alito, J., concurring in the judgment), the Government here seeks to obtain the Precision Location Information sought herein by a § 2703(c) warrant rather than a § 2703(d) order.

[3] *See In re Application*, 460 F. Supp. 2d 448, 459–60 & n. 55 (S.D.N.Y. 2006) (Kaplan, J.) (cellphone location information falls within § 2703(c)(1)); *accord, e.g., United States v. Caraballo*, 963 F. Supp. 2d 341, 361 (D.Vt. 2013); *In re Order*, 632 F. Supp. 2d 202, 207 (E.D.N.Y. 2008); *In re Application*, 405 F. Supp. 2d 435, 444-45 (S.D.N.Y. 2005). *But see In re Application*, 849 F. Supp. 2d 526, 574 (D.Md. 2011) (rejecting view that cellular location data falls within the scope of the SCA and finding that phone must be treated as "tracking device" for purposes of Rule 41 where used to collect location data); *In re Application*, 2009 WL 159187, at *5-*6 (S.D.N.Y. Jan.13, 2009) (McMahon, J.) (same).

[4] *See* 18 U.S.C. § 3121 (prohibiting use of pen register or trap and trace device without an order under the pen register statute); 3127(3) & (4) (defining pen register and trap and trace device to include devices or processes that record, *inter alia*, signaling information). Although cell site data constitutes "signaling" information within the meaning of the pen register statute, a separate statute precludes the Government from relying "solely" on the authority provided by the pen register statute to ascertain a subscriber's location. 47 U.S.C. § 1002(a). Here, the Government seeks to obtain such data pursuant to 18 U.S.C. § 2703(c) as well as the pen register statute, rather than "solely" under the latter statute. *See In re Application*, 460 F. Supp. 2d at 456-59.

2

signaling information is relevant to an ongoing investigation being conducted by the Investigating

Agency into suspected violations of the Subject Offenses by the Target Subject(s).

### B.   Historical Location Information

6.   The Government also seeks historical cell site data for the Target Cellphones for the

period from October 1, 2016 to ~~the present~~ *through November 8, 2016 and January 1, 2018 to present* (the "Historical Location Information").  Because such

data constitutes non-content information concerning a subscriber, the Court is authorized to order

the Service Provider to provide this data pursuant to a warrant application under 18 U.S.C. §

2703(c) or an application for an order under 18 U.S.C. § 2703(d).  *See* 18 U.S.C. § 2703(c)(1)(B).

Pursuant to 18 U.S.C. § 2703(d), I respectfully submit that the Agent Affidavit offers specific and

articulable facts showing that there are reasonable grounds to believe that the Historical Location

Information is relevant and material to an ongoing criminal investigation.  Further, although a

warrant for the Historical Location Information is not required, I respectfully submit that the same

probable cause supporting the Government's request for a warrant to obtain the Prospective

Location Information requested above also supports the issuance of a warrant under § 2703(c) for

the Historical Location Information.[5]  In addition, the Government seeks toll records for the same

---

[5] A warrant is not required to obtain historical cell site information.  Individuals do not have a reasonable expectation of privacy in historical cell site information because individuals voluntarily convey that information to third-party service providers. *See United States v. Graham*, 824 F.3d 421, 424-25 (4th Cir. 2016) (*en banc*); *United States v. Davis*, 785 F.3d 498, 511-13 (11th Cir. 2015) (*en banc*), *cert. denied*, 136 S. Ct. 479 (2015); *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 614-15 (5th Cir. 2013); *United States* v. *Guerrero*, 768 F.3d 351, 358-59 (5th Cir. 2014); *see also United States v. Pascual*, 502 F. App'x 75, 80 & n.6 (2d Cir. 2012), *cert. denied,* 134 S. Ct. 231 (2013) ("general principles" of third-party doctrine "point[ ]" toward this conclusion regarding cell-site records); *but see United States* v. *Ulbricht*, 858 F.3d 71, 97 n.29 (2d Cir. 2017) (declining to express its view as to whether the Fourth Amendment applies to historical cell site location information).  Moreover, because historical cell site information does not enable law enforcement to conduct live monitoring of a person's location within private spaces such as "the interior of the [person's] home," it is not comparable to prospective precision location information, for which a warrant is arguably required.  *See In re Application of U.S. for Order Directing Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 312-15 (3d Cir. 2010).  Nevertheless, because the Supreme Court has recently granted certiorari to review

3

period as the Historical Location Information is requested, which the Government is also authorized to obtain pursuant to 18 U.S.C. §2703(d).

### C. Pen Register Information

7.   Finally, the Government seeks an order pursuant to 18 U.S.C. §§ 3121-26 authorizing the use of a pen register on the Target Cellphones for a period of 60 days from the date of this order (or the date that the Target Cellphones are seized, whichever comes first). Specifically, the Government seeks an order directing the Service Provider to furnish any information, facilities, and technical assistance necessary to operate, unobtrusively and with minimum disruption of service, a pen register and trap and trace device to capture all dialing, routing, addressing, or signaling information associated with each call transmitted to or from the Target Cellphones, as specified further in the proposed Warrant and Order (the "Pen Register Information").[6]

8.   I hereby certify pursuant to 18 U.S.C. § 3122 that the Pen Register Information is relevant to an ongoing investigation being conducted by the Investigating Agency into suspected violations of the Subject Offenses by the Target Subject(s).

---

the Sixth Circuit's decision in *United States* v. *Carpenter*, 819 F.3d 880, 887-90 (6th Cir. 2016) (holding Government's collection of business records containing historical cell site data did not constitute search under Fourth Amendment), *cert. granted*, 137 S. Ct. 2211 (June 5, 2017) (No. 16-402), the Government, in an abundance of caution, requests a warrant under 18 U.S.C. § 2703(c), upon articulation of probable cause as set forth in the Agent Affidavit.

[6] The Government is also not seeking authorization to obtain post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Phone has been connected. Pursuant to the attached Order, if possible, the Provider will forward only pre-cut-through-dialed digits to the Investigating Agency. However, if the Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigating Agency, the Investigating Agency will only decode and forward to the agents assigned to the investigation the numbers that are dialed before the call is cut through.

4

**D.   Sealing and Non-Disclosure Order to Service Provider**

9.   When the Government obtains records or information under § 2703(c), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3).   Additionally, the Government may obtain an order precluding the Provider from notifying the subscriber or any other third-party of the warrant or order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses, or will otherwise seriously jeopardize the investigation.  18 U.S.C. § 2705(b).

10. Further, 18 U.S.C. § 3123(d) provides that an order directing installation of a pen register or trap and trace device shall direct the pertinent service provider "not to disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person unless or until otherwise ordered by the Court."

11. Accordingly, as explained further in the Agent Affidavit, in light of the confidential nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, the Government respectfully requests that the Court direct the Service Provider not to notify the Subscriber or any other person of the Warrant and Order sought herein for a period of 180 days, subject to extension upon application to the Court, if necessary.

12. For similar reasons, I respectfully request that the proposed Warrant and Order, this Application, and the accompanying Agent Affidavit, be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

2017.02.09

### III.  Prior Requests

14. Except as may be set forth above, no prior request for the relief requested herein has

been made.

Dated:  New York, New York
        April 7, 2018

█████████████████

Assistant United States Attorney
Tel.: (212) 637-████

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 18 MAG   2957

In re: Warrant and Order For Prospective
and Historical Location Information and
Pen Register Information for the
Cellphones Assigned Call Numbers
███████   and   ███████
USAO Reference No. 2018R00127

**AGENT AFFIDAVIT**

**18 Mag.** _____

**Agent Affidavit in Support of Warrant and Order
for Cellphone Location and Pen Register Information**

STATE OF NEW YORK      )
                       ) ss.
COUNTY OF NEW YORK  )

Special Agent ███████ of the United States Attorney's Office for the Southern District of New York, being duly sworn, deposes and states:

## I. Introduction



2. **Requested Information.** I respectfully submit this Affidavit pursuant to 18 U.S.C. §§ 2703(c) and (c)(1)(A) and the applicable procedures of Federal Rule of Criminal Procedure 41; 18 U.S.C. §§ 2703(d) & 2705; and 18 U.S.C. §§ 3121-3126, in support of a warrant and order for prospective location information, historical location information, toll records, and pen register

information, for the Target Cellphones identified below (collectively, the "Requested Information").

3. **Basis for Knowledge.** This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals, as well as my training and experience. Because this Affidavit is being submitted for the limited purpose of obtaining the Requested Information, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In addition, unless otherwise indicated, statements by others referenced in this Affidavit were not necessarily made to me, but may have been provided to me by someone else to whom I have spoken or whose report I have read (and who in turn may have had either direct or indirect knowledge of the statement). Similarly, unless otherwise indicated, information in this Affidavit resulting from surveillance does not necessarily set forth my personal observations, but may have been provided to me by other law enforcement agents who observed the events, and to whom I have spoken or whose report I have read.

4. **Target Cellphones, Subscriber, Target Subject, and Service Provider.** The Target Cellphones referenced in this Affidavit are the cellphones assigned call numbers _____ and _____ As further discussed below, the Target Cellphones are subscribed to in the name of Michael Cohen (the "Subscriber"). The Subscriber is believed to use the Target Cellphones and is a Target Subject of this investigation. AT&T is the Service Provider for the Target Cellphones.

2

5. **Precision Location Capability.**   Cellphone service providers have technical capabilities that allow them to collect at least two kinds of information about the locations of the cellphones to which they provide service: (a) precision location information, also known as E-911 Phase II data, GPS data, or latitude-longitude data, and (b) cell site data, also known as "tower/face" or "tower/sector" information.   Precision location information provides relatively precise location information about a cellphone, which a provider can typically collect either via GPS tracking technology built into the phone or by triangulating the device's signal as received by the provider's nearby cell towers.   Cell site data, by contrast, reflects only the cell tower and sector thereof utilized in routing any communication to and from the cellphone, as well as the approximate range of the cellphone from the tower during the communication (sometimes referred to as "per-call measurement" ("PCM") or "round-trip time" ("RTT" or "NELOS" data).   Because cell towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, cell site data is typically less precise than precision location information.   Based on my training and experience, I know that the Service Provider has the technical ability to collect precision location information from any cellphone on its network, including by initiating a signal on the Service Provider's network to determine the phone's location.   I further know that cell site data is routinely collected by the Service Provider in the course of routing calls placed to or from any cellphone on its network.[1]

6. **Successor Service Provider.** Because it is possible that the Target Subject may change cellphone service provider during the course of this investigation, it is requested that the warrant

---

[1] Toll records are sometimes necessary or helpful in order to obtain or interpret historical cell site data and are therefore also requested herein.

3

and investigative order requested apply without need for further order to any Successor Service Provider who may provide service to the Target Cellphones during the time frames at issue herein.

## II. Facts Establishing Probable Cause

7. Although I understand that probable cause is not necessary to obtain all of the Requested Information, I respectfully submit that probable cause exists to believe that the Requested Information will lead to evidence of the crime of 52 U.S.C. §§ 30116(a)(1)(A) and 30109(d)(1)(A)(1) (illegal campaign contributions) (the "Subject Offense"), as well as the location of the Target Subject who is engaged in the Subject Offense.

### Introduction

8. The USAO and the Federal Bureau of Investigation (the "FBI") are investigating a criminal violation of the campaign finance laws by Michael Cohen, a lawyer who holds himself out as the personal attorney for President Donald J. Trump. As detailed below, there is probable cause to believe

### Prior Relevant Process

9. In connection with an investigation then being conducted by the Office of the Special Counsel ("SCO"), the FBI sought and obtained from the Honorable Beryl A. Howell, Chief United States District Judge for the District of Columbia, three search warrants for emails and other content information associated with two email accounts used by Cohen, and one search warrant for stored content associated with an iCloud account used by Cohen. Specifically:

4

a.  On or about July 18, 2017, the FBI sought and obtained a search warrant for emails in the account ▮▮▮▮▮@gmail.com (the "Cohen Gmail Account") sent or received between January 1, 2016 and July 18, 2017 (the "First Cohen Gmail Warrant").

b.  On or about August 8, 2017, the FBI sought and obtained a search warrant for content stored in the iCloud account associated with Apple ID ▮▮▮▮▮@gmail.com (the "Cohen iCloud Account" and the "Cohen iCloud Warrant").

c.  On or about November 13, 2017, the FBI sought and obtained a search warrant for emails in the Cohen Gmail Account sent or received between June 1, 2015 and November 13, 2017 (the "Second Cohen Gmail Warrant").

d.  On or about November 13, 2017, the FBI sought and obtained a search warrant for emails in the account ▮▮▮▮▮ (the "Cohen MDCPC Account") sent or received between the opening of the Cohen MDCPC Account[2] and November 13, 2017 (the "First Cohen MDCPC Warrant").

10. The SCO has since referred certain aspects of its investigation into Cohen to the USAO, which is working with the FBI's New York Field Office.

11. On or about February 28, 2018, the USAO sought and obtained search warrants for emails in Cohen Gmail Account and Cohen MDCPC Account, among other accounts, sent or received between November 14, 2017 and February 28, 2018 (the "Third Cohen Gmail Warrant" and "Second Cohen MDCPC Warrant").

---

[2] Based on my review of this warrant and the affidavit in support of it, I know that the warrant did not specify a time period, but the affidavit indicated that, pursuant to court order, the service provider had provided non-content information for the Cohen MDCPC Account that indicated that the account contained emails from the approximate period of March 2017 through the date of the warrant.

5

12. The above-described warrants are referred to herein as the "Cohen Emails Warrants"
and, with respect to the iCloud Warrant, the "Cohen iCloud Warrant."

**The Illegal Campaign Contribution Scheme**



6



7



8

2018-04-07017.02.09



2018-04-07017.02.09



10



11

2018-04-07017.02.09



12



13



14



15

2018-04-07017.02.09



16



17



18



19



20



21

2018-04-07017.02.09



2018-04-07017.02.09



28. I have reviewed records maintained by AT&T, from which I have learned, in substance and in part, that the Target Cellphones are still active. Based on my training and experience, my familiarity with this investigation, and the information set forth above, I therefore believe that the Requested Information will lead to evidence of the Subject Offense. Specifically, the Requested Information includes historical location data for the Target Cellphones, which may show where the Target Cellphones—and by extension Cohen—was on particular dates and times between October 1, 2016—　　　　　　　　　　　　　　　　　　—and the present. That location information can, among other things, be used to corroborate any

24

29. Based on my training and experience, I also know that historical location information can be useful to establish a pattern of behavior by a particular individual, which assists law enforcement in tracking such an individual—and, thereby, locating his electronic devices. Along with the historical information, the prospective information will also lead to the present location of the Target Cellphones; law enforcement may then obtain evidence from the Target Cellphones, by subpoena or search warrant, including but not limited to

### III.   Request for Warrant and Order

30. Based on the foregoing I respectfully request that the Court require the Service Provider to provide the Requested Information as specified further in the Warrant and Order proposed herewith, including prospective precision location and cell site data for a period of 45 days from the date of this Order (or the date that the Target Cellphones are seized, whichever comes first), historical cell site data and toll records for the period from October 1, 2016 through the date of this Order, and pen register information for a period of 60 days from the date of this Order.

*[handwritten: November 8, 2018 and January 1, 2018 to present]*

31. **Nondisclosure.** The existence and scope of this ongoing criminal investigation are not publicly known. As a result, premature public disclosure of this affidavit or the requested Warrant and Order could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. Accordingly, I respectfully request that the Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of 180 days, and that the Warrant and

25

Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.

United States Attorney's Office
Southern District of New York

Sworn to before me this
7th day of April, 2018

HONORABLE HENRY PITMAN
United States Magistrate Judge
Southern District of New York

26

2018-04-07017.02.09