AO 93  (SDNY Rev. 05/10) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | **18 MAG 2958** |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | |
| | ) | Case No. |
| Three Electronic Devices, See Attachment A | ) | |
| | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Southern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:
Three Electronic Devices, See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____4-21-18_____
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.      ☑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Clerk of the Court.
✓ Upon its return, this warrant and inventory should be filed under seal by the Clerk of the Court. _____
*USMJ Initials*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑for ___30___ days *(not to exceed 30)*.
☐until, the facts justifying, the later specific date of _____

Date and time issued:    _____4-7-18_____
                                   _____1:55 PM_____

Judge's signature

City and state:   _____New York, NY_____                _____Hon. Henry B. Pitman, U.S. Magistrate Judge_____
                                                                                    *Printed name and title*

AO 93  (Rev. 01/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the Court.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## Attachment A

### I. Devices to be Searched

The devices to be searched (the "Subject Devices") are described as:

a.      *Subject Device-1*: A black and red USB drive with a white label that says "Tracking #: 180208140208."

b.      *Subject Device-2*:   A silver DVD with a white label that reads "Cohen – 2018.03.07."

c.      *Subject Device-3*:  A white DVD labelled "2-28-18 Cohen SW Returns – Google and 1&1."

### II. Review of ESI on the Subject Devices

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, interpreters, and outside vendors or technical experts under government control) are authorized to review the ESI contained on the Subject Devices for evidence, fruits, and instrumentalities of one or more violations of 52 U.S.C. §§ 30116(a)(1)(A) and 30109(d)(1)(A)(1) (illegal campaign contributions) (the "Subject Offense"), as listed below:

a. Evidence relating to payments to Stephanie Clifford, Karen McDougal, or their agents or legal representatives, including any nondisclosure agreements and related documents, and any communications related to such agreements.

b. Evidence of communications involving Michael Cohen, Donald Trump and/or agents or associates of the Trump Campaign about Stephanie Clifford or Karen McDougal, or payments to Stephanie Clifford or Karen McDougal.

c. Evidence of communications with American Media, Inc., David Pecker, and/or Dylan Howard about Donald Trump, the Trump Campaign, Stephanie Clifford, and/or Karen McDougal.

d. Evidence relating to Cohen's role in the Trump Campaign, and coordination or consultation with the Trump Campaign.

e.  Evidence of communications with Donald Trump and/or agents or associates of the Trump Campaign about the *Access Hollywood* tape.

f.  Evidence relating to Cohen's knowledge of the campaign finance laws, campaign contribution reporting requirements, and campaign contribution limits.

g.  Evidence indicating Michael Cohen's intent with respect to the Subject Offense, including whether the payment to Clifford and any similar payments were made to influence the Presidential election.

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

**18 MAG  2958**

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Three Electronic Devices, See Attachment A

)
)
)
)
)
)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
A Device Containing the Results of Three Email Search Warrants, See Attachment A
Three Electronic Devices

located in the _____Southern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized):*

PLEASE SEE ATTACHED AFFIDAVIT AND RIDER.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 52 USC 30116(a)(1)(A), 30109 (d)(1)(A)(1) | Illegal campaign contributions |

The application is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT AND RIDER.

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-7-2018

*Judge's signature*

City and state: NEW YORK, NEW YORK

Hon. Henry B. Pitman, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of the United
States Of America for a Search Warrant for Three
Electronic Devices, USAO Reference No
2018R00127

**TO BE FILED UNDER SEAL**

**Agent Affidavit in Support of
Application for a Search Warrant**

SOUTHERN DISTRICT OF NEW YORK) ss.:

Special Agent [redacted] of the United States Attorney's Office for the Southern

District of New York ("USAO"), being duly sworn, deposes and says:

**I.  Introduction**

    **A.  Affiant**

       1.     I have been a Special Agent with the USAO since August 2016.  I previously served

as a Special Agent with the United States Department of Labor Inspector General from May 2011

to August 2016.  In the course of my experience and training in these positions, I have participated

in criminal investigations into federal offenses involving a wide array of financial crimes,

including frauds on financial institutions, and have been involved in investigations involving

violations of campaign finances laws and regulations.  I also have training and experience

executing search warrants, including those authorizing the search of email accounts and electronic

devices.

       2.     I make this Affidavit in support of an application pursuant to Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the electronic devices specified below (the

"Subject Devices") for the items and information described in Attachment A.  This affidavit is

based upon my personal knowledge; my review of documents and other evidence; my

conversations with other law enforcement personnel; and my training, experience and advice

received concerning the use of computers in criminal activity and the forensic analysis of

2

electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### B.  Prior Warrants and the Subject Devices

3.      The USAO and the Federal Bureau of Investigation ("FBI") have been investigating, among other things, a scheme by Michael Cohen to defraud multiple banks.  Cohen is an attorney who currently holds himself out as the personal attorney for President Donald Trump, and who previously served for over a decade as an executive in the Trump Organization, an international conglomerate with real estate and other holdings.

4.      In connection with an investigation then being conducted by the Office of the Special Counsel ("SCO"), the FBI sought and obtained from the Honorable Beryl A. Howell, Chief United States District Judge for the District of Columbia, three search warrants for emails and other content information associated with two email accounts used by Cohen, and one search warrant for stored content associated with an iCloud account used by Cohen.  Specifically:

a.      On or about July 18, 2017, the FBI sought and obtained a search warrant for emails in the account ⬛⬛⬛@gmail.com (the "Cohen Gmail Account") sent or received between January 1, 2016 and July 18, 2017.  This warrant, which is numbered 17-mj-00503, is attached as Exhibit A (the "First Cohen Gmail Warrant").

b.      On or about August 8, 2017, the FBI sought and obtained a search warrant for content stored in the iCloud account associated with Apple ID ⬛⬛⬛@gmail.com (the "Cohen iCloud Account").  This warrant, which is numbered, 17-mj-00570, is attached as Exhibit D (the "Cohen iCloud Warrant").

3

     c.     On or about November 13, 2017, the FBI sought and obtained a search warrant for emails in the Cohen Gmail Account sent or received between June 1, 2015 and November 13, 2017. This warrant, which is numbered 17-mj-00855, is attached as Exhibit B (the "Second Cohen Gmail Warrant").

     d.     On or about November 13, 2017, the FBI sought and obtained a search warrant for emails in the account▮▮▮▮▮▮▮▮ the "Cohen MDCPC Account") sent or received between the opening of the Cohen MDCPC Account[1] and November 13, 2017. This warrant, which is numbered 17-mj-00854, is attached as Exhibit C (the "First Cohen MDCPC Warrant").

5.     The SCO has since referred certain aspects of its investigation into Cohen to the USAO, which is working with the FBI's New York Field Office. As part of that referral, on or about February 8, 2018, the SCO provided the USAO with all non-privileged emails and other content information obtained pursuant to the First Cohen Gmail Warrant, Second Cohen Gmail Warrant, and Cohen MDCPC Warrant. On or about March 7, 2018, the SCO provided the USAO with all non-privileged content obtained pursuant to the Cohen iCloud Warrant.[2] A filter team working with the SCO had previously reviewed the content produced pursuant to these warrants for privilege.

6.     On or about February 28, 2018, the USAO sought and obtained search warrants for emails in Cohen Gmail Account and Cohen MDCPC Account, among other accounts, sent or

---

[1] Based on my review of this warrant and the affidavit in support of it, I know that the warrant did not specify a time period, but the affidavit indicated that, pursuant to court order, the service provider had provided non-content information for the Cohen MDCPC Account that indicated that the account contained emails from the approximate period of March 2017 through the date of the warrant.

[2] The SCO had previously provided a subset of this non-privileged content on or about February 2, 2018.

received between November 14, 2017 and February 28, 2018. These warrants, which are both numbered 18 Mag. 1696, are attached as Exhibits E (the "Third Cohen Gmail Warrant") and F (the "Second Cohen MDCPC Warrant"), respectively. The content produced pursuant to these warrants is being reviewed for privilege by an SDNY filter team.

7.      The search warrants described above are referred to collectively herein as the "Prior Warrants."

8.      The returns of the Prior Warrants are presently contained on three electronic devices. In particular:

a.      *Subject Device-1*: The non-privileged emails and content returned in response to the First Cohen Gmail Warrant, the Second Cohen Gmail Warrant, and the First Cohen MDCPC Warrant are contained on Subject Device-1, which is particularly described as a black and red USB drive with a white label that says "Tracking #: 180208140208."

b.      *Subject Device-2*: The non-privileged content returned in response to the Cohen iCloud Warrant is contained on Subject Device-2, which is particularly described as one silver DVD with a white label that reads "Cohen – 2018.03.07."

c.      *Subject Device-3*: The content returned in response to the Third Cohen Gmail Warrant and the Second Cohen MDCPC Warrant is contained on Subject Device-3, which is particularly described as one white DVD labelled "2-28-18 Cohen SW Returns – Google and 1&1."

9.      The Subject Devices are presently located in the Southern District of New York.

**C.  The Subject Offenses**

10.      The affidavits in support of the Prior Warrants describe evidence of several different courses of conduct by Cohen, including, among other things, false statements to financial institutions relating to the purpose of an account he opened in the name of Essential Consultants

5

LLC and the nature of funds flowing into that account; false statements and fraudulent omissions by Cohen in connection with this attempt to refinance his debts with certain financial institutions; and activities undertaken by Cohen on behalf of certain foreign persons or foreign entities without having registered as a foreign agent. The Prior Warrants accordingly define the evidence to be seized by reference to subject offenses and specific categories of information related to these courses of conduct. The subject offenses in the Prior Warrants are summarized as follows:

| Exhibit | Warrant | Subject Offenses in Prior Warrant[3] |
|---|---|---|
| A | First Cohen Gmail Warrant | 18 U.S.C. §§ 371 (conspiracy to defraud the United States), 1005 (false bank entries), 1014 (false statement to financial institution), 1343 (wire fraud), 1344 (bank fraud), 1956 (money laundering), 951 (acting as an unregistered foreign agent), and 22 U.S.C. §§ 611 *et seq.* (Foreign Agents Registration Act ("FARA")) |
| B | Second Cohen Gmail Warrant | 18 U.S.C. §§ 371 (conspiracy to defraud the United States), 1005 (false bank entries), 1014 (false statement to financial institution), 1343 (wire fraud), 1344 (bank fraud), 1956 (money laundering), 951 (acting as an unregistered foreign agent), and 22 U.S.C. §§ 611 *et seq.* (FARA) |
| C | Cohen MDCPC Warrant | 18 U.S.C. §§ 371 (conspiracy to defraud the United States), 1005 (false bank entries), 1014 (false statement to financial institution), 1343 (wire fraud), 1344 (bank fraud), 1956 (money laundering), 951 (acting as an unregistered foreign agent), and 22 U.S.C. §§ 611 *et seq.* (FARA) |
| D | Cohen iCloud Warrant | 18 U.S.C. §§ 1014 (false statement to financial institution), 1344 (bank fraud), 1956 (money laundering), 951 (acting as an unregistered foreign agent), and 22 U.S.C. §§ 611 *et seq.* (FARA) |
| E | Third Cohen Gmail Warrant | 18 U.S.C. §§ 371 (conspiracy to commit offense or to defraud the United States), 1005 (false bank entries), 1014 (false statements to financial institution), 1343 (wire fraud), 1344 (bank fraud) |
| F | Second Cohen MDCPC Warrant | 18 U.S.C. §§ 371 (conspiracy to commit offense or to defraud the United States), 1005 (false bank entries), 1014 (false statements to financial institution), 1343 (wire fraud), 1344 (bank fraud) |

11.   Based on my participation in this investigation, including my review of documents obtained pursuant to subpoena and court order, my conversations with witnesses and review of reports of conversations with witnesses, and my review of publicly available information, I have

---

[3] On or about February 28, 2018, the USAO sought and obtained a Rule 41 warrant, authorizing it to expand its search of the email returns for the warrants attached as Exhibits A-C (the First Cohen Gmail Warrant, Second Cohen Gmail Warrant, and First Cohen MDCPC Warrant) for additional offenses not authorized in the original warrants for those accounts. The below chart therefore lists *both* the subject offenses listed in the original warrants for these accounts and the subject offenses authorized in the February 28, 2018 warrant.

6

learned of evidence of an additional Subject Offense committed by Cohen, described below, which was not listed in the Prior Warrants.[4]

12.     I am therefore requesting authority to expand the search of the returns of the Prior Warrants, as contained on the Subject Devices, for evidence related to the additional Subject Offense. As set forth below, in addition to the categories of evidence already described in the Prior Warrants, there is probable cause to believe that the Subject Devices contain evidence of violations of 52 U.S.C. §§ 30116(a)(1)(A) and 30109(d)(1)(A)(i) (illegal campaign contributions) (the "Subject Offense").[5]

## II.  Probable Cause Regarding the Subject Offense

13.     As set forth above, the USAO and the FBI have been investigating, among other things, a scheme by Michael Cohen to defraud multiple banks. During the course of this investigation, the USAO and FBI have obtained evidence that Cohen has also committed a criminal violation of the campaign finance laws by making an excessive in-kind contribution to the presidential election campaign of then-candidate Donald Trump in the form of a $130,000 payment to Stephanie Clifford, an individual who was rumored to have had an extramarital affair with Trump, in exchange for her agreement not to disclose that alleged affair. As set forth below, there is probable cause to believe that this payment was intended to keep Clifford from making public statements about the rumored affair on the eve of the 2016 presidential election, and thus constitutes a campaign contribution in excess of the applicable limit.

---

[4] As set forth below, I base this application in part on my review of emails and text messages obtained pursuant to the Prior Warrants. Each of the cited emails or texts messages is either responsive to the applicable Prior Warrant and/or was discovered in plain view during a review of the emails or texts returned pursuant to the applicable Prior Warrant.

[5] The Prior Warrants describe categories of information that likely encompass evidence of the additional Subject Offense. Nevertheless, in an abundance of caution, I am seeking explicit authorization to search the Subject Devices for evidence of the Subject Offense.

14.     From my review of public sources, I have learned the following:

a.   In or around October 2011, there were rumors published on the gossip websites *TheDirty.com* that Trump had had an extramarital affair with Clifford, an adult film actress whose screen name is Stormy Daniels, in or around July 2006.   In or about October 2011, *Life & Style Magazine*, a tabloid sold in supermarkets, also published an article, based on the report in *TheDirty.com*, alleging an affair had occurred between Trump and Clifford.   Both Trump and Clifford, through their representatives, issued denials in response to the articles.

b.   Specifically, on or about October 11, 2011, Keith Davidson, who identified himself as Clifford's attorney, sent a cease and desist letter to *TheDirty.com*, demanding that the article regarding Trump and Clifford be removed from the website.   Additionally, on or about October 12, 2011, Cohen, who was then Executive Vice-President and Special Counsel to the Trump Organization, stated to *E! News* that "[t]he totally untrue and ridiculous story . . . emanated from a sleazy and disgusting website. . . . The Trump Organization and Donald J. Trump will be bringing a lawsuit . . . [and] Mr. Trump and the Trump Organization would like to thank and commend Stormy Daniels and her attorneys for their honesty and swift actions."

15.     On or about June 16, 2015, Trump formally launched his 2016 presidential campaign.   On or about May 4, 2016, Trump became the presumptive Republican Party nominee for president, and on July 19, 2016, Trump officially became the nominee.   Based on my review of public sources, I have learned that while it does not appear that Cohen had an official title as part of the Trump campaign, on multiple occasions Cohen made public statements on behalf of Trump or his campaign.   For instance, on or about August 18, 2016, Cohen appeared on CNN to defend Trump's polling numbers.

8

16.    On or about October 7, 2016, *The Washington Post* published online a video and accompanying audio in which Trump referred to women in what the article described as "vulgar terms" in a 2005 conversation with Billy Bush, who was then the host of *Access Hollywood*. The following day, on October 8, 2016, Trump appeared in a video in which he stated, among other things, "I've said and done things I regret and words released today on this more than a decade old video are one of them. Anyone who knows me knows these words don't reflect who I am. I said it. I was wrong and I apologize." Based on my review of public sources, I also know that representatives of the Trump Campaign stated, in sum and substance, that the *Access Hollywood* comment was an old and isolated incident.

17.    Based on my review of public sources, including an article published in *Slate* magazine by a reporter who interviewed Clifford, that around this same time, in or about October 2016, Clifford was in discussions with ABC's *Good Morning America* show and *Slate* magazine, among other media sources, to provide these media outlets with her statement about her alleged relationship with Trump. According to the article in *Slate*, which the author based on conversations with Clifford over the telephone and by text message, Clifford wanted to be paid for her story or be paid by Trump not to disclose her accusation. As Cohen summarized in a 2018 email obtained pursuant to the Cohen Email Warrants: "In October 2016, I was contacted by counsel for Ms. Clifford stating that news outlets, including *ABC News*, were pursuing the 2011 story of an alleged affair between Mr. Trump and Ms. Clifford."

18.    From my review of telephone toll records[6] and information produced pursuant to the iCloud Warrant and Cohen Email Warrants, I have learned that in the days following the *Access*

---

[6] My attribution of certain telephone numbers to certain individuals as described in this affidavit is based on my review of the vCard (virtual contact file) obtained from Cohen's telephone pursuant to the iCloud Warrant.

*Hollywood* video, Cohen exchanged a series of calls, text messages, and emails with Keith Davidson, who was then Clifford's attorney, David Pecker and Dylan Howard of American Media, Inc. ("AMI"), the publisher of the *National Enquirer*,[7] Trump, and Hope Hicks, who was then press secretary for Trump's presidential campaign. Based on the timing of these calls, and the content of the text messages and emails, I believe that at least some of these communications concerned the need to prevent Clifford from going public, particularly in the wake of the *Access Hollywood* story. In particular, I have learned the following:

     a. On October 8, 2016, at approximately 7:20 p.m., Cohen received a call from Hicks. Sixteen seconds into the call, Trump joined the call, and the call continued for over four minutes.[8] Based on the toll records that the USAO has obtained to date, I believe that this was the first call Cohen had received or made to Hicks in at least multiple weeks, and that Cohen and Trump spoke about once a month prior to this date – specifically, prior to this call on October 8, 2016, Cohen and Trump had spoken once in May, once in June, once in July, zero times in August, and twice in September.

     b. Approximately ten minutes after the call ended, Hicks and Cohen spoke again for about two minutes.

---

[7] Pecker is President of AMI and, according to his own statements in public reports, a personal friend of Trump. Howard is the chief content officer of AMI, who according to public records reports directly to Pecker.

[8] I believe that Trump joined the call between Cohen and Hicks based on my review of toll records. Specifically, I know that a call was initiated between Cohen's telephone number and Trump's telephone number at the same time the records indicate that Cohen was talking to Hicks. After the Cohen-Trump call was initiated, it lasted the same period of time as the Cohen-Hicks call. Additionally, the toll records indicate a "-1" and then Trump's telephone number, which, based on my training and experience, means that the call was either transferred to Trump, or that Trump was added to the call as a conference or three-way call participant. In addition, based on my conversations with an FBI agent who has interviewed Hicks, I have learned that Hicks stated, in substance, that to the best of her recollection, she did not learn about the allegations made by Clifford until early November 2016. Hicks was not specifically asked about this three-way call.

c. At 7:39 p.m., immediately after the second call with Hicks ended, Cohen called David Pecker (as noted above, the President of American Media Inc., or AMI) and they connected for thirty seconds. Approximately four minutes later, Cohen called Pecker again and they spoke for more than a minute. Three minutes after ending his call with Pecker, Cohen received a call from Dylan Howard (as noted above, the Chief Content Officer of AMI), and they spoke for approximately a minute. According to toll records, it does not appear that Cohen and Howard spoke regularly prior to October 8, 2016, as it had been over a month since they had called each other.

d. At 7:56 p.m., approximately eight minutes after his call with Howard ended, Cohen called Hicks and they connected for two minutes. At approximately the same time this call ended, Cohen received a call from Pecker, and they spoke for about two minutes. At 8:03 p.m., about three minutes after ending his call with Pecker, Cohen called Trump, and they spoke for nearly eight minutes.

e. At 8:39 p.m. and 8:57 p.m., Cohen received calls from Howard and spoke to him for about four and six minutes, respectively. At 9:13 p.m., about ten minutes after Cohen and Howard hung up from the second of these calls, Howard sent Cohen a text message that said: "Keith will do it. Let's reconvene tomorrow." Based on my involvement in this investigation, I believe that when Howard wrote "Keith," he was referring to Keith Davidson, the attorney for Stephanie Clifford. At 3:31 a.m., now on October 9, 2016, Cohen sent Howard a text message in response that said: "Thank you." Eight minutes later, Cohen sent Howard a text message that said: "Resolution Consultants LLC. is the name of the entity I formed a week ago. Whenever you wake, please call my cell."

11

f.    The following day, on October 10, 2016, at 10:58 a.m., Howard sent a text message to Cohen and Davidson, which stated: "Keith/Michael: connecting you both in regards to that business opportunity. Spoke to the client this AM and they're confirmed to proceed with the opportunity. Thanks. Dylan. Over to you two." At 12:25 p.m., Davidson sent Cohen a text message that stated: "Michael – if we are ever going to close this deal – In my opinion, it needs to be today. Keith." Davidson and Cohen then spoke by phone for about three minutes.  Based on my participation in this investigation, I believe that when Howard wrote that the "client" was "confirmed to proceed with the opportunity," he was referring to Clifford's agreement in principle to accept money from Cohen in exchange for her agreement not to discuss any prior affair with then-candidate Trump.[9]

g.    Based on my review of records obtained pursuant to the Cohen Email Warrants, I know that on or about October 10, 2016, Clifford and Davidson appear to have signed a "side letter agreement" that stated it was an exhibit to a "confidential settlement agreement and mutual release" between "Peggy Peterson" and "David Dennison." The purpose of the document, according to the agreement, was to define the "true name and identity" of persons named by pseudonym in "confidential settlement agreement and mutual release." The side letter agreement specifies the identity of "Peggy Peterson" to be Clifford, but the space for "Dennison's" identity is blank. The agreement also includes a signature page for "Peterson," "Dennison," and their attorneys. The signature page is signed by "Peterson" and his attorney, Davidson, but the

---

[9] As set forth below, AMI was also involved in a payment to model Karen McDougal. However, because these communications were in close temporal proximity to the events involving the negotiation of a payment to Clifford, the execution of the agreement with Clifford, and the payment of money to Clifford, I believe that these communications were related to Clifford. Additionally, based on my review of public statements by McDougal, I have learned that she negotiated an agreement with AMI several months prior to these communications between Cohen and Pecker, Howard, and Davidson.

document is unsigned by "Dennison" and his attorney. Based on my involvement in this investigation, I believe that Davidson sent Cohen this partially-signed "side letter agreement" in order to facilitate the closing of a deal between Davidson's client and Cohen or his client on October 10, 2016.

19.     It appears that on October 13, 2016, and the days that followed, Cohen took steps to complete a transaction with Davidson, including attempting to open an account from which Cohen could transfer funds to Davidson. Specifically, from my review of toll records, information obtained pursuant to the iCloud Warrant and Cohen Email Warrants, records maintained by First Republic, as well as my participation in interviews with First Republic employees, I have learned the following:

a.     On the morning of October 13, 2016, at 8:54 a.m., Cohen sent Pecker a text message that stated: "I need to talk to you." At 9:06 a.m., Pecker sent a text message to Cohen that stated, "I called please call me back." The tolls between Cohen and Pecker do not show a telephone call between 8:54 a.m. and 9:06 a.m. However, based on my review of text messages, I have learned that Cohen and Pecker communicate with each other over Signal, which is an encrypted communications cellphone application that allows users to send encrypted text messages and make encrypted calls.

b.     At 9:23 a.m., Cohen sent an email that stated "call me" to a banker at First Republic Bank ("First Republic Employee-2"). The email attached documents from the Secretary of State of Delaware indicating that Cohen had formed a limited liability company called "Resolution Consultants LLC" on September 30, 2016. As noted above, "Resolution Consultants" is the name of the entity that Cohen had told Howard he had formed recently after Howard said Davidson would "do it." At 10:44 a.m., Cohen called First Republic Employee-2 and told him, in sum and

13

substance, that he needed an account in the name of "Resolution Consultants" opened immediately, and that he did not want an address on the checks written out of the account. Later that day, another employee at First Republic emailed Cohen account opening paperwork to complete. Cohen returned the account opening documents partially completed, but failed to provide a copy of his driver's license or passport, and did not respond to the employee's question of how he wanted to fund the account. As a result, the account was never opened.

        c.   On October 17, 2016, Cohen incorporated Essential Consultants LLC in Delaware. That same day, he filed paperwork to dissolve Resolution Consultants LLC.

      20.     Despite these steps taken by Cohen, it appears that the negotiation between Cohen and Davidson was not progressing sufficiently fast enough for Davidson or his client, Clifford, and they threatened to go public with Clifford's allegations just days before the presidential election. Specifically, based on my review of toll records, information obtained pursuant to the iCloud Warrant, and public sources, I know the following:

        a.   According to an article in *The Washington Post*, which quoted emails sent from Cohen's email account hosted by the Trump Organization, on October 17, 2016, Davidson emailed Cohen and threatened to cancel the aforementioned "settlement agreement" by the end of the day if Cohen did not complete the transaction.[10] According to the article, Davidson sent Cohen a second email later in the day that stated in part, "Please be advised that my client deems her settlement agreement canceled and void." At 4:00 p.m. that day, Cohen called Davidson and they spoke for over five minutes.

---

[10] Due to the partially covert nature of the investigation to this date, the Government has not requested documents from the Trump Organization or Davidson, and thus does not possess the email referenced in this article.

14

b. Cohen's 4:00 p.m. call with Davidson and/or Davidson's threats to cancel the "settlement agreement" appear to have touched off a flurry of communications about the settlement agreement and whether Clifford would go public. Specifically:

i.      At 4:43 p.m., Howard sent Cohen a text message that stated: "I'm told they're going with DailyMail. Are you aware?" One minute later, Cohen responded: "Call me." Based on my involvement in this investigation, I understand Howard's text to mean that he heard that Clifford was going to take her story of an extramarital affair with Trump to the *Daily Mail*, a tabloid newspaper.

ii.     At 4:45 p.m., Howard called Cohen and they spoke for over two minutes. Moments later, Davidson and Cohen spoke for about two minutes.

iii.    At 5:03 p.m., Cohen attempted to call Trump, but the call only lasted eight seconds. This was Cohen's first call after he spoke with Davidson.

iv.     At 5:25 p.m., Cohen texted Howard, stating: "Well???"

v.      At 6:44 p.m., Howard responded to Cohen's text, stating: "Not taking my calls." Cohen responded one minute later: "You're kidding. Who are you trying to reach?" Howard responded one minute later: "The 'agent.'" Based on my involvement in this investigation, I understand Howard's text messages to mean that he attempted to contact Davidson about the matter involving Clifford, but that Davidson was not taking Howard's calls.

vi.     At 6:49 p.m., Cohen called Howard and they spoke for nearly four minutes.

c. The following day, on October 18, 2016, *TheSmokingGun.com*, a website that publishes legal documents and mugshots, published an article called: "Donald Trump and the Porn Superstar," which alleged that Trump had an extramarital affair with Clifford. However, the article noted that Clifford had declined to comment.

15

21.    On or about October 25, 2016, the communications between Cohen, Davidson, Howard and Pecker picked up again, apparently concerning a transaction involving Clifford. Specifically, based on my review of toll records, information obtained pursuant to the Cohen Email Warrants and iCloud Warrant, as well as my review of public sources, I have learned the following:

a.    On October 25, 2016, at 6:09 p.m., Howard sent Cohen a text message stating: "Keith calling you urgently. We have to coordinate something on the matter he's calling you about or its [sic] could look awfully bad for everyone."  One minute later, Davidson sent Cohen a text message stating "Call me."  Cohen and Davidson called each other several times over the next half hour but appear not to have connected.  At 6:42 p.m., Cohen and Davidson spoke for about eight minutes.  At 7:11 p.m., they spoke for another two minutes.

b.    The next morning, on or about October 26, 2016, at 8:26 a.m., Cohen called Trump and spoke to him for approximately three minutes.  At 8:34 a.m., Cohen called Trump again and connected for a minute and a half.

c.    At approximately 9:04 a.m.—less than thirty minutes after speaking with Trump—Cohen sent two emails to the person who had incorporated Resolution Consultants and Essential Consultants for him, and stated "can you send me asap the filing receipt" and then, in the second email, "for Essential Consultants LLC."  That person responded with the filing receipt two minutes later at 9:06 a.m. and with the certification of formation 23 minutes later, at 9:27 a.m.

d.    Shortly after that, Cohen contacted First Republic Employee-2 and told him, in sum and substance, that he decided not to open an account in the name of "Resolution Consulting" and instead would be opening a real estate consulting company in the name of "Essential Consultants." Cohen told First Republic Employee-2 that he was at Trump Tower, and wanted to go to a First Republic branch across the street to open the account, so First Republic Employee-2 called, a

16

preferred banker at that branch ("First Republic Employee-1"), to assist Cohen. At 11:00 a.m., First Republic Employee-1 called Cohen. I know from my participation in an interview with First Republic Employee-1, that around the time of the call he went to Cohen's office in Trump Tower— on the same floor as the Trump Organization—and went through account opening questions, including know your customer questions, with Cohen. In response to a series of know-your-customer questions about the purpose of the account—the answers to which First Republic Employee-1 entered into a form—Cohen stated, in sum and substance, that he was opening Essential Consultants as a real estate consulting company to collect fees for investment consulting work, and all of his consulting clients would be domestic individuals based in the United States. Based on my review of records obtained from First Republic, it appears that this account (the "Essential Consultants Account") was created at a time between 11:00 a.m. and 1:00 p.m.

e. At 1:47 p.m., Cohen called Davidson and they spoke for approximately two minutes. At approximately 1:49 p.m., Davidson emailed Cohen wiring instructions for an attorney client trust account at City National Bank.

f. After the Essential Consultants Account was opened on October 26, 2016, Cohen transferred $131,000 from a home equity line of credit that Cohen had at First Republic to the Essential Consultants Account. Following the transfer, at approximately 4:15 p.m. on October 26, 2016, First Republic Employee-2's assistant emailed Cohen at his Trump Organization email address to tell him that the funds had been deposited into the Essential Consultants Account. Cohen forwarded that email to the Cohen Gmail Account and then forwarded it to Davidson.

g. At 6:37 p.m., Cohen asked Pecker by text message, "Can we speak? Important." Cohen called Pecker at 6:49 p.m. and connected for thirty seconds. At 6:57 p.m., Cohen sent Howard a text message, stating: "Please call me. Important." Cohen called Howard at 7:00 p.m.

17

and connected for about thirty seconds. At 7:06 p.m., Cohen called Pecker again and they spoke for nearly thirteen minutes. At 7:24 p.m., Howard sent a text message to Cohen that: "He said he'd call me back in 20 minutes. I told him what you are asking for his [sic] reasonable. I'll get it sorted." Approximately an hour later, at 8:23 p.m., Howard told Cohen by text message to "check your Gmail for email from my private account." In an email sent at 8:23 p.m. by Howard to Cohen and Davidson, with the subject line "Confirmation," Howard stated, "Thank you both for chatting with me earlier. Confirming agreement on: - Executed agreement, hand-signed by Keith's client and returned via overnight or same-day FedEx to Michael, - Change of agreement to reflect the correct LLC, - Transfer of funds on Thursday AM to be held in escrow until receipt of agreement." After receiving that email, at approximately 8:27 p.m., Cohen asked Howard by text message, "Can you and David [Pecker] give me a call." Howard promptly responded: "David is not around I think. I'll call." At 8:28 p.m., Howard called Cohen and they spoke for three minutes.

22. On October 27, 2016, Cohen made a payment to Davidson of $130,000—with the funds intended for Clifford—for the purpose of securing her ongoing silence with respect to the allegations that she had an extramarital affair with Trump. Specifically, based on my review of toll records, bank records, and information obtained pursuant to the iCloud Warrant and Cohen Email Warrants, I have learned the following:

a. At 9:47 a.m., Cohen sent Davidson an email, stating: "Keith, kindly confirm that the wire received today, October 27, 2016 shall be held by you in your attorney's trust account until such time as directed for release by me, in writing. Additionally, please ensure that all paperwork contains the correct name of Essential Consultants LLC. I thank you in advance for your assistance and look forward to hearing from you later."

18

b.  At approximately 10:01 a.m., according to records provided by First Republic Bank, Cohen completed paperwork to wire $130,000 from the Essential Consultants Account—which had been funded a day prior from Cohen's home equity line of credit—to the attorney client trust account at City National Bank that Davidson had specified in the wiring instructions he sent to Cohen. The wire transfer was made shortly thereafter.

c.  At 10:02 a.m., Davidson responded to Cohen's email from 9:47 a.m., stating: "I confirm that I will work in good faith & that no funds shall be disbursed unless & until the plaintiff personally signs all necessary settlement paperwork, (the form of which will match the prior agreement). The settlement docs will name the correct corporation, (Essential Consultants LLC). Plaintiff's signature will be notarized and returned to you via FedEx. Only after you receive FedEx will I disburse. Fair?"

d.  At 10:50 a.m., First Republic Employee-1 sent Cohen an email confirming that the payment had been sent and providing him with the wire number.

23.     On October 28, 2016, and the days that followed, Cohen finalized the transaction with Davidson. Specifically, based on my review of toll records, information obtained pursuant to the iCloud Warrant, public sources, and bank records, I know the following:

a.  On October 28, 2016, at 11:48 a.m., Cohen spoke to Trump for approximately five minutes. Beginning at 1:21 p.m., Cohen attempted a series of phone calls to Davidson, Pecker, and Howard throughout the day, although it appears he may only have connected with Howard.

b.  Later that day, at approximately 7:01 p.m., Davidson stated to Cohen by text message that "all is AOK. I should have signed, notarized docs on Monday. You should have them on Tuesday." Cohen thanked him and said "I hope we are good." Davidson responded, "I assure you. We are very good." Howard also texted Cohen at 7:08 p.m., "Keith [Davidson] says

19

we are good." Cohen then responded "OK" to Howard and "Excellent" to Davidson. At approximately 10:30 p.m., Cohen spoke to Hicks for three minutes.

c. On October 31, 2016, Cohen called Howard at 8:22 p.m. and they spoke for over three minutes. At 8:32 p.m., Cohen received text messages from both Howard and Davidson. Howard said: "You'll have paperwork tomorrow says KD." Davidson said: "We are AOK. You will be receiving a package tomorrow." Cohen responded "Thank you" to Howard and "Thanks Keith. Will call you then" to Davidson. From my involvement in this investigation, I believe Davidson was referring to a signed nondisclosure agreement when he told Cohen that he would receive a package.

d. Based on my review of court filings that became public in 2018, I have learned that on or about October 28, 2016, "EC, LLC and/or David Dennison" entered into a "confidential settlement agreement and mutual release" with "Peggy Peterson," pursuant to which "Peterson" agreed not to disclose certain "confidential information pertaining to [Dennison]" in exchange for $130,000. The agreement provided that "EC, LLC" would wire the funds to "Peterson's" attorney, who would then transfer funds to "Peterson." Cohen signed the agreement on behalf of "EC, LLC." The agreement stated that the address for "EC, LLC," which was later referred to in the agreement as "Essential Consultants, LLC," was Cohen's residence.

e. Consistent with the "confidential settlement agreement and mutual release," on or about November 1, 2016, Davidson transferred $96,645 from his attorney client trust account at City National Bank to a bank account in Clifford's name. The wire had the annotation "net settlement." On the same day, at approximately 9:48 a.m. Davidson sent Cohen a text message with a picture of a FedEx delivery confirmation, stating that at approximately 9:09 a.m. a package shipped by Davidson the previous day had arrived for Cohen at his Trump Organization

address. On the same day, at approximately 6:14 p.m., Davidson sent Cohen an email with an audio file attached and said "Give this a lesson [sic] and then call me." The audio attachment was titled "Stormy.mp3" and was a five-minute recording of Davidson interviewing Clifford about recent public allegations made by an adult film star named Jessica Drake regarding her alleged past affair with Trump; in the recording, Clifford explained the reasons she believed that Drake was not credible. Less than an hour later, at approximately 7:05 p.m., Cohen called Trump, but it appears that they did not connect. Cohen then called a telephone number belonging to Kellyanne Conway, who at the time was Trump's campaign manager. They did not connect. At approximately 7:44 p.m., however, Cohen received a return call from Conway, which lasted for approximately six minutes.

24.     On November 4, 2016, just three days after the Clifford transaction was completed and just four days before the presidential election, the *Wall Street Journal* published an article alleging that the *National Enquirer* had "Shielded Donald Trump" from allegations by *Playboy* model Karen McDougal that she and Trump had an affair. The article alleged that AMI had agreed to pay McDougal to bury her story. McDougal, like Clifford, had been represented by Davidson. Based on my review of toll records, information obtained pursuant to the Cohen Email Warrants and iCloud Warrant, and public sources, it appears that Cohen spoke frequently to Davidson, Howard, Pecker, and Hicks around the time of this article's publication—just days before Election Day—about the importance of preventing the McDougal and Clifford stories from gaining national traction. Specifically, I have learned the following:

a.     Between 4:30 and 8:00 p.m. on November 4, Cohen communicated several times with Howard, Pecker and Davidson. For instance, at approximately 4:49 p.m., Cohen sent Howard a text message with a screenshot of an email forwarded to him by another Trump Organization

21

lawyer. The forwarded email was from a Wall Street Journal reporter, and asked for comment from Trump and/or the campaign on the story. Cohen also spoke with Hicks several times, including shortly before and/or after calls with Pecker, Howard and Davidson. Indeed, at approximately 7:33 p.m., using two different cellphones subscribed to him, Cohen appears to have been talking to Davidson and Hicks at the same time.

b. At approximately 8:51 p.m., Cohen sent Howard a message, stating: "She's being really difficult with giving Keith a statement. Basically went into hiding and unreachable." One minute later, Howard responded: "I'll ask him again. We just need her to disappear." Cohen responded, "She definitely disappeared but refuses to give a statement and Keith cannot push her." At approximately 8:55 p.m., Howard responded to Cohen's text: "Let's let the dust settle. We don't want to push her over the edge. She's on side at present and we have a solid position and a plausible position that she is rightfully employed as a columnist." Based on my involvement in this investigation, I believe Cohen and Howard were referring to Karen McDougal when they were discussing "she" and "her." Additionally, I believe Howard's statement that "we have . . . a plausible position that she is rightfully employed as a columnist" was a reference to the fact that AMI had given McDougal payments for her role as a purported columnist for the company.

c. At approximately 8:58 p.m. on November 4, 2016, Howard attempted to reassure Cohen about the effect of the forthcoming *Wall Street Journal* article, texting, "I think it'll be ok pal. I think it'll fade into the distance." Cohen responded, "He's pissed." Howard wrote back, "I'm pissed! You're pissed. Pecker is pissed. Keith is pissed. Not much we can do." Based on my involvement in this investigation, I believe Cohen was referring to Trump when he stated "he's pissed." Cohen asked Howard at approximately 9:00 p.m. how the *Wall Street Journal* could

publish its article if "everyone denies." Howard responded, "Because there is the payment from AMI. It looks suspicious at best."

     d.  At approximately 9:03 p.m., Hicks called Cohen and they spoke for two minutes. At approximately 9:11 p.m., Cohen called Howard and spoke to him for five minutes. At approximately 9:15 p.m., Hicks called Cohen and they spoke for nearly seven minutes. Again, Cohen used different phones for these two calls, such that he appears to have been on both calls for about a minute of overlap. At approximately 9:32 p.m., Cohen texted Pecker, "The boss just tried calling you. Are you free?" A minute later, Cohen texted Howard, "Is there a way to find David quickly?"

     e.  At approximately 9:50 p.m., the *Wall Street Journal* article was published online. Howard and Hicks both sent web links for the article to Cohen. Over the next half hour, Cohen and Howard exchanged several text messages commenting on how the story came across. The next morning on November 5, 2016, at approximately 7:35 a.m., Cohen texted Hicks, "So far I see only 6 stories. Getting little to no traction." Hicks responded, "Same. Keep praying!! It's working!" Cohen wrote back, "Even CNN not talking about it. No one believes it and if necessary, I have a statement by Storm denying everything and contradicting the other porn stars statement. I wouldn't use it now or even discuss with him as no one is talking about this or cares!" Based on my involvement in this investigation, I believe Cohen was referring to the above-referenced recorded audio statement by Clifford that he obtained from Davidson, and was stating that such a statement could be used to influence potential negative media relating to Trump, but was unnecessary at that time. Based on a text message from Hicks to Cohen, I believe that later that morning, Pecker spoke to Trump.

25.     On or about November 8, 2016, Trump won the election for President of the United States.

26.     On or about January 12, 2018, the *Wall Street Journal* first reported that Cohen arranged a payment to Clifford.  On or about January 22, 2018, Common Cause, a government watchdog group, filed a complaint with the Federal Election Commission, alleging that Cohen had violated campaign finance laws by making the payment to Clifford.  Based on my review public sources following that report, as well as emails obtained pursuant to the Cohen Email Warrants, I have learned the following:

a.     On or about January 23, 2018, the day after Common Cause filed its complaint, Cohen began emailing himself drafts of statements describing his payment to Clifford. Additionally, on January 23, 2018, Cohen emailed the following draft of that statement to an individual who appears to be writing a book on Cohen's behalf:

> In October 2016, I was contacted by counsel for Ms. Clifford stating that news outlets, including ABC news, were pursuing the 2011 story of an alleged affair between Mr. Trump and Ms. Clifford.  Despite the fact that both parties had already denied the allegation, as Mr. Trump's longtime special counsel and protector, I took it upon myself to match the offer and *keep the story from breaking*.  I knew the allegation to be false, but *I am also a realist who understands that just because something is false doesn't mean that it doesn't create harm and damage. I could not allow this to occur.*  I negotiated a non-disclosure agreement with Ms. Clifford's counsel and tendered the funds. I did this through my Delaware LLC and transferred personal funds to cover the agreement. I was not reimbursed any monies from Mr. Trump, the Trump Organization, any third party or the Presidential campaign. At no point did I ever advise Mr. Trump of my communications or actions regarding this agreement. As outlandish and unusual as this may appear, the Trumps have been like family to me for over a decade.  It's what you do for family.

(Emphasis added.)  Based on my involvement in this investigation, I believe that the above email is an acknowledgement that the allegation of the affair had existed for some time ("...*the 2011 story*..."), but that Cohen was motivated to "keep the story from breaking" again in October 2016.

24

b.  On or about February 13, 2018, Cohen said in a statement to *The New York Times*
that "Neither the Trump Organization nor the Trump campaign was a party to the transaction with
Ms. Clifford. The payment to Ms. Clifford was lawful, and was not a campaign contribution or a
campaign expenditure by anyone." Cohen declined to answer follow-up questions including
whether Trump had been aware of the payment, why Cohen made the payment, or whether similar
payments had been made to other people.

c.  On or about February 14, 2018, Cohen was asked by *The New York Times* whether
Trump had reimbursed him, whether he and Trump had made any arrangement at the time of the
payment, or whether he had made payments to other women. Cohen stated in response, "I can't
get into any of that." On or about February 14, 2018, Cohen also stated to *The Washington Post*
that: "In a private transaction in 2016, I used my own personal funds to facilitate a payment of
$130,000 to Ms. Stephanie Clifford. Neither the Trump Organization nor the Trump campaign
was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either
directly or indirectly."

d.  On or about March 9, 2018, Cohen stated to *ABC News* that "the funds were taken
from my home equity line and transferred internally to my LLC account in the same bank."

27.    Accordingly, for the foregoing reasons, there is probable cause to believe that
Cohen committed violations of the Subject Offense by making an in-kind contribution to Trump
or the Trump campaign in the form of a $130,000 payment to Clifford on the eve of the election.
Indeed, while he denies having given an unlawful contribution, in his own statements Cohen has
admitted that he paid $130,000 of his "personal funds" to Clifford and that the payment occurred
less than two weeks before the election, as Trump was facing negative media allegations about
his behavior toward women, even though allegations of an affair between Trump and Clifford

existed since 2011. In addition, the communication records set forth above make evident that Cohen communicated with members of the Trump campaign about his negotiation with Clifford's attorney and the need to preclude Clifford from making a statement that would have reflected negatively on the candidate in advance of the forthcoming election.

28.     Therefore, there is probable cause to believe that a search of the Subject Devices will reveal evidence, fruit and instrumentalities of the Subject Offenses, including the following:

a.     Evidence relating to payments to Stephanie Clifford, Karen McDougal, or their agents or legal representatives, including any nondisclosure agreements and related documents, and any communications related to such agreements.

b.     Evidence of communications involving Michael Cohen, Donald Trump and/or agents or associates of the Trump Campaign about Stephanie Clifford or Karen McDougal, or payments to Stephanie Clifford or Karen McDougal.

c.     Evidence of communications with American Media, Inc., David Pecker, and/or Dylan Howard about Donald Trump, the Trump Campaign, Stephanie Clifford, and/or Karen McDougal.

d.     Evidence relating to Cohen's role in the Trump Campaign, and coordination or consultation with the Trump Campaign.

e.     Evidence of communications with Donald Trump and/or agents or associates of the Trump Campaign about the *Access Hollywood* tape.

f.     Evidence relating to Cohen's knowledge of the campaign finance laws, campaign contribution reporting requirements, and campaign contribution limits.

g.     Evidence indicating Michael Cohen's intent with respect to the Subject Offense, including whether the payment to Clifford and any similar payments were made to influence the Presidential election.

### III.  Procedures for Searching ESI

#### A.  Review of ESI

29.     Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, interpreters, and outside vendors or technical experts under government control) will review the ESI contained on the Subject Devices for information responsive to the warrant.

30.     In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offense, including but not limited to undertaking a cursory inspection of all emails, texts or files contained on the Subject Devices. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and

consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

## IV.   Conclusion and Ancillary Provisions

31.     Based on the foregoing, I respectfully request the court to issue a warrant to seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.

32.     In light of the confidential nature of the continuing investigation, and for the reasons more fully set forth in the Accompanying Affidavit, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise.

Special Agent, USAO

Sworn to before me on
7th day of April, 2018

HON. HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE

## Attachment A

### I. Devices to be Searched

The devices to be searched (the "Subject Devices") are described as:

a.       *Subject Device-1*: A black and red USB drive with a white label that says "Tracking #: 180208140208."

b.       *Subject Device-2*:   A silver DVD with a white label that reads "Cohen – 2018.03.07."

c.       *Subject Device-3*: A white DVD labelled "2-28-18 Cohen SW Returns – Google and 1&1."

### II. Review of ESI on the Subject Devices

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, interpreters, and outside vendors or technical experts under government control) are authorized to review the ESI contained on the Subject Devices for evidence, fruits, and instrumentalities of one or more violations of 52 U.S.C. §§ 30116(a)(1)(A) and 30109(d)(1)(A)(1) (illegal campaign contributions) (the "Subject Offense"), as listed below:

a.   Evidence relating to payments to Stephanie Clifford, Karen McDougal, or their agents or legal representatives, including any nondisclosure agreements and related documents, and any communications related to such agreements.

b.   Evidence of communications involving Michael Cohen, Donald Trump and/or agents or associates of the Trump Campaign about Stephanie Clifford or Karen McDougal, or payments to Stephanie Clifford or Karen McDougal.

c.   Evidence of communications with American Media, Inc., David Pecker, and/or Dylan Howard about Donald Trump, the Trump Campaign, Stephanie Clifford, and/or Karen McDougal.

d.   Evidence relating to Cohen's role in the Trump Campaign, and coordination or consultation with the Trump Campaign.

e.   Evidence of communications with Donald Trump and/or agents or associates of the Trump Campaign about the *Access Hollywood* tape.

f.   Evidence relating to Cohen's knowledge of the campaign finance laws, campaign contribution reporting requirements, and campaign contribution limits.

g.   Evidence indicating Michael Cohen's intent with respect to the Subject Offense, including whether the payment to Clifford and any similar payments were made to influence the Presidential election.

# Exhibit A

AO 93  (Rev. 11/13) Search and Seizure Warrant

**FILED**

JUL 2 1 2017

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case: 1:17-mj-00503 |
| *(Briefly describe the property to be searched* | ) | Assigned To : Howell, Beryl A. |
| *or identify the person by name and address)* | ) | Assign. Date : 7/18/2017 |
| INFORMATION ASSOCIATED WITH THE EMAIL | ) | Description: Search and Seizure Warrant |
| ACCOUNT ██████@GMAIL.COM | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ August 1, 2017 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Beryl A. Howell _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  *July 18, 2017  4:30 pm*          *Beryl A. Howell*
                                                          *Judge's signature*

City and state:    Washington, DC                    Hon. Beryl A. Howell, Chief U.S. District Judge
                                                          *Printed name and title*

AO 93 (Rev 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>17-mj-00503 | Date and time warrant executed:<br>7/18/2017 @ 8:18pm | Copy of warrant and inventory left with:<br>Google Legal Investigators Support |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized:<br><br>Digital Files: Letter 1150069<br>    1150069-20170719-1<br>    See Attachment A for list of<br>    Hash Values for Production Files | | |

FILED

JUL 21 2017

Clerk, U.S. District and
Bankruptcy Courts

---

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 7/20/2017

_Printed name and title_

**ATTACHMENT A**

This warrant applies to information associated with the Google Mail Account

███████@gmail.com that is stored at premises owned, maintained, controlled, or operated by

Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

1

**ATTACHMENT B**

## I.   Information to be disclosed by Google

To the extent that the information described in Attachment A is within the possession, custody, or control of the Google (hereinafter "the Provider"), regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.   The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.   The types of service utilized;

d.   All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.   All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided

during registration, all other user names associated with the account, all account names associated with the subscriber, methods of connecting;

f.   All search history or web history;

g.   All records indicating the services available to subscribers of the accounts;

h.   All usernames associated with or sharing a login IP address or browser cookie with the accounts;

i.   All cookies, including third-party cookies, associated with the user;

j.   All records that are associated with the machine cookies associated with the user; and

k.   All telephone or instrument numbers associated with the Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1014 (false statements to a financial institution) and 18 U.S.C. § 1956 (money laundering), as well as 18 U.S.C. § 951 (acting as an unregistered foreign agent) and the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611 *et seq.*, involving Michael Dean Cohen and occurring on or after January 1, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.   Communications, records, documents, and other files involving Essential Consultants, LLC;

b.   Communications, records, documents, and other files involving Bo and Abe Realty, LLC;

c.   Communications, records, documents, and other files that false representations to a financial institution with relation to intended the purpose of an account or loan at that financial institution; the nature of any business or entity associated with an

3

account a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

d.     Records of any funds or benefits received by or offered to Michael Dean Cohen by, or on behalf of, any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

e.     Communications, records, documents, and other files that reveal efforts by Michael Dean Cohen to conduct activities on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

f.     Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

g.     Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

h.     The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

i.     The identity of any person(s)—including records that help reveal the whereabouts of the person(s)—who communicated with the account about any matters relating to activities conducted by Michael Dean Cohen on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals.

# Exhibit B

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE EMAIL<br>ACCOUNT ▮▮▮▮▮@GMAIL.COM | )<br>)<br>)<br>)<br>)<br>) |

Case: 1:17–mj–00855
Assigned To : Chief Judge Howell, Beryl A.
Assign. Date : 11/13/2017
Description:  Search and Seizure Warrant

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____November 20, 2017_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Beryl A. Howell_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   *11/13/2017 at 4:50 PM*   _____*Beryl A. Howell*_____
*Judge's signature*

City and state:    Washington, DC _____   Hon. Beryl A. Howell, Chief U.S. District Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

This warrant applies to information associated with the Google Mail Account ██████@gmail.com that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

1

## ATTACHMENT B

### I.    Information to be disclosed by Google

To the extent that the information described in Attachment A is within the possession, custody, or control of the Google (hereinafter "the Provider"), regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    The types of service utilized;

d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, all other user names associated with the account, all account names associated with the subscriber, methods of connecting;

2

f.  All search history or web history;

g.  All records indicating the services available to subscribers of the accounts;

h.  All usernames associated with or sharing a login IP address or browser cookie with the accounts;

i.  All cookies, including third-party cookies, associated with the user;

j.  All records that are associated with the machine cookies associated with the user; and

k.  All telephone or instrument numbers associated with the Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

**II.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1014 (false statements to a financial institution), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1956 (money laundering), as well as 18 U.S.C. § 951 (acting as an unregistered foreign agent) and the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611 *et seq.*, involving Michael Dean Cohen and occurring on or after **June 1, 2015**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Communications, records, documents, and other files involving Essential Consultants, LLC;

b.  Communications, records, documents, and other files that false representations to a financial institution with relation to intended the purpose of an account or loan at that financial institution; the nature of any business or entity associated with an account a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

3

c.  Records of any funds or benefits received by or offered to Michael Dean Cohen by, or on behalf of, any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

d.  Communications, records, documents, and other files that reveal efforts by Michael Dean Cohen to conduct activities on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

e.  Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

f.  Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

g.  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

h.  The identity of any person(s)—including records that help reveal the whereabouts of the person(s)—who communicated with the account about any matters relating to activities conducted by Michael Dean Cohen on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals.

## III.  Review Protocols

Review of the items described in Attachment A and Attachment B shall be conducted pursuant to established procedures designed to collect evidence in a manner consistent with professional responsibility requirements concerning the maintenance of attorney-client and other operative privileges. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

4

# Exhibit C

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE ACCOUNT<br>██████████ WHICH IS STORED AT THE<br>PREMISES OF 1&1 INTERNET, INC. | )<br>)<br>)<br>)<br>)<br>) | Case: 1:17−mj−00854<br>Assigned To : Chief Judge Howell, Beryl A.<br>Assign. Date : 11/13/2017<br>Description:  Search and Seizure Warrant |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

        See Attachment A.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

        See Attachment B.

        **YOU ARE COMMANDED** to execute this warrant on or before      November 20, 2017      *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ Hon. Beryl A. Howell _____ .
                                                        *(United States Magistrate Judge)*

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
        ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     11/13/2017 at 4:45 PM     *Beryl A. Howell*
                                                        *Judge's signature*

City and state:      Washington, DC     Hon. Beryl A. Howell, Chief U.S. District Judge
                                                        *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

This warrant applies to information associated with the email ███████████ that is stored at premises owned, maintained, controlled, or operated by 1&1 Internet, Inc. ("1&1"), an electronic communication and/or remote computing service provider headquartered in Sunnyvale, California.

## ATTACHMENT B

I.  **Information to be disclosed by 1&1**

To the extent that the information described in Attachment A is within the possession, custody, or control of the 1&1 (hereinafter "the Provider"), regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.  The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.  The types of service utilized;

d.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.  All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, all other user names associated with the account, all account names associated with the subscriber, methods of connecting;

f.    All search history or web history;

g.    All records indicating the services available to subscribers of the accounts;

h.    All usernames associated with or sharing a login IP address or browser cookie with the accounts;

i.    All cookies, including third-party cookies, associated with the user;

j.    All records that are associated with the machine cookies associated with the user; and

k.    All telephone or instrument numbers associated with the Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1014 (false statements to a financial institution), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1956 (money laundering), as well as 18 U.S.C. § 951 (acting as an unregistered foreign agent) and the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611 *et seq.*, involving Michael Dean Cohen, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Communications, records, documents, and other files involving Essential Consultants, LLC;

b.    Communications, records, documents, and other files that false representations to a financial institution with relation to intended the purpose of an account or loan at that financial institution; the nature of any business or entity associated with an account a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

3

c.     Records of any funds or benefits received by or offered to Michael Dean Cohen by, or on behalf of, any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

d.     Communications, records, documents, and other files that reveal efforts by Michael Dean Cohen to conduct activities on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

e.     Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

f.     Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

g.     The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

h.     The identity of any person(s)—including records that help reveal the whereabouts of the person(s)—who communicated with the account about any matters relating to activities conducted by Michael Dean Cohen on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals.

### III.    Review Protocols

Review of the items described in Attachment A and Attachment B shall be conducted pursuant to established procedures designed to collect evidence in a manner consistent with professional responsibility requirements concerning the maintenance of attorney-client and other operative privileges. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

4

# Exhibit D

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE APPLE ID<br>███████████ @GMAIL.COM THAT IS STORED AT<br>PREMISES CONTROLLED BY APPLE, INC. | )<br>)<br>)<br>)<br>)<br>) | Case: 17-mj-00570<br>Assigned To : Howell, Beryl A.<br>Assign. Date : 8/7/2017<br>Description: Search and Seizure Warrant |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____August 21, 2017_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Beryl A. Howell_____ .
*(United States Magistrate Judge)*

. ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   *August 7, 2017 2:35 PM*          *Beryl A. Howell*
                                                                                     *Judge's signature*

City and state:      Washington, DC          Hon. Beryl A. Howell, Chief U.S. District Judge
                                                                      *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____          _____
                                        *Executing officer's signature*

                                        _____
                                        *Printed name and title*

## ATTACHMENT A

This   warrant   applies   to   information   associated   with   the   Apple   ID

█████████@gmail.com that is stored at premises owned, maintained, controlled, or operated

by Apple, Inc. ("Apple"), a company headquartered at 1 Infinite Loop, Cupertino, CA 95014.

## ATTACHMENT B

I.     **Information to be disclosed by Apple, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, Inc. (hereinafter "the Provider"), regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

    b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

    c.    The types of service utilized;

    d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

    e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided

during registration, all other user names associated with the account, all account names associated with the subscriber, methods of connecting;

f.   All search history or web history;

g.   All records indicating the services available to subscribers of the accounts;

h.   All usernames associated with or sharing a login IP address or browser cookie with the accounts;

i.   All cookies, including third-party cookies, associated with the user;

j.   All records that are associated with the machine cookies associated with the user; and

k.   All telephone or instrument numbers associated with the Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1014 (false statements to a financial institution), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1956 (money laundering), 18 U.S.C. § 951 (acting as an unregistered foreign agent), and 22 U.S.C. § 611 *et seq.* (Foreign Agents Registration Act), involving Michael Dean Cohen and occurring on or after January 1, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.   Communications, records, documents, and other files involving Essential Consultants, LLC;

b.   Communications, records, documents, and other files involving Bo and Abe Realty, LLC;

c.   Communications, records, documents, and other files that false representations to a financial institution with relation to intended the purpose of an account or loan at that financial institution; the nature of any business or entity associated with an

account a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

d.  Records of any funds or benefits received by or offered to Michael Dean Cohen by, or on behalf of, any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

e.  Communications, records, documents, and other files that reveal efforts by Michael Dean Cohen to conduct activities on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;

f.  Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

g.  Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

h.  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

i.  The identity of any person(s)—including records that help reveal the whereabouts of the person(s)—who communicated with the account about any matters relating to activities conducted by Michael Dean Cohen on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals.

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of a Warrant for All
Content and Other Information
Associated with the Email Accounts
▮▮▮▮▮@gmail.com,
▮▮▮▮▮@gmail.com, and
▮▮▮▮▮▮▮▮ Maintained at
Premises Controlled by Google, Inc.,
USAO Reference No. 2018R00127

18 MAG   169 6

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO:    Google, Inc. ("Provider")

United States Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation (collectively, the "Investigative Agencies")

**1. Warrant.** Upon an affidavit of Special Agent ▮▮▮▮▮▮ of the United States Attorney's Office for the Southern District of New York, and pursuant to the provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) and § 2703(c)(1)(A), and the relevant provisions of Federal Rule of Criminal Procedure 41, the Court hereby finds there is probable cause to believe the email accounts ▮▮▮▮@gmail.com, ▮▮▮@gmail.com, and ▮▮▮▮▮▮▮, maintained at premises controlled by Google, Inc., contain evidence, fruits, and instrumentalities of crime, all as specified in Attachments A and B hereto. Accordingly, the Provider is hereby directed to provide to the Investigative Agencies, within 7 days of the date of service of this Warrant and Order, the records specified in Section II of Attachments A and B hereto, for subsequent review by law enforcement personnel as authorized in Sections III and IV of Attachments A and B. The Government is required to serve a copy of this Warrant and Order on the Provider within 7 days of the date of issuance. The Warrant and Order may be served via

electronic transmission or any other means through which the Provider is capable of accepting service.

**2. Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence or flight from prosecution, or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of 180 days from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

**3. Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

Feb 28, 2018
_____
Date Issued

10:44 am
_____
Time Issued

_____
HONORABLE GABRIEL W. GORENSTEIN
Chief United States Magistrate Judge
Southern District of New York

2

02.28.2018

Email Search Attachment A

I.     **Subject Account and Execution of Warrant**

This warrant is directed to Google, Inc. (the "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, and applies to all content and other information within the Provider's possession, custody, or control associated with the email account _____@gmail.com (the "Subject Account") for the time period referenced below.

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below. Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

II.    **Information to be Produced by the Provider**

To the extent within the Provider's possession, custody, or control, the Provider is directed to produce the following information associated with the Subject Account:

a. *Email content.* All emails sent to or from, stored in draft form in, or otherwise associated with the Subject Account, including all message content, attachments, and header information (specifically including the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email) limited to items sent, received, or created between November 14, 2017 and the date of this warrant, inclusive.

b. *Address book information.* All address book, contact list, or similar information associated with the Subject Account.

c. *Subscriber and payment information.* All subscriber and payment information regarding the Subject Account, including but not limited to name, username, address, telephone

number, alternate email addresses, registration IP address, account creation date, account status, length of service, types of services utilized, means and source of payment, and payment history.

d. *Transactional records.* All transactional records associated with the Subject Account, including any IP logs or other records of session times and durations, limited to items sent, received, or created between December 1, 2014 and the date of this warrant, inclusive.

e. *Customer correspondence.* All correspondence with the subscriber or others associated with the Subject Account, including complaints, inquiries, or other contacts with support services and records of actions taken, limited to items sent, received, or created between December 1, 2014 and the date of this warrant, inclusive.

f. *Search History.* All search history and/or web history associated with the Subject Account, limited to items sent, received, or created between December 1, 2014 and the date of this warrant, inclusive.

g. *Associated content.* All Google Docs, files maintained on Google Drive, and instant messages or Gchats associated with the Subject Account, limited to items sent, received, or created between December 1, 2014 and the date of this warrant, inclusive.

h. *Preserved or backup records.* Any preserved or backup copies of any of the foregoing categories of records, whether created in response to a preservation request issued pursuant to 18 U.S.C. § 2703(f) or otherwise.

## III.    Review of Information by the Government

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 371 (conspiracy to commit offense or to defraud

the United States), 1005 (false bank entries); 1014 (false statements to a financial institution), 1343 (wire fraud), and 1344 (bank fraud), including the following:

a. Communications, records, documents, and other files necessary to establish the identity of the person(s) who created or used the Subject Account;

b. Communications, records, documents, and other files involving Sterling National Bank, Melrose Credit Union, and/or taxi medallions;

c. Communications, records, documents, and other files involving a plan, proposal, or agreement for Michael D. Cohen and/or entities associated with him to transfer any interest in taxi medallions, and any associated debts or liabilities, to others, including to ████████ and/or entities associated with him;

d. Communications, records, documents, and other files involving Essential Consultants, LLC or Michael D. Cohen & Associates, including those which indicate the nature and purpose of payments made to or from Essential Consultants or Michael D. Cohen & Associates;

e. Communications, records, documents, and other files necessary to establish the identity of any person(s) – including records that reveal the whereabouts of the person(s) – who communicated with the Subject Account about any matters relating to Essential Consultants, LLC, or about any plan or proposal or agreement for Michael D. Cohen and/or entities associated with him to transfer any interest in taxi medallions, and any associated debts or liabilities, to others, including to ████████ and/or entities associated with him;

f. Communications between the Subject Account and Jeffrey Getzel relating to Michael D. Cohen's bank accounts, taxes, debts, and/or finances;

g. Communications, records, documents, and other files reflecting false representations to a financial institution with relation to the intended purpose of an account or loan at that financial

02.28.2018

institution; the nature of any business or entity associated with an account at a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

h.  Evidence indicating how and when the Subject Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner; and

i.  Evidence indicating the Subject Account owner's intent as it relates to the Subject Offenses under investigation.

**IV. Review Protocols**

Review of the items described in this Attachment shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

02.28.2018

**Email Search Attachment B**

**I.     Subject Account and Execution of Warrant**

This warrant is directed to Google, Inc. (the "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, and applies to all content and other information within the Provider's possession, custody, or control associated with the email accounts ████ gmail.com and ████████ (the "Subject Accounts") for the time period between October 1, 2016 and the date of this warrant, inclusive.

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below. Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II.    Information to be Produced by the Provider**

To the extent within the Provider's possession, custody, or control, the Provider is directed to produce the following information associated with the Subject Accounts:

a.  *Email content.*  All emails sent to or from, stored in draft form in, or otherwise associated with the Subject Accounts, including all message content, attachments, and header information (specifically including the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email).

b.  *Address book information.*  All address book, contact list, or similar information associated with the Subject Accounts.

c.  *Subscriber and payment information.*  All subscriber and payment information regarding the Subject Accounts, including but not limited to name, username, address, telephone

number, alternate email addresses, registration IP address, account creation date, account status, length of service, types of services utilized, means and source of payment, and payment history.

    d.   *Transactional records.* All transactional records associated with the Subject Accounts, including any IP logs or other records of session times and durations.

    e.   *Customer correspondence.* All correspondence with the subscriber or others associated with the Subject Accounts, including complaints, inquiries, or other contacts with support services and records of actions taken.

    f.   *Search History.* All search history and/or web history associated with the Subject Accounts.

    g.   *Associated content.* All Google Docs, files maintained on Google Drive, and instant messages or Gchats associated with the Subject Accounts.

    h.   *Preserved or backup records.* Any preserved or backup copies of any of the foregoing categories of records, whether created in response to a preservation request issued pursuant to 18 U.S.C. § 2703(f) or otherwise.

**III.**   **Review of Information by the Government**

    Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 371 (conspiracy to commit offense or to defraud the United States), 1005 (false bank entries); 1014 (false statements to a financial institution), 1343 (wire fraud), and 1344 (bank fraud), including the following:

    a.   Communications, records, documents, and other files necessary to establish the identity of the person(s) who created or used the Subject Accounts;

2

b.   Communications, records, documents, and other files involving a plan or proposal or agreement for Michael D. Cohen and/or entities associated with him to transfer any interest in taxi medallions, and any associated debts or liabilities, to ▮▮▮▮▮▮▮ and/or entities associated with him;

c.   Communications, records, documents, and other files necessary to establish the identity of any person(s) -- including records that reveal the whereabouts of the person(s) -- who communicated with the Subject Accounts about any matters relating to any plan or proposal or agreement for Michael D. Cohen and/or entities associated with him to transfer any interest in taxi medallions, and any associated debts or liabilities, to ▮▮▮▮▮▮▮ and/or entities associated with him;

d.   Communications between the Subject Accounts and others, including employees or representatives of Sterling National Bank, Melrose Credit Union, or other financial institution(s), regarding Michael D. Cohen's finances;

e.   Communications, records, documents, and other files reflecting false representations to a financial institution with relation to the intended purpose of an account or loan at that financial institution; the nature of any business or entity associated with an account at a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

f.   Evidence indicating how and when the Subject Accounts was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

g.   Evidence indicating the Subject Accounts owners' intent as it relates to the Subject Offenses under investigation.

## IV. Review Protocols

Review of the items described in this Attachment shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

# Exhibit F

18 MAG   169 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of a Warrant for All
Content and Other Information
Associated with the Email Account
███████ ████████ maintained at
Premises Controlled by 1 & 1 Internet,
Inc., USAO Reference No.
2018R00127

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO:     1 & 1 Internet, Inc. ("Provider")

United States Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation (collectively, the "Investigative Agencies")

**1. Warrant.** Upon an affidavit of Special Agent ████████████ of the United States Attorney's Office for the Southern District of New York, and pursuant to the provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) and § 2703(c)(1)(A), and the relevant provisions of Federal Rule of Criminal Procedure 41, the Court hereby finds there is probable cause to believe the email account ████████ █████████ maintained at premises controlled by 1 & 1 Internet, Inc., contains evidence, fruits, and instrumentalities of crime, all as specified in Attachment D hereto. Accordingly, the Provider is hereby directed to provide to the Investigative Agencies, within 7 days of the date of service of this Warrant and Order, the records specified in Section II of Attachment D hereto, for subsequent review by law enforcement personnel as authorized in Sections III and IV of Attachment D. The Government is required to serve a copy of this Warrant and Order on the Provider within 14 days of the date of issuance. The Warrant and Order may be served via electronic transmission or any other means through which the Provider is capable of accepting service.

**2. Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence or flight from prosecution, or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of 180 days from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

**3. Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

Feb 28, 2018
Date Issued

10:45 a.m.
Time Issued

HONORABLE GABRIEL W. GORENSTEIN
Chief United States Magistrate Judge
Southern District of New York

02.28.2018

2

**Email Search Attachment D**

**I.      Subject Account and Execution of Warrant**

This warrant is directed to 1 & 1 Internet, Inc. (the "Provider"), headquartered at 701 Lee Road, Suite 300, Chesterbrook, Pennsylvania 19087, and applies to all content and other information within the Provider's possession, custody, or control associated with the email account ▌▌▌▌▌▌▌ (the "Subject Account") for the time period between November 14, 2017 and the date of this warrant, inclusive.

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below.  Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II.     Information to be Produced by the Provider**

To the extent within the Provider's possession, custody, or control, the Provider is directed to produce the following information associated with the Subject Account:

a. *Email content.*  All emails sent to or from, stored in draft form in, or otherwise associated with the Subject Account, including all message content, attachments, and header information (specifically including the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email).

b. *Address book information.*  All address book, contact list, or similar information associated with the Subject Account.

c. *Subscriber and payment information.*  All subscriber and payment information regarding the Subject Account, including but not limited to name, username, address, telephone

number, alternate email addresses, registration IP address, account creation date, account status, length of service, types of services utilized, means and source of payment, and payment history.

d. *Transactional records.* All transactional records associated with the Subject Account, including any IP logs or other records of session times and durations.

e. *Customer correspondence.* All correspondence with the subscriber or others associated with the Subject Account, including complaints, inquiries, or other contacts with support services and records of actions taken.

f. *Preserved or backup records.* Any preserved or backup copies of any of the foregoing categories of records, whether created in response to a preservation request issued pursuant to 18 U.S.C. § 2703(f) or otherwise.

**III.   Review of Information by the Government**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 371 (conspiracy to commit offense or to defraud the United States), 1005 (false bank entries); 1014 (false statements to a financial institution), 1343 (wire fraud), and 1344 (bank fraud), including the following:

a. Communications, records, documents, and other files necessary to establish the identity of the person(s) who created or used the Subject Account;

b. Communications, records, documents, and other files involving Sterling National Bank, Melrose Credit Union, and/or taxi medallions;

c. Communications, records, documents, and other files involving a plan, proposal, or agreement for Michael D. Cohen and/or entities associated with him to transfer any interest in taxi

2

medallions, and any associated debts or liabilities, to others, including to ▓▓▓▓▓ and/or entities associated with him;

     d.   Communications, records, documents, and other files involving Essential Consultants, LLC or Michael D. Cohen & Associates, including those which indicate the nature and purpose of payments made to or from Essential Consultants or Michael D. Cohen & Associates;

     e.   The identity of any person(s) – including records that reveal the whereabouts of the person(s) – who communicated with the Subject Account about any matters relating to Essential Consultants, LLC, or about any plan or proposal or agreement for Michael D. Cohen and/or entities associated with him to transfer any interest in taxi medallions, and any associated debts or liabilities, to others, including to ▓▓▓▓▓ and/or entities associated with him;

     f.   Communications between the Subject Account and Jeffrey Getzel relating to Michael D. Cohen's bank accounts, taxes, debts, and/or finances;

     g.   Communications, records, documents, and other files reflecting false representations to a financial institution with relation to the intended purpose of an account or loan at that financial institution; the nature of any business or entity associated with an account at a financial institution; the source of funds flowing into an account; or the purpose or nature of any financial transactions involving that financial institution;

     h.   Evidence indicating how and when the Subject Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner; and

     i.   Evidence indicating the Subject Account owner's intent as it relates to the Subject Offenses under investigation.

02.28.2018

## IV. Review Protocols

Review of the items described in this Attachment shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

02.28.2018