LAWFARE

FEDERAL LAW ENFORCEMENT

# Indicting a President Is Not Foreclosed: The Complex History

By **Walter Dellinger**    Monday, June 18, 2018, 7:00 AM

Can a sitting president be indicted? Often, in answering this question, commentators point to Office of Legal Counsel (OLC) opinions answering in the contrary. To whatever extent the writer agrees or disagrees with the opinions' conclusion, the government's position on the matter is usually presented as a long-standing and clear "no."

The reality is more complicated. The United States has addressed this question six times in both internal memos and briefs filed in litigation. And a review of these documents shows that it is far from clear what criminal prosecution steps are (or should be) precluded—and that there is no "longstanding policy" against indictment of the president. Consider the 1973 OLC memo stating that a sitting president should not be indicted. Far from being authoritative, it was essentially repudiated within months by the Justice Department in the United States' filing in the Supreme Court in *United States v. Nixon*.

Likewise, the most recent opinion—an OLC memo written in 2000—includes brief statements that a sitting president should not be indicted even if all further proceedings are postponed. But far from being definitive, this is a matter that could be reconsidered by the department. Moreover, of course, OLC opinions are not binding on state prosecutors (though state charges could raise federalism questions as well). The complex history of criminal proceedings against presidents and vice presidents suggests that these issues are not foreclosed.

Perhaps the most important point that emerges from a review of all the opinions is this: only once has the United States addressed the question of whether a president can be an unindicted co-conspirator. The conclusion was an unequivocal yes. Richard Nixon was so named in the Watergate indictment, and that inclusion was sustained by Judge John Sirica and defended by the United States in *United States v. Nixon*. (The Supreme Court did not resolve the question.) No department opinion or filing has ever contradicted that position. The fact that it is permissible to name a sitting president as unindicted co-conspirator, moreover, tends significantly to undermine the only argument against indicting a sitting president.

(I should note that the U.S. Attorney's manual cautions against naming persons as unindicted co-conspirators "[i]n the absence of some significant justification." Here, of course, the "significant justification" would exist if a sitting president is the only individual in the country who is immune from indictment. Thus, for that individual alone, the usual better course of indictment would not be available.)

Here I want to review each of the half-dozen times that the executive branch has addressed the question of whether a president can be prosecuted, indicted or included as an unindicted co-conspirator. The opinions that conclude that a president cannot be indicted deal mainly with the question of whether a president can be put on trial. While the discussions of the option of indicting but postponing trial are more than a mere afterthought, that option was not the focus of the opinions and received scant analysis.

The relevant briefs and memoranda are:

1. The Sept. 24, 1973, OLC Dixon memo
2. The Oct. 5, 1973, brief for the United States in *In re Agnew*
3. The Feb. 12, 1974, memorandum to Independent Counsel Leon Jaworski
4. The June 21, 1974, reply brief for the United States in *U.S. v. Nixon*
5. The May 13, 1998, memorandum to Independent Counsel Kenneth Starr
6. The Oct. 16, 2000, OLC memorandum

These documents are worth review not only for their value as precedent but also for the extensive argumentation they contain on the pertinent issues.

**1. The Sept. 24, 1973, OLC Dixon Memo.** This memo, signed by the head of the Office of Legal Counsel, Robert Dixon, is a procedural anomaly: It was not addressed to any official and may not have been made public at the time. It was not mentioned in the submission by the solicitor general two weeks later in the *In re Agnew* case.

Dixon noted that there was no express provision of the Constitution conferring any immunity upon the president. The "proper approach" he wrote, "is to find the proper balance between the normal functions of the courts and the special responsibilities … of the Presidency." He concluded that "criminal proceedings against a President in office should not go beyond a point where they could result in so serious a

physical interference with the President's performance of his official duties that it would amount to an incapacitation." Thus, "a necessity to defend a criminal trial and to attend court ... would interfere with the President's unique official duties."

Finally, Dixon addressed "a possibility not yet mentioned": that a sitting president could be indicted but further proceedings could be deferred until he was no longer in office. Unlike placing a president on trial, this would not result in a "physical interference" with the president's duties. Nevertheless, the memo concludes that this step should not be taken because of the reputational damage to the president: "The spectacle of an indicted President still trying to serve as Chief Executive boggles the imagination."

Of particular interest is the memo's consideration of whether criminal proceedings against a vice president are precluded. OLC found this to be a difficult question before concluding that a grand jury could indict the vice president. The memo notes that Vice President Spiro Agnew was said to be part of a conspiracy and that it would be difficult to have a proper indictment of co-conspirators without including the vice president (a point also true of a conspiracy involving a president). Moreover,

Another circumstance counselling prompt presentation of evidence to the grand jury is that the statute of limitations is about to bar prosecution of the alleged offenders with respect to some or all of the offenses. The problem presented by the statute of limitations would be avoided by an indictment within the statutorily specified period.

(The issue of statute of limitations arises as well in cases involving a president.)

The Dixon memo concludes that "[a]fter indictment, the question of whether the Government should ... delay prosecution until the expiration of the Vice President's duties involves questions of trial strategy" beyond OLC's expertise.

The conclusion that the sitting president should not be indicted was not necessarily a categorical constitutional-judgment conclusion but seems, rather, to be a balance of policy considerations. That, it appears, is how it was read by the office of Special Prosecutor Leon Jaworski—as I will describe below.

**2. The Oct. 5, 1973, Brief for the United States in *In re Agnew*.** Lawyers for Vice President Spiro T. Agnew argued that if a president could not be indicted while in office, that same immunity should apply to a serving vice president. The vice president should have the same immunity as the president, they wrote, because he "must maintain himself in a state of constant preparation to replace the president." And as the official with responsibility for initiating the 25th Amendment removal process, he must "continuously ... monitor the ability of the President" to discharge his duties. These responsibilities, they argued, were incompatible with being a defendant in a criminal case. Agnew's civil action, moreover, sought to enjoin the grand jury from even "conducting any investigation" into the allegations against Agnew as well as precluding "issuing any indictment."

The United States, in a response filed in U.S. District Court for the District of Columbia by Solicitor General Robert Bork, opposed any immunity from criminal process for a vice president. The solicitor general did inform the court, however, that if the grand jury were to return an indictment, the Department of Justice "will hold the proceedings in abeyance for a reasonable time, if the Vice President consents to a delay, in order to offer the House of Representatives an opportunity to consider the desirability of impeachment proceedings." What was critical, according to Bork, was this: "The issuance of an indictment ... would in the meantime toll the statute of limitations and preserve the matter for subsequent judicial resolution." The memorandum concluded that while the demands of the presidency preclude subjecting the chief executive to criminal process, no such importance attaches to the office of the vice president.

Because Agnew pleaded no contest to an indictment in a negotiated agreement, there was no resolution of his claim of immunity from indictment. Although the charges had been serious (Agnew was said to have accepted containers of cash in the White House), he was allowed to plead to a single count and serve no prison time, essentially in exchange for his resignation from the vice presidency—an outcome that may not have been possible had Agnew not been susceptible to indictment.

**3. The Feb. 12, 1974, Memorandum to Independent Counsel Leon Jaworski.** The attorneys in the Office of Watergate Special Prosecutor Leon Jaworski concluded that there was no legal bar to indicting a sitting president and that the office should recommend either that the grand jury indict President Nixon or that criminal charges against him be incorporated into a formal grand jury presentment. Jaworski concluded that the best course, with impeachment proceedings in the offing, was to include Nixon as an unindicted co-conspirator in the indictment of the other Watergate defendants.

The memo notes at the outset that

As we understand it, the conclusions regarding indictment of an incumbent President reached by the Department of Justice, the U.S. Attorney's office, and this office, are all consistent: there is nothing in the language or legislative history of the Constitution that bars indictment of a sitting president, but there are a number of 'policy' factors that weigh heavily against it.

H-2

The memo finds those policy considerations offset by competing considerations.

For us or the grand jury to shirk from an appropriate expression of our honest assessment of the evidence of the President's guilt would not only be a departure from our responsibilities but a dangerous precedent damaging to the rule of law.

In deciding whether to indict a sitting president, they asserted, any considerations of a political nature should be left to Congress, which can decide if it wishes to immunize a president from prosecution. The special prosecutor's office did conclude, however, that the quantum of proof required to support an indictment of a sitting president should be quite high: "the evidence of the President's guilt should be direct, clear, and compelling and ... admit of no misinterpretation."

Some of Jaworski's team thought that President Nixon should be indicted. Others favored proceeding by a "presentment," which would set out "in detail the most important evidence and the Grand Jury's conclusion that the President has violated certain criminal statutes and would have been indicted were he not President." The office concluded that "there appears to be no question of the propriety or legality of such a course...." The memo noted that having the grand jury actually name the specific indictable crimes for which there was clear evidence of guilt was important: "This fundamental conclusion [of criminal guilt] should not be allowed to be lost in a recitation of facts or sources of evidence that omits the basic judgment involved or leaves it open to public (and Congressional) speculation and debate."

The memo also noted that the president could be named an unindicted co-conspirator in the indictment of the other conspirators, the course ultimately chosen by Jaworski.

**4. The June 21, 1974, Reply Brief for the United States in *US v. Nixon*.** The U.S. District Court for the District of Columbia refused Nixon's motion to expunge his inclusion as an unindicted co-conspirator in the Watergate indictment. Nixon asked the Supreme Court to reverse that decision. His lawyers argued that since a sitting president could not be indicted, neither should he be implicated as an unindicted co-conspirator.

In this filing on behalf of the United States, Jaworski rejected Nixon's premise that a president could not be indicted, stating that "It is an open and substantial question whether an incumbent President is subject to indictment." The brief argues for indictability before concluding that it is unnecessary to decide that question in order to resolve whether to permit his inclusion as an unindicted co-conspirator.

(Despite the filing's origin in Jaworski's office, it would be a mistake to argue that this filing was not in some sense the position of the Department of Justice. Leon Jaworski and his attorneys were officers of the Department of Justice assigned by the attorney general the responsibility for advancing the legal positions of the United States, including in representations to the U.S. Supreme Court.)

The Jaworski filing notes how critical it is to identify the president as one of the criminal accused: "the identification of each co-conspirator — regardless of station — is a prerequisite to making his declarations in furtherance of the conspiracy admissible against the other conspirators."

Although the brief concludes that "it is by no means clear that a President is immune from indictment" during his term, the special prosecutor chose not to indict the sitting president on the basis of "practical arguments." Those arguments, however,

cannot fairly be stretched to confer immunity on the President from being identified as an *unindicted* co-conspirator, when it is necessary to do so in connection with criminal proceedings against persons unquestionably liable to indictment.

Naming the president as an unindicted co-conspirator was necessary for the grand jury to return a "true bill," Jaworski argued, and "required here to outline the full range of the alleged conspiracy." There exists, moreover, "a legitimate public purpose in reporting the fact that serious criminal charges against a government official have been made."

The mere fact that an official has a personal immunity from prosecution does not bar the prosecution from alleging and proving his complicity as part of a case against persons who have no such immunity.

It would not be fair "to the defendants ... to blunt the sweep of the evidence artificially by excluding one person, however prominent and important, while identifying all others." The Jaworski filing acknowledged that naming an incumbent president as an unindicted criminal co-conspirator may cause the public anguish of a cloud over the presidency. But "in the public marketplace of ideas" there is little reason to fear that malicious charges against a president "will receive credit they do not deserve."

Notably, the United States made no mention of the OLC Dixon memo in its filing in the Supreme Court other than by implication: The filing says that the Department of Justice agrees that the Constitution does not bar indictment of a president, perhaps reading the Dixon OLC memo as merely a statement of policy. What is striking is that the 2000 OLC memo treats the 1973 Dixon memo as an important precedent

4-3

but not the more substantial, more careful subsequent filing in the U.S. Supreme Court.

Case 1:18-cr-00602-WHP   Document 51-8   Filed 12/11/19   Page 4 of 5

The Supreme Court did not answer Nixon's request to expunge his inclusion as an unindicted co-conspirator. Finding it unnecessary to answer that question in order to rule against the president on the subpoena of the nine tapes, the court dismissed Nixon's companion cert petition as improvidently granted. Nixon's resignation and pardon rendered the remaining questions moot.

**5. The May 13, 1998, Memorandum to Independent Counsel Starr.** This memorandum was written by professor Ronald Rotunda in response to an inquiry from Independent Counsel Kenneth Starr. Rotunda concluded that

In the circumstances of this case, President Clinton is subject to indictment and criminal prosecution, although it may be the case that he could not be imprisoned ... until after he leaves that office.

The Rotunda memo is the least persuasive of the opinions in question. First, its status is unclear. It says that the question was posed by Starr, but it does not note whether Rotunda, who may have been a paid consultant, had any official governmental role. There is no indication that the opinion underwent any review by other officials.

The opinion seems to claim too much, in my view, by suggesting that a president could be not only indicted but actually put on trial while serving. (Rotunda does not even rule out imprisoning a president.) There is an informal and partisan flavor to the memo that makes it less serious than the other arguments put forth by the department.

Rotunda argues that the then-existing Independent Counsel Act contemplated that a president could be investigated and questioned, so therefore it must follow that he can be indicted. This is the obverse of the current argument made by some that since a president can't be indicted, he can't be questioned. Both positions are based on category mistake. No one has ever seriously suggested that a president can never be indicted. The only debate is whether any indictment of a president must be *postponed* until he is no longer in office. Since any president can indisputably be indicted when no longer in office, there is no permanent immunity that would obviate questioning of a president.

**6. The 2000 OLC Memorandum.** This opinion of the Office of Legal Counsel, signed by Assistant Attorney General Randolph Moss, is a thorough and thoughtful analysis of whether a president can be indicted and prosecuted while serving in office. It appears to have originally been drafted during the time of the Starr investigation of President Bill Clinton. The case against putting a president on trial is fully convincing to me. What is not so clear, however, is whether there is sound basis for withholding an indictment of a president even if any trial proceedings must await the end of his term. Like the Dixon memo, the 2000 opinion set out several obstacles to trying a president. None of those reasons, save one, applies to naming a president in an indictment.

The 2000 opinion gives so little thought to the possibility of indicting-and-postponing that it gives only one reason why such a course should be precluded: the idea that including the president in an indictment would cast a "cloud" over the presidency. The notion that reputational harm alone should preclude a normal part of the system of justice seems incompatible with the Supreme Court's decision in *Clinton v. Jones*, in which the court set such a high bar for any presidential immunity from the normal process of litigation that not a single justice found that actually undergoing a civil trial was precluded.

It is hard to square mere reputational harm as a basis for precluding indictment when the government seems to have established that a president can be listed as an unindicted co-conspirator. The reputational difference between being named as an unindicted co-conspirator in a criminal indictment and being listed as one of those indicted seems relatively small. The essential difference: naming one as indicted prevents the statute of limitations from expiring. Why, for a small reputational difference, would one choose to make being in the White House a basis for permanently precluding (by operation of the statute of limitations) an otherwise warranted criminal prosecution?

One aspect of the 2000 memo is worth noting. It appears to have been drafted with the case against President Clinton in mind. That was essentially a one-defendant matter. Thus, the opinion does not grapple with the significant obstacles to trying a multi-defendant criminal conspiracy while excluding from the charging document any reference to one of the conspirators—and perhaps a key conspirator.

For an extended argument that the terms of Robert Mueller's appointment and practice of the Office of Legal Counsel do not require him to conform to the 2000 OLC position opinion rejecting the option of indicting and postponing, see Andrew Crespo's analysis. In addition to Crespo's analysis, I would add that the 2000 memo gives only scant attention to the possible course I believe deserves most consideration when a sitting president has been found to have committed a crime: indict-and-postpone. While I would not call the few mentions of that possibility "mere dicta," I believe the scant discussion of the point should not preclude an independent judgment by subsequent officials. The notion that such a course would cause reputational harm—though it would not physically interfere with the president's attention to his duties—seems to be a point of policy, not constitutional law. For a helpful analysis of this question, see Bob Bauer's posting.

In any event, OLC has never suggested that a president cannot be an unindicted co-conspirator.

4-4

## Conclusions

The history of positions taken by the executive branch of the United States on the indictment of a sitting president is more varied and complex than is generally assumed. For that reason, whether or not a president can be indicted or named as an unindicted co-conspirator should not be considered a settled question.

I am convinced that putting a president on trial would be inconsistent with the Article II responsibilities of the modern presidency. Others—Larry Tribe included—are less certain and also point to the 25th Amendment, arguing that if being on trial or incarcerated precluded a president from being able to perform his duties, the 25th Amendment provides a theoretical if impractical avenue for the vice president to take over in successive 21-day increments during that time. I see the point, but I believe that approach could too easily set aside the determination of the electorate. People vote for a president, not a vice president. It would be no small matter, for example, to have had Sarah Palin step in for John McCain.

If a guilty president is not to be indicted, he or she should in any event be included in the charging instrument as an unindicted co-conspirator, an option that has been expressly defended by the United States before the Supreme Court. And once it has been established that a president can be an unindicted co-conspirator, the case for categorically precluding indictment of a president is significantly weakened.

I have argued previously that there should be no categorical bar to the indictment of a sitting president. *Clinton v. Jones* establishes that a president has a substantial burden of showing that normal processes of litigation are incompatible with his duties—and while that showing can be made for an actual criminal trial, it is difficult to make such a showing for naming a president in a grand jury indictment as long as trial proceedings are postponed until a president is no longer in office.

What, then, is the argument against indictment? Perhaps it casts a greater cloud. On the other hand, the most important reason for issuing an indictment, rather than merely naming the president as unindicted co-conspirator, is to prevent the statute of limitations from expiring. This, in my view, is an important consideration. Indeed, a president might seek reelection just to make sure the limitations period runs on all his or her crimes while he or she remains in office.

But concluding that a president *can* be indicted does not mean that he or she *should* be indicted, even if that would be called for by the normal operation of the criminal process. Awaiting action by the House of Representatives may in some circumstances be the prudent course—though one might question whether it is appropriate to weigh that institutional factor variously depending on how realistic it is that a particular House and Senate would take their responsibilities seriously.

Some offenses might be seen as better suited for initial consideration by Congress in the impeachment process. Whether an exercise of executive authority—such as discharging an official or pardoning someone for an allegedly corrupt reason—should be grounds for sanction might be seen as requiring an essential political judgment, perhaps best suited for elected officials to make. On the other hand, the regular processes of the federal criminal system might be a better forum for an alleged complex multi-defendant financial conspiracy including money laundering, bank fraud, tax evasion, etc. In short, context matters for a special counsel or other prosecutor considering how best to proceed.

There is good reason to have the judiciary decide the question of whether an indictment of a sitting president is categorically barred. This is especially the case now that the decision process would in significant part be based upon an interpretation of a Supreme Court decision, *Clinton v. Jones*. If a prosecutor included the president in an indictment, the president would no doubt move to have his or her name stricken. The first question a judge should ask is, *"If I strike the president from the indictment, will he or she agree to waive any defense of the statute of limitations that may expire while he or she is in office?"* If the president refuses to waive the statute of limitations, that itself would be a good reason for permitting the indictment, while postponing any further proceedings.

It is impossible to predict whether a prosecutor would ask the attorney general for authorization to indict—or to make the president an unindicted co-conspirator—without knowing the degree and nature of any criminality that might be uncovered, and how including or not including the president in an indictment would affect the trial of other conspirators. But the possibility of including the president in an indictment is not categorically foreclosed.

**Topics:** Federal Law Enforcement, Executive Power

**Tags:** Department of Justice, Office of Legal Counsel (OLC)

H.5