UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

UNITED STATES OF AMERICA,

Plaintiff,                                    **AFFIRMATION**

-v.-                                                **18-cr-602 (WHP)**
                                                      **18-cr-850 (WHP)**

MICHAEL COHEN,

Defendant.

———————————————————————X

ROGER BENNET ADLER, being an attorney-at-law duly licensed to practice law in the State of New York, and a member of the bar of this Court, makes the following allegations under the penalty of perjury:

1. Your Affirmant is post-judgment counsel for the Defendant MICHAEL COHEN, and as such am familiar with the facts and circumstances surrounding this case. This affirmation is submitted in support of a post-judgment motion for a sentence reduction to a term of one year and a day, or, in the alternative, a sentence modification limited to the manner and venue where the Court's previously imposed three year sentence (see exhibit "A") should be served going forward, pursuant to the power conferred on the court by Federal Rules of Criminal Procedure Rule 35(b).

## BACKGROUND

2. Defendant will, Your Affirmant notes, consistent with the "First Step Act," and having surrendered on May 6, 2019, have served virtually one-third of the

previously imposed jail component of his sentence* by the time this motion is decided (with credit for "good time" earned at the Otisville Satellite Camp), and seeks a modest reduction of his 36 month term of imprisonment to one year and one day, or, in the alternative if the court declines to reduce his sentence, to a sentence modification to serve the durationally final less than two years of the Court's previously imposed sentence on "home confinement," with no attendant cost to the Bureau of Prisons (B.O.P.), and under the post-release strict supervision of the Court's Probation Department.

3. Defendant MICHAEL COHEN was sentenced as a "criminal history category 1" first offender, convicted of non-violent crimes. He pleaded guilty to, and "accepted responsibility" for, conduct charged in an "Information" (exhibit "B") charging *inter alia* (a) criminal tax violations, (b) bank fraud, and (c) campaign finance violation.

4. Upon information and belief, Defendant Cohen has fully paid the resulting tax obligation encompassed in the five tax counts, received no money (nor caused the lender to experience any loss) on the "line of credit," and acted as the conduit for payments to "Stormy Daniels" to secure "confidentiality agreements" on behalf of Donald J. Trump to silence salacious intimate encounters allegedly involving women with whom President Trump was involved.

5. The two "campaign finance" counts tacked on the back end of the "Information" thus potentially benefited a political candidate (Donald J. Trump) who was then a Presidential Republican Party hopeful, and not surprisingly sought to quietly

---

* Under the "First Step Act" (F.S.A.), Defendant is eligible for discharge from the "Otisville Satellite Camp" prior to the previous transfer to community confinement at the end of a judicially imposed sentence.

address his perceived transgression (and intimate conduct) contrary to the marriage vows which Trump took for the third time.

6. Although each political campaign routinely designates a "campaign treasurer*" designated to (a) manage campaign contributions, and (b) to compute, maintain records, and (c) file all required reports with the "Federal Election Commission" (F.E.C.). In this case, upon information and belief, this role was handled by Donald McGhann, Esq. an experienced Washington, D.C. based lawyer. Defendant COHEN is, Your Affirmant notes, not alleged to have been a Trump Campaign official, or employee charged with the legal responsibility to report not a monetary donation, but what Acting United States Attorney Robert Kuzami viewed to be an "in kind contribution," whose Trump Campaign Treasurer omission of them was perceived to be willfully violative of the federal election law.

7. The Government hewed to this view even as President Trump's decision, to make monetary amends with porn star "Stormy Daniels," was focused as much (if not more) on preserving his marriage from a potentially devastating charge of serial philandering/ Penal Law adultery (Penal Law Section 255.17) than targeted campaign strategizing.

8. Notwithstanding Defendant Cohen's plea, the Government's ardor to fully clean the proverbial Trump Organization "Augean stables," and, in turn, hold the "Trump Campaign" Treasurer Donald McGhann, Ms. Hope Hicks (whom Trump consulted concerning the "Stormy Daniels" payments), a Trump Campaign media leader, or the "Trump Organization" (which effectively funded the subject settlement

---

* Upon information and belief, Donald McGhann, Esq. (who later became White House counsel) was the Trump Campaign's designated campaign Treasurer. He was not, however, criminally charged with filing inaccurate campaign reports with the F.E.C.

payments [and presumably falsified "Trump Organization" business records]) and presumably unlawfully claimed them as a "legal expense" [for tax purposes] has apparently waned.

9. Under Attorney General William Barr, the President now appears to finally have secured placement of what political pundit Joe Scarborough of "Morning Joe" refers to as his proverbial "Roy Cohn, Esq." – a lawyer bent to his will, serving his whims and needs, and committed to protect his "legal back" (see New York Times December 9, 2019 article "Right Rejoices as Barr Assails Liberal Culture," by Jeremy N. Peters and Katie Benner [exhibit "I"] and the Saturday, December 7th, 2019 New York Times editorial "Merry Christmas, Mr. Trump" [exhibit "J"]). Jeff Sessions has been "kicked to the curb," and politically banished from Main Justice.

10. This characterization manifested itself when Attorney General Barr reportedly knowingly misstated the Special Counsel Robert Mueller Report (a/k/a "spinned") and continued his Trumpian subservience by serving on, and supervising investigations over which he has been criticized for having disabling "conflicts of interest." More recently, Mr. Barr announced that the Justice Department's annual 2019 holiday party would be held at Washington, D.C.'s Pennsylvania Avenue "Trump Hotel."

11. Closer to home, the Southern District United States Attorney initially eschewed any discernible interest in evaluating proffered credible information proffered by Michael Monico, Esq. to Assistant United States Attorney McKay, and Your Affirmant. An "attorneys' proffer" was telephonically conducted on November 1, 2019,

after participating in some four or more sessions[*] with Michael Cohen's then defense counsel Guy Petrillo, Esq., conducted at the Petrillo law firm, here in Manhattan.

12. Those who practice in the City's federal courts well recognize that the Government has crafted literally hundreds of cases predicated on cooperator (a/k/a/ "snitch") testimony, from those who have injured, killed, pillaged, and defrauded countless victims. Indeed, the summation argument "birds of a feather flock together" is frequently made to address the credibility of Government witnesses who have lived "less than exemplary" lives.

13. Whether the S.D.N.Y.'s use of the late Leroy "Nicky" Barnes to identify and prosecute less culpable underlings, or using the murderous sociopath Sammy "the Bull" Gravano to convict John Gotti, there is no discernible existing "morals clause" to become a Government cooperator. Indeed, as this motion is being drafted, Suffolk County District Attorney Thomas Spota, and a key aide, are on trial in Central Islip U.S. District Court. The Government has used witnesses who are self-confessed criminals, abused drugs and alcohol, committed adultery, and required psychiatric counseling. There clearly is no "morals clause" to cooperate for the Government.

14. To listen to Michael Cohen at a proffer session is to open a door to a veritable Trump Organization "snake pit," which will, of necessity, require "Main Justice," to paraphrase then Mayor David Dinkins' criticism in a memorable New York Post headline – "Dave, do something" (referring to the Crown Heights riots after Norman Rosenbaum's brother was killed by Lemrick Nelson).

---

[*] If Cohen was as testimonially flawed as Assistant U.S. Attorney McKay has suggested, it is puzzling why the Government held such a large number of proffer sessions with Cohen. We perceive the characterization as palpably "pretextual" in nature.

15. This is clearly why the Government, which proffers potential cooperators of all colors, ethnicities, creeds, and often lengthy criminal histories ("rap sheets"), was reluctant, until November 1st, 2019, to entertain an "attorneys' proffer" detailing Defendant's possible cooperation. It took over two weeks, and multiple emails to elicit a response (exhibit "C").

16. It is against a background of both undisguised, and fully documented (and palpable), governmental disinterest, that this F.R.C.P. Rule 35(b) application is filed[*], and against a powerful and deeply felt assertion that the Government failed to appropriately treat Michael Cohen in "good faith," and so applying existing case law in this and other circuits, this case should address Defendant Cohen's sentence modification plea, and exercise its Rule 35(b) sentencing review discretion to temper the previously imposed three year sentence.

17. Defendant Michael Cohen is, Your Affirmant notes, in active litigation with the "Trump Organization" in Supreme Court, New York County (*Cohen v. Trump Organization*, Index # 651377/19), in a case assigned to Justice Cohen, predicated upon the Trump Organization's refusal to reimburse Michael Cohen for his legal fees and expenses arising from representing the "Trump Organization." The President's wholly owned and privately held company is thus in active litigation against a potential cooperator. Mindful that Donald J. Trump did not place his assets in a "blind trust," the litigation unfairly colors Defendant's credibility assessment.

---

[*] The Government appears to require a duly executed "cooperation agreement" as a condition precedent to a Rule 35(b) application. However, the Rule itself imposes no such requirement.

## THE "FIRST STEP ACT"

18. Under the so-called "First Step Act," a first offender can, through both work for the B.O.P., and earned program credits, earn some fifteen days monthly "jail time credit" off a judicially imposed sentence.

19. Thus, for an inmate serving a 36 month term of imprisonment, Defendant Cohen would likely serve one more year prior to being transferred to "community confinement." Upon information and belief, he has been a model prisoner.

20. The sought "takeaway" from this is to suggest that a modification of the existing sentence is not a dramatic outcome. It will, however, permit Defendant to begin the first tentative steps down the proverbial "road to redemption," and save significant B.O.P. costs of incarceration.

21. Defendant has paid a heavy price. He has also cooperated significantly. His cooperation should not be overlooked (or diminished), as America's consciousness is raised about precisely who occupies the "Oval Office," and the disruptive consequences.

## THE LAW – A HEARING IS REQUIRED

22. To paraphrase Emile Zola's "J'Accuse," Affirmant accuses the Barr "Department of Justice" of not engaging with Defendant in good faith. This lack of good faith, and disabling conflict of interest, Your Affirmant contends, should not be a barrier to recognizing Defendant's substantial assistance to, and cooperation with, the Government (which includes the Congress and Special Counsel).

23. Existing case law in this, and sister circuit courts, recognizes that there are both times, and instances when the Government is unwilling (or unable) to serve as the Rule 35(b) movant, but that such moving sponsorship is neither fatally

disqualifying. or jurisdictionally lacking. A governmental failure (or refusal) judicially found to be in "bad faith" excuses Judicial Department forbearance.

24. As applied here, we submit that at a hearing the facts will support a finding that the Government's decision made by Acting United States Attorney Audrey Strauss to effectively "sit on its hands," and bolt the door to One St. Andrews Plaza supports consideration of an application which, we note, seeks a modest reduction of Defendant Cohen's sentence, and a limited modification of where it is to be served.

25. Attorney General Barr, since his assumption of office as President Donald J. Trump's chief law enforcement officer, has been marked by controversy, criticism, and conflicts of interest. His succession following the President's vicious hectoring departure of former Senator Jeff Sessions (R – Alabama) as Attorney General has been marked by partisan loyalty to the President who appointed him (see exhibits "I" and "J").

26. To this subject, Emily Bazelon's October 27th, 2019 New York Times article "Who is Bill Barr?" addresses a Justice Department whose "ethical G.P.S." has, from the perspective of many, been distinctly dysfunctional for some time. That bias and departmental dysfunctionality goes beyond the type of agency decisions cognizable as the consequences of elections ("elections have consequences...").

27. Defendant Michael Cohen finds himself literally at the veritable head of Donald J. Trump's "Enemies List," along with former F.B.I. agents Lisa Page[*] and Peter Strzok, and F.B.I. Chief James Comey. Attorney General Barr's base has denounced cooperators as "rats," and praised convicted felons like Paul Manafort as

_____

[*] The President's recent political rally mocking Ms. Page in the most graphic and hurtful terms cries out for a Joseph Welch "Have you no shame" retort.

"standup" stalwarts. Sentence commutations and/or pardons surely lurk on the President's post-2020 Election Day "to do" list, unless Congressional impeachment leads to Senate removal.

28. Defendant Cohen has not been sponsored for Rule 35 relief, we submit, because his testimony leads directly down a pathway to possible indictment of (a) the President, (b) the Trump Organization, (c) the Trump Foundation, (d) Trump family members, and (e) Trump Organization enablers.

29. To follow up Michael Cohen's seven separate proffer sessions is to "open a door" which only the "Office of Legal Counsel" (O.L.C.) memo can endeavor to close. Indeed, we know from the oral argument in *Trump v. Vance*, ___ F. 3d ___ [2nd Cir. 2019], that the President's counsel, William Consovoy, Esq., has contended that the O.L.C. memo extends to the preclusion of (a) criminal investigations, (b) complaints, and (c) indictments.

30. Having "hammered" a first offender with Information counts which held Cohen criminally liable for the <u>Trump Campaign's</u> failure to report settlement check payments to "Stormy Daniels," the Justice Department's position is no deep mystery. Any adult alive during the Watergate scandal has, Your Affirmant respectfully submits, "seen this movie before." Attorney General Barr was not appointed Attorney General to turn on the appointing authority.

31. The Justice Department was replaced by Special Counsel Robert Mueller, and now has powerful proof previewed in Congressional testimony (exhibit "D") of systemic (and knowing) Trumpian wrongdoing, laced with obstructive behavior.

32. The "separation of powers" limits the options available to the Court. That being noted, it is appropriate to quantify and evaluate Cohen's cooperation and

acknowledge it as Rule 35(b) commands. That evaluation, Your Affirmant submits, should follow burden shifting "Batson" principles used to evaluate the alleged improper use of peremptory challenges. A proper objection triggers a Government response, and, if "pretextual," is sustained (see *Batson v. Kentucky*, 476 U.S. 79, 96-98 [1986] accord. *Snyder v. Louisiana*, 552 U.S. 472, 477-79 [2008]; see also *United States v. Martinez*, 621 F. 3d 101, 108-11 [2nd Cir. 2010]).

33. The defense perception that the Justice Department has aligned itself firmly behind the President as its "fallback position" buttressed by independent judicially reviewable actions. We discuss them *seriatim*:

(a) <u>Congressman Cummings' July 19, 2019 Letter</u>

34. On July 19, 2019, the late Congressman Elijah E. Cummings, Chair of the House "Oversight Committee" wrote a detailed letter to Acting Southern District United States Attorney Audrey Strauss seeking clarification of the Southern District's decision to close its investigations of serious allegations that (a) the President, (b) his company, (c) his campaign committee, and (d) various and sundry accomplices and enablers, had knowingly violated the law (see exhibit "E").

35. The late Baltimore Congressman Elijah Cummings also sought to clarify if the Southern District's decision was, as with Special Counsel Robert Mueller's office, controlled by the Office of Legal Counsel (O.L.C.) memo reflecting a Justice Department opinion that a sitting U.S. President precluded indicting a sitting President.

36. The Congressman noted that Defendant Michael Cohen had not acted alone in funneling what many viewed as "hush money" payments to "Stormy Daniels" to prevent an Election Day scandal. These payments involved Trump Organization moneys masked as a legal fee to Defendant Cohen, and false and misleading created business

(see e.g. Penal Law Section 175.05, 175.10) conspiracy and tax perjury if the payments were included[*] as appropriately deductible "business expenses."

37. Acting United States Attorney Audrey Strauss, upon information and belief, has simply ignored (a/k/a "stonewalled") the House "Oversight Committee" letter. Upon information and belief, the Southern District has no future intent to reply to Congress. Ms. Strauss did not respond to Your Affirmant's December 5th, 2019 letter (exhibit "L") seeking a meeting.

38. In addition, it is public information that "Main Justice" authorized testimonial immunity and non-prosecution agreement to Trump Organization Chief Financial Officer (C.F.O.) Alan Weiselberg, and National Enquirer publisher David Pecker. Upon information and belief, the Southern District provided those in the Main Justice Criminal Division with a detailed written "proffer statement" identifying of whom Weiselberg and Pecker would provide testimony sufficient to displace their respective requisite invocation of their privilege against self-incrimination (Fifth Amendment).

39. Against this backdrop, we respectfully submit, and would undertake to call assistant United States Attorneys to a hearing to produce the immunity/non-prosecution requests for these witnesses for the Court's inspection and *in camera* review.

40. These immunity requests will address if the investigation was closed to protect the President and people close to him from possible criminal prosecution, and mindful none are covered by the O.L.C. memo protecting the President.

---

[*] President Trump moved to block the District Attorney of New York County when the tax returns were subpoenaed by a Grand Jury from Mazars, the tax preparer for the President and his company.

41. So partisan has the "Barr Justice Department" been that when President Trump essentially moved (without legal precedent) to enjoin his accountant "Mazars'" firm response, to an appropriate (and presumptively appropriate) New York County Grand Jury subpoena, Attorney General Barr moved before Senior U.S. District Judge Victor Marrero in court, for judicial leave to intervene, and then proceeded to file briefs opposing New York County District Attorney Cyrus Vance in both the U.S. District Court, Southern District of New York, and the Second Circuit Court of Appeals, even though President Trump was not called upon to: (a) produce any evidence, (b) respond to interrogatories, or (c) appear before a Grand Jury, and testify responsively, even though the documents were (a) all prepared in New York County, (b) were present in New York County, (c) were routine tax returns on file with the Internal Revenue Service (I.R.S.), and (d) enjoyed no Constitutional privilege.

42. More recently, on Monday, the Justice Department appeared in the United States Court of Appeals for the District of Columbia Circuit in *Blumenthal v. Trump*, involving allegations of a violation of the Constitution's prohibition on emoluments received by the President. On Thursday, the Justice Department will appear before the United States Court of Appeals for the Fourth Circuit sitting *en banc* and defend President Trump there (see New York Law Journal December 10th, 2019 page 2, column 1-6 "It's Emoluments Week in U.S. Appeals Court: Meet the Lawyers Arguing," by Scarcella and Robson).

43. Earlier this week, Michael Horowitz released an Inspector General Report. Attorney General William Barr has joined President Trump in escalating their attacks on the F.B.I., as detailed in the New York Times article "Trump and Barr Escalate Attacks Against the F.B.I., by Katie Benner and Eileen Sullivan (New York

Times, page 1). These criticisms, in turn, have generated professional criticism from predecessor Justice Department officials in a December 11th, 2019 page 2 New York Law Journal article (exhibit "M").

44. Against this backdrop, we recognize that the Government is not mandated to file a Rule 35 (*United States v. DeFeo*, 327 Fed. Appdx. 257 [2nd Cir. 2009] *cert.* den. 556 U.S. 1016 [court recognizes that an alleged credible basis to perceive the Government acted in "bad faith" triggers a hearing], c.f. *United States v. Vangundy*, 289 F.R.D. 498 [S.D. Cal. 2013][movant who provided testimony viewed not credible and, accordingly, not entitled to Rule 35 relief ]; *United States v. Katsman*, 905 F. 3d 672, 674-75 [2nd Cir. 2018][Defendant found to have provided "substantial assistance" but Judge Bath properly found that defendant committed crimes while on pre-trial release. Here, Cohen did not.]).

45. In *United States v. Scarpa*, 155 F. Supp. 3d 234, 239 [E.D.N.Y. per Korman, J. 2016] rev'd 861 F. 3d 59, 68-69 [2nd Cir.] *cert.* den. 138 S. Ct. 692 [2018], Eastern District Court Senior Judge Edward R. Korman* entertained an application for a sentence modification on behalf of a defendant who provided "substantial assistance" to the Government. Judge Korman noted that conflicting reasons were provided for refusing to file for Rule 35 relief. While a panel of the Second Circuit later overturned Senior U.S. District Judge Korman's decision granting Rule 35 relief, notwithstanding the Government's declination to support the application, the Court reaffirmed the legal principal that lack of governmental good faith will not, as a matter of law be permitted to block a cooperating defendant's Rule 35(b) motion, see also *United States v. Rexach*,

---

* Senior Judge Korman is a former Assistant U.S. Attorney, Chief Assistant U.S. Attorney, United States Attorney, and Assistant Solicitor General.

896 F. 2d 710, 714 [2nd Cir 1990](valuable assistance lost when Rule 35 discretion was found abused).

46. Circuit Judge Kearse's opinion, for the panel, in *United States v. Scarpa*, supra. noted that defendant had a "documented history" of sham proffer sessions, and failed a polygraph exam. Accordingly, it is understandable that the Government did not agree to a sentence modification. Here, Michael Cohen's Congressional dissembling related to Trump Organization business in Moscow, Russia, and were allegedly the product of counsel from Jay Sekulow, Esq., the President's lawyer. Defendant Cohen did not, Affirmant submits, act for self-benefit.

47. In *United States v. Brechenr*, 99 F. 3d 96, 99-100 [2nd Cir. 1996], a Rule 35 application was properly denied under circumstances where the defendant lied to the prosecutor during the period of defendant's cooperation.

48. In *Krecht v. United States*, 846 F. Supp. 2d 1268, 1292 [S.D. Fla. 2012], the Court recognized that the Government's refusal to file a Rule 35 motion cannot be predicated upon either (a) a discerned vindictive, or (b) unconstitutional motive (see e.g. *United States v. Dorsey*, 512 F. 3d 1321 [11th Cir. 2008] vac. 554 F. 3d 958 [11th Cir. 2009]).

49. Where as here the Government's actions are perceived as potentially questionable, a hearing should be ordered to address these allegations (c.f. *United States v. DeFeo*, 327 Fed. Appdx. 257 [2nd Cir. 2009]; *United States v. Rexach*, 896 F. 2d 710, 714 [2nd Cir. 1990]), and to hear the Assistant United States Attorney under oath, and with cross-examination. This writer has found the Government prefers to communicate using unsworn letter briefs.

## INDICIA OF BAD FAITH

50. President Donald J. Trump, many believe, is a disruptive and institution challenging Chief Executive. He appointed former Alabama U.S. Senator Jeff Sessions as his Attorney General, and then mercilessly hectored him until Senator Sessions resigned.

51. President Trump then nominated Attorney General William Barr, who has, from Your Affirmant's perspective, "bent over backwards" to assuage his "client," President Trump. Indicia of this extraordinary Presidential deference are *inter alia*:

(a) intervening in *Trump v. Vance*, ___ F. Supp. 3d ___ [S.D.N.Y. 2019] aff'd ___ F. 3d ___ [2nd Cir. 2019], notwithstanding the irrefutable fact that District Attorney Vance was merely enforcing a New York County Grand Jury subpoena not personally served upon President Trump, but rather on a third party (his tax preparer "Mazars")

(b) supporting and extending an Office of Legal Counsel memo which views a federal criminal trial of a sitting President as inappropriate

(c) booking the Trump Hotel located on Pennsylvania Avenue for the annual Justice Department holiday party

52. In addition to the above, Attorney General Barr designated the Connecticut U.S. Attorney to investigate the Russia probe, and has (if media reports are accurate) been gallivanting around Europe on the "Government's dime," in a mission to corroborate Trumpian conspiracy theories only one step removed from Russian claims they invented baseball, and that Stalin was a positive role model who cared about the quality of Russian peasant life, and freedom of both expression, and religion. Just ask the Soviet Jews, who fled Odessa for the right to attend Shabbat services.

53. Finally, in addition to the clear appearance that Attorney General Barr was designated to his position because he would be the President's "Roy Cohn," there is President Trump's vocal and persistent denunciations of Michael Cohen (and everyone else whom the President disfavors). With the release of Justice Department Inspector General Horowitz's December 9th report, this has now prodded Attorney General Barr to misstate Horowitz's report (see New York Daily News December 10th page 24 article "Inconvenient Truths" and New York Post December 10th article "AG Barr Knocks Findings" at exhibit "K").

54. For those who grew up, and came of age during the sixties, we have never witnessed a President of the United States pardoning political cronies, war criminals, and those viewed favorable by his political base.

55. Moreover, after an unprecedented search warrant was drafted and executed by the Acting United States Attorney Robert Khuzami for Defendant's books, records, and personal property, notwithstanding many covered by "attorney-client privilege" (Mr. Cohen was attorney for the "Trump Organization").

56. In an effort to induce the "Trump Organization" to pay his legal bills arising from investigations predicated (in whole or in part) upon legal services which Michael Cohen provided to both the "Trump Organization," and to its principal, Mr. Donald J. Trump. There is, against the aforesaid backdrop, a pending civil case in Supreme Court, New York County, *Michael D. Cohen v. Trump Organization, Inc.*, under index number 651377/19. We attach a copy of the civil complaint (exhibit "F"). The Trump Organization has refused to pay Defendant Cohen's legal fees arising from Cohen's service as a Trump Organization vice president and counsel.

57. Against this backdrop, the Southern District has either immunized (or extended non-prosecution agreements) to Trump Organization C.F.O. Alan Weisselberg, and the National Enquirer's David Pecker. The Southern District has "circled the proverbial wagons" to protect President Trump. Rather than staying clear of *Trump v. Vance*, it has forcefully intervened.

58. Rather than supporting a sister law enforcement agency, the S.D.N.Y. has intervened, and impeded an investigation being conducted in good faith by a duly elected District Attorney, and focused on actions preceding President Trump's Presidential inauguration.

59. Viewed in the light most favorable to defendant, both the Government's objectivity, and motives, have been drawn deeply (and repeatedly) into question. A "Scarpa" hearing is, accordingly, we respectfully submit, required to develop an appropriate record to insure that Michael Cohen is not the "collateral damage" of a President who has the warped mindset that cooperators are "rats," and should be badgered, hectored, punished, and coerced.

60. President Trump is entitled to his personal opinions and political beliefs. Playing "Michael Corleone" is just not one of them.

**MCKAY'S POWERFUL ANIMUS**

61. That Assistant U.S. Attorney Thomas McKay would reject Michael Monico's written request for a November proffer session (see his response at exhibit "C," and my followup to Assistant U.S. Attorney Laura G. Birger at exhibit "G") was disappointing, but not surprising. Your Affirmant views it as consistent with a personal prosecutorial view which had no discernible interest in aggressively pursuing possible evidence, and so was devoid of any quantitative or qualitative details which would

explain a disinterest in pursuing facts and investigative leads wherever (or however) high they may have led. For McKay, the "non-prosecution" agreements extend to the likes of the "Trump Organization" C.F.O. Alan Weisselberg, and the National Enquirer's David Pecker, ended with Michael Cohen's guilty plea to an "Information" (exhibit "B").

62. The indicia of a separate, and different standard for pursuing cooperation, Your Affirmant submits, started when the Government elected to execute massive search warrants against Michael Cohen, rather than proceed with Grand Jury subpoenas *duces tecum*. The notion that the United States Attorney's Office would use search warrants addressed to a practicing lawyer (and business consultant) reflects a callous and arrogant perception of (and willingness to unleash) naked prosecutorial power.

63. This was decidedly not a case or instance in which Cohen was "house counsel" to an organized crime family, or drug cartel. Rather, he was simply a lawyer who provided legal services on behalf of the Trump Organization, and crafted "catch and kill" contractual agreements which paid women who alleged to having had extramarital relations with Donald J. Trump to stifle possible personal scandal.

64. Cohen concededly also pursued business interests as a consultant, and garnered New York City taxi medallions, which were, in turn, leased to drivers and generated a weekly "cash flow." That being noted, the need to enter a private space to execute search warrants on:

    (a) Cohen's residence

    (b) hotel room[*]

---

[*] The Cohen Family was living in a hotel room while their apartment was being renovated when the search warrants were executed.

(c) law office

(d) safety deposit box

(e) two cell phones

is breathtaking even now.

65. This lack of professional sensitivity for attorney-client privileged evidence was both knowingly downplayed, and discounted by the United States Attorney's Office.

66. This approach was, we note, distinctly different when (to its credit) the New York County District Attorney sought to obtain Donald J. Trump's tax returns from his tax preparer "Mazars." These tax returns were demonstrably not privileged documents, but, nonetheless, the District Attorney used Grand Jury process, and not search warrants to seek custody of them.

67. Of course, the use of subpoenas provides pre-turnover litigation opportunities and options which a search warrant doesn't. A motion to controvert a previously executed search warrant, and suppress evidence is far limited. That, of course, was, we presume, precisely the idea – dramatically grab Cohen's documents ("shock and awe"), and peruse them at leisure, to find evidence suggesting possible criminal transgressions.

68. That Cohen later pleaded guilty, after the Government reportedly threatened to prosecute his wife, Laura Cohen, is a prosecutorial tactic which Your Affirmant perceives as "old as dirt," but no less coercive. Even those with triable cases are forced to jettison their trial rights when the Government "ups the ante," and chooses to ignore "innocent spouse" protections to "jawbone" a defendant's guilty plea.

69. Indeed, we submit that Acting U.S. Attorney Robert S. Khuzami's overreach may be found in the Southern District's demand that Cohen "eat" two campaign finance counts, even though he was concededly not a Trump campaign official (much less campaign treasurer), and, even as (at worst) a vendor of a service viewed beneficial to the Trump Campaign, had (a) no reporting duty, or (b) responsibility, under existing federal campaign law to report his alleged "in kind" service to the Federal Campaign Commission in Washington, D.C.

70. Jarringly, Don McGahn, Esq. (the Trump campaign treasurer), Hope Hicks (a paid Trump campaign media consultant), Donald J. Trump, and signatories of "Stormy Daniels" checks (e.g. Alan Weisselberg and Donald J. Trump, Jr.) got a "pass." Cohen didn't. Why?

71. The Southern District likely views itself bound by the Office of Legal Counsel (O.L.C.) memorandum that a sitting President cannot be forced to stand trial for violating federal criminal statutes (see exhibit "G"). However, Affirmant disputes that there is any legal impediment to criminally charging a sitting President for (a) his private conduct (b) preceding his inauguration, and (c) unrelated to political partisanship.

72. This caveat has been ignored, even though the President has both repeatedly deflected, and dissembled, regarding his knowing "catch and kill" payments, which Michael Cohen expressly negotiated at Trump's direction, using "Trump Organization" funds (not Trump's "personal funds"). Walter Dellinger's attached "Lawfare" article advances a far different, less deferential view (exhibit "H").

73. Here, the relevant O.L.C. memo empowers the running of the "statute of limitations" (18 U.S.C. 3182). That the William Barr-led Justice Department does not

choose, for institutional reasons (not existing case law) to file criminal charges (if only to appropriately toll the statute of limitations), we submit, or seek through a waiver a toll of the "statute of limitations" until January 19, 2021, reflects an Orwellian "Animal Farm" approach to federal criminal jurisprudence.

74. Since the S.D.N.Y. recites the catechism that Trump can't be tried, Cohen can't obtain Rule 35(b) relief? Why? Where is the equity and justice?

75. The Justice Department's desire to believe and protect President Trump is "touchingly" disclosed in footnote 5 on page 11 of Assistant U.S. Attorney McKay's April 13, 2018 opposition memorandum, where McKay wrote *"And there is reason to doubt that even communications with his [Cohen's] only identified client...President Trump has publicly denied knowing that Cohen paid Clifford..."*

76. The Government, we note, chose to credit a President whom political pundits have documented has told more than 13,000 lies while in office[*]. The Cohen and Trump recorded conversations, we contend, put the lie to that claim. The fact is that Trump both (a) knew, and (b) knowingly approved of the payments which Michael Cohen made on Trump's behalf to "Stormy Daniels."

77. Assistant U.S. Attorney Thomas McKay has never apologized for accepting President Trump's word over that of Michael Cohen. Concerning the Stormy Daniels payments, ride often goes before the fall. Cohen spoke truth to power. Assistant U.S. Attorney McKay is a disclosed Trump enabler whose declination to use Cohen to make cases against President Trump[*], high level Trump Organization executives, and

---

[*] Per Washington Post "Fact Checker," October 9, 2019
[*] More recent testimony at the impeachment inquiry before a House of Representatives Committee chaired by Congressman Adam Schiff in Washington, D.C. provided powerful proof that President Trump "muscled" the Ukrainian government to investigate Vice President Biden, and his derelict son, Hunter

Trump family members, strikes this writer as an example of Orwellian logic – all animals are equal, some are, however, more equal than others.

78. Cohen does jail time, while Trump tramples on the Constitution. This is not a "good look." Michael Cohen should not be the Government's scapegoat for shameful Trumpian boot licking.

79. A hearing should be held.

## CHAIRMAN CUMMINGS LETTER

80. On July 19, 2019, House of Representatives "Committee on Oversight" Chair Elijah Cummings wrote to Acting U.S. Attorney for the Southern District of New York Audrey Strauss, addressing a series of questions (exhibit "E"). It was prompted by the Chairman's voiced concern that the Southern District was not acting in prosecutorial "good faith."

81. Since Chairman Cummings' letter was sent, upon information and belief the Government has done nothing publicly known to respond except notify the Court that it had closed investigations of *inter alia*:

    (a) Donald J. Trump

    (b) the Trump Organization

    (c) Trump executives

    (d) the Trump Foundation

82. Nor did Acting U.S. Attorney Audrey Strauss respond to Your Affirmant's December 5th letter seeking meeting to discuss Defendant Cohen's cooperation (exhibit "L").

---

Biden. Coercion and extortion are still crimes in America, just apparently not at "Main Justice" when committed by Donald J. Trump.

83. This is troubling, and is likely questionable in a manner which the exchange of correspondence with Justice Department Criminal Division overseers were told concerning why affording such individuals as Trump Organization C.F.O. Alan Weisselberg, and the National Enquirer's David Pecker and Dylan Howard non-prosecutorial testimonial immunity was required.

84. We question: to what end? We recognize that the "separation of powers," between the Executive Branch, and the Judicial Branch, make judicial directives to prosecute a given crime, or given individual, are Constitutionally inappropriate.

85. The Court, however, has an appropriate role where the two branches of U.S. Government come into contact. Where, as here, a Rule 35(b) motion is filed, and an evaluation of governmental *bona fides* is drawn into question, judicial oversight unquestionably exists.

86. As we perceive it, the Government has acted in bad faith to stymie fair consideration of *inter alia* good faith post-sentence cooperation by the Government's unilateral decision to shut down its investigations of all matters Trump, and to proceed to wildly expansive acceptance of both "executive privilege" and "Presidential immunity" (a/k/a the Office of Legal Counsel [O.L.C.] memo).

87. Here, Cohen has proffered credible information which are *inter alia* natural followups to the final two counts of the Cohen indictment (18-cr-602). We perceive the Government's right to (a) investigate, and (b) indict both Donald J. Trump, the Trump Organization, Donald Trump Jr., and members of the Trump Campaign for campaign finance violations under circumstances where an overt act occurred anywhere in the Southern District of New York.

88. Essentially, from our perspective, the Southern District has closed its litigative "eyes and ears," and then told Cohen he has provided no relevant cooperation worthy of investigative followup. One St. Andrews Plaza has essentially operated by a "heads we win, tails you lose." A legal equivalent of a "three card monte" game does not bespeak, Your Affirmant submits, "good faith." A hearing is, accordingly, required.

## **FINAL THOUGHTS**

89. With "Articles of Impeachment" drafted and awaiting a vote in the House of Representatives, and with an Inspector General's Report "hot off the press," Attorney General William Barr has moved both publicly, and vigorously, to insure that he is aligned with President Trump – a man for whom disruption and rancor know no discernible limits, as reflected by his reference to the F.B.I. as "scum."

90. Like the character "Mayhem" in the auto insurance ad, the President has a combustible governing style, and a fondness for litigation unparalleled in U.S. history. The refusal to support a Rule 35 is a Trumpian response which should be seen for what it is. Like Orwell's "Animal Farm," some are more equal than others, and anyone who cooperates is a "rat."

WHEREFORE, we respectfully pray that the motion be GRANTED to the extent of ordering a hearing.

Dated:     New York, New York
           December 11, 2019


_Roger B. Adler_
_Attorney for Defendant MICHAEL COHEN_