UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA        :

   -v.-                           :      18 Cr. 602 (WHP)

MICHAEL COHEN,          :

                Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION FOR A SENTENCING REDUCTION

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Thomas McKay
Nicolas Roos
Andrea Griswold
Assistant United States Attorneys
    -Of Counsel-

## TABLE OF CONTENTS

FACTUAL BACKGROUND..............................................................................................2

    A.  COHEN'S OFFENSE CONDUCT AND PLEAS...........................................................2
    B.  COHEN'S PRE-SENTENCING ATTEMPTS TO COOPERATE AND COHEN'S SENTENCING...........2
    C.  COHEN'S POST-SENTENCING ATTEMPTS TO COOPERATE WITH THE SDNY AND HIS PUBLIC STATEMENTS ......................................................................................................................4

APPLICABLE LAW..................................................................................................7

DISCUSSION ...........................................................................................................9

    A.  THE SDNY HAS DETERMINED THAT COHEN HAS NOT PROVIDED SUBSTANTIAL ASSISTANCE, AND COHEN HAS NOT MADE ANY SHOWING OF AN IMPROPER MOTIVE FOR THAT DETERMINATION...............................................................................................................9
    B.  COHEN'S ASSISTANCE TO THE CONGRESS AND/OR STATE AND LOCAL AUTHORITIES IS NOT A BASIS FOR A RULE 35 MOTION ...........................................................................................12

CONCLUSION ........................................................................................................13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA             :

   -v.-                             :        18 Cr. 602 (WHP)

MICHAEL COHEN,                       :

          Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PRELIMINARY STATEMENT

The United States Attorney's Office for the Southern District of New York (the "Office" or "SDNY") respectfully submits this brief in opposition to defendant Michael Cohen's motion for a reduction in his sentence pursuant to Federal Rule of Criminal Procedure 35(b). As set forth below, the text of Rule 35 makes clear that such a reduction may be granted only upon motion of the Government, whose decision not to file such a motion is entitled to considerable deference and is reviewable only where the defendant has made a threshold showing that it was based on an unconstitutional or irrational motive. Cohen has failed to make such a showing. Cohen has offered no evidence that he provided substantial assistance to this Office in the investigation or prosecution of others. To the contrary, the Office reasonably determined that Cohen did not provide substantial assistance after his sentencing both based on the nature and scope of the information provided and because of substantial concerns about Cohen's credibility as a witness. Moreover, to the extent Cohen seeks to rely on his Congressional testimony and provision of information to state and local law enforcement authorities, none of those activities warrant a sentencing reduction, as the Second Circuit has made clear that, in this context, "substantial assistance" refers to assistance to federal prosecutors. The Court should deny Cohen's motion without a hearing.

## FACTUAL BACKGROUND

**A.      Cohen's Offense Conduct and Pleas**

Between 2012 and 2017, Cohen committed what this Court has described as a "veritable smorgasbord of fraudulent conduct." (Transcript of Dec. 12, 2018 Sentencing ("Sent. Tr.") at 34). He evaded income taxes by failing to report more than $4 million in income during tax years 2012 through 2016. (*See* Presentence Investigation Report dated Dec. 4, 2018 ("PSR") at ¶¶ 18-27). He lied to multiple banks to obtain financing on favorable terms. (PSR ¶¶ 28-35). He violated campaign finance laws by carrying out two complex schemes to purchase the rights to stories – each from women who claimed to have had an affair with a Presidential candidate – so as to suppress the stories and thereby prevent them from influencing the Presidential election. (PSR ¶¶ 36-56). And, in 2017, he lied to the United States Congress in sworn testimony. (PSR ¶¶ 62-73).

For this conduct, Cohen ultimately pled guilty to nine separate counts:  (i) five counts of tax evasion, in violation of 26 U.S.C. § 7201; (ii) one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014; (iii) two counts of making unlawful campaign contributions, in violation of 52 U.S.C. § 30109(d)(1)(A); and (iv) one count of making a false statement to the Congress, in violation of 18 U.S.C. § 1001(a)(2). Cohen pled guilty to the first eight counts on August 21, 2018, pursuant to a plea agreement with the SDNY. He pled guilty to the ninth count on November 29, 2018, pursuant to a plea agreement with the Special Counsel's Office ("SCO"). The cases were consolidated for sentencing.

**B.      Cohen's Pre-Sentencing Attempts to Cooperate and Cohen's Sentencing**

On August 7, 2018, before he had been charged in the SDNY, Cohen met with the SCO at his own request, ostensibly to provide information relevant to their inquiry. (*See* Sentencing

Submission by the Special Counsel's Office, Dec. 7, 2018 ("SCO Sent. Br.") at 3).  Cohen lied to the SCO at that meeting, repeating many of the prior false statements he had made to the Congress. (*Id.* at 3).  Only after Cohen had been charged by SDNY and pled guilty to eight felony counts did his cooperation with the SCO begin in earnest.  (*Id.* at 3-4).  Cohen's post-plea, pre-sentencing cooperation with the SCO was set forth in the SCO's submission in advance of sentencing.  (*Id.* at 5-7).

Prior to his sentencing, Cohen also made attempts to cooperate with the SDNY.  However, as previously set forth in the Government's sentencing memorandum, Cohen sought to provide information only about certain subjects, and repeatedly declined to provide full information about the scope of any additional criminal conduct in which he may have engaged or had knowledge. (*See* Sentencing Submission by SDNY, Dec. 7, 2018 ("SDNY Sent. Br.") at 15-17).  Because of Cohen's choice not to fully cooperate, and the SDNY's commensurate inability to fully evaluate his reliability as a witness, the SDNY declined to enter into a cooperation agreement with Cohen or move for a sentencing reduction under U.S.S.G. § 5K1.1.  (*Id.*).  Nevertheless, the SDNY acknowledged Cohen's provision of information to the SCO, and cited it as a basis for a modest downward variance from the applicable Guidelines range at his sentencing.  (*Id.* at 1-2, 17).

Cohen's sentencing submission relied heavily on his provision of information to the SCO and other law enforcement entities.  (*See, e.g.*, Sentencing Submission of Michael Cohen, Nov. 30, 2018 ("Cohen Sent. Br.") at 1-5).  At sentencing, the Court carefully considered the parties' submissions regarding Cohen's attempts at cooperation.  (*See, e.g.*, Sent. Tr. 34-35).  The Court made clear that Cohen "should receive some credit for providing assistance to the Special Counsel's Office."  (*Id.* at 34).  The Court also noted, however, that Cohen had "selected the information he disclosed to the government."  (*Id.* at 35).  Ultimately, the Court imposed a sentence

of 36 months' imprisonment on the charges in the SDNY case, which represented a downward variance from the applicable Guidelines range of 51 to 63 months' imprisonment.  (*Id.* at 5, 36). The Court also imposed a concurrent sentence of two months' imprisonment on the charge in the SCO case.  (*Id.* at 36).

## C.    Cohen's Post-Sentencing Attempts to Cooperate with the SDNY and His Public Statements

Shortly after being sentenced to 36 months' imprisonment, Cohen contacted the Office, through counsel, seeking to proffer in the hope of obtaining a sentencing reduction under Rule 35. Cohen then met with representatives of the Office and FBI agents on two occasions – January 21 and February 7, 2019 – and provided information about various subjects.  During those proffers, Cohen made material false statements.

For example, during one post-sentencing proffer with this Office, Cohen denied seeking a position in the incoming Presidential Administration after the 2016 election stating, in substance, that he "did not want to move to Washington D.C." and that he "had no actual interest in being Attorney General or Trump's Chief of Staff."  (*See* Ex. 1 (relevant excerpt of FBI-302)). [1]  These statements were demonstrably false.  Indeed, in a television interview filmed days after the 2016 election, which Cohen had promoted on his own Twitter account, Cohen made clear his desire for a position in the new administration.  When the host raised the question of whether Cohen would be named to a position in the new administration and suggested that the President would ask Cohen to serve a role in Washington, Cohen responded: "Oh I certainly hope so. . . . One hundred

---

[1] Lest there be any doubt as to the accuracy of the FBI's notes of Cohen's proffer statements, Cohen repeated the substance of them on numerous occasions during his subsequent Congressional testimony.  *See* Ex. 3 (Excerpts of Transcript of February 27, 2019 Hearing before the House of Representatives, Committee on Oversight and Reform), at 25 ("I did not want to go to the White House."), 57 (same), 126 ("I did not want a role in the new administration. … I got exactly what I wanted."), 145 ("I did not want a role or title in the administration.").

percent."  Later, when the host said he looks forward to seeing what Cohen's future holds, Cohen responded: "Hopefully it will be in Washington."[2]  Cohen had been even more specific about his wishes in his private communications.  For example, on Election Day 2016, Cohen told one friend (Person-1) that he would take her with him to the White House as "Asst to chief of staff," and told another person (Person-2) that being named Chief of Staff "would be nice."  (Ex. 2 at 1).[3]  On November 12, 2016, Cohen exchanged a series of text messages with another person (Person-3), discussing how Reince Priebus was being considered for the position of Chief of Staff and evaluating whether Cohen "still ha[s] a chance."  Then, on the afternoon of November 13, 2016, it was announced that Priebus would in fact be named Chief of Staff.  Shortly thereafter, Person-3 sent Cohen a message asking: "You ok?"  Cohen responded: "Yes. Disappointed but understand why."  (Ex. 2 at 1-2).   Moreover, Cohen's desire for the role persisted:  In May 2017, while discussing the potential candidates for any opening in the Chief of Staff position with a then-current administration official (Person-4), Cohen floated his own name and asked Person-4 to remind the President of Cohen's loyalty and to "keep my name in range [sic] loop please."  (Ex. 2 at 3-5; *see also id.* at 5 (Cohen suggesting in January 2018 that he would be Chief of Staff in "3 to 4 months")).[4]

In late February and early March 2019, while the Office was in the process of evaluating

---

[2] *See* CNN, Chris Cuomo Interview of Michael Cohen, November 10, 2016, at 8:30 *et seq.*, available at https://www.snappytv.com/tc/3219739.

[3] Exhibit 2 consists of the relevant portions of text message exchanges between Cohen and certain individuals, whose identities have been anonymized to respect their privacy.  The messages were recovered from one of Cohen's cell phones pursuant to a search warrant.

[4] Although not necessary to the instant inquiry, these false statements were also material, because, among other things, truthful answers to questions about his efforts to obtain a position within the Administration (and his disappointment at failing to do so) bore directly on Cohen's credibility, potential biases and incentives to provide truthful information.

the information provided by Cohen at his two post-sentencing proffers, Cohen voluntarily testified before several committees of the United States Congress.  After that testimony, members of one committee made a criminal referral for perjury, citing apparent contradictions between Cohen's testimony and his guilty pleas and certain filings in the SDNY case.

Moreover, throughout the period of his purported cooperation, Cohen and his surrogates made a litany of public comments about his SDNY case, many of which minimized his acceptable of responsibility for conduct to which he had pled guilty and were inconsistent with his pleas or other undisputed facts.  To list just a few examples:

- Cohen repeatedly sought to walk back his own guilty pleas. For example, in a private conversation recorded by the other party, Cohen, referring to his case, claimed that "[t]here is no tax evasion. . . . It's a lie."[5]  (*But see* Transcript of August 21, 2018 Guilty Plea ("Plea Tr.") at 21-22).

- The day after his sentencing, Cohen gave a televised interview during which he described his role in one of the campaign finance charges by saying: "I just reviewed the documents."[6]  (*But see* Plea Tr. 23).

- In a lawsuit against the Trump Organization seeking indemnification, Cohen claimed that all eight of the charges against him in this case "arose from conduct undertaken by Mr. Cohen in furtherance of and at the behest of the Trump Organization and its principals, directors, and officers."  (Dkt. 51, Ex. F to Cohen's Motion, at ¶ 53). Yet leaving the campaign finance offenses aside, the five counts of tax evasion and one count of false statements to a financial institution to which Cohen pled guilty were indisputably related to Cohen's own personal finances and had nothing to do with the Trump Organization.  (*See* PSR ¶¶ 18-35).

---

[5] *See* CNN, Secretly Recorded Audio Surfaces of Cohen Walking Back Plea, *available at* https://www.cnn.com/videos/politics/2019/04/24/michael-cohen-phone-call-plea-deal-audio-vpx.cnn.

[6] *See* ABC News, George Stephanopoulos Interview of Michael Cohen, December 13, 2018, at 7:00 *et seq.*, *available at* https://abcnews.go.com/US/video/michael-cohen-extended-cut-59830461.

Based on the foregoing concerns, the Office declined Cohen's repeated requests for further proffer sessions, informing his counsel on several occasions that the Office believed that Cohen was not a credible witness.

## APPLICABLE LAW

The Federal Rules of Criminal Procedure provide that:

> Upon the Government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

Fed. R. Crim. P. 35(b). As the text of Rule 35 makes clear, such a sentencing reduction may be granted only upon a motion by the Government. *See United States v. Scarpa*, 861 F.3d 59, 67 (2d Cir. 2017) ("The '[u]pon the government's motion' language in Rule 35(b) thus 'imposes the condition of a Government motion upon the district court's authority.'" (quoting *Wade v. United States*, 504 U.S. 181, 185 (1993))). The Second Circuit has held that, in this context, "the Government" refers to "the attorney representing the government" – that is, "the prosecutor." *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998); *see also United States v. Ming He*, 94 F.3d 782, 789 (2d Cir. 1996) ("The decision to move for a downward departure for substantial assistance rests in the exclusive discretion of federal prosecutors.").[7]

"[W]hether a defendant's cooperation has risen to the level of 'substantial assistance' to the government is self-evidently a question that the prosecution is uniquely fit to resolve." *United States v. Huerta*, 878 F.2d 89, 93 (2d Cir. 1989). Thus, the Government's evaluation of a defendant's cooperation is entitled to "considerable deference" and is subject only to "limited

---

[7] The Second Circuit has made clear that the provisions of Rule 35, Section 5K1.1 of the Guidelines, and 18 U.S.C. § 3553(e) that relate to sentencing leniency should be construed similarly, given the common language of these provisions. *See, e.g.*, *Scarpa*, 861 F.3d at 67; *United States v. Gangi*, 45 F.3d 28, 30-31 (2d Cir. 1995).

review." *United States v. Knights*, 968 F.2d 1483, 1487-88 (2d Cir. 1992).[8]  Although a showing of substantial assistance "is a necessary condition for relief, it is not a sufficient one, because the Government has a power, not a duty, to make a substantial-assistance motion."  *Scarpa*, 861 F.3d at 67 (quoting *Wade*, 504 U.S. at 185, 187).  In exercising its discretion, the Government may weigh "the cost and benefit that would flow from moving," and "it is not the office of the court to weigh the equities or reassess the facts underlying the government's exercise of its discretion."  *Id.* at 68-69 (quotation omitted).

A district court may review a prosecutor's refusal to file a substantial-assistance motion only where it finds that "the refusal was based on an unconstitutional motive" such as "race or religion," or if the refusal "was not rationally related to any legitimate Government end."  *Wade*, 504 U.S. at 185-86.  Moreover, mere allegations that the defendant provided substantial assistance or of an improper motive "will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing."  *Id.* at 186.  Rather, the defendant must make a "substantial threshold showing" of an improper motive, *see id.*, at which point the Government would be entitled to rebut such a claim and the district court would have substantial discretion as to whether a hearing is required and what form that hearing might take.  *See Knights*, 968 F.2d at 1487.[9]

---

[8] This is not a case where the defendant had a cooperation agreement in which the Government promised to make such a motion, which would give rise to "more searching review" to determine whether the Government lived up to its end of the bargain.  *See United States v. Brechner*, 99 F.3d 96, 99 (2d Cir. 1996).

[9] Cohen's motion references the First Step Act, appearing to argue that the extent of his requested reduction under Rule 35 is limited, because Cohen may be entitled to certain credits under that Act.  (Adler Aff. ¶¶ 18-21).  But Cohen is not entitled to any reduction of his sentence, regardless of its scope, under Rule 35.  And to the extent that Cohen's motion might be construed as seeking a "modification" of his sentence, under the First Step Act or otherwise, to a designation to home confinement (which he is almost certainly not eligible for at this time), his request for relief must first be directed to the Bureau of Prisons.  *See, e.g.*, 18 U.S.C. §§ 3621; 3624(c) *United States v. Urso*, 2019 WL 5423431, at *1 (E.D.N.Y. Oct. 23, 2019); *United States v. Hagler*, 2019 WL

## DISCUSSION

**A.    The SDNY Has Determined That Cohen Has Not Provided Substantial Assistance, and Cohen Has Not Made Any Showing of an Improper Motive for that Determination**

Cohen's provision of information to this Office clearly does not rise to the level of "substantial assistance." It has not resulted, either directly or indirectly, in the prosecution of any individuals. It has not led to the discovery of any evidence used in the prosecution of others. And apart from conclusory assertions about the importance of his information, Cohen's various submissions have failed to identify a single way in which Cohen's proffers have actually assisted in the investigation or prosecution of another, as Rule 35 requires. This is not a case, therefore, where the defendant can point to tangible law enforcement results directly stemming from his cooperation to argue that the Government has withheld cooperation credit in bad faith. *See, e.g.*, *Scarpa*, 861 F.3d at 60 (defendant argued that his information led to recovery of a cache of explosives); *Knights*, 968 F.2d at 1485 (defendant testified at trial of co-defendant). Particularly absent such tangible results, as the Second Circuit has made clear, prosecutors, not the defendant or his counsel, are "uniquely fit" to assess the question of whether a defendant's cooperation rises to the level of substantial assistance. *Huerta*, 878 F.2d at 93. On this record, it was not a close call.

Unable to articulate how he has advanced the investigation or prosecution of another, Cohen instead relies on high-level, conclusory assertions of proffered cooperation and further alleges, with no discernable factual basis, that the Department of Justice – from the Attorney General down to the line prosecutors in this Office – has acted in bad faith in withholding

---

2393861, at *1 (N.D. Ind. June 4, 2019); *Rizzolo v. Puentes*, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019).

cooperation credit.     Cohen offers no evidence for these accusations, instead resorting to a scattershot of *ad hominem* attacks and irrelevant political bromides.   These extravagant claims of bad faith are exactly the sort of "generalized allegations of improper motive" that will not trigger the right to a remedy "or even to discovery or an evidentiary hearing."  *Wade*, 504 U.S. at 186; *see also Knights*, 968 F.2d at 1487.

To be clear, no political or otherwise improper motive played any role in the Office's decision regarding Cohen's cooperation.  Rather, as this Office has repeatedly informed Cohen's counsel, this Office determined that Cohen was not able to provide "substantial assistance" in the investigation or prosecution of others because Cohen's own words and actions (and those of his authorized surrogates) had given rise to very substantial concerns about Cohen's credibility as a witness.  It bears mention, in this respect, that at the time Cohen began his attempt at post-sentencing cooperation, the Office's concerns about his credibility had not only been directly communicated to him but were already a matter of public record.  (*See, e.g.*, SDNY Sent. Br. 27). Cohen had been convicted of lying on his taxes, to banks, and to the Congress; had knowingly rejected the path of traditional cooperation in this District; and had repeatedly sought to minimize his own conduct before his sentencing.   Nevertheless, at Cohen's request, and after he was sentenced to 36 months' imprisonment, the Office gave Cohen yet another chance at providing substantial assistance.  As was made clear to him at the outset of his post-sentencing efforts at cooperation, Cohen not only had to be able to provide useful information, but he had to take steps to preserve what was left of his credibility so as to be useful as a witness.

Nevertheless, Cohen then made numerous false statements and repeatedly minimized his own conduct in both his post-sentencing proffers with the Office and his public statements, as set forth above.  (*See* pp. 4-6, *infra*).  The Second Circuit has made clear that false statements by a

defendant during the period of his cooperation – even where swiftly corrected – are "highly relevant to the quality of his cooperation," and that the Government acts well within its ample discretion in determining that such lies can fatally undermine the defendant's utility as a witness. *See, e.g.*, *Brechner*, 99 F.3d at 99-100.  Cohen's demonstrable lies to this Office during the period of his attempted cooperation are thus sufficient, standing alone, to confirm this Office's good faith in refusing to utilize him as a cooperating witness.[10]

To be sure, the Government often relies on cooperating defendants with significant criminal histories or prior instances of dishonesty.  But in those cases, a necessary precondition to substantial assistance is the defendant's acceptance of responsibility for his crimes and commitment to tell the truth during his cooperation.  To the extent Cohen might have been able to provide substantial assistance, those efforts were completely undermined by his inability to be truthful both with this Office and in his public statements.  Even after his sentencing, Cohen never made a meaningful effort to engage in serious cooperation but instead engaged in a protracted public relations campaign, in which he sought to cast himself as both victim and hero, aimed at creating the appearance of cooperation.  But no amount of public posturing may substitute, under Rule 35, for providing truthful and useful information to the Government.

Given these repeated lies and minimizations, the Office had an entirely appropriate, good faith basis to determine that Cohen could not be used as a witness or relied upon to provide

_____

[10] Moreover, Cohen's lies and minimization continue to this day.  In this very motion, Cohen once again attempts to blame his tax evasion on his accountant.  (Cohen Aff. ¶ 4). Cohen's counsel's affidavit describes the campaign finance charges to which he pled guilty as "tacked on the back end" of the other charges, and seems to argue that he should not have been liable for these crimes given his lack of an official position in the campaign. (Adler Aff. ¶¶ 5-6, 69).  And Cohen's counsel even alleges that Cohen pled guilty only after "the Government reportedly threatened to prosecute his wife" (Adler Aff. ¶ 68), even though this is patently false and contrary to Cohen's sworn allocution (Plea Tr. 20).

substantial assistance in the investigation and prosecution of others.

**B.      Cohen's Assistance to the Congress and/or State and Local Authorities Is Not a Basis for a Rule 35 Motion**

Cohen's motion also suggests in various places that he should be entitled to a sentencing reduction for purported assistance that he provided to the United States Congress and various state and local law enforcement entities.   (*See, e.g.*, Davis Aff. ¶ 1; Cohen Aff. ¶¶ 14-16).   Even assuming that Cohen had provided "substantial assistance" to one or more such entity, that still would not provide a basis for relief under Rule 35.

As noted above, the text of Rule 35 imposes as a condition of relief a motion by "the Government," and the Second Circuit has held that, in this context, "the Government" refers to "the attorney representing the government" – that is, "the prosecutor." *Difeaux*, 163 F.3d at 728; *see also Ming He*, 94 F.3d at 789 ("The decision to move for a downward departure for substantial assistance rests in the exclusive discretion of federal prosecutors.").   In particular, assistance to state or local law enforcement authorities cannot form the basis of a substantial assistance motion. *United States v. Kaye*, 140 F.3d 86, 87-88 (2d Cir. 1998).   And Cohen offers no support for the novel legal proposition that Congressional testimony may amount to "substantial assistance in investigating or prosecuting another person," as required by Rule 35.   Voluntary Congressional testimony is more closely analogous to the sort of "civic duty" that the Second Circuit has held does not ordinarily justify a sentencing departure.   *See United States v. Korman*, 343 F.3d 628, 631 (2d Cir. 2003); *see also United States v. Brisbon*, 184 F. Supp. 2d 1379, 1382 (S.D. Ga. 2002) (making public service announcement does not justify Rule 35 relief); *United States v. Fredericks*, 787 F. Supp. 79, 82 (D. N.J. 1992) (speaking at three seminars does not justify Rule 35 relief).

Moreover, Cohen himself testified to a contrary understanding in his sworn Congressional testimony:

> The Rule 35 motion is in the complete hands of the Southern District of New York. And the way the Rule 35 motion works is, what you're supposed to do, is provide them with information that leads to ongoing investigations. . . . If those investigations become fruitful, then there's a possibility for a Rule 35 motion. And I don't know what the benefit in terms of time would be, **but this Congressional hearing today is not going to be the basis of a Rule 35 motion. I wish it was, but it's not.**

Ex. 3 at 101-02 (emphasis added).  Having disavowed, in sworn testimony, any intent or ability to rely on his Congressional testimony to seek a sentencing reduction, it is remarkable for Cohen to now do exactly the opposite.

In sum, Cohen's efforts to assist other entities – whatever the value of those efforts – do not merit relief under Rule 35.[11]

## CONCLUSION

For the reasons set forth above, the Office respectfully requests that this Court deny Cohen's motion without a hearing.

Dated:   December 19, 2019
       New York, New York

                    Respectfully submitted,

                    AUDREY STRAUSS
                    Acting United States Attorney

By:    _____

                    Thomas McKay
                    Nicolas Roos
                    Andrea Griswold
                    Assistant United States Attorneys

---

[11] Cohen also briefly highlights his assistance to the Special Counsel's Office between August 2018 and November 2018.  (*See, e.g.*, Davis Aff. ¶¶ 3-4).  However, as noted above, Cohen was given credit for that assistance at sentencing. (Sent. Tr. 34).  To the extent that Cohen is attempting to rely on this, or any other, pre-sentencing cooperation, it is not a basis for a further reduction. *See United States v. Katsman*, 905 F.3d 672, 674 (2d Cir. 2018).