# HEARING WITH MICHAEL COHEN, FORMER ATTORNEY TO PRESIDENT DONALD TRUMP

# HEARING

BEFORE THE

## COMMITTEE ON OVERSIGHT AND REFORM HOUSE OF REPRESENTATIVES

ONE HUNDRED SIXTEENTH CONGRESS

FIRST SESSION

FEBRUARY 27, 2019

## Serial No. 116–03

Printed for the use of the Committee on Oversight and Reform



Available on: *http://www.govinfo.gov*
*http://www.house.gov/reform*

U.S. GOVERNMENT PUBLISHING OFFICE

35–230 PDF      WASHINGTON : 2019

you working for him for 10 days, maybe 10 weeks, maybe even 10 months, but you worked for him for 10 years.

Mr. Cohen, how long did you work in the White House?

Mr. COHEN. I never worked in the White House.

Mr. JORDAN. And that's the point, isn't it, Mr. Cohen?

Mr. COHEN. No, sir.

Mr. JORDAN. Yes, it is.

Mr. COHEN. No, it is not, sir.

Mr. JORDAN. You wanted to work in the White House——

Mr. COHEN. No, sir.

Mr. JORDAN [continuing]. and you didn't get brought to the dance. And now——

Mr. COHEN. Sir, I was extremely proud to be personal attorney to the President of the United States of America. I did not want to go to the White House. I was offered jobs. I can tell you a story of Mr. Trump reaming out Reince Priebus because I had not taken a job where Mr. Trump wanted me to, which is working with Don McGahn at the White House General Counsel's Office.

Mr. JORDAN. Mr. Cohen, you worked for the President for——

Mr. COHEN. Sir, one second. All right. What I said at the time, and I brought a lawyer in who produced a memo as to why I should not go in, because there would be no attorney-client privilege.

Mr. JORDAN. Mr. Cohen——

Mr. COHEN. And in order to handle some of the matters that I talked about in my opening, that it would be best suited for me not to go in and that every President had a personal attorney.

Mr. JORDAN. Mr. Cohen, here's what I see, here's what I see. I see a guy who worked for 10 years and is here trashing the guy he worked for for 10 years, didn't get a job in the White House, and now—and now you are behaving just like everyone else who's got fired or didn't get the job they wanted, like Andy McCabe, like James Comey, same kind of selfish motivation after you don't get the thing you want. That's what I see here today, and I think that's what the American people see.

Mr. COHEN. Mr. Jordan, all I wanted was what I got, to be personal attorney to the President, to enjoy the senior year of my son in high school and waiting for my daughter who is graduating from college to come back to New York. I got exactly what I want.

Chairman CUMMINGS. The gentleman's time has expired.

Mr. JORDAN. Exactly what you want?

Mr. COHEN. What I wanted. That's right.

Mr. JORDAN. You are going to prison.

Mr. COHEN. I received exactly what I wanted.

Chairman CUMMINGS. The gentleman's time has expired.

Ms. Wasserman Schultz.

Ms. WASSERMAN SCHULTZ. Thank you, Mr. Chairman.

Mr. Cohen, thank you for being here today.

As you likely know, I served as the chair of the Democratic National Committee at the time of the Russian hacks and when Russia weaponized the messages that it had stolen.

But I want to be clear my questions are not about the harm done to any individual by WikiLeaks and the Russians, it is about the possible and likely harm to the United States of America and our

Mr. CLOUD. Couple months from now.

Mr. COHEN. That's the day that I need to surrender——

Mr. CLOUD. Yes, sir, it is.

Mr. COHEN [continuing]. to Federal prison.

Mr. CLOUD. Could you, for the record, state what you've been convicted of.

Mr. COHEN. I've been convicted on five counts of tax evasion. There's one count of misrepresentation of documents to a bank. There's two counts—one dealing with campaign finance for Karen McDougal; one count of campaign finance violation for Stormy Daniels, as well as lying to Congress.

Mr. CLOUD. Thank you. Can you state what your official title with the campaign was?

Mr. COHEN. I did not have a campaign title.

Mr. CLOUD. And your position in the Trump administration?

Mr. COHEN. I did not have one.

Mr. CLOUD. OK. In today's testimony, you said that you were not looking to work in the White House. The Southern District of New York, in their statement, their sentencing memo, says this: "Cohen's criminal violations in the Federal election laws were also stirred, like other crimes, by his own ambition and greed. Cohen privately told friends, colleagues, and including seized text messages, that he expected to be given a prominent role in the new administration. When that did not materialize, Cohen found a way to monetize his relationship and access with the President." So were they lying, or were you lying today?

Mr. COHEN. I'm not saying it's a lie. I'm just saying it's not accurate. I did not want to go to the White House. I retained—and I brought an attorney and I sat with Mr. Trump, with him, for well over an hour explaining the importance of having a personal attorney. And every President has had one, in order to handle matters like the matters I was dealing with, which included, like Summer Zervos——

Mr. CLOUD. I reclaim my time.

Mr. COHEN [continuing]. Stormy Daniels, dealing with Stephanie Clifford——

Mr. CLOUD. I ask unanimous consent to——

Mr. COHEN [continuing]. and other personal matters that needed——

Mr. CLOUD. Excuse me. This is my time. Thank you.

I ask unanimous consent to submit to this memo from the Southern District of New York, New York for the record.

Chairman CUMMINGS. Without objection, so ordered.

101

that he wanted you to lie. One of the reasons you knew this is, because, quote, "Mr. Trump's personal lawyers reviewed and edited my statement to Congress about the timing of the Moscow tower negotiations before I gave it." So this is a pretty breathtaking claim, and I just want to get to the facts here. Which specific lawyers reviewed and edited your statement to Congress on the Moscow tower negotiations, and did they make any changes to your statement?

Mr. COHEN. There were changes made, additions. Jay Sekulow, for one——

Mr. RASKIN. Were there changes about the timing? The question——

Chairman CUMMINGS. The gentleman's time has expired.

You may answer that question.

Mr. COHEN. There were—there were several changes that were made, including how we were going to handle that message. Which was——

Chairman CUMMINGS. Mr. Groth — were you finished?

Mr. COHEN. Yes. The message, of course, being the length of time that the Trump Tower Moscow project stayed and remained alive.

Mr. RASKIN. That was one of the changes?

Mr. COHEN. Yes.

Chairman CUMMINGS. Mr. Grothman?

Mr. GROTHMAN. Yes, first of all, I'd like to clear up something, just a little something that bothers me. You started off your testimony, and you said, I think in response to some question, that President Trump never expected to win. I just want to clarify that I dealt with several—President Trump several times as he was trying to get Wisconsin. He was always confident. He was working very hard, and this idea that somehow he was just running to raise his profile for some future adventure, at least in my experience, is preposterous. I always find it offensive when anti-Trump people imply that he just did this on a lark and didn't expect to win.

But be that as it may, my first question concerns your relationship with the court. Do you expect—I mean, right now, I think you're sentenced to 3 years, correct?

Mr. COHEN. That's correct.

Mr. GROTHMAN. Do you expect any time, using this testimony, other testimony, after you get done doing whatever you're going to do this week, do you ever expect to go back and ask for any sort of reduction in sentence?

Mr. COHEN. Yes. There are ongoing investigations currently being conducted that have nothing to do with this committee or Congress, that I am assisting in, and it is for the benefit of a Rule 35 motion, yes.

Mr. GROTHMAN. So you expect, and perhaps what you testify here today will affect going back and reducing this, what we think is a relatively light, three-year sentence? You expect to go back and ask for a further reduction?

Mr. COHEN. Based off of my appearance here today?

Mr. GROTHMAN. Well, based upon whatever you do between now and your request for——

Mr. COHEN. The Rule 35 motion is in the complete hands of the Southern District of New York. And the way the Rule 35 motion

102

works is, what you're supposed to do, is provide them with information that leads to ongoing investigations. I am currently working with them right now on several other issues of investigation that concerns them, that they're looking at. If those investigations become fruitful, then there is a possibility for a Rule 35 motion. And I don't know what the benefit in terms of time would be, but this congressional hearing today is not going to be the basis of a Rule 35 motion. I wish it was, but it's not.

Mr. GROTHMAN. I'd like to yield some time to Congressman Jordan.

Mr. JORDAN. I yield to the gentleman from North Carolina.

Mr. MEADOWS. Mr. Cohen, I'm going to come back to the question I asked before, with regards to your false statement that you submitted to Congress. On here, it was very clear, that it asked for contracts with foreign entities over the last two years. Have you had any foreign contract with foreign entities, whether it's Novartis or the Korean airline or Kazakhstan BTA Bank? Your testimony earlier said that you had contracts with them. In fact, you went into detail——

Mr. COHEN. I believe it talks about lobbying. I did no lobbying. On top of that they are not government——

Mr. MEADOWS. In your testimony — I'm not asking about lobbying, Mr. Cohen.

Mr. COHEN. They are not government agencies. They are privately and——

Mr. MEADOWS. Do you have—do you have foreign contracts——

Mr. COHEN [continuing]. publicly traded companies.

Mr. MEADOWS. Do you have foreign contracts?

Mr. COHEN. I currently have no foreign contracts.

Mr. MEADOWS. Did you have foreign contracts over the last two years?

Mr. COHEN. Foreign contracts?

Mr. MEADOWS. Contracts with foreign entities, did you have contracts?

Mr. COHEN. Yes.

Mr. MEADOWS. Yes?

Mr. COHEN. Yes.

Mr. MEADOWS. Why didn't you put them on the form? It says it's a criminal offense to not put them on this form for the last two years. Why did you not do that?

Mr. COHEN. Because those foreign companies that you're referring to are not government companies.

Mr. MEADOWS. It says nongovernmental, Mr. Cohen. You signed it.

Mr. COHEN. They're talking about me as being nongovernmental.

Mr. MEADOWS. And right. It says foreign agency—It says foreign contracts. Do you want us to read it to you?

Mr. COHEN. I read it and it was reviewed by my counsel, and I am a nongovernment employee. It was not lobbying, and they are not foreign contracts.

Mr. MEADOWS. It has nothing to do with lobbying. It says it's a criminal offense to not list all your foreign contracts. That's what it says.

126

Mr. HIGGINS. Mr. Chairman, I ask that our primary hearing to introduce the Oversight Committee, the 116th Congress, to the American people, has manifested in the way that it obviously is. This is an attempt to injure our President, lay some sort of soft cornerstone for future impeachment proceedings. This is the full intent of the majority.

I yield my remaining 30 seconds to the ranking member.

Mr. JORDAN. Mr. Cohen, earlier you said the United States Southern District of New York is not accurate in that statement.

Mr. COHEN. I'm sorry. Say that again.

Mr. JORDAN. Earlier you said that the United States Southern District of New York Attorney's Office, that statement is not accurate. You said it's not a lie. You said it's not accurate. Do you stand by that?

Mr. COHEN. Yes, I did not want a role in the new administration.

Mr. JORDAN. So the court's wrong?

Mr. COHEN. Sir, can I finish, please?

Mr. JORDAN. Sure.

Mr. COHEN. I got exactly the role that I wanted. There is no shame in being personal attorney to the President. I got exactly what I wanted. I asked Mr. Trump for that job, and he gave it to me.

Mr. JORDAN. All I'm asking, if I could—and I appreciate it, Mr. Chairman — you're saying that statement from the Southern District of New York attorneys is wrong.

Mr. COHEN. I'm saying I didn't write it, and it's not accurate.

Mr. JORDAN. All right. Thank you.

Chairman CUMMINGS. Mr. Welch.

Mr. WELCH. Thank you.

One of the most significant events in the last Presidential campaign, of course, was the dump of emails stolen from the Democratic National Committee, dumped by WikiLeaks.

Mr. Cohen, during your opening statement, which was at the height of the election, you testified you were actually meeting with Donald Trump in July 2016 when Roger Stone happened to call and tell Mr. Trump that he had just spoken to Julian Assange. Is that correct?

Mr. COHEN. That is correct.

Mr. WELCH. All right. And you said that Mr. Assange told Mr. Trump about an upcoming—quoting your opening statement—quote, "massive dump of emails that would damage Hillary Clinton's campaign."

So I want to ask you about Roger Stone's phone call to the President.

First of all, was that on Speakerphone? Is that what you indicated?

Mr. COHEN. Yes. So Mr. Trump has a black Speakerphone that sits on his desk. He uses it quite often because with all the number of phone calls he gets.

Mr. WELCH. All right. Now, in January of this year, 2019, the New York Times asked President Trump if he ever spoke to Roger Stone about these stolen emails, and President Trump answered, and I quote, "No, I didn't. I never did."

Was that statement by President Trump true?

145

The chairman suggested you volunteered to come here. You testified that you were asked to come here. Is it correct you were asked to come here, yes or no?

Mr. COHEN. Yes.

Mr. ROY. The combined total of the crimes for which you were sentenced would bring a maximum of 70 years, yes or no?

Mr. COHEN. Yes.

Mr. ROY. Yet you are going to prison for three years, yes or no?

Mr. COHEN. Yes.

Mr. ROY. The prosecutors of the Southern District of New York say: To secure loans, Cohen falsely understated the amount of debt he was carrying and omitted information from his personal financial statements to induce a bank to lend on incomplete information. You told my colleague here today that you did not committee bank fraud.

Not parsing different statutes, which I understand could be only for clarify, are you or are you not guilty of making false statements to a financial institution, yes or no?

Mr. COHEN. Yes, I pled guilty.

Mr. ROY. You said clearly to Mr. Cloud and Mr. Jordan that the Southern District of New York lawyers were being untruthful in characterizing your desire to work in the administration. Do you say again that the lawyers of the Southern District of New York are being untruthful in making that characterization, yes or no?

Mr. COHEN. I'm saying that's not accurate.

Mr. ROY. OK. So you're saying they're being untruthful.

Mr. COHEN. I'm not using the word untruthful, that's yours. I'm saying that that's not accurate. I did not want a role or a title in the administration.

Mr. ROY. I'm sure the lawyers——

Mr. COHEN. I got the title that I wanted.

Mr. ROY. I'm sure the lawyers at the SDNY appreciate that distinction.

Question, you testified today you have never been to Prague and have never been to the Czech Republic. Do you stand behind that statement?

Mr. COHEN. Yes, I do.

Mr. ROY. I offer into the record an article in known conservative news magazine Mother Jones by David Corn in which he says he reviewed his notes from a phone call with Mr. Cohen, and Mr. Cohen said, quote, "I haven't been to Prague in 14 years. I was in Prague for one afternoon 14 years ago," end quote.

Question, you, as my friend Mr. Armstrong rightly inquired, offered to the committee taped information involving clients with the bat of an eye. Do you stand behind that, yes or no?

Mr. COHEN. I'm sorry, I don't understand. You said it so fast.

Mr. ROY. You, as my friend Mr. Armstrong rightly inquired, offered to this committee taped information involving your clients with the bat of an eye. Do you stand behind that offer?

Mr. COHEN. If the chairman asks me, I'll take it under advisement now, and it is not a problem in terms of attorney-client privilege, yes, I will turn it over.

Mr. ROY. You, as my friend Mr. Meadows pointed out, misled this committee even today in a written submission that contra-