**ROGER BENNET ADLER, P.C.**
**COUNSELOR AT LAW**

**233 BROADWAY-STE 2340**
**NEW YORK, N.Y. 10279**

**TEL. (212) 406-0181**
**FAX (212) 233-3801**

January 10, 2020

***Via ECF***
Clerk's Office
U.S. District Court, S.D.N.Y.
c/o United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: United States v. Michael Cohen**
**(18-cr-602 [W.H.P.])**
**(18-cr-852 [W.H.P.])**

Dear Sirs:

Please find attached hereto is Defendant Michael D. Cohen's reply submissions in connection with the above captioned cases. As you will note, it *inter alia* consists of:

(1) Reply Affirmation by Roger Bennet Adler, Esq.
(2) Reply Affirmation by Michael Monico, Esq. (filed under seal)
(3) Reply Affirmation (2) by Defendant Michael D. Cohen (1 filed under seal)

I thank you in advance for the docketing and distribution of the attached reply submissions.

Very truly yours,

Roger Bennet Adler
*Attorney for Defendant Michael D. Cohen*

RBA/gr

Cc:

***Via ECF***
Assistant U.S. Attorney Thomas McKay
c/o United States Attorney's Office

***Via email***
Michael Monico, Esq.

***Via 1st Class Mail***
Mr. Michael D. Cohen
Inmate # 86067-054
c/o Otisville Camp
P.O. Box 1000
Otisville, New York 10963

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

UNITED STATES OF AMERICA,

Plaintiff,

-v.-

MICHAEL COHEN,

Defendant.

---------------------------------------------------------------X

**REPLY AFFIRMATION**

**18-cr-602 (WHP)**
**18-cr-850 (WHP)**

ROGER BENNET ADLER, being an attorney-at-law duly licensed to practice law in the State of New York, and a member of the bar of this Court, makes the following allegations under the penalty of perjury:

1. Your Affirmant is retained post-judgment counsel to the Defendant MICHAEL D. COHEN, an inmate at the Otisville Camp serving a three year term previously imposed on December 12, 2018, and as such is familiar with the facts and circumstances surrounding this case. This Affirmation is respectfully submitted in response to the December 19, 2019 submission by Acting United States Attorney Audrey Strauss (which is noticeably in unsworn form, and which contains no supporting sworn statements by those who either: (a) attended, or (b) supervised the proffer sessions conducted with Defendant COHEN, and his counsel, under a Southern District drafted "Queen for a Day" proffer agreement.

2. We discuss and respond appropriately focusing upon those areas which Your Affirmant deems pertinent to the Court's deciding the overarching, and preliminary question if a hearing is appropriate, mindful that the Acting United States

Attorney, for presumably proper respect for the sanctity of the oath, has elected not to submit any writings which bear this time tested litigative "Good Housekeeping Seal of Approval."

3. Regardless of motivation or perception, just as we have bitterly been reminded that "elections have consequences," so too does the decision to approach a Rule 35(b) application with legal banter unsupported by affidavits or affirmations by (a) prosecutors, or (b) investigators.

4. If Presidential elections are determined by the number of votes garnered in the "Electoral College" (and not merely the "popular vote"), then the decision whether the quartet of defense affirmations, three by lawyers and one by the defendant himself, stand factually unrebutted.

5. They are, we contend, not merely unrebutted, but we additionally urge the Court to draw an unfavorable inference against Plaintiff having failed to "turn out" on the litigative playing field, by submitting sworn responses credibly demonstrating that Defendant COHEN (a) did not cooperate, and (b) did not provide "substantial assistance" to the Government. The chart below summarizes the state of the record:

| **DEFENSE CONTENTION OF COOPERATION & SUBSTANTIAL ASSISTANCE** | |
|---|---|
| **DEFENSE AFFIRMATION** | **GOVERNMENT SWORN OPPOSITION** |
| Michael D. Cohen | None submitted |
| Michael Monico | None submitted |
| Lanny J. Davis | None submitted |
| Roger Bennet Adler | None submitted |

**THE GOVERNMENT'S KNOWINGLY DEFICIENT RESPONSE**

6. Although it is, we submit, undisputed that Defendant MICHAEL COHEN (a) attended multiple proffer sessions, and (b) signed the "standard" S.D.N.Y. "proffer agreement," the United States Attorney's Office has not provided the Court with:

(a) all executed proffer agreements

(b) contemporaneous proffer session notes

(c) post-proffer F.B.I. Agent reports (c.f. March 19, 2019 drafted on February 13, 2019, by an F.B.I. Agent whose name was redacted by the Assistant U.S. Attorney)

(d) the contents of the F.B.I. file generated by Cohen's proffered cooperation

(e) memos, emails, and/or texts between Assistant U.S. Attorney McKay and:

(i) his unit chief

(ii) the Chief of the Criminal Division

7. The afore enumerated documents presumptively all were generated, exist, and all, we contend, have been knowingly suppressed by the United States Attorney's Office from court inspections, consideration, and review. The Court should, against this backdrop, at minimum direct the United States Attorney's Office to provide these materials for the Court's *in camera* review (and mark them for identification for potential appellate review).

8. In the interim, we respectfully urge the Court to draw strong unfavorable inferences against the Plaintiff. The fact that only two heavily *sua sponte*

redacted pages of an F.B.I. report (pages one and six of a twelve page report) is not merely selective, but they reflect what Your Affirmant perceives to be an arrogant view that the opinions of some Assistant United States Attorneys should escape appropriate judicial oversight and review by submitting a sworn document.

9. Counsel for Defendant Cohen vehemently objects to this Justice Department approach, but are not litigatively surprised. This high-handed and professionally arrogant approach is consistent with the Justice Department's willingness to align itself with the Trump Administration.

10. Here, as in 2255 cases, the Court should not dismiss, absent a "clear showing," that the movant's case is (a) palpably incredible, (b) frivolous or (c) false (see *Marchibroda v. United States*, 368 U.S. 487, 496 [1962]; *Fontaine v. United States*, 411 U.S. 213, 215 [1973]; accord. *Chang v. United States*, 250 F. 3d 79, 85 [2nd Cir. 2001]).

11. Where as here the Defendant's claim that he proffered on multiple occasions, and four affirmations support the position that substantial cooperation was provided (and no affidavits or affirmations were submitted in opposition[*]) it would be an abuse of discretion to deny the motion without taking testimony at a hearing.

12. Ordering a hearing is, we submit, the appropriate judicial response to knowing litigative "stonewalling, and is consistent with the long recognized judicial approach to summary judgment under Rule 56 of the Federal Rules of Civil Procedure that "only in the rarest of cases may summary judgment be granted against a party who has not been afforded the opportunity to conduct discovery" (*Association of Car Wash Owners v. City of New York*, 911 F. 3d 74, 83 [2nd Cir. 2018] citing *Anderson v. Liberty*

[*] The requirement that sworn submissions is underscored by case law (see *United States v. Gillette*, 383 F. 2d 843, 848-49 [2nd Cir. 1967]; *Wai v. United States* (125 F. 2d 915 [2nd Cir. 1942] and in the District Court by the late Judge Weinfeld in *United States v. Casanova*, 213 F. Supp. 654, 657 [S.D.N.Y. 1963]).

*Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 [1986] accord. *Sutera v. Schering Corp.*, 73 F. 3d 13, 18 [2nd Cir. 1995]).

13. A preliminary legal question is definitional in focus – does "the Government" include *inter alia*: (a) Congress, (b) the Manhattan District Attorney, or (c) the New York State Attorney General?

14. Your Affirmant respectfully contends that it is a broad and inclusive term. Had the drafters of Rule 35(b) wished to limit identifying the recipient of the proffered cooperation, they could simply have specified "United States Attorney's Office." They didn't (see e.g. *United States v. Korman*, 353 F. 3d 628 [2nd Cir. 2013]; *United States v. Kaye*, 140 F. 3d 86, 87-88 [2nd Cir. 1998]).

15. Accordingly, both as a function of a statutory interpretation with an overlay of the "Doctrine of Lenity" (see *Toussie v. United States*, 391 U.S. 112, 122 [1970]), we submit that the inquiry extends beyond whether Acting United States Attorney Strauss unilaterally declined to acknowledge Cohen's cooperation.

16. Indeed, beyond a recognition that Defendant Cohen meaningfully cooperated with both (a) Special Counsel Robert Mueller, and (b) multiple Congressional Committees, there remains the matter of the late U.S. Representative Elijah Cummings' (D – Maryland) letter to Acting U.S. Attorney Audrey Strauss (exhibit "A"), which (upon both information and belief) has been <u>studiously</u> <u>ignored</u> by both Acting U.S. Attorney Strauss, and her Department of Justice boss, Attorney General William Barr. This letter (as a function of Constitutionally rooted Congressional oversight) appropriately sought to ascertain precisely what the Southern District had undertaken since Michael Cohen testified under oath in Washington, D.C.?

17. We interpret the resulting "sounds of silence" (Simon & Garfunkel) to an attitude of brusque and perceived S.D.N.Y. sovereign independence, best characterized as "never complain, never explain."

18. What we do know, however, is that, with great public fanfare, Michael Cohen's world was demonstrably turned upended when Magistrate issued search warrants seized a veritable trove of documents. At great expense, and the allotment of vast investigative related resources, the Government took possession of documents filtered through then Special Master Hon. Barbara Jones.

19. Alan Weisselberg, the Trump Organization (T.O.) Chief Financial Officer (C.F.O.), received either immunity from prosecution (or a non-prosecution agreement) in exchange for his proffered "cooperation." There is, however, no public record of any such testimony, or allusion to a Grand Jury appearance. We also know that David Pecker, of the "National Enquirer," was similarly handled.

20. We know that the available "proffer notes" of seven proffer sessions preceding Cohen's surrender to Otisville (and one pre-surrender proffer session with Michael Monico, Esq., a former Chicago based Assistant United States Attorney [A.U.S.A.]), has opined that Cohen both cooperated, and, in turn, provided "substantial assistance."

21. The available evidence is clear that, if Defendant Cohen, who, we note, held no formal campaign reporting role or responsibility to report "in kind disbursements," then what is to be said for the Presidential candidate himself, Donald J. Trump, who knowingly paid Cohen, and those like both T.O. C.F.O. Alan Weisselberg, and Donald Trump, Jr., who signed reimbursement checks? What of campaign treasurer Donald McGhann, Esq., and campaign media specialist Ms. Hope Hicks?

22. To the extent that Assistant U.S. Attorney Thomas McKay, and/or others who attended the multiple proffer sessions, presumably took written notes, those notes should be (a) provided to the Court, (b) marked for identification, and (c) reviewed *in camera* to facilitate the Court's evaluation of the Southern District's professed (and unsworn) claim of "non-cooperation."

23. The truth, we submit, is that, in no small measure, Defendant Cohen's proffered cooperation to both (a) the Special Counsel and (b) to the S.D.N.Y. (as well as to the (c) New York County District Attorney and (d) State Attorney General) has been followed by the President's impeachment (and immediate Senate trial), and his payment of a $2 million penalty by order of Supreme Court, New York County for massive charity related fraud involving the Trump Foundation (T.F.).

24. It is painfully clear (in our view) that the Justice Department, under Attorney General William Barr, is publicly aligned with President Trump, and both committed and willing to protect both the President, and "all the President's men" from the peril of a federal grand jury investigation, and the filing of criminal charges.

25. The January 10, 2020 New York Law Journal, in an article by Tom McPartland, "New York City Bar Association Calls for Congressional Probe of A.G. William Barr," reports on a critical January 8th, 2020 letter sent by the City Bar Association, to Congressional Leaders (exhibit "E").

26. We perceive Defendant Michael Cohen as the "collateral damage" of current Justice Department policies, which appear to place personal loyalty to the President over the impartial administration of justice.

27. The S.D.N.Y., we recognize, operates in a sphere of, and under, Justice Department oversight and supervision. Accordingly, that both implicates, and requires

the Court to address the "Office of Legal Counsel" (O.L.C.) memorandum concluding that charging a sitting President for criminal conduct either committed while in office, or preceding taking the Oath of Office, renders the President immune from criminal prosecution.

28. Even though the O.L.C. memo is not a statute, or a product derived from U.S. Supreme Court decision, it appears that the O.L.C. memo has prompted Attorney General Barr to actively obstruct the Manhattan District Attorney Grand Jury investigation in which Defendant Cohen has been an active cooperator.

29. Simply and directly put, we dispute that the fact that because Attorney General William Barr has elected to take an apparently expansive view of the O.L.C. memo (and created cognizable "Presidential Immunity" from all criminal prosecutions [both federally initiated, and by a local District Attorney]), should appropriately blunt, or defeat a defendant whose cooperation with law enforcement bumps up against the O.L.C. memo. No United States Supreme Court has ever, we note, decided a case recognizing "Presidential Immunity."

30. While the S.D.N.Y. points to perceived Michael Cohen testimonial blemishes, few (if any) credible criticisms were incapable of being appropriately addressed by both corroborating (a) documents, (b) witnesses, or (c) emails/text messages.

A. <u>Substantial Assistance</u>

31. While earlier cases like *United States v. Huerta*, 878 F. 3d 89, 93 [2nd Cir. 1989] construe different sections of law (i.e. 18 U.S.C. 3553(e)), Sentencing Guideline 5K1.1. has recognized that, while the prosecution is perceived as "uniquely fit to resolve" (*Huerta*, supra. page 93), it must be evaluated in "good faith."

32. Thus, in *United States v. Ming He*, 94 F. 3d 782, 788 [2nd Cir. 1996], the need to appropriately reduce the danger of prosecutorial overreaching was judicially reaffirmed by Circuit Judge Cardamone.

33. In *He*, the defendant had pled guilty to racketeering charges before the District Judge (now Circuit Judge Raggi). The Court's opinion expressly recognized the Circuit Court's holding that the Courts have "supervisory power" over the administration of federal criminal judges.

34. In *Cohen*, where the focal point of the defendant's cooperation, and the Chief Executive President Donald J. Trump, and the United States Attorney reports to his designated Attorney General William Barr, that exercise of "supervisory power" is manifest.

35. After all, this is no "garden variety" case. Indeed the focal point of Defendant's cooperation and substantial assistance has already been impeached by the House of Representatives, and is on the veritable cusp of a Senate trial.

36. The exercise of "supervisory jurisdiction," much like sunlight being the recognized disinfectant, is particularly called for here where the proffer notes generated by former federal prosecutors (Petrillo and Monico) are a veritable "roadmap" of criminal conduct.

37. That the S.D.N.Y. abruptly "shut down" its investigation may be an internal Justice Department decision, but where a defendant raises more than colorable claims that the decision was infected by favoritism, the right remedy is testimony under oath.

38. Public confidence requires no less. This is a time in which public institutions have been tested, and found wanting. The "Great Disruptor" should not

have his way. We need to be legal enablers any more than those in Germany in 1933 who took an integrity dive when the Nuremberg Laws were enacted

39. At pages 9 to 12 of the Government's unsworn submission, the Government observes that (a) no prosecutions have been brought, and (b) no evidence has been discovered that was used to prosecute others. No one, however, who receives a government paycheck has been prepared to swear to this. It is, we respectfully submit, not surprising, and, like Inspector Clouseau in "The Pink Panther," they knowingly overlook the obvious lead defendant: Donald J. Trump.

40. Defendant Cohen's amply corroborated cooperation has not motivated the United States Attorney to indict (a) Donald J. Trump, (b) Donald J. Trump, Jr., (c) Trump Organization C.F.O. Alan Weisselberg, or (d) Trump Campaign Committee Treasurer Donald McGhann, Esq., even though Defendant Cohen's cooperation provides ample evidence that the two campaign finance counts which Cohen pleaded guilty to are amply pertinent to their conduct.

41. President Trump's campaign did not record (or report) the moneys paid to "Stormy Daniels." This information was known to, and the payments directed by, the then Presidential candidate himself.

42. Could there be any greater substantial assistance than providing a credible basis to prosecute a sitting President? If the Office of Legal Counsel (O.L.C.) memo is viewed as an existing and valid legal impediment to indicting President Trump, it ought not stand as an impediment to evaluating a cooperator's proffered cooperation linking the President's privately held corporation, foundation and co-conspirators. Presidential immunity is limited to the Chief Executive, and is not extended by blood, marriage or loyalty.

43. At page 10, also in an unsworn format, the Assistant United States Attorneys deny acting on political or otherwise improper motives. However, as we amply detailed in our opening motion, sadly, the Attorney General has acted as the President's Roy Cohn, and served on a number of previously referenced occasions to back the President over his own department, including (a) the Special Counsel Robert Mueller Report, and (b) Justice Department Inspector General Michael Horowitz's report.

44. In addition to this, Trump Organization (T.O.) is a named defendant in a civil case pending in Supreme Court, New York County, arising from the Trump Organization's refusal to pay legal fees, even though two of the nine counts in the Information clearly involve reimbursement of the T.O.'s legal counsel.

B. Assistance to Congress and Local Law Enforcement

45. In our opening motion, we noted the plethora of both Congressional Committees, and State Prosecutor's Offices to whom Michael Cohen provided cooperation. The Government has not disputed the nature (or extent) of that cooperation, but rather perceives it to be essentially legally irrelevant. We respectfully disagree.

46. Any review of the cases cited at pages 12 to 13 of the Government's memorandum discloses that the United States Supreme Court has not weighed in on defining the term "the Government." For Rule 35 purposes, however, as footnote 11 on page 13 notes, the cooperation to a prosecutorial agency other than the United States Attorney's Office for the Southern District of New York, has already been recognized by the Second Circuit as a proper sentence impacting event (see *United States v. Kaye*, 140 F. 3d 86 [2nd Cir.]).

47. Additionally, none of the cases cited on page 12 of the Government's memorandum involve cooperation with that co-equal branch of "the Government" denominated "the Congress." The "Government" is not (as a matter of civics) limited, we submit, to the local United States Attorney's Office. If it was as myopic as this, the Rule would, we submit, have used the phrase "United States Attorney." It doesn't.

48. The Government cites *United States v. Difeaux*, 163 F. 3d 725, 728 [2nd Cir. 1998] and *United States v. Ming He*, supra. Any review of these two cases, however, starts with the recognition that neither of them involve (or address) applications predicated upon a Federal Rule of Criminal Procedure Rule 35*, or assertions that the Government breached an existing "cooperation agreement" (see e.g. Government "Memorandum of Law" at page 8, footnote 8; *United States v. Brechner*, 99 F. 3d 96, 99 [2nd Cir. 1996]).

## FIRST STEP ACT

49. Finally, regarding our discussion concerning the "First Step Act" (F.S.A.), and a sentence modification to "home confinement," the reference to the F.S.A. was simply to place in legal context the applicability of the F.S.A. on a 36 month imposed sentence. Any F.S.A. application (which this is not) will be made at a later time. We simply referenced the F.S.A. to indicate that, if the Court were somehow disinclined to reduce the sentence, then we alternatively sought a suggested a modest sentence modification to "home confinement" (as a function of sought Rule 35 relief).

---

* We do not dispute that applications under Sentencing Guideline Section 5 K1.1. and 18 U.S.C. 3553(e) require an application to the Court for a "downward departure" from the Sentencing Guidelines calculations.

## CONCLUSION

WHEREFORE, we respectfully pray that the motion be GRANTED, to the extent of ordering a hearing.

Dated: New York, New York
January 10, 2019

Roger B. Adler
*Attorney for Defendant MICHAEL COHEN*