UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————X

UNITED STATES OF AMERICA,

                Plaintiff,

      -v.-

MICHAEL COHEN,

                Defendant.

————————————————————X

**REPLY AFFIRMATION**

**18-cr-602 (WHP)**
**18-cr-852 (WHP)**

MICHAEL COHEN makes the following allegations under the penalty of perjury:

1. This reply affirmation is respectfully submitted in response to the December 19th, 2019 legal memorandum filed by Acting United States Attorney Audrey Strauss.

2. The Southern District of New York's (S.D.N.Y.) continued "character assassination" of Affirmant lacks relevance to Your Honor's basis for providing relief pursuant to this Rule 35 motion. Instead of focusing on the extensive cooperation provided <u>since</u> sentencing (which Your Honor raised during the proceeding), the prosecution is attempting to retry the case using innuendo, conjecture, and inaccurate opinions as a basis for urging the Court's denial of the pending motion.

3. The United States Attorney's Office (for whatever reason) stubbornly refuses to both acknowledge (and appropriately credit) the (b) breadth, (b) scope and (c) relevance of the more than one hundred seventy (170) hours of testimony provided by

Your Affirmant, to nine separate governmental agencies. The United States Attorney for the Southern District of New York is the only entity which continues to repeatedly disparage Affirmant's character, and veracity.

4. It is, Your Affirmant respectfully submits, irrefutable that Affirmant appeared voluntarily before the following governmental agencies, and provided relevant and useful information and cooperation:

(a) S.C.O.: Special Counsel's Office,

(b) S.P.S.C.I.: Senate Permanent Select Committee on Intelligence,

(c) H.P.S.C.I.: House Permanent Select Committee on Intelligence,

(d) House "Oversight Committee,"

(e) New York State Attorney General's Office,

(f) New York State Department of Taxation and Finance,

(g) House Judiciary Committee,

(h) United States Attorney, Southern District of New York,

(i) New York District Attorney's Office

5. The Southern District U.S. Attorney claims that there is no discernible partisanship in its refusal to offer Your Affirmant an opportunity to proffer, and, in its opposition, to recognize the extensive cooperation provided to multiple federal, state and local governmental agencies. It, however, bases its proffered inability to use Affirmant, claiming it does not perceive me to be a "credible witness." While testimonial inconsistencies are not uncommon (and frequently reflect testimonial candor and a focus on corroboration), for the local U.S. Attorney, like collegiate sports, it is "one and done."

6. It is useful to consider others who have targeted Affirmant in this manner. Who else made these statements? President Trump did, by attempting to denominate Your Affirmant as a convicted liar. Republican members of the House Oversight Committee did during open testimony as well, with the two most aggressive being Congressman Jim Jordan, and Congressman Mark Meadows. Birds of a feather...

7. There is no change in Affirmant's position regarding taxes and bank misrepresentation (see sentencing memorandum pages 13-19).

### **EXTENSIVE COOPERATION**

<u>United States Attorney</u>

8. Assistant U.S. Attorneys McKay and Roos attended most of Special Counsel Robert Mueller's office meetings. Post-sentencing, two additional meetings were conducted, during which the following topics and entities were addressed:

    (a) Trump insurance fraud claims

    (b) Trump's accretion of <u>public space</u>* at 725 Fifth Avenue without New York City government approval

    (c) "Hush money" payments to former love interests

    (d) Trump charitable foundation (misuse of assets and perjurious 990 forms)

    (e) Robert "Bob" Costello, and Rudolph Giuliani text messages reflecting attempts to gain access to Your Affirmant's case as a "back door" to providing President Trump with information

---

* Upon information and belief, the Trump Organization was granted additional building rights in exchange for constructing and maintaining "public space." The city was neither notified, nor appropriately compensated for the surreptitious and continuous taking of valuable public space on Fifth Avenue.

(f) "Trump Inaugural Committee," and the inability to account for $80 million in raised funds

9. The subject of medallion taxi cabs and Taxi and Limousine Commission (T.L.C.) licensed vehicles was addressed. Affirmant provided documents demonstrating how Evgeniy "Gene" Friedman knowingly stole more than $30 million of M.T.A. and T.L.C. surcharges, using "debit cards," funneling money to (a) himself, (b) his girlfriend, (c) friends, and (d) Friedman family members (including his 14 year-old son), by taking money from drivers, and diverting it to these cards.

10. Despite these and other areas, many topics were either dropped (including the "hush money" claim), or simply ignored.

### **ACTING U.S. ATTORNEY STRAUSS' REPLY**

Factual Background

11. The very first line is inaccurate. The charges were from 2012 through 2016, not 2017. In 2017, Your Affirmant, in fact, paid over $2 million in taxes.

12. Your Affirmant never "misrepresented himself" to banks in order to obtain financing. The terms Affirmant received on loans were non-preferential "standard rates."

13. Your Affirmant was not the Trump Campaign "Treasurer," nor held a position requiring the reporting of "in kind" political contributions to the Federal Election Commission. Vendors don't report, recipients do.

Post-Sentencing Attempts to Cooperate With the S.D.N.Y., and Public
Statements

14. The statements which Affirmant made are consistent with the Petrillo sentencing memorandum, which referred to the failure to pay on all income during the 2012 to 2016 tax years (pages 13 to 19).

15. The United States Attorney omits that Affirmant provided it with the identity of an attorney, Orin Snider, Esq., who prepared a two page memo for President Trump explaining why Your Affirmant should be designated as President Trump's "personal attorney," specifically noting the ability to appropriately protect President Trump from lingering issues, providing "attorney-client privilege." This position would have afforded Affirmant continued access to President Trump, whenever needed to both discuss, and address personal legal issues which might arise.

16. President Trump frequently asked Your Affirmant, on numerous occasions, what role in his administration he wanted. A position was offered under Donald McGhann, Esq. as assistant to White House counsel. However, as explained by Orin Snider, Esq., there would be no attorney-client privilege, neither of us would work for President Trump (we would be working for the United States Government), and if anything were to be deemed inappropriate, there would be no basis to refuse the Department of Justice (D.O.J.) the information and/or documents.

17. As the individual who (a) began the Trump Presidential campaign in both 2011 and 2015, (b) acted as the President's "fiercest surrogate," and (c) protected his and family's interests for a decade, Your Affirmant believes it would have been nice to have been named as someone President Trump was considering for a position. What

Your Affirmant truly wanted was the position which he received. There was no perceived shame to being President Donald J. Trump's "personal attorney."

18. Your Affirmant was also named Vice Chair of the R.N.C. Finance Committee, despite being a registered Democrat at the time, affording Your Affirmant with yet another significant role with, and for, President Trump.

19. Because Affirmant understood President Trump in a way few others did, Affirmant was immediately sought after the election by both individuals, and companies, which was why he established "Essential Consultants."

19. Concerning the tax issues, Affirmant:

(a) never filed a late tax return until 2017,

(b) had never been audited,

(c) filed an over 1,500 page tax return,

(d) hired a certified public accountant (C.P.A.), Getzel, to reconcile all accounts, and complete and file both personal and corporate tax returns,

(e) provided highly organized (and detailed) bank statements reflecting every deposit were provided to the tax preparer,

(f) all moneys were deposited into local banks, predominantly a branch of "Capital One" located in the same building he resides in,

(g) never engaged in overseas business,

(h) never had an overseas bank account,

(i) never issued false bank wires

<u>Home Equity Line of Credit (Charge 6)</u>

20. The Home Equity Line of Credit (H.E.L.O.C.) charge (misstatement to a bank to obtain a mortgage) is by far the most disturbing claim in the United States Attorney's response. H.E.L.O.C.s are granted when an individual has equity in their home greater than the value of the H.E.L.O.C., plus any existing mortgages. It is, essentially, a "line of credit," predicated on the home's equity (not other facts).

21. In Your Affirmant's case, based off of three (3) bank appraisals, he had 80% equity in the property, as well as existing accounts with the same bank (First Republic Bank), with balances greater than the mortgage plus H.E.L.O.C. It should also be noted that there has never been an economic loss sustained by any person or institution caused by Your Affirmant in his more than 25 years in business.

22. Moreover, Your Affirmant recognized the error made regarding the unreported income, accepted the I.R.S. agent revenue report identifying the delinquent tax amount, and paid in full said amount prior to Your Affirmant's sentencing date.

WHEREFORE, Affirmant respectfully prays that the motion be granted, and a hearing ordered.

Dated:     Otisville, New York
           January 10, 2020

                                        /s/Michael D. Cohen
                                        Michael D. Cohen