## ROGER BENNET ADLER, P.C.
## COUNSELOR AT LAW

233 BROADWAY-STE 2340
NEW YORK, N.Y. 10279

TEL. (212) 406-0181
FAX (212) 233-3801

*Via ECF*

March 17th, 2020

Hon. William H. Pauley
U.S. District Court, S.D.N.Y.
c/o United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: United States v. Michael Cohen**
   **(18-cr-602 [W.H.P.])**
   **(18-cr-852 [W.H.P.])**

Dear Judge Pauley:

I write to you as a followup to my March 9th letter, and Chief Judge Colleen McMahon's directive addressed to court protocols to be followed in the Southern District as a consequence of the coronavirus epidemic.

This letter seeks to focus my pending application on a sentence modification as a consequence of the Bureau of Prisons being demonstrably incapable of safeguarding and treating B.O.P. inmates who are obliged to live in close quarters and are at an enhanced risk of catching coronavirus.

Turning to the merits of the pending Rule 35 application, I urge the Court to consider my client's exposure to the coronavirus, and grant the Rule 35 motion to the extent of modifying the previously imposed 36 month sentence to be served on home confinement.

I attach some thoughtful commentary from the blog "Sentencing Law and Policy." In the absence of Presidential leadership, judges should act thoughtfully and decisively. President Trump apparently does not subscribe to President Harry Truman's observation "The buck stops here."

Very truly yours,

Roger Bennet Adler
*Attorney for Defendant Michael D. Cohen*

RBA/gr

Cc:

**<u>Via email</u>**
Assistant U.S. Attorney Thomas McKay
Michael Monico, Esq.
Mr. Michael Cohen

# SENTENCING LAW AND POLICY
An Affiliate of the Law Professor Blogs Network

**Blog feedback & suggestions**

BLOG OWNER

Douglas A. Berman

Newton D. Baker-Baker & Hostetler Chair in Law

Moritz College of Law at The Ohio State University

Director, Drug Enforcement and Policy Center

Email Me

SSRN Profile & Disclosure

OSU Faculty Bibliography

Scholarship on SSRN

C.V.

SSRN Author's Page



Search

MY OTHER BLOGS

Marijuana Law, Policy and Reform

Criminal Law Course @ Moritz College of Law

Law School Innovation

Death Penalty Course @ Moritz College of Law

Legislation Course @ Moritz College of Law

Sentencing Courses @ Moritz College of Law

The ISRN Blog

## Monday, March 16, 2020

### When and how will federal authorities start systematically modifying federal sentencing and prison realities in response to COVID-19 outbreak?

I have previously already blogged here (March 3) and here (March 12) and here (March 13) on the potential impact of the coronavirus on prisons and jails, but it seems the world changes a few dozen times each day when it comes to this global pandemic. And now it is obvious that sentencings and prisons are already being impacted dramatically, with this Crime Report piece providing just some of the details. The piece is headlined "Corrections Authorities Eye Inmate Release, Halts in Visits, to Prevent Virus Spread," and here are excerpts:

> Authorities have begun focusing on America's overcrowded prisons and jails — environments where "social distancing" can be problematic — as critical danger points for the spread of Covid-19. Actual infections and fear of the coronavirus have begun to grind the scales of justice to a halt in pockets of the U.S. under states of emergency as judges and lawyers struggle to balance the constitutional rights of defendants against the concerns that the public institutions could unwittingly become contamination sites, CNN reports.
>
> "The whole system is coming to a halt," said New York City criminal defense lawyer Gerald Lefcourt. "I'm sure everybody is wait-and-see at the moment," he added, saying he wouldn't be surprised if prosecutors and defense lawyers seek to resolve cases outside of a trial, either through plea bargains or dropped cases....

LINKS & RESOURCES

US Department of Justice

US Sentencing Commission

Administrative Office of the US Courts, Department of Program Services, Defender Services Office

State Sentencing Commissions

The Sentencing Guidelines Resource Center

Council on Criminal Justice

Death Penalty Information Center

The Sentencing Project

Families Against Mandatory Minimums

Justice Policy Institute

Justice Strategies

Justice Research and Statistics Association

Right on Crime

Vera Institute of Justice, Center on Sentencing and Corrections

Pew Public Safety Performance Project

Prison Policy Initiative

Collateral Consequences Resource Center

National Inventory of Collateral Consequences of Conviction

The Crime Report

The Marshall Project

Campaign for the Fair Sentencing of Youth

**MY BOOKS & JOURNALS**



Sentencing Law & Policy (4th ed. Wolters Kluwer 2018)



Federal Sentencing Reporter

Past FSR Articles



Ohio State Journal of Criminal Law

**FIND LAW PROFESSORS**

Google Scholar

In Ohio, dozens of inmates were released from jail sooner than expected to help reduce the population inside the Cuyahoga County jail, as a way to minimize potential virus outbreaks inside jails. The Ohio county judges held a rare court session to hear cases involving low-level, non-violent offenders on Saturday, according to Channel 11 News. Some 38 inmates were released from the Cuyahoga County jail after they appeared in court.

In Michigan's Kent County, bond and sentence modifications are being discussed to allow some inmates to be released. "We are taking precautions, like everyone else, and making arrangements to deal with what is presented to us," Kent County Sheriff Michelle LaJoye-Young told ABC 13.

And in Minnesota, the state's public defender recommened that nonviolent offenders should be released from jail because of the threat of coronavirus. "I am no doctor, but I think it's better for them to be on quarantine at home," said Bill Ward told the Pioneer Press on Sunday. "The request is to treat them humanely." Two jails in southern Minnesota have each had one inmate with a confirmed case of the disease, Ward said. Diseases from the common cold to the flu spread more quickly in prisons — so coronavirus poses a greater risk for inmates.

Efforts to limit the spread of disease in the nation's corrections systems also included suspending or curtailing visits to prisoners.

This new *New York Times* commentary effectively details why many working in the criminal justice arena have been thinking about this issue for some time already. The extended piece should be read in full, and its full headline highlights the themes: "An Epicenter of the Pandemic Will Be Jails and Prisons, if Inaction Continues: The conditions inside, which are inhumane, are now a threat to any American with a jail in their county — that's everyone." Here are passages:

**CRIMINAL LAW BLOGS**

California Corrections Crisis
Crime and Consequences
Crime in America
Crime in the Suites
CrimLaw
CrimProf Blog
DUI Blog
Federal Criminal Appeals Blog
Grits for Breakfast
Mental Disability Blog
Ninth Circuit Blog
Pardon Power
Right on Crime Blog
Sidebars
Simple Justice
Sentencing Blog
Solitary Watch
TalkLeft
The Appeal
White Collar Crime Prof
Wrongful Convictions Blog

**DEATH PENALTY BLOGS**

Death Penalty News
HandDown Texas Prisons

**MARIJUANA REFORM BLOGS**

Canna Law Blog
Cannabis Law Prof Blog
Marijuana Law, Policy, and Authority

In America's jails and prisons, people share bathrooms, laundry and eating areas. The toilets in their cells rarely have lids. The toilet tank doubles as the sink for hand washing, tooth brushing and other hygiene. People bunked in the same cell — often as many as four — share these toilets and sinks. Meanwhile, hand sanitizer is not allowed in most prisons because of its alcohol content. Air circulation is nearly always poor. Windows rarely open; soap may only be available if you can pay for it from the commissary.

These deficiencies, inhumane in and of themselves, now represent a threat to anyone with a jail in their community — and there is a jail in every county in the United States. According to health experts, it is not a matter of if, but when, this virus breaks out in jails and prisons. People are constantly churning through jail and prison facilities, being ushered to court hearings, and then being released to their communities — nearly 11 million every year.

"We should recall that we have 5,000 jails and prisons full of people with high rates of health problems, and where health services are often inadequate and disconnected from the community systems directing the coronavirus response," said Dr. Homer Venters, former chief medical officer of the New York City jail system. "Coronavirus in these settings will dramatically increase the epidemic curve, not flatten it, and disproportionately for people of color."

Jails are particularly frightening in this pandemic because of their massive turnover. While over 600,000 people enter prison gates annually, there are about 612,000 people in jail on any given day. More than half of the people in jail are only in there for two to three days. In some communities, the county jail or prison is a major employer. Jail staff members are also notoriously underpaid, may not have paid sick leave and are more

TOPICAL ARCHIVE

NEWS READERS & FEEDS

Subscribe me!

THE SOFTWARE

likely to live in apartments, in close and frequent contact with neighbors. They return home daily to aging parents, pregnant partners or family members with chronic conditions.

Our penal system should have received more comprehensive guidance and material support from the Department of Justice, far earlier in this crisis. Like much of the federal level response, it is falling short....

American officials can learn from the harrowing story of South Korea's Daenam Hospital. In late February, South Korea had already reported more than 3,150 confirmed cases, and of these, 101 were from patients in the Daenam psychiatric ward. Seven of these patients have now died. All but two patients in the ward contracted Covid-19. The ward was put on lockdown, in an attempt to confine the spread of the virus. Instead, the lockdown issued was a death sentence to many inside....

Aging people who are released after serving long sentences have a recidivism rate close to zero. Governors and other public officials should consider a one-time review of all elderly or infirm people in prisons, providing immediate medical furloughs or compassionate release to as many of them as possible.

Though this *NY Times* commentary makes a pitch to "Governors and other public officials," I strongly believe criminal justice advocacy groups should be focusing advocacy now toward President Trump, Congress and federal judges. For starters, if the federal government leads with a strong proactive response, many states and localities are likely to follow suit. And it seems there are plenty executive branch tools already available under current law ranging from (mass) clemency relief for older and at-risk prisoners, to the Justice Department and the Bureau of Prisons (BOP) recommending (mass) compassionate release or release to home confinement for older and at-risk folks or perhaps for everyone who has served, say, 75% of their prison time.

(4)

Congress can and should get involved ASAP by enacting emergency legislation that could, for example, give BOP discretion to release any and every prisoner that has been scored at low-risk under the FIRST STEP Act's new risk tools. Or, perhaps better yet, Congress could authorize the creation of a new "emergency agency" tasked with immediately devising the most effective and humane and just way to reduce the number of persons, in both the federal system and in state systems, now seemingly subject to having a jail or prison sentence turned into a possible death sentence by COVID-19.

Federal judges can and should be proactive here as well. In addition to re-calibrating their 3553(a) sentencing analysis given the ugly new reality of prison life, judges should *sua sponte* reconsider any and all past denied compassionate release motions because times surely have changed. I think every single federal prisons has an argument that the coronavirus has created ""extraordinary and compelling reasons" that warrant a sentence reduction, and I wonder if anyone has thoughts about seeking a national class action on behalf of all federal prisoners under the statutory provisions of 18 U.S.C. § 3582(c)(1)(A) in order to at least establish a baseline of eligibility for sentence modifications.

I could go on and on, and I likely will in some coming posts. But the title of this post asks "when and how" not "if" our normal rules will change because I sense some federal judges and prison officials are already working on COVID responses in various scattered ways -- in part because everyone realizes that it is essential for the health of federal prison workers, as well as for prisoners, for there to be smart efforts to reduce prison populations amidst this global pandemic. At some point, these scattered efforts will become a systematic plan, I sure hope that happens sooner rather than later.

Prior coronavirus posts:

- Connecting realities of incarceration to the outbreak of coronavirus
- Rounding up more coverage of the frightening intersection of incarceration and the coronavirus
- Eager for stories and thoughts on the impact of the coronavirus on criminal justice, crime and punishment

March 16, 2020 in Criminal justice in the Trump Administration, Impact of the coronavirus on criminal justice, Prisons and prisoners, Sentences Reconsidered, Who Sentences | Permalink | Comments (0)

-7-

February 25, 2020



≡ Account Menu                Welcome, Guest



≡ Main Menu

## A Message to All 2020 IditaRiders

Posted by Diane Johnson in Iditarod
Date: January 18, 2020 7:51 am

**Hello IditaRiders!**

You will soon be headed down the trail for an 11 mile ride at the Start of the 2020 Iditarod on Saturday, March 7. Congratulations on being a 2020 IditaRider!

First, a big thank you to all bidders who participated in this year's auction. Your donation to the race is very important! Thanks so very much! AND congratulations to those who won their bids. We know that the 2020 IditaRiders will have an amazing time!

\* **VERY IMPORTANT INFORMATION FOR RIDERS:** You were sent you a link to a survey that provides us with essential information we need to know prior to your ride. If you did not receive that email, please contact Diane Johnson. (djohnson@iditarod.com or call 605.290.3423.)

We also need you to provide us with ONE other document. If you have not provided this to us, click here to view the document, then print this document, sign it, and get to us in one of these ways:  1. Scan and email to Diane  2. Fax to: 907-373-6998  3. Bring to the Friday mandatory meeting. We must have this document in order for you to ride on Saturday. No document, no ride. Thanks for taking care of this as soon as you can!

## Special Events:

- **Thursday, March 5, at noon:** Meet your musher for a Pizza Lunch Meet and Greet held in your honor on the 3rd Floor, Lakefront, Anchorage Hotel, our race Anchorage Headquarters. Plan on arriving around 11:30 AM. Lunch is about an hour.

- **Thursday, March 5:** Musher Drawing Banquet, Dena'ina Center, Downtown Anchorage. If you wish to attend, you can purchase banquet tickets by clicking here.