*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 23, 2020

**BY ECF**
The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    <u>*United States v. Michael Cohen*</u>**, 18 Cr. 602 (WHP)**

Dear Judge Pauley:

    The Government writes in response to defendant Michael Cohen's letter, dated March 17, 2020, which seeks his release from prison to home confinement in light of the Bureau of Prison's alleged inability to protect inmates from COVID-19. Cohen's cursory submission fails to offer any factual support for his claim or any legal basis upon which his motion could be granted.

    By way of background, Cohen is serving a 36-month sentence, based on his convictions for tax evasion, false statements to a financial institution, and campaign finance crimes. He surrendered to BOP custody on or about May 6, 2019, and is serving his sentence at the minimum security satellite camp at Otisville FCI. His current projected release date is November 22, 2021. On December 11, 2019, Cohen filed a motion to reduce his sentence, pursuant to Federal Rule of Criminal Procedure 35, based on his purported substantial assistance to the Government. The Government has opposed that motion, which is currently pending before this Court.

    Cohen's motion is premised on his claim that the BOP is "demonstrably incapable of safeguarding and treating B.O.P. inmates." Cohen offers nothing beyond that bare assertion in support of his claim, which is belied by publicly available information about the BOP's significant efforts to prepare to respond, should there in fact be any cases of COVID-19 at the facility where Cohen is housed.  In particular, since at least October 2012, BOP has had a Pandemic Influenza Plan in place. *See* BOP Health Management Resources, available at https://www.bop.gov/resources/health_care_mngmt.jsp. Moreover, beginning approximately two months ago, in January 2020, BOP began to plan specifically for coronavirus/COVID-19 to ensure the health and safety of inmates and BOP personnel.  *See* Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid- 19.jsp.  As part of its Phase One response to coronavirus/COVID-19, BOP began to study "where the infection was occurring and best practices to mitigate transmission." *Id.*  In addition, BOP stood up "an agency task force" to study and coordinate its response to coronavirus/COVID-19, including using "subject-matter experts both internal and external to the agency including guidance and directives from the [World Health Organization (WHO)], the [Centers for Disease Control and Prevention

(CDC)], the Office of Personnel Management (OPM), the Department of Justice (DOJ) and the Office of the Vice President. BOP's planning is structured using the Incident Command System (ICS) framework." *Id.*

On Friday, March 13, 2020, BOP, after coordination with DOJ and the White House, implemented its Phase Two response "in order to mitigate the spread of COVID-19, acknowledging the United States will have more confirmed cases in the coming weeks and also noting that the population density of prisons creates a risk of infection and transmission for inmates and staff." *Id.* BOP's national measures are intended to "ensure the continued effective operations of the federal prison system and to ensure that staff remain healthy and available for duty." *Id.* For example, BOP (a) suspended social visits for 30 days (but increased inmates access to telephone calls); (b) suspended legal visits for 30 days (with case-by-case accommodations); (c) suspended inmate movement for 30 days (with case-by-case exceptions, including for medical treatment); (d) suspended official staff travel for 30 days; (e) suspended staff training for 30 days; (f) restricted contractor access to BOP facilities to only those performing essential services, such as medical treatment; (g) suspended volunteer visits for 30 days; (h) suspended tours for 30 days; and (i) generally "implement[ed] nationwide modified operations to maximize social distancing and limit group gatherings in [its] facilities." *Id.* In addition, BOP has implemented screening protocols for both BOP staff and inmates, with staff being subject to "enhanced screening" and inmates being subject to screening managed by its infectious disease management programs. *Id.* As part of BOP's inmate screening process, (i) "[a]ll newly-arriving BOP inmates are being screened for COVID-19 exposure risk factors and symptoms"; (ii) "[a]symptomatic inmates with exposure risk factors are quarantined; and (iii) "[s]ymptomatic inmates with exposure risk factors are isolated and tested for COVID-19 per local health authority protocols." *Id.*

Cohen has offered no evidence or argument as to why these measures are insufficient, other than his conclusory assertion to the contrary. Morever, Cohen has not even attempted to argue that he is uniquely at risk as compared to other inmates. Nor could he: He is 53 years old and in good health. (PSR ¶¶ 135). As such, Cohen's claim applies equally to *every* inmate in the BOP's care (or at least every non-violent inmate).

Furthermore, Cohen has offered no valid legal basis upon which his claim might be granted. He appears to seek to attach his request for relief to his pending Rule 35 motion, claiming that the Court should "consider [his] exposure to the coronavirus, and grant the Rule 35 motion." But Rule 35 grants relief only to a defendant who has "provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). For the reasons stated in the Government's prior submission opposing Cohen's Rule 35 motion, Cohen has not done so. (*See* Dkt. 58 ("Gov't Br.")). Cohen offers no authority for the proposition that a Rule 35 motion may be granted based on alleged health risks, nor is the Government aware of any.

Nor is there any other valid legal basis supporting Cohen's claim. Cohen's only other effort to support his request is a blog post recommending that judges "*sua sponte* reconsider any and all past denied compassionate release motions" and speculating that federal inmates should bring a class action lawsuit. But Cohen has not moved for compassionate release, likely because he is manifestly ineligible for it and, in any event, has not exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

For these reasons, Cohen's request should be denied.

> Respectfully submitted,
>
> AUDREY STRAUSS
> Attorney for the United States,
> Acting Under Authority Conferred by
> 28 U.S.C. § 515
>
> By: _____
> Thomas McKay / Nicolas Roos
> Assistant United States Attorneys
> (212) 637-2200

cc: Counsel of Record (by ECF)