IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:19-03022-CR-RK |
| | ) | |
| ROY L. NOREY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DENYING MOTION TO SUPPRESS

Before the Court are Defendant Roy L. Norey's objections (Doc. 40) to the Report and Recommendation of Chief United States Magistrate Judge David P. Rush (Doc. 39), who has recommended denying Defendant's motion to suppress (Doc. 23). After careful consideration, the Court **OVERRULES** Defendant's objections; **ADOPTS** all of Judge Rush's Report and Recommendation except Part II(A); and **DENIES** the motion to suppress.

### Discussion

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court also "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court has discretion to review issues not raised in an objection to the Report and Recommendation. *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Judge Rush concluded in Part II(A) of the Report and Recommendation that there was no substantial basis to find probable cause to support a warrant to search Defendant's home for drugs and other contraband. Judge Rush still recommended denying the motion to suppress, however, on the ground that the police relied on the warrant in good faith under *United States v. Leon*, 468 U.S. 897 (1984). He also rejected Defendant's argument that police deliberately or recklessly falsified information in the warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant now objects to Judge Rush's application of *Leon* and *Franks*. The Court will address these issues and also Judge Rush's analysis of probable cause, with which the Court respectfully disagrees.

## I. Probable Cause to Support the Warrant

The task of a warrant-issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As Judge Rush recognized, this Court does not review the probable cause determination *de novo*. *Id.* at 236. The Court considers only whether the warrant-issuing judge "had a substantial basis for concluding that probable cause existed." *Id.* (cleaned up). Review is also confined to the information in the four corners of the affidavit that was before the issuing judge, assuming that was all he or she considered. *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014).

In the Eighth Circuit, there is no per se rule that probable cause to arrest a drug trafficker is probable cause to search his or her home. *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). This is unlike various other circuits, which hold that a warrant-issuing judge may reasonably infer that evidence is likely to be found where a drug dealer lives. *Id.* Nonetheless, the Eighth Circuit has found probable cause to exist in cases in which (1) "officers have stated that in their experience such an inference is appropriate" and (2) "a supporting affidavit also described a defendant's continuous course of drug trafficking activity." *Id.*

Both circumstances are present in this case. Detective Brad Nicholson wrote the warrant affidavit. He testified at the suppression hearing that, "based on [his] training and experience, [it is] common for individuals involved in trafficking controlled substances to keep evidence of that trafficking in their homes." (Doc. 35, Tr. at 6.) The warrant affidavit also described a continuous course of drug trafficking activity by Defendant, which is paraphrased as follows:

- A reliable confidential informant told Detective Nicholson that a male was selling large amounts of heroin and marijuana in the Springfield, Missouri area.

- The confidential informant "indicated a male identified as Roy Norey was getting large quantities of heroin from Chicago and distributing the heroin in the Springfield area."

- The confidential informant "indicated Norey was distributing the controlled substances from" an address on College street.

- The confidential informant had "been proven truthful and reliable in the past;" his or her information had been "corroborated through follow-up investigations;" and he or she had "provided information in the past that ha[d] led to numerous heroin seizures."

- Detective Nicholson surveilled the College address for several months and stopped two vehicles leaving the address. From these stops, police recovered marijuana, a digital scale, and a large amount of counterfeit money.

- On December 23, 2018, there was a shooting at the College address. Police obtained a different search warrant for the College address and seized firearms, marijuana, pills, and "suspected heroin."

- On January 2, 2019, Detective Nicholson conducted surveillance at "Roy Norey's apartment" located at an address on Montclair.

- Detective Nicholson stopped Defendant after observing him leave the Montclair apartment. During the traffic stop, Detective Nicholson could smell a strong odor of marijuana emanating from the vehicle. Defendant admitted to recently smoking marijuana, and Detective Nicholson seized a baggie of marijuana from Defendant's jacket.

- Detective Nicholson performed a city utilities check, which showed Defendant and Natasha Norey as "the account holders" for the Montclair apartment.[1]

- A criminal history check on Defendant showed entries for Unlawful Use of a Weapon, Possession of Cannabis, Delivery of a Controlled Substance, and Domestic Battery.

(Doc. 27-1 at 3-8.)

Judge Rush concluded that this was insufficient to provide the warrant-issuing judge with a substantial basis to search the Montclair apartment for contraband, primarily because the police did not observe any drug transactions at the Montclair apartment. The Court respectfully disagrees because it was apparent Defendant resided there and the confidential informant provided sufficient information to conclude that Defendant was engaging in a continuous course of drug trafficking. *See United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.") (quotation marks and citation omitted).

Specifically, the confidential informant told police Defendant was dealing "large quantities of heroin and marijuana" in the Springfield area. Police had uncovered marijuana and suspected heroin from the College address during a raid 10 days before, and Defendant admitted to recently smoking marijuana when he was pulled over after leaving his home at the Montclair apartment.

---

[1] This turned out to be inaccurate with respect to Defendant. Only Natasha Norey was an accountholder at the Montclair apartment. This misstatement will be discussed below but is irrelevant to the issue before the Court at this juncture, which is whether the warrant affidavit provided a substantial basis to support probable cause.

3

From this, the warrant-issuing judge could reasonably infer that Defendant had been storing drugs there. *See United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence.").

Although this issue presents a close call, and this Court might not have found probable cause to support the search warrant *de novo*, the Court believes the facts alleged in the warrant affidavit provide a substantial basis to find probable cause under the deferential standard set out by the Supreme Court. *See Gates*, 462 U.S. at 240 (an issuing judges is free to draw "reasonable inferences . . . from the material supplied to him by applicants for a warrant" or "refuse to draw them if he is so minded").

## II. Good Faith under *Leon*

Even if there was no substantial basis in the warrant affidavit to find probable cause, the Court agrees with Judge Rush that the police acted in good faith under *Leon*'s exception to the Fourth Amendment exclusionary rule. Under *Leon*, "[e]vidence obtained in violation of the Fourth Amendment is admissible if the officers executing an invalid search warrant did so in good faith." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702 (8th Cir. 2017). The test is whether, under "the totality of the circumstances, including any information known to the officer but not presented to the issuing judge," the police had "an objectively reasonable belief in the existence of probable cause." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (cleaned up). *Leon* also identified four circumstances in which an officer's reliance on a warrant is not in objective good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Id.* (emphasis removed).

### A. Misstatement in the Warrant Affidavit under *Franks*

The Supreme Court stated in *Leon* that "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the

4

truth." *Leon*, 468 U.S. at 923 (citing *Franks*, 438 U.S. 154). To obtain relief under *Franks*, the defendant must show that (1) the affiant knowingly and intentionally made a false statement or made a false statement with reckless disregard for the truth, and (2) if the false information is excised, the affidavit no longer establishes probable cause. *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020). The Court will address both elements in reverse order.

Defendant's *Franks* challenge fails, primarily, because the warrant affidavit would have established probable cause even without the misstatement. The warrant affidavit would still contain sufficient facts to link Defendant to both a continuous course of drug trafficking and to the Montclair apartment. In addition to stating that both Natasha and Roy Norey were utility account holders (which was incorrect), the affidavit also explicitly stated that the Montclair apartment was "Roy Norey's apartment." (Doc. 27-1 at 6.) For this reason, even if the false statement were excised, the warrant affidavit on its face still established probable cause.

Defendant has also failed to show that Detective Nicholson made the misstatement knowingly and intentionally or recklessly. "A showing of negligence or innocent mistake is not enough to establish a *Franks* violation." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). "The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* "A showing of deliberate or reckless falsehood is not lightly met." *Id.* (quotation marks and citation omitted).

During the suppression hearing, Detective Nicholson admitted that he made a mistake when drafting the warrant affidavit. The affidavit stated that a city utilities check showed both Defendant and Natasha Norey as utility account holders for the Montclair apartment. This was incorrect. Only Natasha Norey was an account holder for the Montclair apartment. Detective Nicholson testified that this happened because he mixed up the Montclair address with the College address, which had both Natasha Norey and Defendant as account holders. (Doc. 35, Tr. at 17.) He further testified that he was not aware of his mistake when he submitted the warrant application, but if he had known, he still would have sought a warrant for the Montclair apartment based on other information he left out of the warrant affidavit. (*Id.* at 18.) Specifically, Detective Nicholson testified that he knew Natasha Norey (the sole utility account holder for Montclair) was Defendant's wife; he had personally observed Defendant coming and going

5

numerous times from both the College address and the Montclair apartment; and he was aware that a woman with the last name Norey had called the police and said Defendant was living at the Montclair apartment.[2] (Doc. 35, Tr. at 7, 18, 21; Exhibit G.)

Judge Rush found Detective Nicholson to be credible and concluded that he did not intentionally, knowingly, or recklessly mislead the issuing judge. After reviewing the record *de novo*, and considering that Judge Rush had a better opportunity to assess the credibility of live witnesses, the Court agrees that Detective Nicholson's mistake was negligent rather than deliberate. The Court finds it particularly telling that Detective Nicholson could have put more information in the warrant affidavit connecting Defendant to the Montclair apartment but chose not to do so because he thought the affidavit was good enough as written for probable cause. He also knew that Natasha Norey was associated with both utility accounts, and nothing in the record suggests he entertained serious doubts that the Montclair apartment was associated with both her and Defendant.

### 1. Credibility

Defendant urges the Court to find Detective Nicholson not credible because he testified on direct examination that he remembered checking the city utility records when he was drafting the warrant application (Doc. 35, Tr. at 16) but stated on cross-examination that he did not remember when he checked the records for the Montclair apartment specifically (*Id.* at 28). The Court disagrees. This testimony was simply not contradictory. Even if it could be construed that way, this was an inconsequential detail and does not raise concerns that Judge Rush improperly weighed Detective Nicholson's credibility. *See United States v. Alloway*, No. 18-00250-CR-W-HFS, 2019 WL 7046763, at *1 (W.D. Mo. Dec. 23, 2019) ("The basic intent is that district judges take individual responsibility for their factual rulings, even while considering the views and expertise of experienced and reliable professionals who have heard and observed the witnesses.").

---

[2] The caller also said that Defendant was selling guns and drugs and that he carried a bag with money, a "drug phone," a personal cell phone, and sometimes a gun. The record is unclear, however, about where the caller said the gun and drug sales were happening. The incident report states that the caller said they were happening in Chicago. (Doc. 35, Tr. at 21; Exhibit G.) In contrast, Detective Nicholson testified that the report needed to be corrected because he believed (for some unexplained reason) that the sales were happening at the Montclair apartment. (Doc. 35, Tr. at 21.) The Court is somewhat perplexed by the lack of an explanation about why Detective Nicholson thought the report was wrong, but the Court believes this discrepancy is beside the point. Regardless of whether the caller said the sales were happening in Chicago or at the Montclair apartment, it was apparent that Defendant was continuously selling guns and drugs somewhere, the College address had been raided, and he lived at the Montclair apartment.

## 2. Missing-Witness Rule

Defendant further argues that the Court should draw an adverse inference against the Government because it did not introduce screenshots of the special City Utilities web page that Detective Nicholson accessed to figure out who lived at the College and Montclair addresses. Defendant seeks to invoke the "missing witness" rule of *United States v. Anders*, which holds that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." 602 F.2d 823, 825 (8th Cir. 1979) (quotation marks and citations omitted); *see also* Eight Circuit Model Criminal Jury Instruction 4.16. This argument has been waived because it was raised for the first time in Defendant's objections to the Report and Recommendation. *See United States v. Frazier*, 280 F.3d 835, 845 (8th Cir. 2002) (the defendant's assertion of a suppression issue was untimely when evidence supporting the issue was first introduced in objections to a report and recommendation); *United States v. Green*, No. 4:17-00282-CR-RK, 2019 WL 2085434, at *1 n.1 (W.D. Mo. May 13, 2019) (refusing to address new arguments).

Even if the Court were to address this argument, the missing-witness rule would not apply for numerous reasons. Defendant has provided no authority that it extends to the Government's failure to introduce *documents*, as opposed to testimony. Furthermore, although the police's special web page is generally not accessible by the public, Defendant could have attempted to subpoena the screenshots at issue here. He did not do so. *See United States v. Williams*, 481 F.2d 735, 737 (8th Cir. 1973) (missing-witness rule did not apply when the defendant did not attempt to obtain a subpoena). Perhaps most importantly, the screenshots he claims should have been introduced would have been cumulative. There is no reason to believe they would have had any impact beyond the evidence that was already presented. Specifically, the Government introduced business records from City Utilities showing Natasha Norey as the account holder for both addresses and Defendant as having "shared responsibility" for the College address. (Exhibit 1.) A City Utilities representative then testified that the police would see both names if they looked up an address with shared responsibility—which is what Detective Nicholson said occurred. (Doc. 35, Tr. at 40.) Accordingly, the missing-witness rule does not apply.

7

### 3. Inference of Recklessness

Finally, Defendant contends that Judge Rush should have inferred that Detective Nicholson acted recklessly because the false statement in the affidavit was "clearly critical to the finding of probable cause" under *United States v. Reed*, given that it was the only thing in the affidavit linking him to the Montclair apartment. 921 F.3d 751, 756 (8th Cir. 2019) (quotation marks and citation omitted). The rule in *Reed* does not apply in this case. The defendant in *Reed* argued that the police were reckless in *omitting* information that would have shown a lack of probable cause. *Id.* Although "[r]ecklessness can be inferred from the omission when the material omitted would have been clearly critical to the finding of probable cause," *id.* (quotation marks and citation omitted), the same is not necessarily true for an affirmative misstatement. Unlike an officer who should know better than to leave out facts that might lead a judge to think twice about issuing a warrant, it is not always obvious when an officer makes a mistake in stating the facts. Accordingly, Judge Rush was not required to infer that Detective Nicholson acted recklessly.

Even assuming the rule in *Reed* applies, however, the misstatement was not "clearly critical to the finding of probable cause." 921 F.3d at 756. As discussed above, Detective Nicholson had other abundant evidence linking Defendant to a continuous course of drug trafficking and the Montclair apartment, and the affidavit itself (in addition to incorrectly stating that he was a utility account holder) explicitly stated that it was "Roy Norey's apartment." (Doc. 27-1 at 6.) Accordingly, Defendant's *Franks* challenge fails.

### B. Abandonment of Judicial Role

Defendant next argues that the "manner of selecting the Issuing Judge and the Witness's lack of knowledge of that judge's criminal law background (if any)" shows that the issuing judge wholly abandoned his judicial role. In situations where the issuing judge "wholly abandoned his judicial role," "no reasonably well trained officer should rely on the warrant." *Leon*, 468 U.S. at 923. "A judge abandons his or her judicial role when he or she does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 703 (8th Cir. 2017). For example, the Eighth Circuit has held that a judge acted as a rubber stamp when he failed to read the warrant and failed to notice that the warrant application was unsigned and did not identify the property to be seized. *Id.*

Here, Detective Nicholson testified that, when picking a judge for presentation of a warrant application, the police "usually go to the judge that doesn't have a packed courtroom." (Doc. 39, Tr. at 19-20.) He also testified that he was not aware of how long the issuing judge in this case had been on the bench or whether he had any criminal law experience. (*Id.* at 20.) This is insufficient to show that the issuing judge acted as a rubber stamp.

### C. Indicia of Probable Cause

Finally, Defendant argues that the warrant in this case was so lacking in indicia of probable cause that it was "entirely unreasonable" for the police to rely on it. *Leon*'s good-faith exception does not apply "when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Fiorito*, 640 F.3d at 345. The key to this analysis is whether a "reasonably well trained officer would have known that the search was illegal in light of all the circumstances," including "any information known to the officer but not presented to the issuing judge." *Id.* at 345-46 (cleaned up). Suppression is appropriate if "no reasonable officer could think probable cause existed"—for example, when the evidence merely ties the target to prior convictions and a known drug trafficker, but not directly to any criminal activity. *United States v. Lopez-Zuniga*, 909 F.3d 906, 910 (8th Cir. 2018).

This case is like *Fiorito*, where Eighth Circuit held that the police acted reasonably because they had a significant amount of evidence linking the defendant to criminal activity beyond what was in the warrant affidavit. In this case, Detective Nicholson had abundant evidence that Defendant lived at the Montclair apartment (aside from his mistaken belief that he was a utility account holder there) and that Defendant was continuously engaging in drug trafficking. Accordingly, he had a reasonable basis to believe there was probable cause to search the Montclair apartment.

### Conclusion

Accordingly, after reviewing the record *de novo*, the Court **OVERRULES** Defendant's objections to Judge Rush's Report and Recommendation; **ADOPTS** all of the Report and Recommendation except Part II(A); and **DENIES** Defendant's motion to suppress.

**IT IS SO ORDERED.**

DATED: March 23, 2020

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT