# DAVID M. SCHWARTZ, ESQ. LLM

546 Fifth Avenue, 6ᵗʰ Floor, New York, NY 10036  c: 516.566.5425  E: david@davidschwartzesq.com

May 31, 2023

**VIA CM/ECF & EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850

Dear Judge Furman:

Please be advised that David M Schwartz, Esq. represents Mr. Michael Cohen, for purposes of seeking your Honor's intervention in requesting that you discharge Mr. Cohen from Supervised Release. On December 6, 2022, we made the same application to your honor in which you denied our application on December 19, 2022, without prejudice as premature. The Court stated in that decision that "the question is close", but on balance the factors weighed in favor of the government. Your honor certainly left the door open for future applications and we are now respectfully bringing the same application. Mr. Cohen's term of supervised release commenced on November 22, 2021, and he has now served over 18 months of his release.

Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

Obviously, given the profile of Mr. Cohen's prosecution, it is widely understood that Mr. Cohen endeavored to provide meaningful assistance to the government, at least as far as this term is colloquially understood.[1] There is no question that Mr. Cohen and his family have paid the price for his transgressions. No doubt, it will also not be lost on this court that he has taken full responsibility for his actions.

---

[1] Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his notable contributions include:

I.  Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.

2.  New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.

3.  Southern District of New York: Mr. Cohen met with the SONY and Special Counsel's Office (SCO) of the Department of Justice before the entry of his plea in August 2018. Mr. Cohen participated in seven voluntary interviews with both offices.

4.  Special Counsel's Office: Mr. Cohen met with the SCO roughly ten times regarding the Mueller probe - albeit the inquiries falling outside conventional framework in which courts routinely engage in.

5.  United States Congress: Specifically, Mr. Cohen met with the House Oversight Committee on three occasions, the House Intelligence Committee on three occasions, the Senate Intelligence Committee on three occasions, and individual Members of Congress for countless hours preparing them for hearings.

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
May 31, 2023
Page 2

Supervised Release is not intended to be further punishment, per a published opinion of the 7[1] Circuit dealing with supervised release[1]...1) the purpose of supervised release is not to inflict more punishment for the underlying crime; and 2) the "decompression state" between prison and full release is accomplished, then there is no reason to keep a defendant on supervision any longer. Prior 7th Circuit decisions have consistently held that there are factors that mark this decompression state and satisfy that requirement. As stated, the five purposes of supervision are:

1. Rehabilitation: has one completed all treatment and aftercare?
2. Deterrence: is one effectively deterred from committing future federal crimes?
3. Training and Treatment: has one had enough treatment and education to stay clean from crime and to keep stable employment?
4. Protection of the public: This lends to treatment, stability, and reduced risk of committing new crimes.
5. Reduction of recidivism: What is one's quantifiable risk to commit new or the same crimes?

If there is anyone who fits the 7th Circuit's profile of a candidate for termination of supervised release, it is Mr. Cohen. In the 19 months since his home confinement, he has shown time and again that he has met all the requirements of the decompression state listed above.

We would respectfully venture further that Mr. Cohen presents no risk of recidivism and is a model candidate for a cessation of Supervisory Release. Indeed "[i]n the federal courts, supervision is ... a way to monitor the activities and behavior of people released to the community by the federal courts or paroling authorities... [and] ... an opportunity to help offenders reintegrate into the community following a period of incarceration... The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition."[2]

The goals of supervision have been fulfilled. Mr. Cohen has exceeded all his court-imposed responsibilities, is a loving husband and father, presents no risk of recurrence, and generally does not require the social services support to appropriately reintegrate into society. In fact, continuing supervision is his only remaining hinderance in terms of being able to reassimilate into the community.

Mr. Cohen began serving his sentence of 36 months imprisonment and three years of Supervised Release on or about May 6, 2019. Mr. Cohen's petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, was dismissed on April 20, 2021, for procedural reasons. Specifically, the court articulated that his petition was denied because it was premature and not ripe for review considering the First Step Act was not fully implemented. Although the petition was rejected for the noted reasons, we ask this court to reconsider it as a factor in Mr. Cohen's current application for a discharge from Supervised Release. The instrumental arguments made in favor then should otherwise obtain now.[3]

---

[1]  https://pcr-consultants.com/federal-supervised-release-is-not-punishment/

[2]  http://www.uscourts.gov/services-fonns/probation-and-pret:rial-services/probation-and-pretrial-services-supervision

[3]  Mr. Cohen's Habeas Corpus Petition enunciated that he had a right to time credits under the First Step Program and if not granted, he would spend more time in confinement than required under the law. This argument was premised as a denial of Mr. Cohen's fundamental due process rights. *See* Ex. A attached.

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
May 31, 2023
Page 3

While Mr. Cohen was imprisoned at Otisville, he earned numerous certificates upon completion of many programs that would have otherwise counted towards First Step Act points. Because of the timing, Mr. Cohen was never credited with those points. These programs are just one barometer indicative of his rehabilitation which favor his discharge from Supervised Release. Furthermore, Mr. Cohen reached out to Darrin Howard, Regional Counsel of the Northeast Region of the Federal Bureau of Prisons, more than 30 times regarding his First Step Act points without receiving any correspondence.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's term of Supervised Release. Once again, it bears repeating that Mr. Cohen has fully acknowledged his crimes, and his participation with the government offices, as articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

It warrants noting that, Mr. Cohen paid his IRS tax deficiency prior to his sentencing and all fines and penalties have been paid. He had an additional 12 meetings with the Manhattan District Attorney's office and has committed no offenses while he was incarcerated or while he has been in home confinement. We also ask that you consider the extensive cooperation Mr. Cohen has given to prosecutors from various agencies as well as other governmental authorities for which he has never received any credit for. Justice would be served, in our humble assessment, if you factor all the cooperation into this decision on our application for termination of Supervised Release.

It is also worth noting that Mr. Cohen has indeed faced hardship because of home confinement. Mr. Cohen's elderly parents, one of whom is a Holocaust survivor, live in Florida. Mr. Cohen needs to be able to spend more meaningful time with them as they're ageing at home. Not being able to get to his parents quickly, if they need him, weighs heavily on Mr. Cohen and he is very aware that the time they have left together may be limited. While it is true that Mr. Cohen has been allowed international travel, the onus of such travel is not a light one. International travel requires that Mr. Cohen be detained by INS upon re-entry into the United States and be held up to an hour while INS checks with DOJ and the Probation Office if he had the authorization to travel internationally. This has proven to be a stressful and frustrating experience, so much so that Mr. Cohen has turned down prestigious invitations to speak overseas, such as highlighted in the enclosed invitation from The Oxford Union in Great Britain (*See* Ex. C attached).

---

[4] See Ex. B attached
[5] See Ex. C attached

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
May 31, 2023
Page 4

     Further, in sum and substance, Mr. Cohen has substantively complied with the spirit of the First Step Act. He successfully completed evidence-based recidivism reduction programming and was determined to be at a low risk for recidivating; thus, he is the definition of an Eligible Prisoner. To this end, it warrants noting that he received numerous Certificates at FCI Otisville including Doing Time with The Right Mind, Freedom from Drugs Program, Victim Impact Orientation Workshop, and the Intervention 2 Program.

     Michael Cohen has clearly demonstrated that he has been rehabilitated, and given the fact that he has committed no further offenses; has been a model inmate in prison, home confinement and supervised release; has substantially cooperated with all government authorities; substantially complied with the First Step Act program (receiving no credit on technical grounds) we respectfully urge that Michael Cohen is the perfect candidate to be discharged from Supervised Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.

     We appreciate Your Honor's consideration.

                    Respectfully submitted,

                    David M Schwartz, Esq.
                    Attorney for Michael Cohen

cc: All counsel of record (via ECF)