

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 9, 2023

**BY ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Michael Cohen*, 18 Cr. 602 (JMF)

Dear Judge Furman:

      The Government writes in opposition to defendant Michael Cohen's third motion for the early termination of his three-year term of supervised release. The Court should deny Cohen's request for the same reason his last request was denied just six months ago. (Dkt. 83). He has failed to identify any new extraordinary or sufficiently compelling reasons for his request. Accordingly, the motion should be denied.

      **I. Background**

      As the Court knows from the parties' prior briefing, *see* Dkt. 82, over a five year period, Cohen committed what Judge Pauley, who presided over Cohen's pleas and sentencing, described as a "veritable smorgasbord of fraudulent conduct." (Dkt. 31 at 34). Cohen evaded income taxes by failing to report more than $4 million in income; he lied to multiple banks to obtain financing; and he violated campaign finance by making excessive political contributions. (Dkt. 23 at ¶¶ 18-56). He also lied to the United States Congress in sworn testimony. (Dkt. 23 at ¶¶ 62-73). Cohen ultimately pled guilty to nine counts in two consolidated cases, and was sentenced to 36 months' imprisonment, to be followed by a three-year term of supervised release. (Dkt. 29).

      Cohen began serving his custodial sentence in May 2019. Not long after he sought to reduce his sentence pursuant to Federal Rule of Criminal Procedure 35—an application that Judge Pauley denied. (Dkt. 72 at 2). Judge Pauley also denied Cohen's request for a modification of his sentence based on the COVID-19 pandemic. (*Id.*). The Bureau of Prisons nevertheless transferred Cohen to furlough and then home confinement, such that Cohen only served slightly more than one year of his three-year custodial sentence in a BOP facility, and spent the remaining time in his Park Avenue residence. Cohen's term of supervised release commenced on November 22, 2021, and thus he has just under one and a half years remaining on supervison. Cohen sought early termination of supervised release in July 2022, but the Court denied that application without prejudice as premature. (Dkt. 80). Cohen sought early termination of supervised release again in December 2022, but the Court also denied that application without prejudice, agreeing with the

Government that, on balance, applicable factors including the absence of concrete hardship, the number and nature of Cohen's convictions, and the fact that Cohen served only about a third of his custodial sentence in a BOP facility favored denial. (Dkt. 83). Cohen filed his third motion on May 31, 2023. (Dkt. 84).

## II. Applicable Law

A court may, after considering a subset of the factors set forth in 18 U.S.C. § 3553(a), "terminate a term of supervised release and discharge the defendant released . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). A court may only do so after taking into account a subset of factors set forth in 18 U.S.C. § 3553(a), which "requires the court to consider general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency, when it decides to 'modify, reduce, or enlarge' the term or conditions of supervised release." *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997).

"Courts do not order early termination of supervised release as a matter of course." *United States v. Stein*, No. 09-CR-377 (RPK), 2020 WL 4059472, at *2 (E.D.N.Y. July 19, 2020). Rather, such relief may "[o]ccasionally" be justified by "new and unforeseen circumstances." *United Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). Such circumstances may include when "exceptionally good behavior by the defendant . . . render[s] a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Id.*

However, mere compliance with the terms of supervised release does not constitute exceptionally good behavior, let alone behavior that renders a previously imposed term of supervision too harsh or inappropriate to serve the goals of sentencing. This is because "full compliance" is "what is expected." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *2 (E.D.N.Y. Jan. 9, 2018). Thus, "courts in this circuit have routinely declined to terminate supervised release based solely on compliance with the terms of supervision." *Stein*, 2020 WL 4059472, at *2 (collecting cases); *see also United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("Early termination is not warranted where a defendant did nothing more than that which he was required to do by law.").

## III. Discussion

Most of Cohen's arguments are recycled from his last motion, and none are meritorious. He has not identified any extraordinary circumstances or unforeseen consequences stemming from his supervised release that warrant its early termination. Instead, many of the defendant's arguments are the same ones previously considered and rejected by the Court. There is no reason, six months later, to reconsider that decision. The Court should therefore reject the arguments presented in Cohen's latest letter on the same grounds in accordance with applicable law and precedent.

Starting with the defendant's rose-colored description of his past conduct, his motion restates the incorrect claim that "it is widely understood that Mr. Cohen endeavored to provide

meaningful assistance to the government, at least as far as this term is colloquially understood" and that "he has taken full responsibility for his actions." (Dkt. 84 at 1 & n.1). His conduct proves the contrary. The Government previously delineated many of Cohen's lies that undermined his attempts at cooperation, and pointed to Cohen's repeated attempts to downplay his own conduct after his guilty plea. (*See* Dkt. 58 at 4-6, 10-11). As Judge Pauley found, that submission "makes clear" that "Cohen made material and false statements in his post-sentencing proffer sessions." (Dkt. 72 at 2). After rejecting Cohen's Rule 35 motion in March 2020, Judge Pauley stated that "it's time that Cohen accept the consequences of his criminal convictions for serious crimes." (Dkt. 72 at 2). More recently, just before making his last motion, Cohen falsely wrote in a book he authored that he "did not engage in tax fraud," that the tax charges were "all 100 percent inaccurate," and that he was "threatened" by prosecutors to plead guilty. *See* Michael Cohen, REVENGE 54 (2022). Additionally, in a recent attempt to distance himself from his guilty plea to making false statements to a financial institution about tax medallion liabilities, *see* Dkt. 27 at 8-11, Cohen stated on television, "first and foremost, there was no fraud in the medallions, I don't know even what he's talking about." *See* The Beat with Ari Melber, MSNBC (Mar. 20, 2023), https://shorturl.at/cvDI8. Cohen's recent statements are belied by his under-oath statements when he pled guilty, which included that he was guilty of tax evasion and false statements to banks, and that he had not been threatened or forced to plead guilty. (Dkt. 7). And they are evidence that Cohen has not "taken full responsibility for his actions," as he assets in his motion. Indeed, quite the opposite. As the Government stated previously, while Cohen is free to write and say what he wants, he cannot simultaneously distance himself from his conduct on cable news, while cloaking himself in claims of acceptance of responsibility in court filings.

Cohen then restates the conclusory statement that "continuing supervision is his only remaining hinderance in terms of being able to reassimilate into the community." (Dkt. 84 at 2). Despite references to new hardships Cohen has faced, his motion fails to identify any new extraordinary circumstances or unforeseen consequences that adequately demonstrate how the modest restrictions imposed upon him have presented any significant obstacles. Although Cohen has been granted permission for leisure travel to Italy with future international travel permitted at the discretion of the Probation office, *see* Dkt. 75, he claims now that "the onus of such travel is not a light one." (Dkt. 84 at 3). Cohen bemoans that the travel approval process causes him to be "held up to an hour" upon re-entry to the United States to confirm his authorization for international travel. As a result, he claims, he has turned down invitations to speak oversees. Delays reentering the country are known universally to New Yorkers—not just those under supervision—flying through any of the city's three airports. And courts have repeatedly held the mere inconvenience of the travel-approval process "does not arise to the level of new or unforeseen circumstances that would warrant early termination." *United States v. Gonzales*, No. 94 Cr. 134, 2015 WL 4940607, at *2 (S.D.N.Y. Aug. 3, 2015); *see also Shellef*, 2018 WL 3199249, at *3; *Whittingham v. United States*, No. 12 Cr. 971, 2017 WL 2257347, at *6 (S.D.N.Y. May 22, 2017). Cohen also claims that he is not able to "get to his parents quickly, if they need him," who live in Florida, because of his supervised release terms. (Dkt. 84 at 3). But Cohen has made no claim that travel requests were denied nor that they impeded his ability to travel to Florida quickly.

Cohen refers again to his procedurally dismissed habeas corpus petition, which had sought credit he believes he earned against his custodial sentence. (Dkt. 84 at 2-3 & n. 3). Cohen was not in fact entitled to those credits, as explained in that case. *See Cohen v. United States*, 20 Civ. 10833

(JGK), Dkt. 12 at 12-14. Furthermore, as the Court referenced as a factor favoring denial of Cohen's last motion to terminate supervised release, it bears noting again that he only served approximately one third of his custodial sentence in a BOP facility. Instead, Cohen spent the vast majority of his custodial sentence in home confinement.

Citing a case from the Seventh Circuit, Cohen argues that supervised release is not punishment, but rather is intended to facilitate the completion of the "decompression state" between prison and full release. (Dkt. 84 at 2). But as the Second Circuit has observed, in assessing whether termination of supervised release is appropriate, consideration of not just rehabilitation, but also deterrence, proportionality, and consistency are appropriate. *Lussier*, 104 F.3d at 35. With those purposes in mind, the statutory factors do not favor early termination here. Mere compliance is expected and does not alone warrant early termination of supervision, and several factors continue to weigh against Cohen's request. The nature and circumstances of the offense, the history and characteristics of the offender, and the need for specific deterrence all continue to weigh against Cohen's application. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B). Cohen's recent efforts to back away from his prior acceptance of responsibility is evidence of the ongoing need for specific deterrence. Moreover, Judge Pauley emphasized general deterrence at sentencing, and "[r]etroactively lightening the defendant's sentence simply because he has complied with his legal obligations would undermine that goal," *Stein*, 2020 WL 4059472, at *2. Cohen has not identified any considerations since his last motion that would tilt the balance in favor of early termination of supervised release here.

Accordingly, because Cohen has failed to provide any fresh or sufficiently compelling reasons for the early termination of his supervision, the motion should be denied.

> Respectfully submitted,
>
> DAMIAN WILLIAMS
> United States Attorney
>
> By: _____
> Nicolas Roos
> Assistant United States Attorney
> (212) 637-2421

cc: Counsel of Record (by ECF)

Defendant's motion for early termination is DENIED substantially for the reasons set forth in the Government's letter.  Among other things, the statements quoted above from Defendant's book and television appearance suggest that a reduction of Defendant's supervised release term would not serve the purposes incorporated by reference in 18 U.S.C. § 3583(e), including deterrence, rehabilitation, or proportionality.  *See, e.g.*, *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997).  The Clerk of Court is directed to docket this in 18-CR-602 and 18-CR-850 and to terminate ECF No. 84 in 18-CR-602.

SO ORDERED.

*[signature]*

June 16, 2023