# <u>DAVID M. SCHWARTZ, ESQ.</u> LLM

546 Fifth Avenue, 6th Floor, New York, NY 10036  T: 212.641.0049  E: david@davidschwartzesq.com

November 29, 2023

**VIA CM/ECF & EMAIL**
Honorable Jesse M. Furman
United States District Judge
South District of New York
500 Pearl Street
New York, NY 10007

   Re: <u>United States vs. Michael Cohen 18-Cr-602 and 18-Cr-850</u>

Dear Judge Furman:

  Please be advised that David M. Schwartz, Esq. represents Mr. Michael Cohen, for the purpose of seeking your Honor's intervention in requesting that you discharge Mr. Cohen from Supervised Release. On December 6, 2022, we made the same application to your Honor in which you denied our application on December 19, 2022, without prejudice as premature. The Court states in that decision that "the question is close", but on balance the factors weighed in favor of the government. Your Honor certainly left the door open for future applications. On June 9, 2023, your honor denied our second request stating that "He has failed to identify any new extraordinary or sufficiently compelling reasons for his request. Accordingly, the motion should be denied." Mr. Cohen's term of supervised release commenced on November 22, 2021, and he has now served more than two-thirds of his three-year term. We believe in our current application; we will clearly identify compelling reasons for this latest request for discharge from Supervised Release.

  There has been a substantial change in circumstances since our last application. Michael Cohen testified for two straight days in the case of the State of New York v. Donald J Trump et al; to which Attorney General Letitia James credited Mr. Cohen for the investigation. He endured two days of grueling cross examination in his testimony on behalf of the People of the State of New York and this testimony has been widely lauded and publicized[1]. The United States Attorney, in all our applications, has continued to challenge the substantial value of the cooperation of Mr. Cohen. With this new testimony, there can be no doubt of Mr. Cohen's continued commitment to comply with all government agencies. Mr. Cohen's unwavering cooperation with a multitude of investigative bodies, including the Mueller Investigation, seven congressional hearings, twenty-three meetings with the Manhattan District Attorney, two days of Grand Jury testimony, as well as two days of draining testimony at the New York Attorney General's trial, has played a pivotal role in uncovering and prosecuting wrongdoing. His willingness to come forward and provide truthful accounts of his experiences, despite the dangers and harm it has caused himself and his family, demonstrates an exceptional level of remorse and a commitment to upholding the law that cannot be denied by this Court or the United States Attorney General's Office.

---

[1] *See* Mr. Cohen's complete testimony Ex. A and Ex. B, attached.

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
November 29, 2023
Page 2

Specifically, at the recent New York Attorney General trial, for more than 10 hours on the stand, Mr. Cohen provided damning evidence of the Trump Organization's alleged business misconduct, including testifying that he and other executives inflated the value of the Trump Organization's assets on financial statements in order to secure favorable loans and insurance premiums. Mr. Cohen's testimony was critical to the Attorney General's case in that he testified that the Trump Organization would instruct them to increase the numbers on financial statements, even when they knew the true values were lower. It must also be acknowledged that Mr. Cohen will again be called in March 2024 as "the key witness" in the Manhattan District Attorney's trial. These testimonies do not come without substantial anxiety and stress, including threats of physical harm and death.

An additional change in circumstances is the support of United States Probation Officer Sandra Osman. Probation Officer Osman, through an email to my office states the following, "Mr. Cohen has been compliant with all the terms and conditions of supervised release. He has maintained employment, reported as directed, made himself available for any requests from the Probation Office and satisfied his Court ordered financial obligations. He has not sustained any new arrests or criminal charges. He has approximately one-year remaining of his thirty-six-month term of supervised release. He is due to successfully complete his term of supervised release on November 21, 2024. Based on the aforementioned, we do not oppose the submission of an early termination request for the Court's consideration."

Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

Obviously, given the public nature of Mr. Cohen's prosecution, it is widely acknowledged that Mr. Cohen endeavored to, and has provided meaningful assistance to the government, on a plethora of issues and matters [2] There is also no question that both Mr. Cohen and his family have paid a heavy price for his transgressions. Mr. Cohen has taken criminal responsibility for his actions and continues to suffer tremendously as a result.

As recently as 2022, there have been District Court decisions, affirmed by the Second Circuit Court, granting early termination of supervised release. Following are three such examples:

---

[2] Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his notable contributions include:

1. Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.

2. New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.

3. Southern District of New York: Mr. Cohen met with the SDNY and Special Counsel's Office (SCO) of the Department of Justice before the entry of his plea in August 2018. Mr. Cohen participated in seven voluntary interviews with both offices.

4. Special Counsel's Office: Mr. Cohen met with the SCO approximately ten times regarding the Mueller probe-albeit the inquiries falling outside conventional framework in which courts routinely engage in.

5. United States Congress: Specifically, Mr. Cohen met with the House Oversight Committee on three occasions, the House Intelligence Committee on three occasions, the Senate Intelligence Committee on three occasions, and individual Members of Congress for countless house preparing them for hearings.

United States v. Figueroa-Flores, 64 F. 4th 223 (2d Cir. 2022)
This case involved a defendant who had been convicted of possession with intent to distribute cocaine. He was sentenced to 60 months in prison, followed by five years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all the conditions of his supervised release, had no history of criminal convictions or arrests, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

United States v. Ortiz (No. 21-3391), 2022 WL 4424741 (2d Cir. Oct. 11, 2022)
This case involved a defendant who had been convicted of conspiracy to distribute cocaine base. He was sentenced to 120 months in prison, followed by five years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all the conditions of his supervised release, had no history of criminal convictions or arrests, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

United States v. Amato, 2022 WL 1669877 (2d Cir. May 10, 2022)
This case involved a defendant who had been convicted of tax evasion[3]. He was sentenced to 36 months in prison, followed by three years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all the conditions of his supervised release, had paid his full tax liability, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

The factors that courts consider in granting early termination of supervised release are set forth in 18 U.S.C. § 3553(a). These factors include:

- The nature and seriousness of the offense
- The defendant's history of criminal convictions or arrests
- The defendant's compliance with the conditions of supervised release
- The defendant's progress toward rehabilitation
- The danger that the defendant poses to the community.

In addition to these factors, courts may also consider other factors, such as the defendant's age, health, and family circumstances.

---

[3] It should be noted that this particular case's fact pattern is almost identical to Mr. Cohen's.

It should be noted that if there is anyone who fits the profile of a candidate for termination of Supervised Release, it is Mr. Cohen. In the 25 months since his home confinement, he has shown time and again that he has met all the conditions as stated above.

Mr. Cohen satisfied his restitution and settled his obligations prior to his sentencing and within 24 hours of the government providing him with the obligation amount.

We would respectfully venture further that Mr. Cohen presents no risk of recidivism and is a model candidate for a cessation of Supervisory Release. Indeed "[i]n the federal courts, supervision is …a way to monitor the activities and behavior of people released to the community by the federal courts or paroling authorities… [and] …an opportunity to help offenders reintegrate into the community following a period of incarceration… The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition."[4]

It is inarguable that the goals of supervision have been fulfilled. Mr. Cohen has exceeded all his court-imposed responsibilities, is a loving husband and father, presents no risk of recurrence, and generally does not require the social services' support to appropriately reintegrate into society (as confirmed by Probation Officer Osman).

Mr. Cohen began serving his sentence of 36 months imprisonment and three years of Supervised Release on or about May 6, 2019. Mr. Cohen's petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, was dismissed on April 20, 2021, for procedural reasons. Specifically, the court articulated that his petition was denied because it was premature and not ripe for review considering the First Step Act was not fully implemented. Although the petition was rejected for the noted reasons, we ask this court to reconsider it as a factor in Mr. Cohen's current application for a discharge from Supervised Release. The instrumental arguments made in favor then should otherwise be obtained now.[5]

While Mr. Cohen was imprisoned at Otisville, he earned numerous certificates upon completion of programs that would have otherwise counted towards First Step Act points[6]. Because of timing, Mr. Cohen was never credited with those points. These programs are just one barometer indicative of his rehabilitation which favors his discharge from Supervised Release. Furthermore, Mr. Cohen reached out to Darrin Howard, Regional Counsel of the Northeast Region of the Federal Bureau of Prisons, more than 30 times regarding his First Step Act points without receiving any response.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's term of Supervised Release. It is never the wrong time to do the right thing, and once again, it bears repeating that Mr. Cohen has paid for his crimes, and his participation with government offices, as articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

---

[4] https://www.uscourts.gov/services-forms/probation-and-pretrial-services/probation-and-pretrial-services-supervision

[5] Mr. Cohen's Habeas Corpus Petition enunciated that he had a right to time credits under the First Step Program and if not granted, he would spend more time in confinement than required under the law. This argument was premised as a denial of Mr. Cohen's fundamental due process rights. *See* Ex. C, attached.

[6] *See* Ex. D, attached.

It should not be lost on the Court in making its decision that because of his extensive cooperation with government, prosecutors and various agencies, he was unconstitutionally remanded back to FCI Otisville in violation of his First Amendment constitutional right, as stated by Alvin K. Hellerstein, U.S.D.J:

"Upon the findings and conclusions stated on the record at oral argument conducted telephonically on July 23, 2020, Petitioner Michael D. Cohen's motion for injunctive relief, see ECF No. 4, is granted as follows. The Court finds that Respondents' purpose in transferring Cohen from release on furlough and home confinement back to custody was retaliatory in response to Cohen desiring to exercise his First Amendment rights to publish a book critical of the President and to discuss the book on social media. Accordingly, Respondents are hereby enjoined from any continuing or future retaliation against Cohen for exercising his First Amendment rights."[7]

It is also worth noting that Mr. Cohen has indeed faced hardship because of Supervised Release requirements. In a society where last-minute plans are the norm, jumping on a plane to visit his parents, one of whom is a Holocaust survivor, is impossible. Spontaneous requests to visit friends or family outside of the borough of Manhattan are non-existent as approval of this is required. While it is true that Mr. Cohen has been allowed international travel as well, the onus of such travel is not a light one. International travel requires that Mr. Cohen be detained by INS upon re-entry into the United States and be held up to an hour while INS checks with DOJ and the Probation Office if he had the authorization to travel internationally. This has proven to be a stressful, frustrating, and embarrassing experience, so much so that Mr. Cohen has turned down prestigious invitations to speak overseas, such as highlighted in the enclosed invitation from The Oxford Union in Great Britain.[8]

Further, in sum and substance, Mr. Cohen has complied with the spirit of the First Step Act in every way, shape, and form. He has clearly demonstrated that he has been rehabilitated, and not in need of additional Supervised Release; has not committed further offences of any kind and has fully cooperated with all government authorities. Mr. Cohen continues paying his tax obligations on or before they are due. He was a model prisoner, who has committed no infractions while on home confinement, or during the two years on Supervised Release.

We respectfully conclude that Michael Cohen is the perfect candidate to be discharged from Supervised Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.

We appreciate Your Honor's consideration.

Respectfully submitted,

David M. Schwartz, Esq.
Attorney for Michael Cohen

cc: All counsel of record (via ECF)

---

[7] *See* Ex. E, attached

[8] *See* Ex. F, attached