# EXHIBIT B

# In The Matter Of:

*PEOPLE OF THE STATE OF NEW YORK v.*
*DONALD J. TRUMP, et al.*

---

*MICHAEL COHEN*
*October 25, 2023*

---

*NICOLE C. ROBINSON*

Original File 102523TRUMP.txt
**Min-U-Script® with Word Index**

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023



Page 2302

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : CIVIL TERM : PART 37
------------------------------------X
PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

                              Plaintiff,

        -against-                    Index No.
                                     452564/2022
DONALD J. TRUMP; DONALD TRUMP, JR.; ERIC TRUMP;
IVANKA TRUMP; ALLEN WEISSELBERG; JEFFREY MCCONNEY;
THE DONALD J. TRUMP REVOCABLE TRUST; THE TRUMP
ORGANIZATION, INC.; TRUMP ORGANIZATION, LLC;
DJT HOLDINGS, LLC; DJT HOLDINGS MANAGING MEMBER;
TRUMP ENDEAVOR 12, LLC; 401 NORTH WABASH VENTURE,
LLC; TRUMP OLD POST OFFICE, LLC; 40 WALL STREET,
LLC.; AND SEVEN SPRINGS, LLC,

                              Defendants.
------------------------------------X
                Supreme Courthouse
                60 Centre Street
                New York, New York
                October 25, 2023
B E F O R E :
HONORABLE ARTHUR F. ENGORON,
                Justice, Supreme Court

A P P E A R A N C E S :
OFFICE OF THE ATTORNEY GENERAL
OF THE STATE OF NEW YORK - LETITIA JAMES
Attorneys for Plaintiff
28 Liberty Street
New York 10005
BY: KEVIN WALLACE, ESQ.
    COLLEEN K. FAHERTY, ESQ.
    ANDREW AMER, ESQ.
    ERIC HAREN, ESQ.
    LOUIS M. SOLOMON, ESQ.
    MARK H. LADOV, ESQ.
    SHERIEF GABER, ESQ.
(Appearances continued on the next page.)

Page 2303

Attorneys for Defendants
101 North Monroe Street - Suite 750
Tallahassee, Florida 32302
BY: CHRISTOPHER M. KISE, ESQ.
BY: LAZARO P. FIELDS, ESQ.
    JESUS M. SUAREZ, ESQ.

ROBERT & ROBERT, PLLC
Attorneys for Defendant
526 RXR Plaza
Uniondale, New York 11556
BY: CLIFFORD S. ROBERT, ESQ.

HABBA MADAIO & ASSOCIATES, LLP
Attorneys for Defendants
1430 US Highway - Suite 240
Bedminster, New Jersey 07921
BY: ALINA HABBA, ESQ.

MORIAN LAW, PLLC
Attorneys for Defendants
60 East 42nd Street - Suite 4600
New York, New York 10165
BY: ARMEN MORIAN, ESQ.

THE TRUMP ORGANIZATION
725 Fifth Avenue
New York, New York 10022
BY: ALAN G. GARTEN, ESQ.
ALSO PRESENT:
LETITIA JAMES
ATTORNEY GENERAL OF
THE STATE OF NEW YORK

                NICOLE C. ROBINSON, CSR
                JANELLE LONDON, RMR, CRR
                Senior Court Reporters

Page 2304

PROCEEDINGS

THE COURT OFFICER: All rise. Part 37 is now in session. The Honorable Judge Arthur Engoron presiding. Make sure all cellphones are on silent. Laptops and cellphones will be permitted, but only to members of the press. There's absolutely no recording or photography of any kind allowed in the courtroom. Now, be seated and come to order.

THE COURT: Human bodies absorb sound. Can you imagine how loud that would be if the room was vacant? All right. Let's get the issue of the photographers.

MR. KISE: Not for us.

MS. HABBA: They're not going to want to come in.

MR. KISE: Can we do housekeeping?

THE COURT: Chris, they told me you're particularly photogenic.

MR. KISE: My family for sure.

THE COURT: When can we expect the missing person?

MR. KISE: I think momentarily, Your Honor, but can I raise two minor housekeeping matters?

THE COURT: Attorney General, ready to do some housekeeping matters?

MR. KISE: So, and Mr. Robert I think will back my memory and we will, of course, do whatever the Court wants, but so last night when we realized we did not receive anything on the Ivanka Trump motion from the Government, we

Page 2305

PROCEEDINGS

went back and looked. Our understanding from our -- the conversation was they were going to file on Monday and we were -- you asked me how long we needed and we were going to have two days, so Wednesday.

But apparently, when I looked at the e-mail that was sent, it says everybody files on Wednesday, but that wasn't certainly our understanding. So what I'd like, because if the Court still plans to proceed on Friday, which is fine, with the hearing, I would just ask then that we have until tomorrow. If they filed something tonight, then we have until tomorrow night, 24 hours, but that was what we agreed to, was two days.

THE COURT: The motion is by a non-party, so I'm not sure --

MR. KISE: So we just -- until we see -- that was the point I made to Your Honor last week. Until we see what they have to say and the other side -- the other ones say, I don't know -- I'm just guessing at that point.

THE COURT: Does the Attorney General object to giving them until tomorrow?

MS. FAHERTY: Your Honor, I think just in the orderly, efficient management of business, we're all commenting on a third party's motion. I think we can all put in our papers today.

THE COURT: Well, how about some compromise

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

Page 4 of 44
MICHAEL COHEN
October 25, 2023

**PROCEEDINGS** — Page 2306

1  tomorrow at --
2      MR. KISE: Tomorrow is just one day. That was
3  certainly our understanding of my dialog with you, Your
4  Honor, was that you asked me how many days we needed after
5  their response.
6      THE COURT: Can we do until noon, so we can read
7  it, too, by noon tomorrow?
8      MR. KISE: Okay, yes, Your Honor.
9      THE COURT: All right. Thanks. You had a second
10  issue?
11      MR. KISE: Just an order of witnesses. I know that
12  the witness from the Parks Department who was deposed Monday
13  by video, I don't know if they're planning on calling that
14  witness this week or if it is going to be next week.
15      THE COURT: Well, let's ask.
16      MS. FAHERTY: Your Honor, I think what we are
17  trying to understand is how today's proceedings are going to
18  time out. We have a witness lined up for this afternoon.
19  That will be Ms. Sherri Dillon if the time permits.
20  Otherwise, we still have the remaining video of Ms.
21  Mouradian. We have -- and we've informed counsel for
22  remaining witnesses for this week.
23      Mr. Gaber is intending to take the
24  deposition -- the testimony of Mr. Cerrone. I believe he
25  might get pushed into next week as a result of Mr. Gaber's

**PROCEEDINGS** — Page 2307

1  absence, but for the remainder of this week, we have three
2  of our witnesses that are lined up to fill the time. I can
3  speak with counsel to make sure they're fully informed about
4  our order of witnesses. If they can equally just give us an
5  update on their timing on crosses, so we can make sure all
6  the witnesses are here, everybody is prepared to take the
7  testimony as necessary.
8      MR. KISE: I think Ms. Faherty's commentary,
9  because I forgot the point she just made, the reason I was
10  asking about this witness in particular is because Ms.
11  Hernandez who intends to do the cross of that witness, she's
12  out with COVID, so she won't be back until Monday. So all
13  I'm asking is we make sure that witness is next week when
14  she's back, which I think based on what Ms. Faherty said
15  will work. Otherwise, we are fine with whatever other
16  schedule.
17      THE COURT: All right. Good.
18      And Chris, make it one o'clock tomorrow.
19      MR. KISE: Okay. Thank you. How about 2:15 since
20  you give us the lunch hour?
21      THE COURT: We need it for that. One o'clock.
22      MR. KISE: Thank you.
23      MS. HABBA: Your Honor, before we bring the witness
24  in --
25      THE COURT: We have the photographers first.

**M. COHEN - PLAINTIFF - CROSS(MS. HABBA)** — Page 2308

1      MS. HABBA: Can we just do this first?
2      THE COURT: Sure. Go ahead.
3      MS. HABBA: It is a little bit delicate and I want
4  to start by saying I served as a law clerk to a judge when I
5  first started practicing law and my candor, my judge was
6  very strict about how I did and didn't behave. It is
7  incredibly distracting when there are eye rolls and constant
8  whispering at the bench when I'm trying to cross-examine a
9  witness. So I'm just asking politely that that be
10  refrained. It is very distracting.
11      THE COURT: Okay. Granted.
12      MS. HABBA: Thank you.
13      THE COURT: Okay, photographers.
14      (Whereupon, there was a pause in the proceedings.)
15      THE COURT: Witness is on his way, right?
16      THE COURT OFFICER: Yes.
17      Witness entering.
18      THE WITNESS: Good morning.
19      THE COURT: Let's continue with the
20  cross-examination of Michael Cohen.
21      MS. HABBA: Thank you, Your Honor. Sounds good?
22  CROSS-EXAMINATION
23  BY MS. HABBA:
24  Q   Mr. Cohen, good morning.
25  A   Good morning.

**M. COHEN - PLAINTIFF - CROSS(MS. HABBA)** — Page 2309

1  Q   I just want to remind you that you're still under oath
2  obviously from yesterday as the judge put you under oath?
3      THE COURT: True.
4      MS. HABBA: Thank you.
5  Q   I just want to ask you preliminarily, did you speak
6  with the Attorney General's Office about your testimony between
7  yesterday and today?
8  A   No.
9  Q   Did you speak with your lawyer about your testimony
10  between yesterday and today?
11  A   Yes.
12  Q   Did you speak to anybody about your testimony between
13  yesterday and today?
14  A   No.
15  Q   Okay. Thank you.
16      As a follow-up from yesterday's cross, I just mentioned
17  to Ms. Faherty I would like to admit Defendant's Exhibit 952
18  into evidence. It was the plea hearing allocution dated
19  November 29, 2018.
20      MS. FAHERTY: For the purposes of his allocution.
21  Otherwise, all of the hearsay statements herein, I don't
22  think it needs to be admitted, but for the fact that it was
23  his allocution. No objection to that portion of it.
24      THE COURT: I'm not sure how we are going to
25  distinguish between this and that. Any objection to --

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2310 |
|---|---|

1    MS. HABBA: Any response to the objection?
2    THE COURT: Any response to the objection?
3    MS. HABBA: Yes. An allocution is his words.
4 They're not hearsay. The portions where a judge asked him a
5 question and he responds that he's guilty is not hearsay at
6 all. He confirmed yesterday that he was guilty and, in
7 fact, I did ask him to restate the question and he himself
8 said he responded guilty, so I'm not sure why it's hearsay.
9    MS. FAHERTY: Any other statements in the
10 transcript, that's all. Ms. Habba and I are talking the
11 same language, Your Honor.
12    MS. HABBA: I'm not sure that we are.
13    THE COURT: It is admissible for any and all
14 purposes.
15    MS. HABBA: Thank you, Your Honor.
16    THE COURT: That's what he said in open court under
17 oath.
18    MS. HABBA: Thank you, Your Honor.
19 Q   Mr. Cohen --
20    MS. HABBA: And Judge, just so you know before
21 everybody gets up in arms, I'm just going to do two or three
22 yes, sir, just to review and clarify the record yesterday
23 after seeing the transcript and then I'll move on.
24    THE COURT: Sure.
25 Q   I want to clarify something about your testimony

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2311 |
|---|---|

1 yesterday. You stated that you previously pled guilty to
2 several counts of tax evasion, right?
3 A   Correct.
4 Q   And those counts had nothing to do with Donald Trump;
5 isn't that correct?
6 A   That's correct.
7 Q   And it wasn't done at the direction of Donald Trump
8 or --
9    MR. KISE: We still really can't hear you.
10    MS. HABBA: Sorry. Is that better?
11    MR. KISE: Yes.
12 Q   So I had asked you if those counts had nothing to do
13 with Donald Trump and I believe you responded yes. And it
14 wasn't done at the direction or benefit for President Trump, was
15 it?
16 A   For Mr. Trump, no.
17 Q   And when you pled guilty to making false statements to
18 a financial institution, that had nothing to do with Donald
19 Trump, did it, for the HELOC?
20 A   I know what you're referring to.
21 Q   Right.
22 A   The answer is no.
23 Q   Okay. Thank you.
24    And when you lied to Judge Pauley under oath at your
25 plea hearing for those charges, that had nothing to do with

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2312 |
|---|---|

1 Donald Trump correct?
2    MS. FAHERTY: Objection for the characterization.
3 We did this yesterday. I'm just going to stand up now and
4 forewarn my concern at what I thought was a little bit of a
5 circus yesterday. I'm just putting it on the record now
6 that if I need to stand up, I will stand up. My objection
7 stands, Your Honor.
8    MR. KISE: So, Your Honor, Your Honor --
9    MS. FAHERTY: Two attorneys.
10    MR. KISE: Right. The only circus yesterday was
11 the witness not answering questions, so that's a fair
12 question. He admitted here today for the first time in open
13 court that he lied to Judge Pauley right across the street,
14 right across the street. He lied to Judge Pauley when he
15 pled guilty. That's what he said under oath in this
16 courtroom, the same oath that he took there, the same oath
17 that he took here. So in open court, he has now admitted to
18 perjury in front of the Judge Pauley. I think that's a
19 relevant fact for impeachment and -- may I finish? It
20 should come in. I mean, there's no reason that that
21 shouldn't come in.
22    MR. ROBERT: From the moment the case started, from
23 the moment of my opening, the People started and talked
24 about credibility. I talked about credibility. Credibility
25 of the witnesses is what Your Honor is ultimately going to

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2313 |
|---|---|

1 have to decide in this case. The fact that the witness
2 admitted for the first time yesterday that he committed
3 perjury in the Southern District of New York as part of a
4 plea, and we are going to get into other acts of perjury
5 today, couldn't be more relevant in this case in enabling
6 this Court to determine who's telling the truth and who is
7 not.
8    THE COURT: Ms. Faherty, I don't understand the
9 objection. Maybe say it again. What am I missing?
10    MS. FAHERTY: First, Your Honor, counsel has twice
11 now repeated this word "perjury" repeatedly.
12    THE COURT: Well, that's the definition of perjury,
13 lying under oath.
14    MR. KISE: Thank you, Your Honor.
15    MS. FAHERTY: The legal conclusion of perjury is
16 very different. If you recall earlier this week or last
17 week, we had counsel stand up, screaming, "Please don't let
18 this witness violate his Fifth Amendment rights." I am
19 quite concerned at the presentation from counsel that they
20 are standing up, making these accusations while the witness
21 is still on the stand. I'm quite concerned and so I'm
22 standing up to indicate that that type of showmanship should
23 not be permitted.
24    Now, I agree, Your Honor, I did ask Mr. Cohen the
25 very questions Ms. Habba is asking him and he has responded

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2314 |
| --- | --- |

1  consistently. So I would just ask for the courtesy and
2  respect that we proceed without this showmanship of words
3  like "perjury" thrown in this court which is a legal
4  conclusion. It is unnecessary. Yes, untruthful. Yes, an
5  admission of a lie. However, please, can we, please,
6  proceed?
7      MR. KISE: Your Honor --
8      THE COURT: Wait. Wait. Wait.
9      MR. KISE: Okay.
10     THE COURT: Mr. Robert, Mr. Kise, I'll tell you
11 rule number one in Engoron's courtroom, which I often say,
12 if I'm arguing for you, you don't have to argue for you. So
13 far, I totally agree with you.
14     So Ms. Faherty, is the basic point the word
15 "perjury," is that what we're trying to avoid here?
16     MS. FAHERTY: I think it is a legal conclusion,
17 Your Honor, and I think that it instills a certain type of
18 fear and intimidation in the witness in particular. That
19 gives me great concern.
20     MS. HABBA: Your Honor, if I may?
21     THE COURT: Yes.
22     MS. HABBA: The perjury, although, the press is
23 just hearing about it now, the perjury was heard at his
24 deposition when he first said that he lied under oath with
25 Judge Pauley. It is only now coming to light. He has

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2315 |
| --- | --- |

1  counsel. He had counsel then. This is not a shock. This
2  is not showmanship. Everybody has had the transcript. It's
3  just that the media hasn't heard about it until now. I'm
4  just doing my job, sir. Mr. Cohen, as we know, is a witness
5  who has interjected in many cases against my client and his
6  credibility is the most important thing that I will attack.
7      THE COURT: Well, can we limit it to --
8      MS. HABBA: Frankly, I'm done with that line of
9  questioning. It's done. I will be honest with you.
10     MS. FAHERTY: If we could move on --
11     MR. KISE: I don't know that we're done with that
12 and --
13     MR. ROBERT: I'm certainly not.
14     MR. KISE: I will certainly say there is nothing
15 wrong with calling a liar a liar. There's nothing wrong
16 with calling someone who admits in open court to perjury.
17 He was under oath in front of Judge Pauley. He was under
18 oath in front of Judge Pauley. He said here yesterday under
19 the same oath, "I lied to Judge Pauley." That's perjury.
20 As Your Honor said, that's the definition of perjury. So we
21 should not be expected to dance around it for someone's
22 sensibilities.
23     A serial liar is a serial liar and since the entire
24 case of the Attorney General hinges on this perjurious
25 witness who has lied to everyone he has ever spoken to,

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2316 |
| --- | --- |

1  we're entitled to bring that out. We're entitled to raise
2  that. I think it is highly relevant. I think it is highly
3  probative and we shouldn't have to dance around because of
4  some sensitivity about words. Perjury is perjury and it is
5  obvious what's going on here. The Attorney General is
6  trying to cover for an extraordinarily defective witness
7  that they're putting on the stand who has no credibility.
8      THE COURT: Now, you are violating two of my rules.
9  First is what I just said. You don't have to argue if I'm
10 arguing for you. Second rule, which I believe I've said
11 during this trial, I know I've said, let's not make
12 speeches. We are here for questions, answers, maybe
13 argument, but we don't need speeches at this point.
14     My understanding, try to see if we can all agree, I
15 believe that perjury implies conviction. You want to say
16 he's lying, say he's lying, but let's not use the word
17 "perjury" especially if you're asking him a question that
18 might ask for a legal conclusion and let's move on.
19     MR. KISE: I'll just note my exception to that,
20 Your Honor.
21     THE COURT: To which part of that?
22     MR. KISE: To the part that we are limited to what
23 we can do. It doesn't imply a conviction. If he perjured
24 himself, he perjured himself.
25     THE COURT: I'll have to --

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2317 |
| --- | --- |

1      MR. KISE: You don't need to have a conviction for
2  that.
3      THE COURT: I'm not sure. I will have to research
4  that. I take your point.
5      MS. HABBA: I can state my question in a way that's
6  acceptable to the Court and it is my last question on this.
7  It is my last question on this at least.
8  Q   Mr. Cohen, as a clarifying point, yesterday was the
9  first time you admitted in open court that you lied to Judge
10 Pauley, correct?
11 A   In open court?
12 Q   Yes.
13 A   Yes.
14 Q   Thank you. Okay. Let move on to your work with the
15 Trump Organization.
16     You were an employee of the Trump Organization from
17 2007 to 2017; is that correct?
18 A   Correct.
19 Q   And you previously testified yesterday that you
20 personally participated in the preparation of the Statements of
21 Financial Condition for years 2012 through '15, that you don't
22 recall working on the Statement of Financial Condition in 2011,
23 correct?
24 A   That's correct.
25     MS. HABBA: Okay. If I could, please, pull up the

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN

October 25, 2023

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2318 |
| --- | --- |

1    transcript --
2    Q   Well, you said correct, so let me move on. And you
3  previously testified in your deposition that you and Allen
4  Weisselberg were tasked with coming up with valuations of the
5  assets listed on the Statements of Financial Condition for those
6  years, correct?
7    A   Correct.
8    Q   And you testified that Allen Weisselberg prepared the
9  first draft of those Statements of Financial Condition for
10  Mazars, correct?
11    A   I'm sorry. Can you say that again?
12    Q   Sure.
13    You had stated that Allen prepared the first draft of
14  the Statements of Financial Condition with Mazars, correct?
15    A   I don't believe that's how I stated it, no.
16    MS. HABBA: Okay. If we could pull up 86:25 to
17  87:7 from the transcript, please.
18    MR. KISE: We still --
19    MS. HABBA: Can't hear? Can we put the volume up?
20    IT SPECIALIST: Every time it gets bumped up a
21  little bit --
22    MS. HABBA: I almost want to take the mic off. I
23  think everyone can hear me without it. I'll speak very
24  loudly. Sorry. Let's move on. Can we, please, play that.
25  Thank you.

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2319 |
| --- | --- |

1    (Whereupon the video was played.)
2    Q   Do you remember saying that, Mr. Cohen?
3    A   Yes, which is not what you were just stating.
4    Q   So I asked if Allen Weisselberg -- you testified that
5  Allen Weisselberg prepared the first draft. Isn't that what you
6  stated you believed Allen Weisselberg did?
7    A   No. I suspect that Allen -- I do not know who did it.
8  That was the point and that's exactly what I stated in the
9  deposition.
10    Q   Okay. So you suspect it was Allen Weisselberg, but you
11  testified that you were personally involved in coming up with a
12  valuation for almost every asset on the Statements of Financial
13  Condition, correct?
14    A   No, that's also not correct.
15    Q   Okay.
16    A   Every asset? Almost every asset?
17    Q   Okay.
18    MS. HABBA: If we could play that back, please.
19    (Whereupon, the video was played.)
20    Q   Right. Almost every asset, correct?
21    A   As the ones that I stated the other day.
22    Q   We'll get to that. And in coming up with a valuations
23  for almost every asset, you testified that you would determine
24  the valuations by going on Google and finding a comparable
25  property with a price per square-foot that was higher, correct?

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2320 |
| --- | --- |

1    A   Correct.
2    Q   Okay. And you testified under oath that you would
3  handwrite the new valuations on the Statement of Financial
4  Condition, correct?
5    A   That's correct.
6    Q   And Allen would do the same thing, right?
7    A   Yes.
8    Q   And I want to be clear. Allen Weisselberg, right?
9    THE COURT: That's a question.
10    Q   Allen Weisselberg, correct?
11    A   Yes.
12    Q   According to your prior testimony for 2011 to 2015,
13  this entire process of preparing the Statement of Financial
14  Condition consisted of you and Allen taking a printed piece of
15  paper and then writing on it? That was what you did, correct?
16    A   Incorrect.
17    Q   Incorrect, okay. Let's take a look at what you said in
18  your deposition.
19    (Whereupon, the video was played.)
20    Q   Mr. Cohen, you also stated that no computer was
21  involved?
22    A   There was a previous question.
23    Q   No. The question was did you say it. We played it
24  back. Do you doubt that that was you?
25    A   I don't doubt that was me, but I doubt that that is

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2321 |
| --- | --- |

1  responsive to the question that you stated.
2    Q   Okay. My question that I stated, we can have a
3  readback if you'd like.
4    A   Sure.
5    MS. HABBA: Judge, may I have a readback?
6    THE COURT: The very last question?
7    MS. HABBA: The very last question about his
8  testimony for the handwritten edits, please.
9    THE COURT: Readback, please.
10    MS. HABBA: Thank you.
11    (Whereupon, the requested portion of the record was
12  read back.)
13    A   And again, I'll state incorrect because the process was
14  not just Allen and myself as you saw in that deposition. It
15  included Mr. Trump.
16    Q   Listen, Mr. Cohen. I'm sure you're going to try and do
17  that with me every time and I'm here for it really, but I would
18  like you to answer the questions that I ask. I didn't ask you
19  who was involved. I asked you --
20    MS. FAHERTY: Your Honor --
21    THE COURT: Overruled. Let's -- let the question
22  finish.
23    MS. HABBA: Thank you.
24    Q   I asked you if you made handwritten edits on the
25  Statement of Financial Condition. Is the answer yes or no?

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)                Page 2322

1   A   I made handwritten edits to the Statement of Financial
2   Condition.
3   Q   And you also testified to me that you did not and there
4   was no computer involved in your edits; isn't that correct?
5   A   In my edits, correct.
6   Q   Okay. But you actually said it wasn't done by you or
7   Allen on your computer. You said Donald Bender did it; isn't
8   that correct?
9   A   That's what I believe, yes.
10  Q   That's what you believe, yes. Okay.
11          MS. HABBA: Can we, please, confirm that? Can you
12  please play back his dep?
13          MS. FAHERTY: Objection.
14          THE COURT: Why do we have to play it back? He
15  agreed with you.
16          MS. HABBA: Can you just read his answer for me?
17  Sorry. I don't have a feed here just so you know, so it is
18  a little bit tough for me.
19          THE COURT: You would just like his answer read
20  back?
21          MS. HABBA: Yes, please.
22          THE COURT: Please. Thank you.
23          (Whereupon, the requested portion of the record was
24  read back.)
25  Q   So it wasn't done on your computer or Allen's, but then

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)                Page 2323

1   you and Allen would take these handwritten edits and review them
2   with Donald Trump, right?
3   A   Correct.
4   Q   And this meeting, according to you, would last about
5   15 minutes; isn't that right?
6   A   Correct.
7   Q   And the meetings between you, Allen and Donald Trump
8   were never put in a calendar; isn't that right?
9   A   To the best of my knowledge, no.
10  Q   To the best of your knowledge, no.
11          Did you ever have an assistant?
12  A   No.
13  Q   No. Did you ever keep a calendar for invitations for
14  meetings on your computer?
15  A   No.
16  Q   Did you use a computer?
17  A   Yes.
18  Q   Okay. So you just had meetings in your head and they
19  would happen and you remember them sitting here today; is that
20  correct?
21  A   I'm sure. I don't understand your question.
22  Q   Okay. Let me ask you this way.
23          Meetings with you, Allen and Donald Trump on a
24  Statement of Financial Condition lasted 15 minutes and were
25  never scheduled; is that your testimony?

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)                Page 2324

1   A   Correct.
2   Q   Right.
3   A   I would go into Allen's office and there was an okay,
4   we have it done. We would walk into Mr. -- towards Mr. Trump's
5   office, knock on the door and say, "Mr. Trump, can we speak to
6   you for a second."
7   Q   Right.
8   A   That's how things worked at the Trump Organization.
9   The door is constantly open for the executives. It was a
10  constant carousel into his office.
11  Q   Okay. And Allen Weisselberg would take the handwritten
12  edits on the Statement of Financial Condition and hand it off to
13  Donald Bender, right?
14  A   Once authorized to do so, yes.
15  Q   That's not my question. He would take it when it was
16  done and he would hand it to Donald Bender? Is that what you
17  testified to?
18          THE COURT: I think when it was done is ambiguous.
19  Q   Once the final version of the Statement of Financial
20  Condition was complete in handwritten form, your testimony is
21  that you would then give it to Donald Bender, correct?
22  A   No, that's not what I stated.
23  Q   Okay. Who --
24  A   Allen Weisselberg would hand it off to Donald Bender.
25  I never did.

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)                Page 2325

1   Q   How do you know that?
2   A   Because that was the relationship. The relationship
3   existed between Donald Bender and Allen Weisselberg.
4   Q   Okay. It was your testimony that Donald Bender was
5   continuously at the Trump Organization?
6   A   Regularly at the office.
7   Q   Regularly at the office. What is the difference
8   between the two?
9          THE COURT: There is a clear difference between
10  continuously and regularly.
11          MS. HABBA: Exactly there is, Your Honor, which
12  gets to my point, Your Honor.
13          Can we, please, pull up the deposition?
14          MS. FAHERTY: I'm sorry. Why?
15          MS. HABBA: Because he didn't say "regularly,"
16  Colleen. He said "continuously" in his deposition.
17          THE COURT: All right. Then she is allowed to play
18  it.
19          MS. HABBA: That's how impeachment works.
20          (Whereupon, the video was played.)
21  Q   "Continuously," right, Mr. Cohen?
22  A   Sure.
23  Q   Not "regularly," right? Your words, not mine. Were
24  those your words?
25  A   That's what I stated, yes.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

Page 9 of 44

MICHAEL COHEN

October 25, 2023

---

**M. COHEN - PLAINTIFF - CROSS(MS. HABBA)**    Page 2326

1   Q   Thank you. So Mazars would receive the Statement of
2 Financial Condition with the handwritten edits that you and
3 Allen had written on the prior year's Statement of Financial
4 Condition was your testimony, correct?
5   A   I already stated that, yes.
6   Q   You did not submit any electronic documents or any
7 other supporting documentation, correct?
8   A   As to what? The Statement of Financial Condition --
9   Q   As to the Statement of Financial Condition. There was
10 no backup data?
11   A   I don't know the answer to that. I don't recall.
12   Q   You don't know the answer to that?
13   A   No. I don't understand your question.
14   Q   Okay.
15       THE COURT: I think the question is in addition to
16 the years in the earlier statement and the handwritten notes
17 that was then approved, did you give anything else like a
18 computer printout or computer drive of any sort?
19       THE WITNESS: I did not.
20       THE COURT: Okay. That was the question and that's
21 the answer.
22   Q   Okay. And your testimony is that this entire process
23 of editing the Statement of Financial Condition from start to
24 finish with Allen, then approved by Donald Trump took a couple
25 of days; isn't that right?

---

Page 2327

1   A   That's what I stated.
2   Q   Okay. And you never discussed the Statement of
3 Financial Conditions with Donald Trump Jr. did you?
4   A   Not that I recall.
5       (Continued on the next page.)

---

**M. Cohen - Plaintiff - cross (Habba)**    Page 2328

1   Q   And you never discussed the SOFC with Eric Trump, did
2 you?
3   A   Not that I recall.
4   Q   And you never discussed the SOFC with Ivanka Trump
5 either, did you?
6   A   Not that I recall.
7   Q   Mr. Cohen, you claim that you worked on the 2015 SOFC;
8 is that correct?
9   A   Yes.
10   Q   The 2015 Statement of Financial Condition was President
11 Trump's net worth just over $6 billion? Do you know that?
12   A   You'd have to show me the document.
13   Q   Sure. Let's do that.
14       MS. HABBA: Can you please pull up PX 729?
15   Q   Do you recognize this as the 2015 SOFC?
16   A   I do.
17   Q   Okay.
18       MS. HABBA: It's already into evidence. If we can
19 just flip the page.
20   Q   Do you see at the bottom where it says "his total
21 assets." Can you read for me what that number is?
22   A   6,580,300,000.
23   Q   Right. And that number is meant to reflect President
24 Trump's financial status as of June 30, 2015; correct?
25   A   Correct.

---

**M. Cohen - Plaintiff - cross (Habba)**    Page 2329

1   Q   And on July 16, 2015, just two weeks approximately
2 after, you appeared on CNN and stated that you considered
3 yourself to be a real estate expert and Donald Trump's net worth
4 was probably over $10 billion. Do you remember that?
5   A   I remember saying that.
6   Q   Okay. And, in fact, you stated that you believed a
7 $10 billion estimation was low. Do you recall that?
8   A   I recall that's what Mr. Trump wanted me to say, yes.
9   Q   That wasn't the question, Mr. Cohen.
10   A   That's my answer.
11   Q   Is it? I'm not surprised by that, Mr. Cohen. You're
12 very good at blaming other people.
13       So $10 billion estimation was low.
14       MS. HABBA: You know what, can you play that for
15 me, please?
16       (Whereupon, there is a pause in the proceedings.)
17   Q   Okay.
18       MS. FAHERTY: Can you provide the date on that,
19 please?
20       MS. HABBA: I did. It's July 16, 2015. I said it
21 in -- it's in the transcript.
22       I'd like to move --
23   Q   That's you on that, I assume? You recognize yourself
24 there?
25   A   Yes, less gray.

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. Cohen - Plaintiff - cross (Habba)                    Page 2330

1  Q   And that was your clip from CNN on July 16, 2015?
2  A   That's correct.
3  Q   Okay, thank you.
4      MS. HABBA: Can we please move that into evidence,
5  D 996?
6      MS. FAHERTY: For purposes of those, the statements
7  he made, no objection for that.
8      THE COURT: All right. They're in evidence -- it's
9  in evidence.
10  Q   You stated that you considered yourself to be an expert
11  in real estate; correct?
12  A   I did say that, yes.
13  Q   Why did you say that?
14  A   I do have a pretty good understanding of New York City
15  real estate.
16  Q   Good.
17      THE COURT: Quick sidebar, Counsels. I can't stop
18  myself from doing this. Just come up.
19      (Whereupon, an off-the-record discussion is held at
20  the sidebar.)
21      THE COURT: Back on the record.
22      MS. HABBA: Thank you.
23  Q   Mr. Cohen, you went through a couple properties in that
24  clip that were owned by the Trump Organization; correct?
25  A   Correct.

---

M. Cohen - Plaintiff - cross (Habba)                    Page 2331

1  Q   And you stated that those properties are second to
2  none; correct?
3  A   Correct.
4  Q   And the Trump brand has value as well; correct?
5  A   Yes.
6      THE COURT: Is that a question in the abstract or
7  are you asking if he said that?
8      MS. HABBA: No. Question in the abstract.
9      THE COURT: Okay. Had to be clear.
10  Q   And according to Predictive, the Trump brand at Fact
11  Item 2000 -- the Trump brand is worth 3 billion; is that
12  correct?
13  A   Is there a document that you're relating to?
14  Q   Sure, sure.
15      MS. HABBA: PX 431. Can you please pull up?
16      MR. KISE: And, again, Your Honor, to the extent
17  we're not waiving, you know, this, but I am -- I'm just
18  pointing it out. I believe this is a 2011 document. We're
19  not waiving our statute of limitations argument by
20  introducing it.
21      THE COURT: Understood.
22      MS. HABBA: If we could go to the second page?
23  Q   Do you see that it says "based on the information it
24  provided it's concluded that the value of the Trump brand is 2.8
25  to 3 billion?"

---

M. Cohen - Plaintiff - cross (Habba)                    Page 2332

1  A   That's what it says.
2  Q   Correct?
3      MS. FAHERTY: Your Honor.
4      THE COURT: Don't say "correct."
5      MS. FAHERTY: I'm just going to object to this
6  document she's put it in front of him. We already
7  established it's 2011. I don't know what this is. There is
8  no proffer on this document, there is no foundation on this
9  document. I'm objecting to it.
10      THE COURT: Sustained.
11      MS. FAHERTY: Thank you, Your Honor.
12      THE COURT: We don't know what it is.
13  Q   The Trump brand was worth billions of dollars; correct,
14  Mr. Cohen?
15  A   I don't know that to be the answer.
16  Q   But you're a real estate expert, Mr. Cohen, aren't you?
17  A   I'm not a brand expert, Ms. Habba.
18  Q   You're not a brand expert.
19      Was the brand on the SOFC since you worked on it? Can
20  you answer that?
21  A   I don't believe so.
22  Q   You don't believe so? Is that a yes or no?
23  A   It's an I don't believe so. I don't think it is.
24  Q   How can you not be a hundred percent certain when you
25  and Allen Weisselberg were the ones that were tasked with doing

---

M. Cohen - Plaintiff - cross (Habba)                    Page 2333

1  it?
2  A   Then I don't believe it's on there.
3  Q   Yes or no?
4  A   I would say no.
5  Q   Thank you.
6      THE COURT: Wait. Hold on. You can't make him say
7  yes or no. He's allowed to say "I don't know" or "I'm not
8  sure."
9      MS. HABBA: Okay.
10  Q   Did you ever include the brand on the SOFC?
11  A   I did not.
12  Q   Okay. Did Donald Trump ever include the brand on the
13  SOFC?
14  A   No.
15  Q   Did Allen Weisselberg ever include the brand on the
16  SOFC?
17  A   No.
18  Q   Thank you. That answers my question with a no.
19      THE COURT: Please don't comment on the answers.
20  You asked, he answered.
21      MS. HABBA: All due respect, Your Honor.
22  A   I've answered every question that you want. Why are
23  you screaming at me? I'm a subpoenaed witness.
24      MS. HABBA: Mr. Cohen, let's continue.
25  Q   Okay. You were represented at one point by Robert

---

FILED: NEW YORK COUNTY CLERK 10/16/2023 09:47 AM  INDEX NO. 452564/2022
NYSCEF DOC.  RECEIVED NYSCEF: 11/15/2023

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

Page 11 of 44

| M. Cohen - Plaintiff - cross (Habba) Page 2334 | M. Cohen - Plaintiff - cross (Habba) Page 2336 |
|---|---|
| 1 Costello; correct? | 1 manner in Mussolini. My journey to the truth has been filled |
| 2 A No. | 2 with sadness, pain and anger. Today's announcement makes it all |
| 3 Q No? | 3 worth it." Do you remember saying that now? |
| 4 A No. | 4 A I wrote that. |
| 5 Q So Robert Costello was not your lawyer at any point? | 5 Q Okay. So did you thank Letitia James? |
| 6 A No. | 6 A Not personally. I thanked her on the tweet. |
| 7 Q Okay. Do you know Robert Costello? | 7 Q Okay. Thank you very much. |
| 8 A I've met Robert Costello. | 8 THE COURT: Please don't comment. |
| 9 Q Have you spoken with? | 9 Q And you take pride in your role in commencing the |
| 10 A I have spoken with Robert Costello. | 10 investigation; correct? |
| 11 Q Did you ever tell Robert Costello you don't have | 11 A I acknowledge it. |
| 12 anything on Donald Trump, "I swear to God I don't have anything | 12 Q You -- |
| 13 on Donald Trump?" | 13 A It's for acknowledging. |
| 14 A I don't recall that. | 14 Q I don't think I understand that. |
| 15 Q You don't recall? Did you -- | 15 So by thanking her you're saying you acknowledge your |
| 16 THE COURT: Please don't comment on the answers. | 16 participation? |
| 17 MS. HABBA: I am phrasing my question. | 17 A I thanked her for acknowledging my participation. |
| 18 Q So do you recall that you told him you would "do | 18 That's what it says. |
| 19 whatever the," excuse my French, "F," I'll say, "it takes to | 19 Q Okay. Are you proud that you participated in this |
| 20 avoid jail time?" Recall that? | 20 investigation, Mr. Cohen? |
| 21 A I don't recall that either. | 21 A I don't know if the word "proud" is the way I would |
| 22 Q Okay. Mr. Cohen, Letitia James, Attorney General of | 22 describe it. |
| 23 New York, has personally described as being one of the central | 23 Q Did you say in your tweet that "this makes it all worth |
| 24 reasons the Attorney General's Office investigation into the | 24 it?" The tweet's right in front of you. |
| 25 Trump Organization business dealings was initiated. Isn't that | 25 A Yes, I said that. Does that connote to the term |

| M. Cohen - Plaintiff - cross (Habba) Page 2335 | M. Cohen - Plaintiff - cross (Habba) Page 2337 |
|---|---|
| 1 correct? | 1 "proud?" |
| 2 A You're welcome. Yes. | 2 Q Let's just move on. |
| 3 Q You're welcome, you're welcome. That's telling. | 3 A Okay. |
| 4 So what I'd like to say is you're right -- | 4 Q And you personally assisted the Attorney General in its |
| 5 MS. FAHERTY: Your Honor, please. | 5 investigation of the SOFCs; correct? |
| 6 MS. HABBA: I withdraw that. | 6 A No. |
| 7 THE COURT: Okay. Withdrawn. | 7 Q No? |
| 8 Q Did you -- you just personally thanked her now; | 8 A No. |
| 9 correct? | 9 Q Okay. Mr. Cohen, did you write a book called |
| 10 A I was being comical. | 10 "Revenge?" |
| 11 Q You were being comical. | 11 A I did. |
| 12 A Yes, I have seen the -- | 12 MS. HABBA: Can we please pull up "Revenge" at 179? |
| 13 Q Let me ask you a question -- | 13 I'll read this just to make it easy. |
| 14 A I did see the video of her thanking me and I never had | 14 Q Mr. Cohen, is this your book? |
| 15 a chance to say thank you. | 15 A That is. |
| 16 Q You never had a chance to say thank you. So you want | 16 Q Page 179 to 180 states: "Part of that offering was |
| 17 to do it now in court? Great. | 17 400 hours of testimony before seven different congressional |
| 18 You actually did have a chance to say thank you. | 18 committees, talking to the Manhattan DA, the Attorney General, |
| 19 MS. HABBA: Can you pull it up, please? | 19 and the Department of Justice. I cooperated with them all." |
| 20 Q Do you see September 21, 2022, is this your handle on X | 20 Are you reading along with me, sir? |
| 21 now at the time Twitter @MichaelCohen212? | 21 A Oh, I am. |
| 22 A It is. | 22 Q "As for the substance of cooperation, I want to make |
| 23 Q Okay. And do you remember writing that tweet that says | 23 clear exactly what I gave to the government concerning Donald |
| 24 "I want to personally thank Tish James for acknowledging my | 24 Trump. I gave them a roadmap. I gave them everything that I |
| 25 participation and assistance in bringing accountability to the | 25 knew about Donald Trump. I provided the government with the |

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.
MICHAEL COHEN

October 25, 2023

| M. Cohen - Plaintiff - cross (Habba) | Page 2338 |
|---|---|

1 basic understanding of how the Trump Organization operates with
2 Donald at the helm. I explained the various roles of other
3 executives and countless acts of illegal activities, the crimes
4 mostly centering around finances. I provided, among other
5 things, Trump's personal financial statements for various years,
6 copies of checks and other assorted documents."
7      Does that refresh your recollection, Mr. Cohen?
8    A   As to what?
9    Q   As to the question that you just answered differently;
10 that you didn't personally assist the AG with the investigation
11 of the SOFCs?
12    A   When I was in conversation with the Manhattan District
13 Attorney, the Attorney General's Office participated in those
14 meetings and so what I did is I combined them together. There
15 was no specific AG meetings. They were present at my meetings
16 with the Manhattan District Attorney's Office.
17    Q   So the Manhattan District Attorney's Office and the
18 Attorney General's Office were working in tandem. That is your
19 testimony, correct?
20    A   That's my testimony.
21    Q   And, in fact, you saw them working in tandem; correct?
22    A   They participated in those meetings.
23    Q   Together?
24    A   They were present in those meetings.
25    Q   Were you promised anything from the Attorney General if

| M. Cohen - Plaintiff - cross (Habba) | Page 2339 |
|---|---|

1 you agreed to assist in the investigation of the Trump
2 Organization, Mr. Cohen?
3    A   No.
4    Q   You did claim that you provided a "roadmap,"
5 quote/unquote, of all the financial crimes that you claim
6 occurred at the Trump Organization. Isn't that correct?
7    A   That's not what it says.
8    Q   That's not --
9    A   What it says -- I want to make clear exactly what I
10 gave the government concerning Donald Trump. I gave them a
11 roadmap.
12    Q   Can I just stop you there, Mr. Cohen?
13    A   You can.
14    Q   Did you just say "I gave them a roadmap?"
15      THE COURT: He just said that, yes.
16    Q   What's the answer to that?
17    A   Already asked and answered.
18    Q   We're going to --
19      MS. HABBA: Okay, Your Honor.
20      MR. KISE: The judge doesn't like that objection.
21      THE WITNESS: Apologies, Your Honor.
22    A   The answer is yes, that's what I wrote. It's in the
23 book.
24    Q   Okay. Thank you.
25      These are your words in the book, correct?

| M. Cohen - Plaintiff - cross (Habba) | Page 2340 |
|---|---|

1    A   It's my words.
2    Q   And you claimed to have provided documentation which
3 shows countless acts of illegal activities; correct?
4    A   You're reading that from where? Okay.
5    Q   You can read it to yourself. Take your time.
6      MR. KISE: Can we have one minute, Your Honor,
7 while he's reading that? Just counsel?
8      THE COURT: Sure.
9      (Whereupon, there is a pause in the proceedings.)
10      MR. KISE: Thank you, Judge.
11    Q   Okay. According -- were we waiting for an answer? Did
12 you read it?
13    A   Yes, I read it.
14    Q   And it says that?
15    A   Yes, I read it. It says it perfectly.
16    Q   I'll speak really loud. Your testimony is that you
17 personally participated in the SOFCs; correct?
18    A   Correct.
19    Q   In fact, you claim you are personally responsible for
20 coming up with many of the inflated numbers; correct?
21    A   Yes, correct.
22    Q   And you told them that you committed fraud in
23 connection with preparation of the SOFCs; correct?
24    A   I don't believe that's what I said to them.
25    Q   Didn't you say in the question prior that you told them

| M. Cohen - Plaintiff - cross (Habba) | Page 2341 |
|---|---|

1 you were part of the process of inflating the SOFCs?
2      MS. FAHERTY: Just to clarify, I've lost this line
3 of questioning. Who is the "them?"
4    Q   Okay. Let me restart it. Let's just be clear. I
5 appreciate that.
6      THE COURT: Withdrawn?
7      MS. HABBA: Withdrawn.
8      MS. FAHERTY: Thank you, Your Honor.
9    Q   Mr. Cohen, you have testified between yesterday and
10 today that you were personally responsible for drafting and
11 coming up with numbers in the SOFCs; correct?
12    A   Which I did at the direction of Mr. Trump.
13    Q   That's not what I asked you, Mr. Cohen.
14      Yes or no did you partake?
15    A   I did.
16    Q   Okay. And you told the District Attorney's Office that
17 you did this; correct?
18    A   I can't go into that. There is another case that's
19 pending right now. It's improper.
20    Q   Not really because you've testified -- I'm sorry.
21      But you testified they were there, so if you told them,
22 you told them; correct?
23      MS. FAHERTY: Your Honor, if I could --
24      MS. HABBA: It's not --
25      THE COURT: Your microphone isn't working.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. Cohen - Plaintiff - cross (Habba)  Page 2342

1  MS. FAHERTY: Can you hear me? If I can raise an
2  objection here. I think this record at this point is a bit
3  muddied and confusing. There was an excerpt from
4  Mr. Cohen's book that we were just looking at. The
5  questions were focused on the excerpt in the book. We have
6  now closed the book. We're talking about themes, we're
7  talking about the DA. It is untethered. I'm a bit confused
8  where this line of questioning is going and I would really
9  ask that we keep it focused and direct. I don't understand
10  what testimony is being elicited and I will say there is a
11  parallel DANY proceeding, so I'm a bit concerned that the
12  line of questioning is going beyond the scope of this case
13  and bleeding into another case. So I'm just raising my
14  concern that this line of questioning which started with the
15  book is now untethered and I don't know where we actually
16  are with this testimony.
17  MR. KISE: Well, Your Honor, if you're going to
18  side with me I'm not going to say anything.
19  THE COURT: You're learning.
20  Well, sustained solely on the ground that I think
21  it's unclear who "they" are, etc., etc.. I like to go with
22  the simple rulings.
23  MS. FAHERTY: Thank you, Your Honor.
24  THE COURT: So without prejudice obviously to
25  whatever you want to ask about.

---

M. Cohen - Plaintiff - cross (Habba)  Page 2343

1  MS. HABBA: Sure.
2  Q  Mr. Cohen, no charges were ever brought against you
3  personally by DANY in connection with your work on the Statement
4  of Financial Conditions, were they?
5  A  No.
6  THE COURT: DANY is the District Attorney of New
7  York. Not everybody knows.
8  MS. HABBA: Thank you, Your Honor.
9  Q  And, in fact, no claims were ever made against you by
10  the New York Attorney General, were they?
11  A  No.
12  Q  But you have claimed in your testimony that you are an
13  essential player in inflating the assets in the SOFC; correct?
14  A  I stated that, yes.
15  Q  And despite all of that you were never named as a
16  defendant in this case, were you?
17  A  I am not named as a defendant in this case.
18  Q  So the Attorney General must not believe that your
19  story is credible; is that correct?
20  A  You are drawing a conclusion that I don't know. You
21  could ask Ms. James.
22  ATTORNEY GENERAL JAMES: I object.
23  THE COURT: We're still researching that one.
24  Q  You even met with Mr. Pomerantz; correct?
25  A  I have met with Mr. Pomerantz, yes.

---

M. Cohen - Plaintiff - cross (Habba)  Page 2344

1  Q  I'm not going to get into the conversations, just so
2  you know.
3  Are you aware that he noted in his book that there are
4  significant risks with using you as a witness because of your
5  credibility?
6  A  I didn't read his book.
7  Q  Okay. Prior to termination of your professional
8  relationship with him, you had a very high --
9  A  I'm sorry, who is "him?"
10  Q  If you let me finish my question.
11  You had a very high regard of President Trump; is that
12  correct?
13  A  Correct.
14  Q  And in the past you had a long history of praising
15  Mr. Trump, isn't that right, Mr. Cohen?
16  A  Also correct.
17  Q  In fact, you stated that you worshipped him. Isn't
18  that correct?
19  A  Yes, that's correct.
20  Q  And you testified under oath before Congress that you
21  are very proud to have served Donald Trump and that you would
22  continue to support him. Isn't that correct?
23  A  I don't know what you're referring to.
24  Q  Okay.
25  A  I testified seven times to congressional committees.

---

M. Cohen - Plaintiff - cross (Habba)  Page 2345

1  Which one?
2  MS. HABBA: Can we please pull it up on 102, D 960?
3  Thank you.
4  Q  Mr. Cohen, you were interviewed by -- in an Executive
5  Session. It was a closed-door session with the Permanent Select
6  Committee on Intelligence, the U.S. House of Representatives on
7  October 24, 2017. Do you recall that?
8  A  I do.
9  Q  Okay. And that was closed to the public; right?
10  A  That was.
11  Q  This is a transcript from that. As you can see it's an
12  unclassified transcript from that hearing. Do you see that?
13  A  I do.
14  MS. HABBA: Go back to the front page if you need.
15  At D 960 -- can you please scroll up?
16  Q  You state -- sorry.
17  MS. HABBA: The next page.
18  Q  Mr. Cohen, it says, "I am very proud to have served
19  Donald Trump for all these years, and I will continue to support
20  him." Do you now remember saying that?
21  A  This is the document that was prepared by the entire
22  group that I referred in the direct. This was done by myself
23  with Alan Garten, this was done with Jay Sekulow, with a whole
24  slew of individuals, but yes, I did make that statement.
25  Q  You made that statement in front of that committee;

---

FILED: NEW YORK COUNTY CLERK 11/15/2023 09:47 AM INDEX NO. 452564/2022
NYSCEF DOC. NO. 637 RECEIVED NYSCEF: 11/15/2023

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.
Page 14 of 44

MICHAEL COHEN
October 25, 2023

**M. Cohen - Plaintiff - cross (Habba)** — Page 2346

1 correct?
2 A Correct.
3 Q Thank you.
4 Your opinion of Mr. Trump was so high, in fact, that
5 you once stated you would take a bullet for him; is that
6 correct?
7 A Vanity Fair, Emily Fox, yes.
8 Q Thank you're doing my work for me. I appreciate it.
9 And you referred to yourself as the guy who protects
10 the President and the family. Isn't that right?
11 A That's also correct.
12 Q And you've insisted that you would never walk away from
13 Donald Trump; correct?
14 A I stated that.
15 Q I would like to now show you a political article dated
16 July 9, 2015, which is in evidence as D 986. I'm going to
17 highlight a section. If you can just read it, please?
18 MS. FAHERTY: What is this?
19 MS. HABBA: You have this -- it's a political
20 article dated July 9, 2015. It was given two days ago.
21 MS. FAHERTY: Why are we putting this in front of
22 him?
23 MR. KISE: Just sit down and you'll find out.
24 MS. FAHERTY: Mr. Kise, I appreciate the
25 commentary, but I would like a proffer of this. When you

**M. Cohen - Plaintiff - cross (Habba)** — Page 2347

1 comment and ask the witness a question, I will extend the
2 same courtesy to you.
3 MR. KISE: No. Apparently the Attorney General
4 hasn't. And as Your Honor knows, we have given,
5 particularly Ms. Faherty, an extraordinary amount of
6 latitude in how she asks questions and have sat here with
7 leading question after leading question and introducing
8 documents and everything yesterday, everything comes in. So
9 I think bringing up a document and giving us a moment or two
10 to tie to it is well within the discretion of the Court.
11 THE COURT: Mr. Kise, please be respectful to the
12 attorneys on the other side.
13 MR. KISE: I am being respectful, but they're not
14 respectful to me. That group of attorneys over there, they
15 asked Your Honor to sanction me. 33 years I have been
16 practicing law. I've argued and won four cases in the
17 Supreme Court of the United States and I am being subject to
18 sanction for making legal arguments and they want me to be
19 respectful to them? Respect is not something -- where I
20 grew up respect is not something that you get. It's
21 something that you earn and I believe as a lawyer I've
22 certainly earned it.
23 THE COURT: I will try to jump into the fray here.
24 I will say whenever there is an objection but the question
25 by the Attorney General's counsel was leading, I always

**M. Cohen - Plaintiff - cross (Habba)** — Page 2348

1 addressed it and I think I sustained probably more than half
2 of them, so.
3 MR. KISE: You didn't, Your Honor. But my point
4 was we didn't object. We just let it go because we're
5 trying to move the case along and so we're asking the
6 Attorney General, they're making arguments about documents
7 and we haven't even had a moment to connect up before we
8 even get to -- the examiner gets to say anything.
9 MS. HABBA: And, Your Honor, if I might just add
10 myself. It is completely disrespectful when I just pull a
11 document up and don't even get a question out. We'll be
12 here well into tomorrow, I assure you of that. I have a lot
13 of questions if this is how we're going to do it. I have a
14 right to ask him questions. We've given you the exhibits
15 like we were supposed to several days ago, so I would like
16 to do my job for my client, please.
17 THE COURT: This document is already in evidence.
18 MS. HABBA: Exactly.
19 MS. FAHERTY: This is not admitted into evidence,
20 Your Honor, no. It was placed into an exhibit folder --
21 MS. HABBA: For you.
22 MS. FAHERTY: -- for us to review two nights ago at
23 I think 10:30 at night. And, in fact, I came to the
24 courthouse this morning, there was yet another added.
25 So if I stand up, respectfully, Your Honor, and say

**M. Cohen - Plaintiff - cross (Habba)** — Page 2349

1 I would like a proffer because I have not heard a proper
2 foundation laid to either impeach this witness, I haven't
3 heard it yet. We have repeatedly this morning seen
4 something thrown onto the screen declaring I'm going to
5 impeach you with this new evidence when that hasn't been
6 properly laid down.
7 Respectfully, I would appreciate Ms. Habba to
8 continue with the examination in a way that sets the
9 evidence properly. The foundation is laid, the questions
10 can be asked, the evidence can come in. We have not been
11 following that orderly procedure. That is all I've asked,
12 Your Honor. I stood up and said voir dire this. What is
13 this and what is its purpose for this particular witness?
14 MS. HABBA: All due respect, I just ask that it be
15 put up, Colleen. You've been interrupting me.
16 MR. ROBERT: Your Honor --
17 THE COURT: Mr. Robert, you've been relatively
18 quiet.
19 MR. ROBERT: And I'll be brief. We have been here
20 now four weeks and we have sat here while the Attorney
21 General has put documents in front of witnesses and instead
22 of putting them into evidence first, ask the witness spend
23 five and ten minutes discussing them and then putting them
24 into evidence. We have sat quietly because we wanted to get
25 this thing done in an orderly and efficient process.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN

October 25, 2023

M. Cohen - Plaintiff - cross (Habba)    Page 2350

1    As far as exchanging of documents we have been the
2    ones who have been vigilant. Every night the Attorney
3    General is sending us five more, 50 more, a hundred more
4    documents. That's the way this process works.
5        Ms. Habba is allowed to ask Mr. Cohen a question.
6    Based on what his answers are and then make the
7    determination whether the document be put into evidence or
8    not.
9        Ms. Faherty now objecting to us being able to lay a
10   foundation when for weeks now I have listened to them recite
11   from documents that were not in evidence because we assumed
12   subject to connection they would come in and they did is
13   just grandstanding. Let's let Ms. Habba proceed and then
14   when an application is made to put in evidence, the Court
15   will deal with it.
16       THE COURT: I do think that the Attorney General's
17   objection or interruptions is premature. A document is put
18   on the screen, I haven't heard anything. I stand corrected.
19   Somebody said that this document was in evidence. I don't
20   care who, but can we agree it's not in evidence?
21       MS. HABBA: It's not in evidence. It was provided
22   to the AG pursuant to your rules two days ago.
23       THE COURT: Of course. That's hardly in evidence.
24   And I will say something else in response to Mr. Kise's
25   comments on respect. I agree respect isn't mandatory or

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2352

1    Q   Mr. Cohen, do you recall in a political article dated
2    July 29, 2015 that you stated, "The fact is Mr. Trump has built
3    a $10 billion-plus empire, employs thousands of people, has
4    worked with many leaders around the globe successfully and is
5    considered one of the best negotiators in history. These are
6    all qualifications essential to being a great president."
7    A   I made that statement.
8    Q   Thank you. And at that time, you thought Mr. Trump had
9    all the qualifications necessary to be a great president,
10   correct?
11       THE COURT: That's not what we are here for, by the
12   way, obviously.
13       MS. HABBA: Your Honor, it actually goes to
14   credibility. I can explain.
15       THE COURT: All right. I'll -- I didn't say you
16   couldn't ask it, but -- or read it, but I just want to make
17   sure we're focusing on why we're here, not external matters.
18       MS. HABBA: Absolutely. Absolutely.
19       THE COURT: Okay.
20   A   Can you state the question?
21       MS. HABBA: Could I, please, get a readback? Was
22   there a question?
23       THE WITNESS: I don't know.
24   Q   I just asked you if you stated that.
25   A   I stated, "yes."

Page 2351

1    assumed. It's earned, but in this courtroom I want
2    everybody to respect each other.
3        MR. KISE: And I certainly think I have done that,
4    Your Honor, while I have suffered through an awful lot at
5    the hands of the Attorney General in this case throughout
6    this case. It has been extraordinary in my experience,
7    extraordinary.
8        THE COURT: I'm not going to second that. Yes, I
9    don't know what you have or haven't. So in the courtroom,
10   no. I haven't seen it, but anyway, all right. We now have
11   a document on. It's not in evidence and we'll ask Ms. Habba
12   to proceed.
13       Transcript continues on the following page....
14
15
16
17
18
19
20
21
22
23
24
25

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2353

1    Q   We could do a readback if you want to make sure you
2    answered, if Your Honor would like.
3        THE COURT: I am pretty sure he answered.
4        MS. HABBA: He stated it. He answered the
5    question.
6    Q   Mr. Cohen, do you recall in a Reuter's article being
7    quoted saying that "President Trump's record at the time" --
8    "Mr. Trump's record was proof of" -- "his success was proof
9    positive of Mr. Trump's character and capabilities."
10       Do you recall that?
11   A   Is that another 2015 article?
12   Q   That was dated August 28, 2015, yes.
13   A   Can I see it?
14   Q   Sure. We can pull it up. This is D993- 4.
15       Mr. Cohen, you can see on the bottom that it
16   says -- from the reuters.com website, correct?
17   A   Yes, I see that.
18   Q   You see we highlighted for you the section, "Trump
19   lawyer Michael Cohen stated Trump's record of success was "proof
20   positive of Mr. Trump's character and capabilities."
21       Do you see that?
22   A   Yes, I see that.
23   Q   And do you now recall saying that in this article for
24   Reuters on August 28, 2015?
25   A   I'm sorry. Your question is?

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)          Page 2354

1    THE COURT: Do you remember saying it to Reuters?
2    THE WITNESS: Yes, I said this to Reuters.
3    MS. HABBA: I am saying it, so I don't -- I am
4  laying a foundation, so I don't get an objection. I will
5  move on.
6    MS. FAHERTY: For the sole purpose that this is an
7  article that captures this statement, no objection. I mean,
8  I'll also highlight this article also says, "For Trump,
9  exaggerating has always been a frequent impulse especially
10 when the value of his Trump brand is disputed." If counsel
11 wants that in evidence --
12    THE COURT: You can do that on re-direct or
13 whatever.
14    MS. FAHERTY: This is, otherwise, a hearsay
15 document, Your Honor. So for the purposes of that one
16 statement --
17    THE COURT: Admitted just for the fact that he said
18 it.
19    MS. HABBA: That's it.
20    MS. FAHERTY: Thank you.
21    MS. HABBA: That is, frankly, the only thing I
22 asked. "Did you say that in this article," period.
23 Q   You said "yes, correct." Just so we are clear we have
24 an answer, can I have a readback?
25    THE COURT: Did you say "yes" that you said this to

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)          Page 2355

1  the reporter?
2    THE WITNESS: Yes, I did.
3    THE COURT: You have to say it into the microphone.
4    THE WITNESS: I did.
5  Q   Mr. Cohen, you frequently defended Mr. Trump and stated
6  that he was the only one person who -- "person that could make
7  America great again"?
8  A   Again, 2015?
9  Q   No, 2016.
10 A   Yes.
11 Q   Did you do it in 2015, too?
12 A   I did.
13 Q   Okay. Do you remember Tweeting, "Thank you and believe
14 wholeheartedly that only Trump will make America great again on
15 July 13, 2016"?
16 A   Off the top of my head, no, I don't recall that.
17    MS. HABBA: If we pull up the Tweet from July 13,
18 2016.
19 Q   Mr. Cohen, is that your handle on Twitter or what is
20 now X?
21 A   Yes.
22 Q   It is dated July 13, 2016, correct?
23 A   Yes.
24 Q   6:15 a.m.?
25 A   That's what it says.

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)          Page 2356

1  Q   And can you read that for me, please, what you Tweeted?
2  A   "Thank you... and believe wholeheartedly that only
3  #trumpwill#makeamericagreatagain."
4  Q   Okay. And you tagged "realdonaldtrump," correct?
5  A   Yes, I did.
6  Q   That's President Trump's Twitter account?
7  A   Yes.
8  Q   You tagged "womenforcohen?"
9  A   Yes.
10    MS. HABBA: I would like to admit the Tweet into
11 evidence as D995, please?
12    MS. FAHERTY: No objection.
13    THE COURT: Admitted into evidence.
14    (Whereupon, the Document was marked in evidence as
15 Plaintiff's Exhibit D995.)
16 Q   So Mr. Cohen, after Mr. Trump was elected as president,
17 you expected to get a position in The White House, didn't you?
18 A   Incorrect.
19 Q   Incorrect. You didn't -- you did not think you were
20 going to go to the White House? Is that your testimony today?
21 A   I didn't want to go to the White House.
22 Q   My question to you was after Mr. Trump was elected as
23 president, you expected to be given a position in the White
24 House; is that correct?
25 A   I received the position that I had asked for.

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)          Page 2357

1  Q   But you thought you were going to be named chief of
2  staff?
3  A   No, I did not. It was a joke that went along because
4  of my relationship to Mr. Trump. I asked for and I received
5  from Mr. Trump the position of personal attorney to President
6  Donald J. Trump.
7    MS. HABBA: Okay. I would like to pull up D58-3,
8  please.
9  Q   Mr. Cohen, was your home raided by the FBI?
10 A   Yes, it was.
11 Q   When the FBI raided your home, did they take your
12 phone?
13 A   They took both of my phones.
14 Q   Okay. And were a series of text messages attached as a
15 memo in opposition to a motion to reduce your sentence?
16 A   I don't even know what you're talking about.
17 Q   Okay. I'll represent to you that this is part of a
18 docket number 1:18-CR-602. It is on the screen. It's in the
19 court docket as 58-2. It is United States vs. Cohen. This is a
20 printout attached to a memo that was submitted by the government
21 with text messages from your cellphone that they seized by a
22 subpoena and search warrant. Do you recognize that?
23 A   I don't.
24 Q   Okay. Well --
25    MS. FAHERTY: Your Honor, I am just going to put an

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2358

1   objection on the record to this. It might be premature, but
2   I'm going to state my objection now. It just seems like
3   we're delving in a trial within a trial within a trial and
4   re-litigating issues in the Southern District case. I'm
5   noting my objection to this exhibit coming in.
6       MS. HABBA: This has nothing to do with that.
7       THE COURT: Overruled without prejudice.
8       MS. HABBA: Thank you, Your Honor.
9   Q   If you see --
10      MS. HABBA: Can you blow up the text messages here.
11  Thank you.
12  Q   It states, "Person 4, Cohen or Powell, will be chief of
13  staff. Cohen, that's you, that's your text message. Neither.
14  Person 4, who then? Now this is you. Really, question mark.
15  Person 4, if Powell, she'd be the first woman." Again, they
16  say, "not Jared. Too close." Not Jared, you're speaking
17  about -- I assume that's Jared Kushner?
18  A   Again, I don't recognize this document. No, I don't.
19  Q   This is from the FBI when they seized your phone.
20  A   Okay.
21  Q   Cohen really --
22  A   Who's Person 4?
23  Q   I don't know and it is irrelevant quite honestly.
24  A   Well, it's not irrelevant.
25  Q   Okay. Is your name Cohen?

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2359

1   A   That is my name.
2       MS. FAHERTY: Your Honor, again, I'm going to state
3   my objection.
4       THE COURT: Give me your best shot. What's your
5   best objection?
6       MS. FAHERTY: First of all, we've already had
7   testimony from the witness saying he does not recognize this
8   document. We have log entries here indicating that there is
9   a Person-4. Based on Ms. Habba's representation, is she
10  asking the Court to accept the statements of these
11  outside-of-the-court persons or Person 4 for the truth of
12  the matter asserted?
13      There's inherent hearsay problems with this
14  document. And again, I think we're devolving into a trial
15  of what? How is it relevant to the matters at hand, Your
16  Honor? So again, I note my objection to this document,
17  please.
18      THE COURT: Any response, Ms. Habba?
19      MS. HABBA: Motive, motive and motive and
20  credibility. And I will show Mr. Cohen's comments and the
21  only comments that are relevant are Mr. Cohen's comments.
22  These are his text messages. It was submitted on the docket
23  by the FBI. It is unsealed. There is no question of that.
24  Unless you're -- it is not hearsay.
25      I'm -- if you let me finish, I can get to it, but

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2360

1   you keep interrupting me which frankly, I have not done to
2   you and had courtesy with you, which I'm getting a little
3   frustrated. But I understand you don't like some of this
4   testimony, so if you like, we can finish, and I can make a
5   ruling, but you keep interrupting me.
6       THE COURT: Remember, everybody, there's no jury
7   here.
8       MS. HABBA: I understand, but Your Honor --
9       THE COURT: Nobody is interrupting you
10  particularly. I'm just telling everyone.
11      MR. KISE: Unfortunately, there isn't.
12      THE COURT: So you don't ordinarily have juries
13  maybe.
14      MR. KISE: Your Honor, as to this document, again,
15  it's impeachment. It goes to credibility. We're certainly
16  entitled to explore all the many ways in which this witness
17  has twisted, moved, shifted very -- you know -- so that's
18  all we're doing and I think that's appropriate.
19      THE COURT: Objection overruled. Just go ahead.
20      MS. HABBA: Thank you. If we could scroll down.
21  Thank you.
22  Q   Person 4 states, "not Ivanka, too close. You state,
23  keep guessing, dopey. Person 4, stop. You, question mark."
24  Then you state, "I will give you a hint... yes."
25      Do you see that, Mr. Cohen?

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2361

1   A   I see that.
2   Q   Okay. The person responds, "Oh, my God. Please be
3   true. Are you serious. You need to." And then you say --
4   A   That's why Person No. 4 is important to know what it
5   is.
6   Q   Mr. Cohen, I'm not finished.
7       THE WITNESS: Sorry, Your Honor.
8   Q   You state, "He needs to ask." Do you see that?
9   A   I see that.
10  Q   Okay. So in your -- first of all, I'd like to submit
11  this into evidence. It has already been on the docket, as I
12  said, in 1:18 CR-602, D958-3.
13      THE COURT: Hearsay. An out-of-court statement
14  being introduced to prove the truth of its contents -- are
15  you introducing it to prove the truth of its contents?
16      MS. HABBA: I'm proving it to impeach the witness
17  who stated that he did not want that job. So the truth of
18  the contents is yes, he stated in a text that he wanted that
19  job. Solely to Mr. Cohen, Your Honor.
20      THE COURT: You know, I try to use commonsense when
21  I'm applying rules. Objection overruled. It's in. I find
22  enough of a foundation has been laid.
23      MS. HABBA: Thank you very much, Your Honor.
24  Q   And you were never given a position in the White House,
25  were you, Mr. Cohen; yes or no?

---

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)         Page 2362

1    A    I was given the position --
2    Q    Yes or no?
3    A    -- that I asked for.  There was no shame in being
4    personal attorney to the president.
5    Q    We'll get to that, but my question is were you given a
6    position in the White House?
7    A    I didn't ask for a position.
8         THE COURT: No.  No.  You have to answer the
9    question.
10        THE WITNESS: It's a question I -- I don't know
11   how I'm going to be given it if you don't ask for it.
12        THE COURT: Hold on.
13   Q    Okay.
14        THE COURT: Hold on.  I don't know whether special
15   counsel or counsel to the president or personal counsel -- I
16   don't know whether that's in or out of the White House, but
17   you know, other than that, you have to answer the question.
18   If you don't know whether your job was in or out of the
19   White House, say that; but, otherwise, you were or you
20   weren't.
21   Q    Mr. Cohen, did you ever go to the White House as a
22   position as an employee for the President of the United States
23   Donald Trump?
24   A    No.
25   Q    Thank you.

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)         Page 2363

1         Around that same time, you found other ways to
2    personally benefit from your relationship with Mr. Trump,
3    correct?
4    A    I'm sorry.  And what time frame are you referring to?
5    Q    When the president or -- when Mr. Trump became
6    President Trump, you found ways to benefit from your
7    relationship with Mr. Trump, didn't you?
8    A    Yes.
9    Q    In fact, didn't you candidly admit that you previously
10   cashed in on your relationship with President Trump?
11   A    I don't know where you are referring to.
12        MS. HABBA: Could you, please, pull up Disloyal at
13   page 341.
14   Q    Mr. Cohen, did you write a book entitled, "Disloyal"?
15   A    I did.
16   Q    Is this -- does this appear to be what was the cover
17   that was just up from Disloyal?
18   A    I'm sorry?
19        MS. HABBA: Can you go back, please.  You just had
20   the cover up.
21   Q    Is that your book?
22   A    That is.
23   Q    Okay.  Can you, please, turn to page 341.  Can you read
24   the part where it says -- the second red box, "Was I cashing in
25   on my relationship with Trump?  Of course, I was.  What would

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)         Page 2364

1    you do."  Do you read that?
2    A    Yes.
3    Q    Were those your words?
4    A    My words.
5         MS. HABBA: I would like to admit Disloyal 341 into
6    evidence, please.
7         THE COURT: Granted.  It is in.
8         (Whereupon, the Document was marked in evidence as
9    Plaintiff's Exhibit 341.)
10        MS. HABBA: Thank you.
11   Q    Back when you acted as personal counsel to President
12   Trump, you launched a personal company known as Essential
13   Consultants, LLC as a way of cashing in on your relationship
14   with the President of the United States; isn't that correct?
15   A    No, that's not correct.
16   Q    That's not correct.  Okay.
17        MS. HABBA: Let's turn to page 341 again.
18   Q    It is up.  Take a minute to read it.  Let me mow when
19   you're ready.
20        (Witness reviewing document.)
21   Q    "After the election, I set myself up in a New York
22   office of Squire Patton Boggs"?
23   A    I don't see where you are.
24   Q    At the top, it is highlighted.  "A top-tier law firm
25   located at Rockefeller Plaza as a strategic alliance which

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)         Page 2365

1    really meant the partners could brag to their clients that the
2    personal attorney to the President of the United States,
3    President Trump, was part of their outfit.  I was also using my
4    company Essential Consultants to take on clients like AT&T,
5    Novartis, Columbus Nova and BTA Bank, high-level companies
6    desperate for insights and connections to the President and
7    willing to pay for their assistance."
8         Did you read that?
9    A    You read it.
10   Q    Did you read it?
11   A    I wrote it.
12   Q    Correct.  You wrote it.  So those are your words,
13   right, Mr. Cohen?
14   A    Yes, those are my words.
15   Q    So when you said you didn't -- my question to you was
16   did you launch a company known as Essential Consultants as a way
17   of cashing in on your relationship with the President of the
18   United States?  You did, didn't you, Mr. Cohen?
19   A    Again, no.
20   Q    You --
21   A    Let me explain.
22   Q    It is a yes-or-no question, Mr. Cohen.
23   A    There is no --
24        THE COURT: You can explain on re-direct.
25        MS. HABBA: Thank you.

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2366 |
| --- | --- |

1    Q    And didn't you primarily use this company to secure
2    lucrative clients that were "desperate" for connections to
3    President Trump such as AT&T, Novartis, Columbus Nova and BTA
4    Bank?
5    A    Insights and connections, yes.
6    Q    I'm sorry. What was that word that you said?
7    A    Insights and connections.
8    Q    You're reading that from your book?
9    A    Correct.
10          MR. HABBA: Okay. I would like to submit Disloyal,
11   page 344 -- 341, excuse me, into evidence.
12          THE COURT: Granted. It is in evidence.
13          MS. HABBA: Thank you.
14          (Whereupon, the Document was marked in evidence as
15   Plaintiff's Exhibit 341.)
16   Q    And Essential Consulting ultimately received payments
17   of more than $4 million; isn't that correct?
18   A    Correct.
19   Q    Similarly, didn't you also enter into a strategic
20   alliance with Squire Patton Boggs where you were paid half a
21   million dollars annually to further capitalize on your
22   relationship again with President Donald Trump?
23   A    As well as my other relationships, yes.
24   Q    That was not the question. Your book that we just had
25   up said Squire Patton Boggs wanted a relationship with you

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2367 |
| --- | --- |

1    because of President Trump, did it not?
2    A    It did.
3    Q    Okay. And the purpose of this strategic alliance was
4    that -- so that the partners of Squire Patton "brag to their
5    clients that the personal attorney to the President of the
6    United States was part of their outfit." Didn't you say that?
7    A    I said that.
8    Q    And today, you have significant animosity towards
9    President Trump, don't you?
10   A    Do I have animosity towards him? Yes.
11   Q    That was the question.
12   A    Yes, I do.
13   Q    Yes, you do.
14         In fact, you often go on social media, don't you,
15   stating all of your animosity?
16   A    I use social media.
17   Q    That wasn't my question.
18         MS. HABBA: Can you, please, read back the
19   question.
20         THE COURT: Read back, please. And his response
21   was not responsive. It did not answer the question.
22         MS. HABBA: Thank you.
23         THE COURT: Readback.
24         (Whereupon, the requested portion of the record was
25   read back.)

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2368 |
| --- | --- |

1    A    Not all my animosity.
2    Q    But despite your animosity, you continue to financially
3    benefit from President Trump, don't you?
4    A    No.
5    Q    No?
6    A    No.
7    Q    Since your release from prison, Mr. Cohen, your career
8    has shifted from the practice of law towards entertainment and
9    media; isn't that correct?
10   A    Can you define "entertainment and media"?
11   Q    Sure. Mr. Cohen, you have made a career out of
12   publicly attacking President Trump, haven't you?
13   A    Yes.
14   Q    In fact, a substantial amount of your present day
15   income is derived from publicly criticizing President Trump;
16   isn't that right?
17   A    Amongst other people, yes. It is not Mr. Trump only.
18   Q    Okay.
19   A    It discusses news of the day.
20   Q    So your testimony -- so is that a yes or a no?
21   A    That would be a no.
22   Q    That would be a no, okay.
23         MS. HABBA: Can we, please, pull up the transcript
24   from Galicia.
25   Q    Mr. Cohen, do you remember the Galicia case that you

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) | Page 2369 |
| --- | --- |

1    and I were involved in?
2    A    I was a subpoenaed witness, yes.
3    Q    You remember that I deposed you, correct?
4    A    I remember.
5    Q    This is a copy of the transcript from that deposition.
6    Just to lay a foundation, index number 24973/2015. Galicia vs.
7    Donald Trump. The date on that is May 9, 2022. Do you see
8    that?
9    A    I see that.
10   Q    And the time was 10:11. It was the deposition of
11   non-party witness Michael Cohen. Do you see that?
12   A    I do.
13   Q    It was held at Belkin Burden Goldman in New York and I
14   deposed you at that time. Do you remember that?
15   A    I recall.
16         MS. HABBA: If you could please switch to 103:19.
17         THE COURT: Five-minute warning.
18         MS. HABBA: Thank you, Your Honor.
19   Q    My question:
20         "What do you do to raise money?"
21         You said, "You mean for a living?"
22         I said, "Yes."
23         You said, "Yes. I'm writing a second book which will
24   be called The Department of Injustice. I have a podcast
25   called Mea Culpa, top 50 podcast in the country. I am also

PEOPLE OF THE STATE OF NEW YORK v.                                    MICHAEL COHEN
DONALD J. TRUMP, et al.                                               October 25, 2023

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA)   Page 2370 | M. Cohen - Plaintiff - cross (Habba)   Page 2372 |
|---|---|

**Page 2370**

1   now placing them on YouTube and I also have on YouTube
2   Michael Cohen Reacts which is I react to the news of the
3   day or something that I find interesting in the news."
4       And my question was:
5       "What do you find interesting in the news, Mr. Cohen?"
6       You said, "Everything."
7       And I said, "Let's"-- "Now, let's go one by one. Mea
8   Culpa is the podcast, correct?"
9       You said, "Correct."
10      "What do you discuss on Mea Culpa?"
11      Your response, "Politics, sometimes cult deprogramming,
12  various different issues."
13      "Do you discuss any of the defendants in this case on
14  Mea Culpa?"
15      Your response was, "I do."
16      "Who would that be," I asked.
17      "Former President Donald Trump."
18      And I asked you how frequently just as I'm asking
19  you today.
20      "How frequently do you discuss former President Donald
21  Trump?"
22      Your response said, "Every podcast at some point has
23  him included in it."
24      Do you see that, Mr. Cohen?
25  A   I do.

**Page 2371**

1   Q   Okay.  So when I asked you do you discuss President
2   Trump every time you are on your podcast or social media, you
3   said -- let me just ask the question.
4       Do you recall that you said that every podcast at some
5   point has included Donald Trump?
6   A   I said it, yes.
7   Q   Thank you.
8       MS. HABBA: Your Honor, this might be a good
9   stopping point.
10      THE COURT: Okay.  Just to make it simple, let's
11  all be back at 11:45.
12      (Whereupon, a recess was taken.)
13      (Continued on the next page.)
14
15
16
17
18
19
20
21
22
23
24
25

**Page 2372**

1       THE COURT OFFICER: All rise.  Part 37 is back in
2   session.  Please be seated and come to order.
3       THE COURT: Ms. Habba, before you take -- the
4   lectern has nothing do with you, but sometime prior to
5   today, I think it was about a week ago -- no, two or three
6   weeks ago --
7       (Whereupon, there is a pause in the proceedings.)
8       THE COURT: Withdrawn.  Let's start from scratch.
9       Towards the very start of this trial, defendant
10  Donald J. Trump posted on his social media account or one of
11  them, I think it was Truth Social, defamatory, disparaging,
12  completely untrue statements about the law clerk sitting to
13  my right.  I asked that they be taken down.
14      I was told ten minutes later they were taken down;
15  turns out they weren't.  They remained online and were
16  e-mailed to thousands of people.  I don't remember exactly
17  how many.  They were online for I believe it was 17 days.
18      At that point when I was alerted to it, I issued a
19  limited gag order and told Counsel, the parties, that I was
20  forbidding -- this is a quote, "All parties from posting,
21  e-mailing or speaking publicly about any members of my
22  staff," unquote.
23      I am very protective of my staff, as I believe I
24  should be.  We all know that we are in what I called at some
25  point, an overheated environment.  I don't want anybody

**Page 2373**

1   killed.
2       It was just brought to my attention that the
3   Associated Press reported, I wasn't there, this is the
4   Associated Press, that Mr. Donald J. Trump just stated the
5   following to the press outside the courtroom:
6       "This judge is a very partisan judge with a person
7   who is very partisan sitting alongside him, perhaps even
8   much more partisan than he is."
9       Now, it's very easy for the public, for anyone to
10  know who that person is.
11      MS. HABBA: Your Honor, sorry --
12      MR. KISE: Let me -- I hate to interrupt.
13      THE COURT: No, don't interrupt me.  I'll give you
14  plenty of time.
15      MR. KISE: Okay.  I think you're under a
16  misapprehension.
17      THE COURT: All right.  You'll correct me.
18      MR. KISE: Fair enough.
19      THE COURT: The last time that this gag order was
20  violated by the incorrect statement that the post had been
21  taken down it was actually copied to another post but that
22  wasn't taken down.  I accepted the explanation that it was
23  inadvertent, I imposed a minimal fine.  This recent
24  statement, assuming the Associated Press is correct,
25  obviously was intentional.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. Cohen - Plaintiff - cross (Habba)    Page 2374

1    I stated the last time that a -- any future
2  violations would be severely punished.
3    I will now give Mr. Kise or anyone else who wants
4  to a chance to respond. And, again, I'll ask the question
5  why should there not be severe sanctions for this blatant,
6  dangerous disobeyal of a court order.
7    MR. KISE: Your Honor, my understanding of what he
8  said and the way I understood it and I believe Mr. Trump
9  will tell you I believe he's talking about Michael Cohen
10  sitting next to you who is even more partisan -- I mean, his
11  whole commentary not that related to Michael Cohen and his
12  credibility as a witness and so forth. We're certainly well
13  aware of the order, so that's the way I took the statement
14  and I believe that's the way it was intended, but I'll -- I
15  don't want -- I don't know any other way to say it but that.
16    THE COURT: Well, can we ask Mr. Trump to whom he
17  was referring?
18    MR. KISE: I have asked him. I mean, if you'd like
19  to ask him, I have asked and that is exactly what he said
20  because he's tired of listening. I don't want to go on a
21  speech. He's tired of listening to what he's hearing and
22  it's very partisan and you know the rest.
23    THE COURT: Sitting alongside of him. The person
24  sitting alongside of me the way I would normally interpret
25  those words is my principal law clerk. There is a barrier

---

M. Cohen - Plaintiff - cross (Habba)    Page 2375

1  between me and the witness stand. We know from this trial
2  and from our lives that language is sometimes precise and
3  sometimes not very precise, sometimes ambiguous and not
4  clear. Seemed clear to me, but I understand that could be
5  interpreted another way. I'll take the whole matter under
6  advisement. Let's not spend anymore time on this. Let's
7  move ahead with the trial.
8    MS. HABBA: Your Honor, are we on the record?
9    THE COURT: If we want to be.
10    MS. HABBA: I also want to put on the record
11  obviously we have a lot of press and media here. They
12  couldn't hear past there. It was brought to my attention
13  and evidently the feed -- the tech team just informed me the
14  feed was also not being circulated, which obviously as you
15  know this is a very heavily press-covered matter and given
16  that I'm President Trump's lawyer I do think that's
17  unfortunate and unfair.
18    THE COURT: And, of course, I'm sorry for that, of
19  course, and it's very unfortunate.
20    THE COURT OFFICER: Is the judge ready for the
21  witness?
22    THE COURT: Yes.
23    THE COURT OFFICER: Witness entering.
24    THE COURT: Okay. Let's continue with the cross
25  examination of Michael Cohen.

---

M. Cohen - Plaintiff - cross (Habba)    Page 2376

1    MS. HABBA: Thank you.
2    (Whereupon, the witness enters the courtroom and
3  approaches the witness stand.)
4  CONTINUED CROSS EXAMINATION
5  BY MS. HABBA:
6    Q   Mr. Cohen, you didn't speak to anybody during your
7  break, your attorney or anybody from the Attorney General's
8  Office, did you?
9    A   I spoke to my attorneys.
10    Q   Did you speak to them about your testimony?
11    A   No.
12    Q   Did you speak to them about this case?
13    A   No.
14    Q   Okay. You understand that you're still under oath,
15  correct?
16    A   Correct.
17    Q   Okay. Where we left off I was asking you if you made a
18  career out of publicly attacking my client, President Trump.
19    Do you recall that?
20    A   I recall it.
21    Q   And do you make a career out of publicly attacking
22  President Trump?
23    A   No.
24    Q   Do you admit that Mea Culpa, your podcast, is
25  substantially focused on President Trump?

---

M. Cohen - Plaintiff - cross (Habba)    Page 2377

1    A   Can you define "substantially?"
2    Q   Sure. Earlier we read a transcript of your words where
3  you say that you speak about President Donald Trump every
4  episode of your podcast; is that correct?
5    A   I said that.
6    Q   Okay. Do you speak about Donald Trump every day that
7  you have a podcast? Does it always mention President Trump?
8    A   Yes.
9    Q   Thank you.
10    And you authored two books that discuss and are
11  primarily focused on President Trump. Isn't that correct?
12    A   No.
13    Q   No? Okay.
14    MS. FAHERTY: Is that a question?
15    Q   Mr. Cohen, is this one of your books?
16    A   Yes.
17    Q   I'm holding up "Revenge." Do you read that the cover
18  says "Donald Trump" on it? Is his name on the cover?
19    A   It is.
20    Q   Thank you.
21    Did you write another book called "Disloyal?"
22    A   I did.
23    Q   Does that also reference Donald J. Trump on the cover?
24    A   It does.
25    Q   And it does that because you make money off President

---

| M. Cohen - Plaintiff - cross (Habba) | Page 2378 |
| --- | --- |

1   Trump. Isn't that correct, Mr. Cohen?
2       A   I made money off the story.
3       Q   And who is the story about?
4       A   "Revenge" is about me.
5       Q   You're -- I'm not done with my question.
6       A   Sorry.
7       Q   Who is the story about, Mr. Cohen?
8       A   Which book?
9       Q   Mr. Cohen, do you make money off President Trump's
10  name?
11      A   Yes.
12      Q   Thank you.
13          Did you receive an advance for "Disloyal?"
14      A   No.
15      Q   No?
16      A   No.
17      Q   Do you make money from "Disloyal?"
18      A   Yes.
19      Q   How much is in your best estimation have you derived
20  from your book "Disloyal?"
21      A   I don't recall.
22      Q   You don't recall how much money you made from your
23  book?
24      A   No.
25      Q   Do you put your income from your book on your returns,

| M. Cohen - Plaintiff - cross (Habba) | Page 2379 |
| --- | --- |

1   your tax returns?
2       A   Yes.
3       Q   Do you know how much money you make annually,
4   Mr. Cohen?
5       A   I do.
6       Q   And how much is that?
7           THE WITNESS: I'm sorry, Your Honor. It's -- it's
8   private. I'm not going into my --
9           THE COURT: I think in the abstract it's
10  irrelevant.
11          MS. HABBA: Okay.
12      Q   Is your money from "Disloyal" on your returns?
13      A   Yes.
14      Q   Do you make income from "Disloyal," from selling the
15  book?
16      A   Not anymore.
17          MS. FAHERTY: Asked and answered.
18      Q   Do you make money from your other book?
19      A   "Revenge?"
20      Q   Yes.
21      A   Yes.
22      Q   Okay. Did you get an advance for that book?
23      A   No.
24      Q   No.
25          And you also have a podcast dedicated to discussing in

| M. Cohen - Plaintiff - cross (Habba) | Page 2380 |
| --- | --- |

1   substantial part your criticism of President Trump; correct?
2       A   No.
3       Q   No. But you said yes when I asked you prior, isn't
4   that correct?
5       A   No. You said it.
6       Q   Okay. Let me pull up your words then, Mr. Cohen.
7           MS. HABBA: Can you please pull that back up again?
8       Q   Do you remember I went through this Galicia testimony?
9       A   I apologize. I thought you were asking about the
10  testimony, not about the Galicia. I really need you to be
11  specific what you're talking about. I'm very confused right
12  now.
13      Q   When I asked you if you substantially discuss President
14  Trump on Mea Culpa, your podcast, is the answer yes or no?
15      A   I said to you I speak about Mr. Trump. He is the
16  frontrunner of the Republican party and he's in the --
17          THE COURT: That more than answers the question.
18  Just answer the question.
19      Q   How much income do you make from the podcast?
20      A   Again, going into privacy. It's irrelevant.
21          THE COURT: Is there an objection by the Attorney
22  General?
23          MS. FAHERTY: I'll object, Your Honor.
24      A   Thank you.
25          MR. KISE: What would the basis be?

| M. Cohen - Plaintiff - cross (Habba) | Page 2381 |
| --- | --- |

1           THE COURT: Relevance.
2           MS. FAHERTY: What is the relevance here? He has
3   admitted he made income.
4           THE COURT: Overruled.
5           MS. FAHERTY: Thank you.
6           THE COURT: I think there is a question of motive,
7   etc.
8           MS. HABBA: Thank you, Your Honor.
9       Q   Please answer the question, Mr. Cohen.
10      A   Which podcast?
11      Q   Let me ask you a different question.
12          How many podcasts do you have?
13      A   Two.
14      Q   What are the names of your podcast?
15      A   Mea Culpa.
16      Q   Right.
17      A   And the other one is a live YouTube.
18      Q   Is the live YouTube?
19      A   Called Political Beatdown.
20      Q   It's called what?
21      A   It's called Political Beatdown.
22      Q   Political Beatdown.
23          And your affiliation with politics is because of my
24  client sitting right here, isn't that correct?
25      A   No.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

Page 23 of 44

| M. Cohen - Plaintiff - cross (Habba) | Page 2382 |
| --- | --- |

1    Q   Were you involved in politics before President Trump
2    became president?
3    A   In 1987 and 1988 I worked for Congressman Joe Moglia.
4    I've also been on other finance committees with Alan Hevesi and
5    other politicians throughout the years.
6    Q   Do you talk about them on the two podcasts that you
7    just mentioned, Mr. Cohen?
8    A   They're not relevant right now.
9    Q   That wasn't the question.  Yes or no?
10   A   The answer is no.
11   Q   That's what I thought.
12       So then you don't talk about anybody but President
13   Trump when you're speaking about politics and that's how you
14   make your money, isn't it, Mr. Cohen?
15       THE COURT:  Please no comments on the answers.
16   "That's what I thought."  No.  Just questions, answers.
17       MS. HABBA:  Sure, Your Honor.
18   Q   So you can't as you sit here today tell me how much
19   money you make off of the fact that you worked with President
20   Trump; correct?
21   A   Correct.
22   Q   But you make money off of President Trump; correct?
23   A   Correct.
24   Q   And you also sell merchandise off of President Trump,
25   don't you?

| M. Cohen - Plaintiff - cross (Habba) | Page 2383 |
| --- | --- |

1    A   Yes.
2    Q   And that makes you money, doesn't it, Mr. Cohen?
3    A   It makes money.
4    Q   Outside of your two podcasts or one YouTube as you
5    called it, your merchandise and your books, is there any other
6    form of income that is greater in your life personally?
7    A   No.
8    Q   Thank you.
9        MS. HABBA:  Sorry to thank him.  Not thank you.
10       THE COURT:  Well, "thank you" is not so bad.  It's
11   polite; "okay" is borderline.  Anything else, no.
12   Q   And you've also been invited on numerous media outlets
13   to discuss President Trump, isn't that correct?
14   A   What time period are you referring to?
15   Q   Since you started working for President Trump since you
16   -- he became the president you go on TV to discuss him
17   frequently, isn't that true?
18   A   Yes.
19   Q   And without stories or accusations about President
20   Trump you really don't have anything to sell, do you, Mr. Cohen?
21   A   I'm sorry what?  You don't have what?
22       MS. HABBA:  Can we get a read back?
23       THE COURT:  Anything to sell, but let's get a read
24   back.
25       THE WITNESS:  Anything to sell?

| M. Cohen - Plaintiff - cross (Habba) | Page 2384 |
| --- | --- |

1        THE COURT:  I believe those are the exact words,
2    but just -- we need a read back.
3    A   I disagree.
4        THE COURT:  Hold on.  We're going to get a read
5    back.  Sorry.
6        (Whereupon, the requested portion of the
7    proceedings was read back by the court reporter.)
8        THE WITNESS:  I disagree.
9    Q   Do you have a law license?
10   A   Not anymore.
11   Q   Your primary form of income is because you speak about
12   President Trump; correct?
13   A   It's asked and answered already.
14   Q   I'm asking you a question.
15       THE COURT:  It was asked and answered, so -- and
16   there is an objection.
17       MS. HABBA:  No problem, Your Honor.  Let me
18   rephrase.
19   Q   The more outrageous your stories are about President
20   Trump the more money you make.  Is that accurate, Mr. Cohen?
21   A   No.
22   Q   If you didn't work for President Trump you wouldn't
23   make most of your income today.  Isn't that true, Mr. Cohen?
24   A   No.
25   Q   But prior you stated that the majority of your income

| M. Cohen - Plaintiff - cross (Habba) | Page 2385 |
| --- | --- |

1    is from talking about President Trump; correct?  Yes or no?
2    A   Again, you're not providing the time frame.  You keep
3    going back and forth.  Currently that is a correct answer.
4    Previously you're assuming that I can go back in time when I had
5    multiple real estate buildings and other assets before my
6    five-year scenario that's been taking place, so I don't
7    understand your question.  There is no beginning, there is no
8    end to it.
9    Q   Because you wouldn't give me -- let me look at last
10   year's tax return.
11       Last year you filed a tax return; correct?
12   A   Correct.
13   Q   Okay.  That tax return had your income on it, we hope;
14   correct?
15   A   Correct.
16   Q   Okay.  And allegedly you had put all of your income on
17   that return; correct?
18   A   Correct.
19   Q   Okay.  You had most of the income on that return
20   because of President Trump; correct?
21       MS. FAHERTY:  Your Honor, can we move this -- can
22   we move this along?  I do think the questions are a bit
23   muddled, "because of President Trump."
24       We've established he has made money in connection
25   with the work he's performed related to President Trump or

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

M. Cohen - Plaintiff - cross (Habba)    Page 2386

1  Mr. Trump. The time period is a bit confusing. I
2  appreciate the point we're trying to make. It's a bit
3  belabored. I'm just noting my objection to how cumulative
4  this is getting.
5      MS. HABBA: All due respect, Your Honor, it's
6  because I'm not getting a yes-or-no answer to a very simple
7  question.
8      MR. KISE: Your Honor, I don't know -- now who is
9  giving the speeches? But yes, all we're trying to get at is
10  a simple answer to a simple question. He's already
11  testified that the majority, I think, it's not clear, that
12  the majority of his current income comes from his activities
13  associated with harassing, trashing, talking about everyone,
14  you know, President Trump. So he can affirm that if it was
15  -- the question was confined to his last year's tax return
16  did most of your income come from your activities associated
17  with harassing, trashing, talking about, podcasting about,
18  whatever it's called on the Internet, about President Trump.
19  That's it. It goes to motive, it goes to bias.
20      THE COURT: Maybe we can compromise here.
21      Ms. Habba, would you rather the question be last
22  year's tax return or would it be now? And then the rest of
23  it will basically be is it true that the majority of your
24  income, last year's tax return or not, is based on
25  commentary on Donald J. Trump?

M. Cohen - Plaintiff - cross (Habba)    Page 2387

1      MS. HABBA: That's perfectly said, Your Honor.
2  I'll adopt that question, if I may.
3      THE COURT: Do you want the tax return or now?
4      MS. HABBA: Now.
5      THE COURT: Okay. Do you understand the question?
6      THE WITNESS: I understand the question. It's --
7  the issue I have is when you say "is the majority." I speak
8  about all politicians. It's not just Mr. Trump. I speak
9  about Mark Meadows, I speak about everything that's going
10  on. I speak about Israel. I speak about many things.
11      THE COURT: Okay. Next question.
12  Q  But your testimony was today that in every podcast no
13  matter who you're speaking about, Mark Meadows, no matter if
14  you're speaking about --
15      THE COURT: Wait. Before you establish that yes,
16  he said every podcast these days he mentions Donald Trump.
17      MS. HABBA: Okay, Your Honor.
18      THE COURT: And along with what Ms. Faherty was
19  saying, I think we can move on at this point. He makes
20  money off his comments, his prior relationship to
21  Donald J. Trump.
22  Q  And are you promoting your testimony here today,
23  Mr. Cohen?
24  A  Am I promoting it? I will retweet something. I will
25  say I am at the trial, but I am not tweeting as per the judge's

M. Cohen - Plaintiff - cross (Habba)    Page 2388

1  directive not to about anything specific.
2  Q  So is it your testimony that you have not promoted you
3  being here in court today?
4      MS. FAHERTY: Objection. Promoted?
5  A  I don't understand.
6      MS. HABBA: I'll pull up an exhibit.
7  Q  Is it your testimony that you have not been promoting
8  the fact that you're coming here to testify against Donald Trump
9  for the Attorney General?
10  A  I have tweeted about that, yes.
11      THE COURT: I'll allow that.
12  Q  You tweeted about it and you discussed it on your
13  podcast; correct?
14  A  I have.
15  Q  And during interviews on TV; correct?
16  A  Correct.
17  Q  And you've even stated that you intend on holding a
18  press conference after your testimony today is finished, isn't
19  that correct?
20  A  I don't recall that.
21      MS. HABBA: Can we please pull up his tweet from
22  October 15th?
23  Q  Mr. Cohen, we've already established that your Twitter
24  account is @MichaelCohen212; correct?
25  A  Correct.

M. Cohen - Plaintiff - cross (Habba)    Page 2389

1  Q  And do you see that on October 15, 2023 at 8:10 p.m.
2  somebody stated -- just for their privacy I'm not going to read
3  it in -- "I can't wait to see the reaction of all the haters of
4  when you do testify... hold a press conference at the end of
5  your last day, if you can." And there are two emojis there.
6  And your response was: "I can and I will."
7      Do you see that, Mr. Cohen?
8  A  I see that.
9  Q  Are you going to speak to the --
10      THE COURT: Hold on one second.
11      MS. FAHERTY: Again, I'm going to launch my
12  objection to what is clearly hearsay evidence. Ms. Habba --
13      THE COURT: Overruled. Let's move on.
14      MS. HABBA: Thank you, Your Honor.
15      Your Honor, I'm just going to state that clearly
16  she is trying to throw me off by continuously interrupting
17  me. I would like to just continue or we're going to be here
18  all day.
19      MS. FAHERTY: And I would just ask to strike the
20  portion of the tweet that is put in front of this witness.
21  That is not his. That is not here, cannot provide any
22  testimony as to the statements asserted therein. Move to
23  strike that from the record. It is hearsay, Your Honor.
24      MR. ROBERT: Your Honor, that is absurd. Mr. Cohen
25  is giving a statement without the underlying statement which

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. Cohen - Plaintiff - cross (Habba)  Page 2390

1  is not for the truth of the matter asserted. He's
2  responding to it. So if Ms. Habba would not have put in the
3  bottom part, the objection would have been "it's incomplete,
4  we don't know what Mr. Cohen is saying, I can and I will."
5  This is completely admissible and it should be admitted
6  without objection.
7      MS. HABBA: And it's for impeachment purposes, Your
8  Honor.
9      MS. FAHERTY: Again, she read into the record the
10  out-of-court statements of another person and as to Michael
11  Cohen's statements that is on the screen, you have admitted
12  it, you have overruled as to Michael Cohen's statement. I
13  accept that ruling by the Court, but as to Ms. Habba reading
14  into the record third party out-of-court statements, I ask
15  that they be stricken from the record.
16      THE COURT: Well, you know, it's always funny you
17  want to strike it from the record. It's only 200 people out
18  there that have heard it.
19      Well, what if we agree, for whatever it's worth,
20  that the only admissible aspects are taking that dot, dot,
21  dot, hold a press conference, etc., I can and I will. I
22  find that admissible. We will take out "I can't wait to see
23  the reaction of all the haters when you do testify."
24      MS. FAHERTY: Over my objection, but I understand.
25      THE COURT: Okay. It's in evidence other than the

M. Cohen - Plaintiff - cross (Habba)  Page 2391

1  first part.
2  Q  Mr. Cohen, are you going to speak to the press outside
3  after today?
4  A  I don't know yet. You're asking me to --
5      THE COURT: The answer was "I don't know yet."
6      MS. HABBA: Okay.
7  Q  Mr. Cohen, after I deposed you on other matters, did
8  you go outside and speak to the press?
9  A  I did.
10  Q  And sometimes when I deposed you on other matters you
11  had speeches prepared before you walked into your deposition,
12  isn't that correct?
13  A  That's not correct.
14  Q  That's not correct?
15  A  No.
16  Q  Did you speak to the press before I deposed you on the
17  Galicia matter?
18  A  Yes.
19  Q  Did you speak to the press when I deposed you on this
20  matter?
21  A  As did you.
22  Q  That wasn't my question.
23      THE COURT: Just answer the question, please. Did
24  you speak to the press?
25      THE WITNESS: Did I speak to the press, yes, I

M. Cohen - Plaintiff - cross (Habba)  Page 2392

1  spoke to the press.
2  Q  President Trump makes you relevant, doesn't he,
3  Mr. Cohen?
4  A  I think the circumstances make me relevant.
5  Q  The circumstances that you used to work for the
6  President of the United States who is the single most famous
7  presidential candidate in this world, you speak about him every
8  day because it makes you money, isn't that correct?
9      THE COURT: I thought we were moving on from this
10  point.
11      MS. HABBA: Well, he's backtracking, Your Honor.
12      THE COURT: I didn't notice any backtracking.
13      MS. HABBA: I'll keep going.
14      MS. FAHERTY: Can we please stop with the
15  characterizations, Your Honor, please?
16      THE COURT: I didn't find anything objectionable
17  there.
18  Q  Mr. Cohen --
19      THE COURT: Except I didn't notice any
20  backtracking. Sorry. Let's just move ahead. The record
21  says what it says.
22      MS. HABBA: Thank you, Your Honor.
23  Q  Mr. Cohen, do you sell advertisement spots?
24  A  Yes, there are advertisements in the podcast.
25  Q  Do you sell the advertisement spots?

M. Cohen - Plaintiff - cross (Habba)  Page 2393

1  A  I don't sell them, no.
2  Q  Do you make money from advertising?
3  A  Good question. Yes.
4  Q  And the more advertisements you sell, the more money
5  you make; correct?
6  A  That's how it works.
7  Q  Is that a yes, Mr. Cohen?
8  A  That's a yes.
9  Q  Mr. Cohen, would you disagree with the fact that the
10  only reason you are relevant in the public eye is because of
11  President Trump?
12  A  No.
13  Q  You take every opportunity to criticize President Trump
14  and discuss the latest Trump-related news, don't you?
15  A  Along with CNN, MSNBC, Fox, ABC, CBS, NBC. He's
16  relevant in the news and that's what my podcast discusses.
17  Q  You're right. President Trump is relevant in the news
18  and President Trump makes money for the news, doesn't he,
19  Mr. Cohen?
20  A  I don't understand your question, "Mr. Trump makes
21  money for the news?"
22  Q  Well, you sell advertising, right?
23  A  For me.
24  Q  Do news media sell --
25      THE WITNESS: I'm so sorry, Your Honor. I don't

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

| M. Cohen - Plaintiff - cross (Habba) Page 2394 | M. COHEN - PLAINTIFF - CROSS(MS. HABBA) Page 2396 |
|---|---|

**Page 2394 — M. Cohen - Plaintiff - cross (Habba)**

1 understand. I apologize. I'm confused by your question.
2     THE COURT: Let's start again. Withdrawn,
3 whatever.
4     MS. HABBA: Sure. Let's keep going and I'll
5 continue.
6     THE COURT: And move on to another topic as soon as
7 possible.
8     MS. HABBA: I can ask it in one simple question.
9 Q  Mr. Cohen, you have financial incentive to criticize
10 President Trump; correct? Yes or no, please?
11 A  Yes.
12 Q  Thank you.
13     But Mr. Cohen, you never used to speak like that, did
14 you?
15     THE COURT: Sustained. I don't know what the
16 context is. Speak like what?
17     MS. HABBA: I'll just ask the questions.
18 Q  Mr. Cohen, do you remember in 2015 telling Politico:
19 "The fact is Mr. Trump has built a 10 billion plus empire,
20 employs thousands of people, has worked with many leaders around
21 the globe successfully and is considered one of the best
22 negotiators in history, these are all qualifications essential
23 to being a great president." Do you recall saying that?
24 A  I think we already went through this.
25 Q  Yes or no? Yes or no?

**Page 2395**

1 A  It's been asked and answered.
2     THE COURT: I don't think that particular quote was
3 -- it was?
4     MS. FAHERTY: I think so, Your Honor.
5     MR. KISE: Is the witness now objecting? This is a
6 new level of low, even for Michael Cohen.
7     MS. FAHERTY: Again, if we could --
8     THE COURT: Sustained, sustained.
9     MS. FAHERTY: Thank you.
10     Transcript continues on the following page....
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 2396 — M. COHEN - PLAINTIFF - CROSS(MS. HABBA)**

1 Q  Mr. Cohen, did you state on January 2017, "President
2 Elect Trump has always stated how much he loves what he does.
3 Anyone who spends more than four decades building a $10 billion
4 empire would clearly be sentimental about relinquishing
5 control," said Michael Cohen, executive VP of the Trump
6 Organization. "However," you said, "President Elect Trump has
7 also stated that there is nothing more important to him than
8 fixing the mistakes made by the previous administration and
9 making America great again."
10     Did you say that, Mr. Cohen?
11 A  I believe those are my words.
12 Q  Do you need me to refresh your recollection?
13 A  No. I'm looking at what it is that you put up on the
14 screen.
15 Q  So is that a yes?
16 A  I believe those are my words, yes.
17 Q  Is that a quote with your name on it, Mr. Cohen?
18 A  Yes. And this is from 2015 again?
19 Q  This is from January 3, 2017, CNN.
20 Q  2017, yes.
21 Q  Do you recognize that as your words?
22 A  Yes, it seems like it could be my words.
23     MS. HABBA: I would like to move into evidence this
24 quote.
25     I don't have the number, Peter. Do you have it?

**Page 2397 — M. COHEN - PLAINTIFF - CROSS(MS. HABBA)**

1     987.
2     MS. FAHERTY: Your Honor, I'm just re-asserting the
3 same objection I've had. In fact, I don't even know what
4 this document is. There's not even a title. There's not
5 even an author. I don't know who wrote it. There's been no
6 foundation laid other than there was a statement that at
7 some point was captured by someone in this article. If it
8 is as to that one statement, no objections since Mr. Cohen
9 has testified that those were his words. Otherwise, the
10 objection remains as to the admission of this document.
11     THE COURT: You don't want -- you don't want the
12 document in, but the words that have been read and he said,
13 "Yes, I could have said that," whatever -- can we just --
14     MS. HABBA: I could lay the foundation and clear
15 this up, if you'd like. I don't really -- I mean, it is
16 for impeachment purposes, number one. I asked him if he
17 said it. He said he didn't recollect, so I brought it up
18 and now he recognizes that he brought -- he said it, so I'm
19 moving it into evidence.
20     I'm not sure -- we're really going to be here all
21 day, Ms. Faherty if this is what we are going to keep doing.
22 It is a CNN article. Look at it. Here is the website. I
23 don't even need the whole article in. I just asked Mr.
24 Cohen if he said what he said and now he said, "yes."
25     THE COURT: So, then, we don't need the article.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2398

1    THE FOREPERSON: And we don't need --
2    MS. HABBA: I won't move it.
3    Q    Thank you for acknowledging you said it. Moving on, "I
4    worked for Mr. Trump now for a long "-- "long time," you said.
5    I can tell you that Mr. Trump's memory is fantastic and I never
6    come in a situation where Mr. Trump has said something that is
7    not accurate."
8        Do you recall saying that in an interview with CNN on
9    November 30, 2015, Mr. Cohen?
10    A    Can you provide me with a document?
11    Q    Sure. I will provide you with a document.
12        MS. HABBA: Can we, please, zoom out first.
13    Q    Do you see the website on the bottom of this document?
14    Do you see that it says, "cnn.com?" I'm not going to read it
15    all in, but do you see that?
16    A    I do.
17    Q    It is from the CNN website?
18    A    Yes.
19    Q    Okay. Do you see that there is a title, "Trump lawyer:
20    Never known him to say something inaccurate."
21        Do you see that on the top, on the top? Do you see
22    that?
23        MS. FAHERTY: No.
24    Q    No. Do you see on the top of the page that it says --
25    A    Yes, I see it.

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2399

1    Q    Thank you.
2        MS. HABBA: Can you, please, go to his quote.
3    Q    Does this appear to be from the website from CNN?
4    A    It appears to be, yes.
5    Q    Okay. Do you recall saying, "I'm not so sure that
6    that's true and I've worked for Mr. Trump for" "now for a long
7    time," Cohen said. "I can tell you that Mr. Trump's memory is
8    fantastic and I've never come in a situation where Mr. Trump has
9    said something that is not accurate."
10    Q    Is that in quotations, Mr. Cohen?
11    A    That's in quote.
12    Q    And you understand the press, don't you, Mr. Cohen?
13    A    I do.
14    Q    And if you don't speak on the record, the press can't
15    put you in quotes and relate it to your name. Isn't that true,
16    Mr. Cohen?
17    A    For the most part, yes.
18    Q    In fact, you used to record yourself speaking well
19    about the president to the press sometimes, didn't you, Mr.
20    Cohen?
21    A    I don't understand your question.
22    Q    How often did you speak to the press when you worked
23    for President Trump?
24    A    Every day.
25    Q    So you know that they would never put that in quotes

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2400

1    unless you said it was on the record, correct, or forgot to say
2    that it wasn't? Isn't that how it works?
3    A    Yes, that's how it works.
4    Q    Is that your quote, Mr. Cohen?
5    A    That would be my quote.
6    Q    Okay. Thank you. I don't need it into evidence. So
7    I'm not going to, but you know what. Actually, let's move it
8    into evidence. We laid the foundation anyway. I'd like to move
9    that into evidence, CNN article dated November 30, 2015.
10        MS. FAHERTY: Same objection and -- same
11    objection, Your Honor.
12        THE COURT: Overruled. It's in.
13        MS. HABBA: Thank you.
14        (Whereupon, the Document was marked in evidence as
15    Plaintiff's Exhibit 987.)
16    Q    April 15, 2011, you interviewed with ABC News and said,
17    "It's very, very surreal. I've been admiring Donald Trump since
18    I was in high school."
19        Do you remember saying that?
20    A    You are going, again, have to refresh my memory.
21    Q    Sure.
22        MS. HABBA: Pull it up, please.
23    Q    Mr. Cohen?
24    A    Yes.
25    Q    Do you see the website on the top of this screen?

---

M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2401

1    A    Yes.
2    Q    It says, "The wayback machine." You see ABC News on
3    the top right?
4    A    I do.
5    Q    Okay.
6        MS. HABBA: Can you get out, please zoom out. Can
7    you put in his quote and blow it up.
8    Q    Do you see that, again, in quotations, it has the quote
9    that I just read? It says, "Cohen told ABC News "and then it
10    states, "I've been admiring Donald Trump since I was in high
11    school. He said that when he was a young man, he read Trump's
12    1987 book, "The Art of the Deal" cover to cover twice." Isn't
13    that correct?
14    A    Yes.
15    Q    Do you doubt that those are your words, Mr. Cohen?
16    A    No.
17    Q    Did you read "The Art of the Deal" twice when you were
18    in high school?
19    A    No.
20    Q    So were you lying?
21    A    No. I read it twice when I was in college.
22    Q    Oh, okay. In college. I got it. So you read, "The
23    Art of the Deal" twice in college, right?
24    A    I just answered that.
25    Q    But that was before you worked for President Trump,

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN

October 25, 2023

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) Page 2402 |
|---|

1  correct?
2  A   Correct.
3  Q   Did you admire President Trump in college?
4  A   I did.
5  Q   Okay. Let's move on. Do you recall saying, "That's
6  what people want to see, authenticity. I mean, who's smarter
7  than Donald Trump. He's the greatest negotiator on the planet.
8  He is presidential." You said that on Sean Hannity on August 4,
9  2015. Do you recall that?
10  A   I recall that.
11  Q   Do you recall that you also said on Sean Hannity on
12  July 21, 2016, "I know Mr. Trump. I've stood by him shoulder to
13  shoulder for the past decade. I've seen him in action. He
14  knows how to build things. He knows how to fix things. He
15  knows how to make them better. He knows people. He loves
16  people. He said it himself. He's able to relate to the
17  plumber, to the electrician, to the laborer because that's what
18  his father Fred taught him and he learned values and that's
19  something that a lot of politicians, specifically Hillary, does
20  not have, is values."
21      Do you remember saying that to Sean Hannity?
22  A   If you can show me. It sounds correct.
23  Q   Sure?
24  A   But I don't recall that that's exactly what I said.
25  Q   Sure. We can show you.

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) Page 2403 |
|---|

1      MS. HABBA: Can you pull it up? Is it a video?
2  We're having some technical issues.
3  A   I'll tell you what. I'll acknowledge.
4  Q   No, I don't want you to do that, Mr. Cohen.
5  A   I will acknowledge that I did, so we can move this
6  thing faster.
7  Q   Did you say to Vanity Fair on September 26, 2017, "I'm
8  the guy who protects the president and the family. I'm the guy
9  who would take the bullet for the president." Did you say that?
10  A   Yes.
11  Q   Did you say to Hannity on March 20, 2017, "I think he's
12  a wonderful man. I think he's going to be an amazing president.
13  The family is just, you know, fantastic." Do you remember
14  saying that?
15  A   I don't remember saying that.
16      MR. HABBA: Do we have that one? Thank you.
17  Q   Do you see this is Fox News article dated March 20,
18  2017?
19  A   I will remain the personal attorney to Trump?
20  Q   That's right. That's what the title is. That wasn't
21  my question. The question is, is this dated March 20, 2017 from
22  Fox News?
23  A   That's what it says.
24  Q   Great.
25      THE COURT: Please, no comments on the answer.

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) Page 2404 |
|---|

1      MS. HABBA: Sorry.
2      Can you blow up the portion, please. Thank you.
3  Q   Can you read that to yourself, so I don't have to read
4  it again.
5      (Witness reviewing document.)
6  Q   Do you recall now saying what I read, "I think he's a
7  wonderful man. I think he's going to be an amazing president.
8  The family is just, you know, fantastic." Do you remember
9  saying that now?
10  A   I have said that.
11  Q   Thank you.
12      Do you remember on April 15, 2011 in an interview with
13  ABC News saying, "I think the world of him. I respect him as a
14  businessman and I respect him as a boss." Do you remember saying
15  that?
16  A   Where are you reading from?
17  Q   It's not here. I'm asking you.
18  A   From where?
19  Q   ABC News, April 15, 2011.
20  A   Again, I'll need to see something to refresh my memory.
21  Q   Sure. Let me ask you. I'm going to move this along.
22  Would it surprise you to hear that you said to Reuters on
23  August 28, 2015, "Trump's lawyer, Michael Cohen, said Trump's
24  record of success was proof positive of Mr. Trump's character
25  and capabilities." Is that something you would say, Mr. Cohen?

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA) Page 2405 |
|---|

1  A   Yes.
2  Q   Do you believe or have any reason not to believe that
3  you said that to Reuters on August 28, 2015?
4  A   I don't know. I'd have to see the document.
5  Q   Okay. We can pull it up. This is an article from
6  Reuters. You see that dated August 28, 2015 and the title is,
7  "Best President ever. How Trump's love of hyperbole could
8  backfire." Do you see this?
9  A   I do.
10  Q   Can you, please, pull up his quote. "Trump's lawyer,
11  Michael Cohen, said Trump's record of success was proof positive
12  of Mr. Trump's character and capabilities." You see that?
13  A   I do.
14      MS. FAHERTY: Your Honor, didn't we do this before?
15  I thought I quoted from the below line, "For Trump,
16  exaggerating has always been a frequent impulse, especially
17  when the value of his trump brand is disputed." Can we move
18  it along? I thought we did this already.
19      THE COURT: I believe we saw that, character and
20  capabilities.
21      MS. HABBA: Did we see this one?
22      MS. FAHERTY: We saw that.
23      MS. HABBA: Okay. We'll move on.
24      THE COURT: Ms. Habba, how much longer will we hear
25  this sort of -- these statements?

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. COHEN - PLAINTIFF - CROSS (MS. HABBA)    Page 2406

1    MS. HABBA: I have a ton, Your Honor, but I can
2    move it along.
3    THE COURT: Okay. --
4    MS. HABBA: Let me try --
5    THE COURT: They're getting cumulative.
6    MS. HABBA: Sure. Give me a moment. I will move
7    it along.
8    Q    Do you recall speaking to HuffPost and saying to them
9    that "He is worth a lot, substantially more than what's recorded
10   in Forbes. They don't take into account the value of the Trump
11   brand, of the mark, one of the most valuable marks that's ever
12   been created. He has very little debt, AAA assets." Do you
13   remember saying that on April 22, 2011?
14   A    I would need to see the document.
15   Q    Okay. Do you have any reason to believe -- I'm going
16   to try to move it along for the tech people.
17        Do you have any reason to believe that if they quoted
18   you as saying that, that you didn't say it? Do you have any
19   reason --
20   A    Sorry. That's 2011?
21   Q    Yes.
22   A    Yes.
23        THE COURT: Yes meaning --
24        THE WITNESS: That I probably said it.
25        THE COURT: Okay.

---

M. COHEN - PLAINTIFF - CROSS (MS. HABBA)    Page 2407

1    MS. HABBA: Okay. This will be my last one, Your
2    Honor.
3    Q    And in July 31, 2014, The Associated Press quoted you
4    as saying "Mr. Trump's significant wealth, name, recognition and
5    real estate knowledge makes him a viable option." Do you recall
6    saying that?
7    A    Again, I need to see the document.
8        MS. HABBA: Can we pull up the AP document, please.
9    Do we have it?
10       I was moving very quickly, so I feel for my tech
11   team right now. I'm not going to admit it into evidence.
12   Q    Mr. Cohen, would you doubt if the Associated Press
13   quoted you, put your words in quotes, that that was something
14   you said on the record?
15   A    It's possible.
16   Q    Do you believe the AP would do that without --
17   A    Again, I don't know. I haven't seen the document.
18   Q    Okay. Let's move on. Mr. Cohen, you testified under
19   oath in your April 23, 2023 deposition that Mr. Trump tasked you
20   and Mr. Allen Weisselberg with inflating the numbers on the
21   Statement of Financial Condition to reach a certain
22   pre-determined number for his net worth, correct?
23   A    Correct.
24   Q    But Mr. Cohen, in February of 2019, just two years
25   after leaving the Trump Organization, you testified under oath,

---

M. COHEN - PLAINTIFF - CROSS (MS. HABBA)    Page 2408

1    the same oath that you're under now, the same oath that you were
2    under at your deposition, and the same oath that you were under
3    when you spoke to Judge Pauley, you said to the Permanent Select
4    Committee that you couldn't recall President Trump ever asking
5    you to inflate the numbers in his Statement of Financial
6    Condition. Do you remember that?
7    A    I don't.
8        MS. HABBA: Let's pull it up.
9    Q    Mr. Cohen, do you see this document? Please go to the
10   front page. Does it say, "Executive Session Permanent Select
11   Committee on Intelligence U.S. House of Representatives in
12   Washington DC?"
13   A    Yes, it does.
14   Q    It does? Does it say that you were deposed?
15   A    It says, "deposition of Michael Cohen."
16   Q    Were you deposed?
17   A    I was.
18   Q    Were you deposed on Thursday, February 28, 2019?
19   A    That's what it says.
20   Q    Okay. At -- commencing at 9:35 a.m.?
21   A    Yes.
22   Q    And you can see who was present there, correct?
23   A    Correct.
24   Q    Do you remember this?
25   A    I do.

---

M. COHEN - PLAINTIFF - CROSS (MS. HABBA)    Page 2409

1    MS. HABBA: Can you, please, pull up 92:6.
2        "QUESTION: Did Mr. Trump direct you or Mr.
3    Weisselberg to inflate the numbers on his personal
4    statement?"
5        Your answer, "I'm sorry." Did he ask me to inflate
6    the numbers?"
7        And what do you say, Mr. Cohen?
8    A    I stated, "not that I recall."
9    Q    Not that I recall. That's not all you said.
10   A    No.
11   Q    No. Those are your words, correct?
12   A    Those are my words.
13   Q    And did you say -- you don't dispute that that was
14   you, correct, in front of the committee two years after you left
15   the Trump Organization?
16   A    I already stated that's my deposition.
17   Q    So Mr. Cohen, as you sit here today, are you telling me
18   the truth and the Attorney General the truth or were you telling
19   the truth then?
20   A    I was in the camp of Donald Trump --
21   Q    Yes or no? It was two years after you stopped
22   working --
23   A    You didn't ask me a yes-or-no question.
24   Q    Yes, I did.
25   A    No, you didn't.

---

PEOPLE OF THE STATE OF NEW YORK v.                                      MICHAEL COHEN
DONALD J. TRUMP, et al.                                                 October 25, 2023

| M. COHEN - PLAINTIFF - CROSS(MS. HABBA)    Page 2410 |
|---|

1  Q   Okay, Mr. Cohen.
2          MS. HABBA: Can we, please, get a readback of my
3  original statement, question?
4          THE COURT: It wasn't yes or no, but it was
5  either/or.
6          THE WITNESS: So, please, allow me to answer.
7          MR. HABBA: Let me rephrase my question, Your
8  Honor.
9          THE COURT: Okay.
10         THE WITNESS: Can I not answer the question that's
11 in front of me?
12         MS. HABBA: Withdrawn.
13         THE COURT: Her question is withdrawn.
14         MS. HABBA: Question is withdrawn. I'm going to
15 rephrase my question.
16 Q   Mr. Cohen, were you being honest in front of the
17 Permanent Select Committee when you testified on February 28,
18 2019?
19 A   No.
20 Q   So you lied under oath in February of 2019? Is that
21 your testimony?
22 A   Yes.
23 Q   Mr. Cohen, I just have one more question, maybe two.
24         Did you ever ask President Trump to pardon you while he
25 was in the White House?

| Proceedings    Page 2412 |
|---|

1          AFTERNOON SESSION
2          THE COURT OFFICER: All rise. Part 37 is back in
3  session. The Honorable Judge Arthur Engoron presiding.
4  Make sure all cell phones are on silent. Laptops and cell
5  phones will be permitted, but only to members of the press.
6  There is absolutely no recording or photography of any kind
7  allowed in the courtroom. Now be seated and come to order.
8          THE COURT: Well, at least my microphone is working
9  this time.
10         I want to resume the discussion about what happened
11 this morning when Defendant, Donald J. Trump, apparently
12 made a statement to the press referring to "the person next
13 to me," and I'll pick up where I left off.
14         Mr. Kise I believe said on behalf of Defendant
15 Trump, I'll call him, that he was referring to Michael Cohen
16 when he said what he said about the "partisan democrat,"
17 etc.; is that correct?
18         MR. KISE: Yes.
19         THE COURT: I'm going to hold a hearing right now
20 about that.
21         MR. KISE: Okay.
22         THE COURT: And I'll have as my -- as the first
23 witness, Defendant Donald J. Trump.
24         Mr. Trump, would you like to be on the witness
25 stand to testify? Come on up.

| Page 2411 |
|---|

1  A   No.
2  Q   He didn't pardon you, did he, Mr. Cohen?
3  A   No.
4          MS. HABBA: Thank you. I'm done.
5          THE COURT: Well, we have about eight or nine more
6  minutes. Re-direct?
7          MR. ROBERT: Your Honor, I have cross-examination.
8          THE COURT: Oh, I'm sorry.
9          MR. ROBERT: I think it may make sense to take the
10 lunch break now, so we can work out the mechanics of the
11 microphone and we can start at 2:15.
12         MR. KISE: We may be able to streamline it as well.
13         MR. ROBERT: Yes. I will be as brief as I can.
14         THE COURT: So I'm breaking until 2:15, everybody.
15 Thank you.
16         (Whereupon, a luncheon recess was taken.)
17
18
19
20
21
22
23
24
25

| Proceedings    Page 2413 |
|---|

1          THE COURT OFFICER: Please raise your right hand.
2  Do you solemnly swear or affirm any testimony you give will
3  be the truth, the whole truth and nothing but the truth?
4          THE WITNESS: I do.
5          THE COURT OFFICER: You may have a seat.
6          Please state your name and either home or business
7  address on the record.
8          THE WITNESS: Donald John Trump, New York, the
9  Trump Organization.
10         THE COURT: Mr. Trump, did you say out in the
11 hallway this morning, "This judge is a very partisan judge
12 with a person who is very partisan sitting alongside of him,
13 perhaps even much more partisan than he is?"
14         THE WITNESS: Yes.
15         THE COURT: To whom were you referring when you
16 said "the person sitting alongside of him?"
17         THE WITNESS: You and Cohen.
18         THE COURT: Are you sure that you didn't mean the
19 person on the other side of me, my principal law clerk?
20         THE WITNESS: Yes, I am sure.
21         THE COURT: Have you in the past referred to her,
22 my principal law clerk, as partisan, and/or partisan
23 Democrat?
24         THE WITNESS: Maybe unfair. I think she is very
25 biased against us. I think we've made that clear. We put

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

Proceedings                                          Page 2414

1   up the picture and you didn't want that up. I think they
2   got it off her website, however, so we didn't necessarily
3   agree, but -- and we did take it down, Your Honor, but we
4   have so many different sides and I believe -- and I may be
5   wrong on this, but I believe it was one of the political
6   groups or one of the pacts that had it up or left it up, but
7   I didn't knowingly do that.
8          THE COURT: Well, I'm more interested right now in
9   -- to whom you were referring as you can see and as everyone
10  can see, first of all, my principal law clerk is very close
11  to me. In fact, Ms. Habba would refer to the notes back and
12  forth and even the conversations, but you and I, we can see
13  each other and we're close, but not as close clearly and
14  there is a barrier between us. So wouldn't that be at best
15  somewhat ambiguous as to whom you are referring? Have you
16  also -- have you -- I know I'm doing a compound question
17  here.
18         MR. KISE: I was going to say am I allowed to
19  object to the question?
20         THE COURT: Sure, it's a hearing.
21         Don't you always refer to Michael Cohen as Michael
22  Cohen?
23         THE WITNESS: No.
24         MR. KISE: Many things, even worse than that.
25         MS. HABBA: Yes, Your Honor. I can confirm that,

---

Proceedings                                          Page 2415

1   much worse.
2          THE WITNESS: Much worse.
3          THE COURT: Would anybody else like to question the
4   witness, either from the defense or the Attorney General?
5          MR. KISE: No, Your Honor.
6          MS. HABBA: No, Your Honor.
7          THE COURT: The witness is excused. I have no
8   further questions. Thank you.
9          THE WITNESS: Thank you, sir.
10         (Whereupon, the witness is excused from the witness
11  stand.)
12         THE COURT: Thank you.
13         As the trier of fact, I find that the witness is
14  not credible; that he was referring to my law clerk, who is
15  principal law clerk, who is sitting much closer to me, who
16  doesn't have a barrier, whom I believe has been accused by
17  the defendant of being partisan or Democrat or partisan
18  Democrat. I hereby fine you $10,000, which is on the low
19  side, to be paid within 30 days to the Lawyer's Fund for
20  Client Protection.
21         Would anybody like to say anything else?
22         MR. KISE: Your Honor, I would just object to that.
23  I mean, there is one witness on the stand, the only witness
24  on the stand. There is no evidence to the contrary other
25  than in your mind and I don't want to go to a place where I

---

Proceedings                                          Page 2416

1   don't think any of us want to go that you presupposed some
2   ill motive on behalf of the only witness. I think that's a
3   dangerous place to go, not just for the sanction, but also
4   for the whole trial. I do think there is clear separation
5   between the two.
6          I mean, the President was talking about the witness
7   on the stand. I mean, we can all agree we have different
8   views about whether it's next to you or next to you with a
9   barrier, but he's next to you. I also think that there is
10  -- respectfully, I think there is considerable tension
11  caused by at least -- and I'll let Mr. Robert speak to this.
12  It is unusual in my experience to have a law secretary, a
13  law clerk sit on the bench. I will say that. And so I
14  think that may have created some of the confusion.
15         Ordinarily, in my experience, law clerks are in,
16  you know, not sitting right next to the judge on the bench,
17  but in the morning where we have a principal witness on the
18  stand who has lied, lied, lied and as I said earlier this
19  morning, I'm not going to go back into that speech, but that
20  was the focal point of the examination today, that was the
21  focal point of the animus today, that was the focal point of
22  the questions today from the media today, so I just would
23  ask you to reconsider.
24         I mean, certainly I don't want to have to file,
25  frankly, yet another appeal and I just think if you want to,

---

Proceedings                                          Page 2417

1   again, warn the defendant about the responsibilities, but I
2   just don't think there is any clear record here.
3          And in order to impose sanctions generally the
4   record needs to be very clear. And see, that's what just
5   happened is kind of what is creating the issue is that like
6   I'm talking to you and the notes are being passed to you
7   about things and I think from a defendant standpoint, not
8   from a lawyer standpoint, from a defendant standpoint, that
9   creates an appearance that is uncomfortable and I think that
10  has created some of the confusion here.
11         But the President has testified that that's what he
12  said. That's what I told you before. I think that's a fair
13  interpretation of what's said and sanctions are not granted
14  when there is gray. Sanctions are reserved for situations
15  where it's a very clear situation. Last week, you exercised
16  your discretion. I didn't object to that discretion in
17  terms of what happened with the website. We explained it, I
18  gave you as much detail as the Court asked for and we have
19  since complied fully. "We" meaning the clients, have since
20  complied fully with the order. So I would just ask that we
21  don't create that -- another issue here because I think it
22  has further ramifications for the overall proceeding,
23  respectfully I do.
24         THE COURT: Just in response, I'll just say to me,
25  totally separate from the trial. I mean, if you wanted to

---

FILED: NEW YORK COUNTY CLERK 11/05/2023 09:47 AM
NYSCEF DOC.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.
INDEX NO. 452564/2022
RECEIVED NYSCEF: 11/05/2023
Page 32 of 44

MICHAEL COHEN
October 25, 2023

| Proceedings | Page 2418 |
|---|---|

1 have ramifications you can have ramifications, but I don't.
2 Mr. Robert?
3 MR. ROBERT: So, Your Honor, I will speak from my
4 experience in New York State. It is incredibly unusual and,
5 quite frankly, in my experience, I've never seen a situation
6 where you're literally trying the case to two judges it
7 would appear whereas there are notes that are constantly
8 being passed, rulings that it would appear that the Court is
9 in consultation with the law secretary. I think it started
10 out less frequently. Now I would say it's almost with each
11 ruling. There is some concern on part of defendants as a
12 result of that.
13 I agree with Mr. Kise's statement about opposing
14 any imposition of sanctions in this case, but I do think
15 this is as good a time as any to express the defendant's
16 concern about what would appear to be the problem or the
17 challenge that we face and that we feel like we're trying
18 the case before two judges and sometimes you appear to be
19 leaning in one direction and then you'll either receive a
20 note or there will be an eye gesture or a roll of the face
21 and something changes and it is of significant concern to
22 us, not just during examination of witnesses by us,
23 examination by the Attorney General, but also in the general
24 presentation of our case here. So I just wanted to put that
25 on the record, sir.

| Proceedings | Page 2419 |
|---|---|

1 THE COURT: Okay.
2 Ms. Habba?
3 MS. HABBA: I'd just like to say as I said this
4 morning, I'm going to reiterate something. I, myself, was a
5 law clerk. I never sat next to the judge. The judge would
6 actually never even allow me to come in front unless to
7 watch oral argument, but all discussions about the case were
8 when we were researching and deciding what the order can be.
9 I've never experienced this and I've been practicing law for
10 quite sometime now, unfortunately, for my age, but, Your
11 Honor, all due respect, I agree with the sentiments.
12 I also think that we have to remember that you made
13 your decision on this trial before we walked in regarding
14 liability and we've been sitting here like he said -- and,
15 frankly, I would like to add that I've been sitting here for
16 longer than both my cocounsel. I've been doing this with
17 you for now a few years from the Special Proceeding and now
18 the trial and I have had issues, numerous issues, and if
19 we're going to make a complete record with the treatment
20 that I've received from Ms. Greenfield from the bench, it is
21 inappropriate. I do not like having eyes rolled, I do not
22 like being yelled at by law clerks who did not earn the robe
23 and I think this is completely inappropriate.
24 And, quite honestly, Your Honor, with this
25 sanction, it only furthers my belief that the influence that

| Proceedings | Page 2420 |
|---|---|

1 is happening from the bench is completely inappropriate and
2 should stop. Thank you.
3 MR. KISE: Can I just say one more thing, Judge?
4 THE COURT: Sure.
5 MR. KISE: Thank you. I just want to go back to
6 where I began because the record on the sanction relates to
7 what happened outside. The testimony you received in the
8 courtroom and neither of those present a clear picture of
9 the supports and award of sanctions. It's clear that it's
10 fully subject to interpretation. I think the speaker has to
11 be taken at face value as to what he was talking about and
12 the entirety of the conversation related to the testimony as
13 it usually does when these press conferences occur. They
14 usually relate to what just happened in the courtroom and
15 what is happening in the courtroom is Michael Cohen. And so
16 that's top of line. Whether you and I or anyone else would
17 agree "next to you" means next to you on the left or next to
18 you on the right, you know, everyone has a different
19 interpretation of it and because of that I would say that
20 the President's interpretation is a fair interpretation.
21 It's what he meant. He's the speaker. There is nothing in
22 the record that would refute that, so I just again would
23 urge the Court to reconsider the judgment of sanctions
24 because there is just not a clear record here.
25 If you are concerned about future violations or a

| Proceedings | Page 2421 |
|---|---|

1 violation then that is within your province to direct
2 further the defendant or any of us for that matter, but I
3 would say this record does not support any sanction and I
4 would urge the Court to reconsider.
5 THE COURT: Let me address all the comments about
6 my consultations, I'll call them. I make the final
7 decisions. I value input from both of my law clerks. Every
8 judge does things differently. I don't know whether there
9 are other judges in this courtroom or city or country have
10 their law clerks sit up on the bench. That's how I do
11 things and I make the final decisions.
12 I guess I can't consult now, you know, and look
13 terrible, wouldn't it? So I won't. I am reconsidering.
14 I don't think I said this before, but the idea that
15 the statement would refer to the witness, you know, there is
16 somebody sitting up there alongside of him, that was a
17 partisan Democrat whatever, that doesn't make any sense to
18 me.
19 MR. KISE: I mean, it -- again, in context, it
20 certainly does, to me, given the circumstances and given the
21 obvious animus, the admitted animus on the witness stand
22 that Mr. Cohen has for my client. So, again, in context, I
23 just think it has to be taken that way.
24 If Your Honor would like to -- I know you want to
25 keep the schedule moving. If you want to take it under

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

| Proceedings | Page 2422 |
|---|---|

1   advisement further and reconsider, I'll just leave that to
2   you, but I just would ask that you take time and reconsider
3   this. Thank you.
4       THE COURT: I've been thinking about it obviously
5   for quite a while now.
6       Ms. Habba?
7       MS. HABBA: The only factual thing I would like to
8   add is the questions that have been out and I have obviously
9   standing there have been related to Michael Cohen's
10  testimony as well as to political matters. That has been
11  the scope of their questions.
12      Ms. Greenfield was never in the front of mind or
13  even asked about. So for what it's worth, Your Honor, I
14  have not heard that, nor would he be responding to that. It
15  just doesn't make sense.
16      THE COURT: I just need a little technical
17  assistance. I want to see the exact quote again. I'm
18  quoting in part, "with a person who is very partisan sitting
19  alongside of him, perhaps even much more partisan than he
20  is." I think the three attorneys that just spoke you've
21  made my whole point. That's what he's worried about, that
22  there is sitting alongside of me who is consulting with me.
23      MR. KISE: Respectfully, I disagree with that. The
24  person that's sitting next to you this morning is way more
25  partisan than -- well, I'm not saying -- I'm going to leave

| Proceedings | Page 2423 |
|---|---|

1   that alone, but the witness is the one that's obviously
2   partisan. That's been the whole point of the cross
3   examination. That's been the whole point of the morning is
4   that he's partisan. He's a liar, he's biased, he makes
5   money off of -- again, you know, you heard my speech.
6   That's really the focal point.
7       THE COURT: I think that -- I would disagree. The
8   focal point was he's dishonest, not that he's some sort of
9   partisan democrat.
10      MR. KISE: Well, that, too. I'll take that.
11      THE COURT: I've reconsidered. The ruling stands.
12  You're fined $10,000. Don't do it again or it will be
13  worse. Let's get the witness in.
14      MR. ROBERT: Your Honor, just a couple of
15  housekeeping things as we're waiting for the witness.
16      THE COURT: Sure.
17      MR. ROBERT: I just want to make sure Defendant's
18  Exhibit 953, which is the December 12, 2018 transcript and
19  Defendant's Exhibit 961, which was the February 28, 2019
20  transcript are in evidence. I don't --
21      MR. KISE: Your microphone.
22      MR. ROBERT: Can you hear me?
23      MS. HABBA: Yes, but we can't hear him and I'm
24  sitting right here.
25      MR. ROBERT: Is this better? Can you hear me now?

| Proceedings | Page 2424 |
|---|---|

1       THE COURT: Can you hear him in the back?
2       Yes, I think so. The mic's picking up.
3       MR. ROBERT: And I'll speak louder.
4       So the housekeeping item was Defendant's
5   Exhibit 953, which was the December 12, 2018 transcript from
6   Judge Pauly and the Defendant's Exhibit 961, which was the
7   February 28, 2019 deposition transcript. Just want to make
8   sure those are in evidence and if not, to move them in now
9   just to make things run smoother and quicker this afternoon.
10      MS. FAHERTY: I think, Your Honor, I believe you
11  admitted 953 over my objection and the transcript for 961 is
12  the transcript for 961. I don't have a basis to object
13  here.
14      THE COURT: They're both in evidence.
15      MR. ROBERT: Thank you.
16      THE COURT OFFICER: Witness entering.
17      (Whereupon, the witness enters the courtroom and
18  approaches the witness stand.)
19      THE COURT: I'll remind the witness he's still
20  under oath.
21      Let's proceed with the questioning.
22  CROSS EXAMINATION
23  BY MR. ROBERT:
24  Q   Good afternoon, Mr. Cohen.
25  A   Good afternoon.

| M. Cohen - Plaintiff - cross (Robert) | Page 2425 |
|---|---|

1   Q   You took an oath yesterday before you took the stand,
2   did you not?
3   A   I did.
4   Q   And you promised to tell the truth, did you not?
5   A   I did.
6   Q   And you realize that if you don't tell the truth you're
7   committing a lie; correct?
8   A   Correct.
9   Q   And that's perjury; correct?
10  A   Correct.
11  Q   And you remember in times past you've also taken an
12  oath when you've testified; correct?
13  A   Correct.
14  Q   And you testified this morning that other times that
15  you've testified under oath you've testified falsely; correct?
16  A   Correct.
17  Q   And one of those times was in the Southern District of
18  New York; correct, sir?
19  A   Correct.
20  Q   And that's literally if we can see out the window next
21  door; correct?
22  A   If you say so.
23  Q   Well, it was in the Southern District of New York;
24  correct?
25  A   Yes.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN

October 25, 2023

| M. Cohen - Plaintiff - cross (Robert) Page 2426 | M. Cohen - Plaintiff - cross (Robert) Page 2428 |
|---|---|
| 1   Q   You had been indicted by the United States Attorney of<br>2 the Southern District of New York; correct?<br>3   A   Yes.<br>4   Q   And the criminal proceedings relating to that<br>5 indictment was in the Southern District of New York; correct?<br>6   A   Yes.<br>7   Q   And you remember appearing in court for those various<br>8 indictments; correct?<br>9   A   Correct.<br>10   Q   I think it was a total of, what was it, eight or nine<br>11 indictments that you faced?<br>12   A   Initially eight and another one for the 1001 violation,<br>13 so nine.<br>14   Q   So a total of nine indictments?<br>15   A   Correct.<br>16   Q   And the first indictments were heard before Judge<br>17 Pauly; correct?<br>18   A   That's correct.<br>19   Q   And the second one was heard before Judge Carter;<br>20 correct?<br>21   A   Yes.<br>22   Q   And would you agree with me, sir, that when a person is<br>23 charged with a serious felony, it's serious?<br>24   THE COURT: That's a tautology.<br>25   MR. ROBERT: It's like an Austin Powers question, | 1   A   Correct.<br>2   Q   And at first you pled that you were not guilty;<br>3 correct?<br>4   A   I don't recall that, no.<br>5   Q   Well, you don't recall originally entering an<br>6 appearance of not guilty and then later changing it to guilty?<br>7   A   No.<br>8   Q   Well, sir, can we agree that eventually you did plead<br>9 guilty?<br>10   A   Yes.<br>11   Q   And, sir, the process when you were -- withdrawn.<br>12   And the first set of indictments was before Judge<br>13 Pauly; correct?<br>14   A   Yes.<br>15   MS. FAHERTY: Just to clarify, I think they were<br>16 counts on an indictment. I don't think it was multiple<br>17 indictments, just for clarity's sake.<br>18   Q   So it was two indictments; one was for eight counts and<br>19 one was for one count. We understand each other?<br>20   A   I understand.<br>21   MR. ROBERT: The witness and I get it, Ms. Faherty.<br>22   Thank you.<br>23   Q   So it was a series of two indictments; correct, sir,<br>24 with nine counts?<br>25   A   Yes. |

| M. Cohen - Plaintiff - cross (Robert) Page 2427 | M. Cohen - Plaintiff - cross (Robert) Page 2429 |
|---|---|
| 1   but I figured I'd try.<br>2   Q   It's an important event in a person's life when they're<br>3 charged criminally; correct?<br>4   A   Yes, it was.<br>5   Q   Other than finding out they have cancer, it may be one<br>6 of the serious things that happens to a person. Would you agree<br>7 with me, sir?<br>8   A   There are many things.<br>9   Q   Yes or no?<br>10   A   I don't agree with you, no.<br>11   Q   So, sir, being indicted criminally -- withdrawn.<br>12   In your case was it serious that you were indicted<br>13 criminally?<br>14   A   Yes.<br>15   Q   You were facing jail; correct?<br>16   A   Yes.<br>17   Q   Prison?<br>18   A   Yes.<br>19   Q   You actually went to prison; right?<br>20   A   Correct.<br>21   Q   And as part of the process a person is arraigned;<br>22 correct?<br>23   A   Correct.<br>24   Q   And as it comes a point in time when a person is asked<br>25 whether they're guilty or not guilty? | 1   Q   And when you went to court one day it was determined<br>2 that you were going to plead guilty to those counts; correct?<br>3   A   When I appeared in court?<br>4   Q   Yes.<br>5   A   Yes.<br>6   Q   And you understood the importance when you were before<br>7 Judge Pauly of pleading guilty; correct?<br>8   A   Yes.<br>9   Q   And this was not where you walked into court and five<br>10 minutes later you walked out; right?<br>11   A   Yes, it was.<br>12   Q   So when you appeared on August 21, 2018 for your -- to<br>13 plead guilty, you'd say that was a five-minute appearance?<br>14   A   Maybe not five minutes, but it wasn't all day.<br>15   Q   I didn't ask you if it was all day.<br>16   A   So yes, it was more than five minutes.<br>17   Q   It was very extensive; right?<br>18   A   Define "extensive."<br>19   THE COURT: Wait. Why don't you just ask him how<br>20 long it was.<br>21   MR. ROBERT: I'm going to get there, Your Honor.<br>22   Q   Sir, during the course of that appearance before Judge<br>23 Pauly, Judge Pauly made various statements to you, did he not?<br>24   A   He did.<br>25   Q   Including he said to you, quote, "Mr. Cohen, do you |

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.                                        MICHAEL COHEN
                                                              October 25, 2023

---

M. Cohen - Plaintiff - cross (Robert)                    Page 2430

1    understand, sir, that you are now under oath and that if you
2    answer any of my questions falsely, your false or untrue answer
3    may later be used against you in another prosecution for perjury
4    or making a false statement."  And you responded, "I do, Your
5    Honor."  Do you remember that?
6             MS. FAHERTY: Your Honor, I just want to note my
7    objection for the record, which was similarly raised earlier
8    this morning.  If we are asking the witness to form legal
9    conclusions, that is entirely improper.  I am noting my
10   objection, especially as we're throwing around the
11   slanderous buzzword "perjury" like we did earlier.
12   Reasserting myself, Your Honor.
13            MR. KISE: Your Honor --
14            THE COURT: Overruled.
15   Q    Answer my question, sir.
16   A    Can you repeat it?
17            MR. ROBERT: Could the court reporter repeat it?
18            THE COURT: Read back, please.
19            (Whereupon, the requested portion of the
20   proceedings was read back by the court reporter.)
21   A    I do.
22   Q    And do you further recall Judge Pauly saying to you,
23   quote, "My questions are intended to satisfy me that you wish to
24   plead guilty because you are guilty and that you fully
25   understand the consequences of your plea."

---

M. Cohen - Plaintiff - cross (Robert)                    Page 2431

1             Do you remember that, sir?
2    A    I do.
3    Q    This was a serious day; correct?
4    A    Yes.
5    Q    And Judge Pauly took this incredibly seriously, did he
6    not?
7    A    You're asking me to figure out what Judge Pauly
8    thought?
9    Q    So you don't think Judge Pauly took the proceedings
10   seriously?  You don't know?
11   A    I'm not in a position --
12            MS. FAHERTY: Objection.
13            THE COURT: Sustained.  Yes or no?
14   Q    Did you take him seriously?
15   A    Asked and answered, but yes.
16   Q    What was asked and answered?  Did you take him
17   seriously?
18   A    Yes.
19            THE COURT: You did ask him that and he did answer
20   that.
21   Q    And, sir, during the course of those proceedings Judge
22   Pauly asked you over 50 questions about the crimes that you are
23   about to plead guilty to, didn't he?
24   A    I don't know the number.
25   Q    Well, sir, I mean, I can spend the next two days going

---

M. Cohen - Plaintiff - cross (Robert)                    Page 2432

1    through it, but in the document that's in evidence as
2    Defendant's Exhibit 951, Judge Pauly asks you over 50 questions.
3    Do you have a reason to quarrel with me when I say that?
4    A    I don't.
5    Q    And sir, you understood that Judge Pauly was asking you
6    those 50 questions because he needed to satisfy himself that you
7    were in fact guilty; correct?
8    A    I don't know what Judge Pauly was thinking.
9    Q    Well, it's not about what he's thinking.  He said to
10   you while you were in court that day to plead guilty, quote:
11   "My questions are intended to satisfy me that you wish to plead
12   guilty because you are guilty and that you fully understand the
13   consequences of your plea."  If you want to look, sir, it's on
14   page eight, lines one through five.
15            MS. FAHERTY: Is that a question?
16            MR. ROBERT: It is.  I asked him -- we can have the
17   question read back, Your Honor.
18            THE COURT: While he's looking, sidebar, please.
19   Sidebar or front bar I like to call it.
20            (Whereupon, an off-the-record discussion is held at
21   the side bar.)
22            THE COURT: Read back of the last question, please.
23            (Whereupon, the requested portion of the
24   proceedings was read back by the court reporter.)
25   Q    It's not about what you think Judge Pauly meant.  He

---

M. Cohen - Plaintiff - cross (Robert)                    Page 2433

1    explained to you why he was asking all those questions, did he
2    not?
3    A    He did.
4    Q    And in response to those questions, you lied to him;
5    true?
6    A    That's true.
7    Q    And then about a month or so later there are additional
8    charges that are brought against you; correct?
9    A    That's correct.
10   Q    And at that point you appear before Judge Carter;
11   correct?
12   A    Correct.
13   Q    And at that point you enter a guilty plea before Judge
14   Carter; correct?
15   A    Correct.
16   Q    And that was for you pleading guilty to lying to
17   Congress; correct?
18   A    Correct.
19   Q    And on that occasion Judge Carter asked you over 76
20   questions to satisfy him that you were guilty.  Do you remember
21   that?
22   A    I don't remember the number.
23   Q    Well, do you remember that he asked you several
24   questions to satisfy himself that you were in fact guilty?
25   A    Yes.

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

Page 2434

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1    Q    And at that point when you gave that testimony in the
2    Southern District of New York were you lying then?
3    A    No.
4    Q    So you lied to Judge Pauly on August 21st, but you
5    didn't lie to Judge Carter on November 29th. That's your
6    testimony here today?
7    A    Yes.
8    Q    Okay. And, sir, you were then subsequently sentenced a
9    few weeks later, were you not?
10   A    Yes.
11   Q    And that sentencing was on December 12, 2018; correct?
12   A    Correct.
13         Transcript continues on the following page....
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 2435

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1    Q    And you lied at your sentencing, didn't you?
2    A    On?
3    Q    First, sir, did you lie at your sentencing, yes or no?
4    A    I don't know what you're referring to. I apologize.
5    Q    Well, you don't remember that you were sentenced for
6    criminal conduct on December 12, 2018?
7    A    I was sentenced.
8    Q    You were sentenced to prison, correct?
9    A    Correct.
10   Q    And you don't know as you sit here today whether you
11   lied that day?
12   A    At sentencing?
13   Q    Correct.
14   A    I -- I -- I don't know what you're even referring to.
15   Q    It is not a question of what I'm referring to. I
16   promise you that we are going to get there, sir.
17   A    I can't answer your question.
18   Q    So you don't know as you sit here today whether you
19   lied to Judge Pauley at your sentencing, do you?
20   A    Are you referring to when I took the -- when I
21   accepted the sentence?
22         THE COURT: Mr. Cohen, it is not --
23         THE WITNESS: I apologize. I'm just lost with the
24   question.
25         THE COURT: It seemed pretty straightforward to me.

---

Page 2436

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1    Did you lie at the sentencing hearing?
2    Q    Correct?
3         THE COURT: And it is not a question of what he is
4    referring to. He's asking you a question. Did you lie at
5    the sentencing hearing?
6         THE WITNESS: I don't recall.
7    Q    You don't recall whether you lied at your sentencing?
8    A    I don't recall. I have no idea what you're talking
9    about.
10   Q    The man that was deciding how much prison time you were
11   going to take and you don't remember if you lied? I don't know
12   who you keep looking at for an answer. Maybe you should look
13   up.
14   A    I'm trying to understand your question.
15         MS. FAHERTY: Can we avoid the commentary, Your
16   Honor?
17         THE COURT: I thought it was understandable under
18   the circumstances.
19         What don't you understand? Did you lie at your
20   sentencing hearing? You know what a sentencing hearing is.
21   You know what a lie is.
22   A    I stated I lied at the plea, but the sentencing, I
23   stood there and I received the sentence. There -- I don't
24   recall that there was much communication going back and forth
25   which is why I'm asking you to clarify your question.

---

Page 2437

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1    Q    You don't remember making a statement under oath to
2    Judge Pauley on the day he was going to sentence you to take you
3    away from your family?
4    A    Yes. Yes. Actually, I know what you are talking about
5    now.
6    Q    Now, you remember?
7    A    Yes, I do.
8    Q    And you lied?
9    A    I did.
10   Q    So you lied when you pled guilty, right? We know the
11   answer already, but just tell me.
12   A    Asked and answered. How many times are you going to
13   ask me the same question.
14   Q    I know you think you're a lawyer, but you're not.
15   A    Yes, I know that.
16   Q    So, sir, you lied at the time -- you lied more than
17   once in federal court, correct?
18   A    Correct.
19   Q    When the stakes affected you personally, right?
20   A    Correct.
21   Q    And you mislead a federal judge?
22   A    Yes.
23   Q    And one of the charges that you pled guilty to, which
24   you say today you still are guilty of, is that you lied to
25   Congress, right?

---

Min-U-Script®        NICOLE C. ROBINSON, SCR, & JANELLE LONDON, RMR, CRR        (34) Pages 2434 - 2437

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

**Page 2438**

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1  A   Correct.
2  Q   And you pled guilty to that in December of 2018,
3  correct?
4  A   Correct.
5  Q   And then, sir, you were sentenced, correct?
6  A   Yes.
7  Q   And you reported to prison some time thereafter,
8  correct?
9  A   Correct.
10 Q   So after you lied at your time that you pled guilty,
11 you lied to Judge Pauley at your sentencing. You then lied to
12 Congress couple of months after you lied at your sentencing,
13 didn't you?
14 A   I don't recall.
15 Q   Sir, this morning you were shown testimony that in
16 February of 2019, you lied to Congress. That was the testimony.
17 Do you remember that?
18 A   I remember it being asked.
19 Q   Yes. And sir, that is Defendant's Exhibit 961 in
20 evidence and that was in February of 2019. That was less than
21 three months after you had already pled guilty to lying to
22 Congress. You then lied to Congress in between the time you
23 were sentenced and going to prison, true?
24 A   What -- and what page are you on?
25 Q   I'm not on a page. I'm asking you a question, sir.

---

**Page 2439**

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1        MR. ROBERT: Your Honor, can I have the question
2  read back, please?
3        THE COURT: Sure. Readback, please.
4        MR. ROBERT: Thank you.
5        (Whereupon, the requested portion of the record was
6  read back.)
7  A   I don't know if what I had said here is a lie.
8  Q   You testified earlier, sir, that it was a lie.
9  A   Off of that sentence.
10 Q   So, sir, did -- the question on page 149: "Did Mr.
11 Trump direct you or Mr. Weisselberg to inflate the numbers for
12 his personal statement. Answer, "I'm sorry." "Did he ask me to
13 inflate the numbers? Not that I recall, no."
14        That was your testimony under oath to Congress in
15 February of 2019; yes or no?
16 A   No.
17 Q   That's not the testimony?
18 A   That is the testimony.
19 Q   That is --
20 A   It is not a lie.
21 Q   That's what you said?
22 A   That is not a lie.
23 Q   So your testimony is that Mr. Trump and Mr. Weisselberg
24 did not tell you to inflate the numbers, correct; yes or no,
25 sir? You can't have it both ways.

---

**Page 2440**

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1  A   I'm sorry. Can you repeat the question?
2        MR. ROBERT: Your Honor, if I could have the
3  question read back.
4        THE COURT: Readback, please.
5        (Whereupon, the requested portion of the record was
6  read back.)
7  A   Correct. They did not tell me.
8  Q   To inflate the numbers?
9  A   To inflate the numbers overtly.
10 Q   Sir, that was the sworn testimony you gave to Congress,
11 correct?
12 A   That's correct.
13 Q   And this morning when you were asked if that was a lie,
14 you said, "Yes, it was a lie." That was your testimony?
15 A   Correct.
16 Q   So you lied to Congress in February of 2019, correct?
17 It's not that hard.
18 A   It is because --
19 Q   Sir, yes or no?
20        THE COURT: All right. Just questions.
21 Q   Sir --
22        MS. FAHERTY: Thank you, Your Honor.
23 Q   February of -- let's do it the easy way. You pled
24 guilty in December of '18, correct?
25 A   I did.

---

**Page 2441**

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)

1  Q   Can we agree that from February of '19 to December of
2  '18 is three months?
3  A   Yes.
4  Q   So can we agree that within three months --
5        THE COURT: From when to when?
6        MS. FAHERTY: I was a little confusing for me, too.
7        MR. ROBERT: Even better.
8  Q   Within two months.
9  A   What two months are you now referring to?
10 Q   Sir, in December of 2018, you pled guilty in Judge
11 Pauley's courtroom to a smorgasbord of crime, correct?
12 A   That's how he characterized it, yes.
13 Q   Those were his words, Judge Pauley's, correct?
14 A   Yes.
15 Q   Those weren't my words. Those were Judge Pauley's.
16 A   Correct.
17 Q   One of those smorgasbord crime was lying to Congress,
18 correct?
19 A   Correct.
20 Q   Now we fastforward and I thank Ms. Faherty for helping
21 me with the math. We are now two months ahead.
22        So two months after you plead guilty to lying to
23 Congress -- I don't know why you keep looking to the left.
24 A   I'm staring where I want to stare, sir.
25        THE COURT: He can look where he wants. Come on.

---

FILED: NEW YORK COUNTY CLERK 11/15/2023 09:47 AM   INDEX NO. 452564/2022
NYSCEF DOC. NO. 1677                                      RECEIVED NYSCEF: 11/15/2023

PEOPLE OF THE STATE OF NEW YORK v.                                Page 38 of 44
DONALD J. TRUMP, et al.                                       MICHAEL COHEN
                                                              October 25, 2023

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)        Page 2442

1  Q   Two months after you pled guilty to lying to Congress,
2  before you had to report to prison, you lied to Congress again,
3  correct?
4  A   No.
5  Q   You didn't lie to Congress again?
6  A   Mr. Trump did not --
7       THE COURT: No. No. No speech.
8       THE WITNESS: This will go on forever unless he
9  lets me explain.
10 Q   I'm sure they are going to try to rehabilitate you. I
11 don't know how.
12 A   So the answer is no.
13 Q   The answer is no. So now you are saying when you
14 talked earlier about the fact that that was a lie to Congress,
15 now that's a lie?
16 A   No. I made a mistake.
17 Q   So you made a mistake --
18 A   I made a mistake.
19 Q   -- when you testified under oath --
20 A   Because it's --
21      THE COURT: Mr. Cohen. You're interrupting the
22 lawyer. Just wait and let him finish the question.
23      THE WITNESS: Okay.
24 Q   So let me get this straight. So now you're saying when
25 you testified earlier that you lied to Congress in February of

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)        Page 2443

1  '19 and you just testified in the last five minutes that you
2  lied and you testified to Congress in February of '19, now you
3  are saying, "I didn't lie when I testified to Congress in
4  February of '19." Is that what you are saying?
5  A   Yes.
6  Q   So now you're saying that that statement is a true
7  statement, correct?
8  A   Correct.
9  Q   You are now saying under oath after all of the
10 examination of the Attorney General and all the
11 cross-examination, you're now saying that Mr. Trump did not
12 direct you or Mr. Weisselberg to inflate the numbers on his
13 personal statement? Is that what you're saying, sir; yes or no?
14 A   Mr. Trump did not --
15 Q   Yes or no, sir?
16 A   You know what?
17      MR. ROBERT: Your Honor, please.
18      THE COURT: I direct the witness to answer yes or
19 no and the question was yes or no.
20 A   I stand with that response, "Not that I recall, no."
21 Q   I stand with the response, "Not that I recall, no."
22      So you're saying that this was truthful testimony; yes
23 or no?
24 A   Yes.
25 Q   Okay. So Mr. Trump then never directed you to inflate

M. COHEN - PLAINTIFF - CROSS(MR. ROBERT)        Page 2444

1  the numbers on his personal statement, correct; yes or no? Yes
2  or no?
3  A   Correct.
4       MR. ROBERT: If I may have a moment, Your Honor.
5       THE COURT: Sure.
6       (Whereupon, there was a pause in the proceedings.)
7       MR. ROBERT: Your Honor, I have no further
8  questions at this time, but would ask for an immediate
9  directed verdict because the state's key witness who they
10 base their entire case on has now testified that Mr. Trump
11 and Mr. Weisselberg did not direct him to inflate the
12 numbers.
13      We have had other bases and we will make a directed
14 verdict motion at the end of the plaintiff's case, but I
15 can't think of anything more appropriate now in light of
16 this witness' testimony that the case be brought to an end.
17      THE COURT: Denied.
18      MS. FAHERTY: Thank you, your Honor.
19      THE COURT: Ms. Faherty or anyone else, would you
20 like to re-direct the witness?
21      MS. FAHERTY: I would, Your Honor. Can I take two
22 minutes to get my things together?
23      THE COURT: Sure. Of course.
24      MS. FAHERTY: Thank you, Your Honor.
25      (Whereupon, there was a pause in the proceedings.)

M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)     Page 2445

1       MS. FAHERTY: Your Honor, may I proceed?
2       THE COURT: Please.
3  REDIRECT EXAMINATION
4  BY MS. FAHERTY:
5  Q   Mr. Cohen, you were asked a number of questions about
6  your sentencing in the Southern District of New York. Do you
7  recall that?
8  A   Yes.
9  Q   And in connection with your sentencing in the Southern
10 District of New York, did you and your counsel put together
11 what's called a sentencing memo?
12 A   Yes.
13 Q   Did you put information about your understanding of the
14 crimes you had pled guilty to into that sentencing memo?
15 A   Yes.
16 Q   And did you provide information to the court about your
17 position as to your guilty plea in that sentencing memo?
18 A   Yes.
19 Q   Did you also information to the court about the factual
20 circumstances surrounding your guilty pleas into that sentencing
21 memo?
22 A   Yes.
23 Q   Did you submit that to the court in the hopes that the
24 court would review that information?
25 A   Yes.

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)    Page 2446

1  Q   And accept that information from you?
2  A   Yes.
3  Q   In connection with the -- your sentence in the
4  Southern District of New York?
5  A   Yes.
6        MS. FAHERTY: Your Honor, I'd like to pass forward
7  a document I've premarked as PX 3299. I put it up, the
8  cover page, on the screen. I'll just ask Mr. Cohen if he
9  recognizes this document.
10 A   I do.
11 Q   What do you recognize this to be, Mr. Cohen?
12 A   This is the sentencing memorandum on my behalf that was
13 produced by myself and guy Petrillo of Petrillo, Klein & Boxer,
14 my criminal attorneys at the time.
15 Q   And is it your understanding that this sentencing memo
16 was, in fact, considered before the Southern District of New
17 York pronounced sentence on you in connection with the crimes to
18 which you pled guilty in the Southern District of New York?
19 A   Yes.
20       MS. FAHERTY: Your Honor, I move to admit this
21 document.
22       MR. ROBERT: Objection, Your Honor. It's
23 bolstering the witness. Unless in these 33 pages it says
24 that he's actually not guilty, it is completely irrelevant.
25 And I haven't read these 33 pages, but I don't think Mr.

---

M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)    Page 2447

1  Petrillo in the sentencing memo told Judge Pauley that the
2  client lied and he is actually not guilty of the crime. So
3  I don't see what the relevance of this would be.
4        MR. KISE: Right, Your Honor. The rule for
5  admissibility of prior consistent statements, which is a
6  very narrow limitation on the hearsay rule, is the statement
7  has to be characterized as a recent fabrication or perjury.
8  We satisfied that and the same statement was made at a time
9  pre-dating the statement in court. So it has to be the same
10 statement. It can't be a different statement. It can't be
11 an inexplanatory [sic] statement.
12       If there are statements that say in there, "I am
13 not guilty," "I'm pleading guilty even though I'm not
14 guilty," that might be acceptable. We don't know because we
15 haven't been able to go through it. Anything in there about
16 excuses why he did the crime or why he thinks the penalty is
17 too much or why there's extenuating circumstances, that's
18 all improper rehabilitation. It is all complete hearsay.
19 If he said at the time, which clearly he did, because Judge
20 Pauley would never have accepted the plea. I've been to
21 enough sentencings.
22       So if he said at the time "I'm not guilty," "I'm
23 not guilty," "I'm not guilty" like he said here today under
24 oath, then that statement could come in as a prior
25 consistent statement. But just general statements or

---

M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)    Page 2448

1  statements about, you know, why I think the punishment is
2  too severe or why I think my circumstances are different,
3  that's irrelevant and it is completely admissible under the
4  prior consistent statement exception.
5        And I can cite the Court to the Melendez case, 54
6  AD2d 864. It is a First Department case. The Giordano
7  case, 9 AD2d 947. It is a Second Department case. People
8  v. McKlean, 69 NY2d 426 which is a Court of Appeals case. I
9  mean, I probably have 20 here, but you told me before you
10 only need a couple, so -- but -- but unless the statement
11 is fully consistent with what this witness has testified to
12 here in open court, meaning he told Judge Pauley or he wrote
13 something in court back then that says "I'm not guilty of
14 these crimes," it cannot come in under the prior consistent
15 statement exception.
16       It's just completely inadmissible. It doesn't
17 satisfy any of the prerequisites and we haven't had a chance
18 to go through that memorandum, but we can. We could take a
19 few-minutes break and look, but I doubt seriously that there
20 is anything in there that's consistent with what this
21 witness has said today about him not being guilty because
22 Judge Pauley never would have accepted a plea under those
23 circumstances. It is not possible.
24       MS. FAHERTY: He can speak for the judge now.
25       MR. KISE: I can speak to --

---

M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)    Page 2449

1        MS. FAHERTY: To the extent that we need a rule
2  that supports why this evidence is admissible, 4514, Your
3  Honor, under the CPLR, respectfully, this is perfectly fair
4  game, perfectly admissible and perfectly in line with the
5  evidence these attorneys have put forth before this Court
6  that you and your liberal discretion have permitted with
7  regards to a sentencing of Mr. Cohen.
8        In fact, they moved to admit and you accepted the
9  sentencing memo submitted by the federal government in that
10 action. So, Your Honor, respectfully, this is appropriate
11 and I have moved this into evidence despite the objection.
12       MR. KISE: Your Honor, our document was introduced
13 as impeachment. This document is being introduced to
14 attempt to rehabilitate an un-rehabilitatable witness and
15 the law is just very clear on this. This is not subject to
16 debate. So unless the statement is consistent with the
17 testimony presented in this courtroom, consistent, not
18 inconsistent, not maybe, not moving around it, it has to be
19 fully consistent.
20       I think the example I gave when we had this issue
21 with Mr. Larson is if the witness says today that the light
22 is green and he's challenged that that's a recent
23 fabrication, then you can introduce prior statements that
24 say where the witness said under oath the light was green.
25 Fine, but here, you have a situation where the witness is

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

| M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)   Page 2450 |
|---|

1  saying on the stand the light is green and the prior
2  statements just like with Mr. Larson are the light is red, I
3  don't know, maybe, I'm not sure, all those things. Those
4  aren't prior consistent statements.
5       This is improper bolstering with hearsay. The
6  prior consistent statement exception to the hearsay rule is
7  one of the narrowest exceptions that there is. So the idea
8  they can just bring something in because we introduced a
9  sentencing memorandum for an entirely different person, this
10 isn't -- the law doesn't work that way. The statement must
11 be fully consistent and the Court must make a finding
12 specifically on the record that it is fully consistent.
13      So if the government would like to point out
14 exactly where in that memorandum Mr. Cohen said, "I'm not
15 guilty of this crime", "I'm pleading guilty even though I'm
16 not guilty," and "I plan to lie to Judge Pauley by answering
17 his questions with I'm guilty because I'm pleading guilty
18 because I am," fine. But I doubt anywhere in that
19 memorandum is a statement consistent with what this witness
20 has testified to in this courtroom.
21      THE COURT: You doubt that anywhere in the
22 memorandum is a statement --
23      MR. KISE: I can't imagine again. Look, I can't
24 speak for Judge Pauley, but I can speak to all the federal
25 sentencings I attended and I can tell you that no federal

| M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)   Page 2451 |
|---|

1  judge that I ever encountered would take a plea from an
2  individual who stood in front of him and said, "Yes, I'm
3  pleading guilty just because I'm not really guilty." That's
4  the purpose of the colloquy. That's the purpose of this as
5  Mr. Robert pointed out, the purpose of the 55 or 58 or 78
6  questions. I think state judges here, my experience is the
7  same. In fact, in New York State court, the defendant has
8  to allocute, specifically allocute. It is even different
9  than federal court.
10      THE COURT: What was the CPLR section to which you
11 referred?
12      MS. FAHERTY: 4514, Your Honor.
13      THE COURT: It is very short. Let me read it out
14 loud because I want to read it anyway. "In addition to
15 impeachment in the manner permitted by common law," I
16 studied in law school, "any party may introduce proof
17 that any witness has made a prior statement inconsistent
18 with his testimony if the statement was made in a writing
19 subscribed by him or was made under oath."
20      MR. KISE: So now they're proceeding under the
21 impeachment rule, the inconsistent statement? They're going
22 to impeach their own witness with prior inconsistent
23 statements. I mean, that's extraordinary.
24      MS. FAHERTY: Your Honor --
25      MR. KISE: The only possible basis it can come in

| M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)   Page 2452 |
|---|

1  is prior inconsistent statement. They can't impeach their
2  own witness with prior --
3      THE COURT: Ms. Faherty, is that the right
4  provision?
5      MS. FAHERTY: It is a prior consistent statement.
6  This counsel is trying to repeatedly impeach the witness
7  with his statements. He has made prior consistent
8  statements. Under the rules of evidence, that is
9  permissible rehabilitation. That is an exception to
10 hearsay.
11      THE COURT: Am I correct that that's not the
12 section you were referring to?
13      MS. FAHERTY: I pulled the wrong section, Your
14 Honor. My apologies.
15      MR. KISE: Again, Your Honor, it has to be a prior
16 consistent statement. The case law is -- from the Court of
17 Appeals on down is very clear on this. It can't just be any
18 statement. It can't be a statement that's general subject
19 matter. It can't be a statement that's inconsistent. It
20 has to be the light was green, the light was green. It's
21 really simple. So if he has -- if they have evidence where
22 this witness said to Judge Pauley in that proceeding before
23 "I'm not guilty" and that's in that sentencing memorandum,
24 then that would be fair game; but it is not if it's just
25 statements about why it's lenient or why I think I shouldn't

| M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)   Page 2453 |
|---|

1  be punished, the usual --
2      MS. FAHERTY: Your Honor, New York Guide to
3  Evidence 8.31, a prior consistent statement: "A statement
4  of a witness made prior to his or her testimony and
5  consistent with that testimony is admissible when offered to
6  rebut an express or implied claim of recent fabrication and
7  when the statement was made prior to the circumstances
8  supporting that claim." I believe that is sufficient, Your
9  Honor.
10      MR. KISE: So Your Honor --
11      THE COURT: Last word.
12      MR. KISE: First let me applaud Ms. Faherty for
13 making something that's really mundane very
14 interesting. I'll give her that.
15      MS. FAHERTY: I tell you.
16      MR. KISE: The words that she read are exactly what
17 we're saying. We're actually saying the same thing. They
18 have to be prior consistent statements. They have to be the
19 light was green, the light was green. "I'm not guilty,"
20 "I'm not guilty." It can't be "I'm not guilty," "I'm
21 guilty." It can't be "I'm guilty, but I think I should have
22 these extenuating circumstances and now you say I'm not
23 guilty." They have to match up. It has to be identical.
24 It has to match up. So I just think that's the rule.
25      It's not really difficult. The case law is very

FILED: NEW YORK COUNTY CLERK 10/25/2023 09:47 AM
INDEX NO. 452564/2022
NYSCEF DOC. NO. 1677
RECEIVED NYSCEF: 10/25/2023

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

Page 41 of 44

MICHAEL COHEN
October 25, 2023

| M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)  Page 2454 | M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)  Page 2456 |
|---|---|
| 1  clear. This is a very narrow exception, very narrow<br>2  exception and they're trying to shoehorn in a whole litany<br>3  of sentencing considerations, none of which I am sure tell<br>4  Judge Pauley "I'm not actually guilty of these crimes."<br>5  THE COURT: Mr. Robert, quickly, if anything.<br>6  MR. ROBERT: I know when to not speak.<br>7  THE COURT: I think we're making a mountain out of<br>8  a molehill. We've been spending hours and hours about the<br>9  witness' credibility or lack thereof. What's sauce for the<br>10  goose is sauce for the gander and I think we established<br>11  that. The prosecution sentencing memorandum came in. This<br>12  is coming in. I don't even know what's in it. We're<br>13  arguing about --<br>14  MR. KISE: Respectfully, Your Honor, that's the<br>15  whole point. In order to admit it, you have to make a<br>16  finding that the statements are identical, that they match<br>17  up, that they're both consistent. The light was green the,<br>18  light was green. That's the requisite finding under the<br>19  case law.<br>20  MR. ROBERT: Maybe the solution is if the<br>21  government wants to show us in here where he says, "I'm<br>22  really not guilty," we will look at it.<br>23  MS. HABBA: I think they should pull out a specific<br>24  portion. I think if it's allowed in, it should be a<br>25  specific portion as I did, not the entirety. That's what | 1  cited -- again, I can go on with many more. I know. This<br>2  is a very narrow exception, very narrow.<br>3  THE COURT: Anything else to say before I rule one<br>4  way or the other? I have a coin here I can flip, you know.<br>5  MS. FAHERTY: I think you have the complete<br>6  wherewithal to understand the basis for having this document<br>7  in front of you, Your Honor. I think you understand the<br>8  speechifying that has occurred unnecessarily. I would like<br>9  to move along from this point. Mr. Cohen has testified as<br>10  to what this document is, what information was contained in<br>11  the sentencing memo, and how, if at all, it impacted<br>12  sentencing.<br>13  THE COURT: I don't remember him testifying to what<br>14  is in this sentencing memo.<br>15  MS. HABBA: Thank you, Your Honor.<br>16  MR. KISE: That's the point.<br>17  MS. FAHERTY: Let's go through it then. Your<br>18  Honor, I think if I have to go through it, it is a waste of<br>19  this Court's time.<br>20  MR. KISE: No. No.<br>21  MS. HABBA: That's how this works.<br>22  MS. FAHERTY: It is just such a waste of the circus<br>23  show that this has divulged into.<br>24  MR. KISE: The rules and the case law from the<br>25  Court of Appeals on down are a waste of time? I realize |

| M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)  Page 2455 | M. COHEN - PLAINTIFF - REDIRECT(MS. FAHERTY)  Page 2457 |
|---|---|
| 1  she objected to. That was her own objection to my question.<br>2  THE COURT: Let's go back a step. It is an<br>3  out-of-court statement, right? Are you introducing it to<br>4  prove the truth of its contents?<br>5  MS. FAHERTY: Sorry, Your Honor?<br>6  THE COURT: Are you introducing it to prove the<br>7  truth of its contents?<br>8  MS. FAHERTY: No.<br>9  THE COURT: Then what are you introducing it for?<br>10  MS. FAHERTY: To rebut the very testimony that they<br>11  solicited on cross-examination which --<br>12  MR. KISE: No. She's introducing it to prove the<br>13  truth of its contents meaning on a prior date when he didn't<br>14  have a reason to -- recent fabrication, that he made a<br>15  statement fully consistent, identical statement, an<br>16  identical statement. That's the purpose of the prior<br>17  consistent statement exception to the hearsay rule.<br>18  So yes, it is absolutely being offered to prove the<br>19  truth of the matter asserted. The matter asserted is the<br>20  contents of the statement, that his statement then and his<br>21  statement now are fully consistent. So you can't introduce<br>22  a prior consistent statement for any other reason than to<br>23  demonstrate that the two are identical.<br>24  So it is definitely being offered to prove the<br>25  truth of the matter asserted and the cases I've | 1  that is the government's position. That's been their<br>2  position with President Trump's case from the beginning,<br>3  that the rules don't apply, the law doesn't apply, nothing<br>4  applies, COVID rules don't apply, everything else doesn't<br>5  apply.<br>6  MS. FAHERTY: Mr. Kise.<br>7  MR. KISE: No, you had your say. So the point is<br>8  there are laws and there are rules. If they want to make a<br>9  specific proffer to the Court that there are specific<br>10  statements that are identical, the light was green, the<br>11  light was green and they're identical and the Court finds<br>12  that these specific statements are identical, then they can<br>13  offer to introduce those. But to just throw the memo over<br>14  the top and say, "I want that in there" because I know where<br>15  this is headed. I've been down this road before. Born at<br>16  night, but not last night.<br>17  What they'll do is they'll throw it in there and<br>18  then later pull out something in a memo and say, "Look.<br>19  Look. Here. This is in evidence now." No. No. It<br>20  doesn't operate that way, prior consistent statement<br>21  exception. It is very, very, very, very narrow. This is<br>22  not a speech. This is a recitation of the law.<br>23  MS. HABBA: Your Honor, briefly. As we know, Ms.<br>24  Faherty liked to jump up when I was getting up and asked me<br>25  what statement I was trying to put in, not an entire |

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

---

M. Cohen - Plaintiff - redirect (Faherty)          Page 2458

1    document, not even an entire article. I would like to know
2    what statement she has in this 33 pages, please. Where is
3    it referenced?
4        MS. FAHERTY: "Mr. Cohen, in the sentencing memo on
5    page three, paragraph C, is there a subtopic heading, "The
6    Nature of the Offense Conduct?" "Yes."
7        MS. HABBA: What?
8        MR. ROBERT: What?
9        MS. HABBA: We must be looking at --
10       MS. FAHERTY: Page 13, paragraph C.
11       MR. KISE: Should we do this in the presence of the
12   witness line by line.
13       MS. HABBA: Perhaps not.
14       MS. FAHERTY: Which way would you like it, Counsel?
15       MR. KISE: With the witness not here and we can go
16   through it, the way it is contemplated.
17       THE COURT: Hold on.
18       (Continued on the next page.)
19
20
21
22
23
24
25

---

M. Cohen - Plaintiff - redirect (Faherty)          Page 2459

1        THE COURT: Ms. Faherty, I don't know what's in
2    here. You'll have to go through it.
3        MS. FAHERTY: Your Honor, if I may?
4        THE COURT: If you want to not --
5        MS. FAHERTY: -- on the issue and I could submit a
6    letter. It might be more helpful to the Court because
7    Counsel I don't think will actually allow me to get through
8    this and I think we can just move it along.
9        THE COURT: Okay. Sure.
10       MR. KISE: That's fine if they want to submit
11   something later after the witness.
12       MS. FAHERTY: Okay.
13   Q   Mr. Cohen --
14       THE COURT: By the way, I don't want spend to much
15   time on this. We keep micromanaging these little pieces of
16   a big case.
17       MR. KISE: That's why we're here.
18       MS. HABBA: He just admitted he didn't tell him to
19   do what he said he did. We're done. We can move on.
20       THE COURT: You reserve the right to put it in a
21   memo why this should come in.
22   Q   Mr. Cohen, you were asked on cross about numerous
23   positive statements that you made about Donald J. Trump. Do you
24   recall that?
25   A   I do.

---

M. Cohen - Plaintiff - redirect (Faherty)          Page 2460

1    Q   Did that end at some point?
2    A   Yes.
3    Q   When?
4    A   It ended in -- well, it ended with my interview with
5    George Stephanopoulos where I stated that my wife, my daughter,
6    my son have my first loyalty, as well as my country, and that I
7    would not be the villain of his story.
8    Q   Do you recall about when that was?
9    A   2018, maybe 2019.
10   Q   And can we pull up Defendant's Exhibit D 961 and turn
11   to page 149?
12   A   Yes.
13   Q   You were asked a number of questions on this particular
14   page with regard to your prior testimony. Is that fair,
15   Mr. Cohen?
16   A   Correct.
17   Q   Ms. Habba asked you certain questions; correct? You
18   recall that?
19   A   Yes-or-no question, yes.
20   Q   Mr. Robert asked you a number of questions; fair?
21   A   Yes.
22   Q   I believe I heard you wanted to offer an explanation
23   that you may not have been permitted to fully testify on.
24       Would you like to provide an explanation that you were
25   not previously able to provide in response to Counsel's

---

M. Cohen - Plaintiff - redirect (Faherty)          Page 2461

1    questions earlier on this particular document and this
2    particular page?
3        MR. KISE: Objection. Calls for a narrative. She
4    needs to ask a specific question about what it is she is
5    seeking. This is a witness on direct, so she needs to ask a
6    specific questions, but appropriate questions, not a leading
7    question and not a question that's open-ended. Just tell us
8    what you know. It needs to be a specific question.
9        THE COURT: Interesting issue. I don't think it
10   does. I think you can ask the witness is there anything
11   else you need to tell us or want to tell us.
12       So answer the question, please.
13   A   When I was asked the question did he ask me to inflate
14   the numbers, he did not specifically state "Michael, go inflate
15   the numbers." As I stated in my books, and I've stated
16   publicly, Donald Trump speaks like a mob boss and what he does
17   is he tells you what he wants without specifically telling you.
18   So when he said to me "I'm worth more than five million. I'm
19   actually worth maybe six, maybe seven, could be eight," we
20   understood what he wanted.
21       So when they asked me did Mr. Trump direct you or
22   Mr. Weisselberg to inflate the numbers for his personal
23   statement and I stated "no, not that I recall, no," that's what
24   I was referring to.
25       Then, if you continue down as opposed to just cherry

---

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

M. Cohen - Plaintiff - redirect (Faherty)          Page 2462

1    picking the lines, "did overhear any conversations with Allen
2    Weisselberg" -- "with Mr. Trump and Allen Weisselberg?"
3        "No."
4        The statements that I heard from Mr. Trump directing me
5    and Allen were he wanted to rise in the Forbes 400 list and he
6    directed that Allen and I go and meet with the writer of Forbes
7    and give her the information, explain to her the value of the
8    assets, which we already -- I think we're missing a page.
9    Q    It's on the screen, Mr. Cohen.
10   A    -- were inflated.
11       "So the value of the assets on those personal financial
12   statements were to your understanding inflated?"
13       My answer, "yes."
14       It then goes on, "Okay. Now, if those were submitted
15   to an insurance firm or a bank and they were sworn to, might
16   that be evidence of a crime?" I stated "I actually pled guilty
17   to it."
18   Q    Was that the clarification you wanted to add to your
19   answer that you weren't permitted to answer before?
20   A    Yes.
21       MS. FAHERTY: No further questions, Your Honor.
22       Thank you, Mr. Cohen.
23       THE COURT: Any re-recross?
24       MR. KISE: Give us one minute, Your Honor.
25       (Whereupon, there is a pause in the proceedings.)

Proceedings          Page 2463

1        MR. ROBERT: Your Honor, we have no further
2    questions. But, once again, I renew my request for a
3    directed verdict again because Mr. Cohen in addition to now
4    admitting to perjury several times, unequivocally has said
5    that Mr. Trump and Mr. Weisselberg did not direct him to
6    inflate the numbers and even this purported redirect
7    examination has done nothing to change the facts that the
8    government's key witness has fallen flat on his face and
9    there is no way they can make out a prima facie case.
10       So, again, at the close of the evidence in the
11   plaintiff's case we'll make a formal motion for directed
12   verdict, but at this point I once again must strenuously
13   request that this Court grant relief and end this case once
14   and for all on behalf of all defendants, sir.
15       THE COURT: Absolutely denied. This case has
16   evidence, credible or not, all over the place. There is a
17   200-page complaint, there is a 35-page summary judgment
18   decision referring all sorts of evidence.
19       The fact that one witness, who I don't necessarily
20   consider from what I've seen to be a key witness, I don't
21   think there is a key witness, who said something which he
22   has now -- however you want to categorize it, taken back.
23   That's absurd, Mr. Robert. I mean, you and I respect each
24   other and I -- you're a very good lawyer, but no way, no how
25   this case is being dismissed because of an equivocal --

Page 2464

1    arguably equivocal statement by one witness who I don't
2    consider the key witness. And there is enough evidence in
3    this case to fill this courtroom. So denied, but you can
4    make it again at the end of plaintiff's case.
5        MR. ROBERT: We will. Thank you, sir.
6        THE COURT: Since I'm denying it now, I don't think
7    it's going to change, although actually all the other
8    evidence presented, I assume. So I understand where it's
9    coming from, but I hope you understand where I'm coming
10   from.
11       MR. ROBERT: Thank you, sir.
12       THE COURT: All right. Witness is excused. Thank
13   you.
14       (Whereupon, the witness is excused from the witness
15   stand.)
16       THE COURT: All right. Counsel are going to stay,
17   but everyone else, 10:00 a.m. tomorrow. Have a good rest of
18   the day. That's it for the day, except for counsel.
19       (Whereupon, the trial proceedings are adjourned to
20   October 26, 2023 at 10:00 a.m.)

PEOPLE OF THE STATE OF NEW YORK v.
DONALD J. TRUMP, et al.

MICHAEL COHEN
October 25, 2023

Page 44 of 44

# #

#trumpwillmakeamericagreatagain (1)
2356:3

## $

$10 (5)
2329:4,7,13;2352:3;
2396:3
$10,000 (2)
2415:18;2423:12
$4 (1)
2366:17
$6 (1)
2328:11

## @

@MichaelCohen212 (2)
2335:21;2388:24

## [

[sic] (1)
2447:11

## A

AAA (1)
2406:12
ABC (6)
2393:15;2400:16;
2401:2,9;2404:13,19
able (5)
2350:9;2402:16;
2411:12;2447:15;
2460:25
absence (1)
2307:1
absolutely (6)
2304:5;2352:18,18;
2412:6;2455:18;
2463:15
absorb (1)
2304:8
abstract (3)
2331:6,8;2379:9
absurd (2)
2389:24;2463:23
accept (3)
2359:10;2390:13;
2446:1
acceptable (2)
2317:6;2447:14
accepted (5)
2373:22;2435:21;
2447:20;2448:22;
2449:8
According (4)
2320:12;2323:4;
2331:10;2340:11

account (4)
2356:6;2372:10;
2388:24;2406:10
accountability (1)
2335:25
accurate (3)
2384:20;2398:7;
2399:9
accusations (2)
2313:20;2383:19
accused (1)
2415:16
acknowledge (4)
2336:11,15;2403:3,5
acknowledging (4)
2335:24;2336:13,17;
2398:3
across (2)
2312:13,14
acted (1)
2364:11
action (2)
2402:13;2449:10
activities (4)
2338:3;2340:3;
2386:12,16
acts (3)
2313:4;2338:3;
2340:3
actually (17)
2322:6;2335:18;
2342:15;2352:13;
2373:21;2400:7;
2419:6;2427:19;
2437:4;2446:24;
2447:2;2453:17;
2454:4;2459:7;
2461:19;2462:16;
2464:7
AD2d (2)
2448:6,7
add (4)
2348:9;2419:15;
2422:8;2462:18
added (1)
2348:24
addition (3)
2326:15;2451:14;
2463:3
additional (1)
2433:7
address (2)
2413:7;2421:5
addressed (1)
2348:1
adjourned (1)
2464:19
administration (1)
2396:8
admire (1)
2402:3
admiring (2)
2400:17;2401:10

admissibility (1)
2447:5
admissible (8)
2310:13;2390:5,20,
22;2448:3;2449:2,4;
2453:5
admission (2)
2314:5;2397:10
admit (9)
2309:17;2356:10;
2363:9;2364:5;
2376:24;2407:11;
2446:20;2449:8;
2454:15
admits (1)
2315:16
admitted (14)
2309:22;2312:12,17;
2313:2;2317:9;
2348:19;2354:17;
2356:13;2381:3;
2390:5,11;2421:21;
2424:11;2459:18
admitting (1)
2463:4
adopt (1)
2387:2
advance (2)
2378:13;2379:22
advertisement (2)
2392:23,25
advertisements (2)
2392:24;2393:4
advertising (2)
2393:2,22
advisement (2)
2375:6;2422:1
affected (1)
2437:19
affiliation (1)
2381:23
affirm (2)
2386:14;2413:2
afternoon (4)
2306:18;2424:9,24,
25
AG (3)
2338:10,15;2350:22
again (49)
2313:9;2318:11;
2321:13;2331:16;
2355:7,8,14;2358:15,
18;2359:2,14,16;
2360:14;2364:17;
2365:19;2366:22;
2374:4;2380:7,20;
2385:2;2389:11;
2390:9;2394:2;2395:7;
2396:9,18;2400:20;
2401:8;2404:4,20;
2407:7,17;2417:1;
2420:22;2421:19,22;
2422:17;2423:5,12;

admissibility... (cont.)
2442:2,5;2450:23;
2452:15;2456:1;
2463:2,3,10,12;2464:4
against (7)
2315:5;2343:2,9;
2388:8;2413:25;
2430:3;2433:8
against- (1)
2302:6
age (1)
2419:10
ago (6)
2346:20;2348:15,22;
2350:22;2372:5,6
agree (17)
2313:24;2314:13;
2316:14;2350:20,25;
2390:19;2414:3;
2416:7;2418:13;
2419:11;2420:17;
2426:22;2427:6,10;
2428:8;2441:1,4
agreed (3)
2305:12;2322:15;
2339:1
ahead (5)
2308:2;2360:19;
2375:7;2392:20;
2441:21
ALAN (3)
2303:17;2345:23;
2382:4
alerted (1)
2372:18
ALINA (1)
2303:11.5
allegedly (1)
2385:16
ALLEN (30)
2302:7,5;2318:3,8,
13;2319:4,5,6,7,10;
2320:6,8,10,14;
2321:14;2322:7;
2323:1,7,23;2324:11,
24;2325:3;2326:3,24;
2332:25;2333:15;
2407:20;2462:1,2,5,6
Allen's (2)
2322:25;2324:3
alliance (3)
2364:25;2366:20;
2367:3
allocute (2)
2451:8,8
allocution (4)
2309:18,20,23;
2310:3
allow (4)
2388:11;2410:6;
2419:6;2459:7
allowed (7)
2304:6;2325:17;
2333:7;2350:5;2412:7;

2414:18;2454:24
almost (6)
2318:22;2319:12,16,
20,23;2418:10
alone (1)
2423:1
along (13)
2337:20;2348:5;
2357:3;2385:22;
2387:18;2393:15;
2404:21;2405:18;
2406:2,7,16;2456:9;
2459:8
alongside (8)
2373:7;2374:23,24;
2413:12,16;2421:16;
2422:19,22
although (2)
2314:22;2464:7
always (7)
2347:25;2354:9;
2377:7;2390:16;
2396:2;2405:16;
2414:21
amazing (2)
2403:12;2404:7
ambiguous (3)
2324:18;2375:3;
2414:15
Amendment (1)
2313:18
AMER (1)
2302:22.5
America (3)
2355:7,14;2396:9
among (1)
2338:4
Amongst (1)
2368:17
amount (2)
2347:5;2368:14
and/or (1)
2413:22
ANDREW (1)
2302:22.5
anger (1)
2336:2
animosity (5)
2367:8,10,15;
2368:1,2
animus (3)
2416:21;2421:21,21
announcement (1)
2336:2
annually (2)
2366:21;2379:3
answered (15)
2333:20,22;2338:9;
2339:17;2353:2,3,4;
2379:17;2384:13,15;
2395:1;2401:24;
2431:15,16;2437:12
anymore