

E. DANYA PERRY
212-840-7939 PHONE
dperry@danyaperrylaw.com EMAIL

December 8, 2023

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *United States v. Michael Cohen*, 18 Cr. 602 (JMF)

Dear Judge Furman:

  I write on behalf of Michael D. Cohen in further support of his letter motion for termination of his Supervised Release (ECF Doc. No. 88) (the "Motion").

  Beginning before he pleaded guilty and continuing to the present, Mr. Cohen has provided significant information to authorities in connection with numerous government investigations. Mr. Cohen's public congressional testimony was a predicate[1] for the New York State Attorney General's civil lawsuit against the Trump Organization, former President Trump, and others, the trial of which is ongoing. *People v. Trump, et al.*, Index No. 452564/2022 (Sup. Ct. N.Y. Cnty.). Mr. Cohen's participation in these matters has come at great personal expense and risk as Mr. Cohen has faced death threats, public smearing, and the need to raise funding to obtain counsel. Mr. Cohen has suffered extensive retaliation by Mr. Trump and intimidation by Mr. Trump's cronies and supporters.[2]

  In its opposition to Mr. Cohen's motion (ECF Doc. No. 90) (the "Opposition"), the Government makes much of Mr. Cohen's testimony on cross examination about whether he "lied" to Judge Pauley when Mr. Cohen stated during his plea allocution that he was guilty of tax evasion. Opp. at 2-3. Mr. Cohen's testimony (including the Government's (selective) quotes from that testimony) actually reflect something very different from what the Government argues. Mr. Cohen does not dispute the underlying factual predicate of the tax violation to which he pleaded; rather—just as he had in his sentencing submission—he labored (somewhat clumsily) to articulate his belief that such conduct should not have been the basis for a criminal prosecution. *See* ECF Doc. No. 88-1, Tr. 2188:16-20 ("Because there was no tax evasion. At best, it could be characterized as a tax omission."). His position has long been that, even if his conduct did constitute a criminal tax violation, his prosecution was an outlier and charges would not ordinarily be brought in these

---

[1] Kaia Hubbard, *Trump Lashes Out at New York Attorney General Over Lawsuit*, U.S. News & World Report (Sept. 21, 2023), https://www.usnews.com/news/national-news/articles/2022-09-21/trump-lashes-out-at-new-york-attorney-general-over-lawsuit.

[2] This retaliation includes Mr. Cohen's unlawful remand from home release to solitary confinement, which the Honorable Alvin K. Hellerstein found to be unconstitutional and blatantly retaliatory. *Cohen v. Barr*, No. 20-cv-5614, 2020 WL 4250342, at *1 (S.D.N.Y. July 23, 2020). More recently, Mr. Trump responded to his indictment by the Manhattan District Attorney's Office (which had subpoenaed Mr. Cohen to testify before the grand jury) with a torrent of invective and a $500 million lawsuit against Mr. Cohen that caused Mr. Cohen to incur over a million dollars in legal fees before Mr. Trump voluntarily dismissed it eight months later, on the eve of his own deposition in that matter (which he had desperately, but unsuccessfully, fought hard to avoid).

The Hon. Jesse M. Furman
December 8, 2023

circumstances. *See id.* Tr. 2189:3-5 ("The tax violations as I've stated many times should not have been brought in and of itself.").

Mr. Cohen and his counsel have consistently taken this position throughout this matter. In his sentencing submission (ECF Doc. No. 24), he explained that "little, if anything, separates the offense conduct from conduct that is routinely pursued through non-criminal enforcement." *Id.* at 13. Specifically, Mr. Cohen noted that the offense conduct lacked the sophisticated means and complex schemes typically present in criminal tax evasion charges, cited numerous instances in which similar conduct did not result in criminal charges, and pointed out that he was not given the opportunity to be heard by the Tax Division or otherwise resolve any tax deficiencies without criminal charges. *Id.* at 13-17. While it is perhaps fair to describe Mr. Cohen's testimony as poorly worded, it does not show anything more or less than what Mr. Cohen always has said (and what is truly not controversial): the tax conduct to which Mr. Cohen pleaded guilty is routinely pursued non-criminally.

Furthermore, even if the Government's mischaracterization of Mr. Cohen's testimony and public statements were correct, it would simply mean that Mr. Cohen, like countless other defendants before him and since, felt compelled to agree to a plea deal under severe pressure.[3] As Mr. Cohen has long told it, he was presented on a Friday evening with a plea agreement that included a charge for criminal tax evasion; was told that the deal would be off the table if he did not immediately accept it; and was warned that if he did not take the deal, the Government intended to charge him right after the weekend in a lengthy indictment that would also include charges against his wife. Although Mr. Cohen does not dispute the facts of the offense conduct to which he pleaded, he faced a Hobson's choice: on the one hand he could accept a flawed plea deal that included a highly aggressive charge but that he did not believe would affect his advisory sentencing guidelines range (*see* ECF Doc. No. 24 at 22-24); on the other, he could face a significantly higher sentence after conviction for crimes he knew he had committed *and* face the specter that his adored wife also would be charged. As Mr. Cohen has consistently stated, he "took the plea" (ECF Doc. No. 88-1, Tr. at 2298:2) despite his reservations and misgivings, in order to protect his wife and

---

[3] Although we are not suggesting technical innocence, even innocent people may plead guilty. Among many others, the Honorable Jed Rakoff of the Southern District of New York and the Honorable John Gleeson, formerly a judge in the Eastern District of New York, have written critically about this issue at length, including in judicial opinions. *See, e.g.*, *United States v. Garcia*, 648 F. Supp. 3d 480, 484 (S.D.N.Y. 2022) (Rakoff, J.) (referring to "the growing evidence that innocent persons frequently face pressure to plead guilty because of the harsh penalties they face if they go to trial and are convicted"); *United States v. Kupa*, 976 F. Supp. 2d 417, 450 (E.D.N.Y. 2013) (Gleeson, J.) (discussing the coercive effect of the "trial penalty" and noting that "[w]hen guilty plea discounts are that dramatic and that certain, some innocent people will plead guilty"). Judge Gleeson has elsewhere noted that "prosecutors can make plea offers on an all-or-nothing basis, confident that defendants will accept any terms to avoid an excessive sentence." Nat'l Ass'n of Crim. Def. Lawyers, *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It* (2018), at 28. Judge Rakoff has explained that a plea agreement "is much more like a 'contract of adhesion' in which one party can effectively force its will on the other party." Hon. Jed Rakoff. *Why Innocent People Plead Guilty*. The New York Review of Books (2014), at 5, https://www.nybooks.com/articles/2014/11/20/why-innocent-people-plead-guilty/. Thus, "a defendant's decision to plead guilty to a crime he did not commit may represent a 'rational,' if cynical, cost-benefit analysis of his situation." *Id.* at 6. Studies have shown that approximately ten percent of people who were later exonerated had pleaded guilty even though they did not in fact commit those crimes. *See id.* at 7; U. Mich. Law School, Nat'l Registry of Exonerations, *Innocents Who Plead Guilty* (2015), at 1-3, https://www.law.umich.edu/special/exoneration/Documents/NRE.Guilty.Plea.Article1.pdf.

The Hon. Jesse M. Furman
December 8, 2023

family.[4] Mr. Cohen's plea to an aggressive charge under extreme pressure is nothing unusual, tragically.

Mr. Cohen is not asking for extraordinary consideration: indeed, numerous[5] courts in this District have granted early termination of supervised release in circumstances similar to Mr. Cohen's, namely, his excellent compliance with all conditions of supervised release, repayment of his outstanding obligations, lack of any negative contacts with law enforcement, the nonviolent nature of his offense and his low risk of recidivism, and his rehabilitative efforts including his participation in training and other beneficial programming while in BOP custody. *See, e.g.*, *United States v. Johnson*, No. 1:21-cr-00194-LAK (S.D.N.Y. Sept. 9, 2023); *United States v. Pina*, No. 1:22-cr-00027-VSB (S.D.N.Y. July 17, 2023); *United States v. Betancourt*, No. 1:10-cr-00905-LTS (S.D.N.Y. May 19, 2023); *United States v. Sangaray*, No. 1:22-cr-000387-KPF, (S.D.N.Y. Sept. 16, 2022); *United States v. Kapsis*, No. 06-cr-827, 2013 WL 1632808, at *1 (S.D.N.Y. Apr. 16, 2013); *United States v. Rentas*, 573 F. Supp. 2d 801, 802 (S.D.N.Y. 2008); *see also United States v. Walker*, No. 14-cr-305, 2023 WL 3076548, at *1-2 (D. Minn. Apr. 25, 2023) (terminating supervised release of defendant convicted of tax evasion).[6]

Nearly one full year ago, this Court found that the question of early termination was a "close" one, but it deferred the question without prejudice to a later renewal. (ECF Doc. No. 83 at 4). Mr. Cohen pleaded guilty to and was sentenced for nonviolent crimes; has undisputedly complied with all the terms of his release; has the support of his probation officer; has met all of his financial obligations, including those to the Court; and has continued to provide assistance with various government investigations, at great financial and psychic cost. We respectfully submit that this question no longer is close, and we ask that Mr. Cohen's supervised release be terminated.

Thank you for Your Honor's consideration of this request.

Respectfully submitted,

E. Danya Perry

cc:   All counsel of record

---

[4] MJ Lee, *Michael Cohen is resigned to going to prison to protect his family*, CNN (Aug. 29, 2018), https://www.cnn.com/2018/08/29/politics/michael-cohen-is-resigned-to-going-to-prison-to-protect-his-family.

[5] Indeed, in a sample study in the Southern District of New York of defendants whose supervised release had terminated, 44% were granted early termination. *See* Exhibit A, Richard M. Berman, *Court Involved Supervised Release Update*, U.S. Dep't of Justice (Apr.19, 2022) via ECF.

[6] Such rulings rarely result in reported decisions. While several cases were cited in the initial Motion filed by different counsel (ECF Doc. No. 88 at 3), undersigned counsel was not engaged at that time and must inform the Court that it has been unable to verify those citations.