LAW OFFICES OF

# Aidala, Bertuna & Kamins, P.C.

ARTHUR L. AIDALA*
MARIANNE E. BERTUNA*
HON. BARRY KAMINS (RET.)
HON. JOHN M. LEVENTHAL (RET.)
HON. DAVID L. LEWIS (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON**
ANDREA M. ARRIGO*
MICHAEL F. DIBENEDETTO*
LINO J. DE MASI
DAVID M. SCHWARTZ+

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (917) 261-4832
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK
11228 TEL: (718) 238-9898
FAX: (718) 921-3292

_____

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH
SIGURD SORENSON

_____

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN CONNECTICUT
+ALSO ADMITTED IN D.C.

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

December 15, 2023

Hon. Jesse Furman
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007
Email: Furman_NYSDChambers@nysd.uscourts.gov

Re:    United States v. Cohen
       Case No.: 1:18-CR-602(JHF)

Dear Judge Furman:

We represent David Schwartz who has been served with an Order to Show Cause, dated December 12, 2023, in the above-referenced case. Pursuant to Rule 10B of your Honor's Individual Rules and Practices in Criminal Cases, we hereby seek to file under seal: (1) this letter motion and (2) Mr. Schwartz's submission (with exhibits) in response to the Order to Show Cause.

As explained in our affirmation, we believe and advised Mr. Schwartz that his answers to the questions posed by your Honor implicates the confidentiality of the attorney-client privilege. It is also our opinion that under the unique circumstances present here, as articulated in Mr. Schwartz's affirmation, the New York Rules of Professional Conduct (RPC) require that he disclose to the Court the information about his client's conduct (see RPC 1.6 [b] [6]).

RPC 3.3 [b] permits a lawyer who represents a client before a tribunal and who knows that person has engaged in fraudulent conduct related to the proceeding to take reasonable remedial measures, including, if necessary, disclosure to the tribunal. "Fraudulent conduct" has been interpreted to mean any conduct that would compromise the integrity of the judicial process.

We respectfully request that your Honor allow this letter motion and Mr. Schwartz's submission to remain under seal until you rule as whether Mr. Schwartz can reveal the information stated in his affirmation without violating the attorney-client privilege.

Finally, we are not the attorneys of record in this matter and only represent Mr. Schwartz for this limited purpose. Please advise if you wish us to file a notice of appearance.

Respectfully submitted,

Barry Kamins

John M. Leventhal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                     **AFFIRMATION**

       - v -

                                  18-CR-602 (JMF)

MICHAEL COHEN,

               Defendant.

-----------------------------------------------------------------------X

Barry Kamins and John M. Leventhal, being attorneys at law, duly admitted to practice in the courts of New York, affirms the following allegations to be true under the penalty of perjury:

1.     We represent David Schwartz, a non-party in the above-captioned matter.

2.     On December 12, 2023, Mr. Schwartz was served with an Order to Show Cause directing him to show cause in writing why he should not be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure. Mr. Schwartz was instructed that any submission he makes shall take the form of a sworn declaration and shall provide, among other things, a thorough explanation of how the motion filed on behalf of Mr. Cohen came to cite cases that do not exist and what role, if any, Mr. Cohen played in drafting or reviewing the motion before it was filed.

3.     We have discussed with Mr. Schwartz the background of this motion and the circumstances under which three Second Circuit Court cases were included in the motion.

4.     We have advised Mr. Schwartz that his answers to the questions posed by the Court in the Show Cause Order, implicate the attorney-client privilege. We have also advised Mr. Schwartz that it is our opinion that, notwithstanding the attorney-client privilege, under the circumstances in this case, the New York Rules of Professional Conduct require that he disclose to the Court certain information about his client's conduct.

5.      Pursuant to Rule 1.6 of the Rules of Professional Conduct, a lawyer shall not knowingly reveal confidential information protected by the attorney-client privilege.

6.      Under Rule 1.6(b), however, there are a number of exceptions to the general rule that protects confidential information. Pursuant to 1.6(b)(6), a lawyer may reveal confidential information when permitted or required under the Rules of Professional Conduct. Under Rule 3.3(b), a lawyer who represents a client before a tribunal and who knows that person has engaged in fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

7.      "Fraudulent conduct" under the above rule has been interpreted to mean any conduct that would "compromise the integrity of the judicial process." See Simons, New York Rules of Professional Conduct Annotated (2020-2021 Edition, p. 1099).

8.      Based on the above, we have advised Mr. Schwartz to obtain a ruling by the Court whether the conduct of his client must be disclosed. As a result, we have advised Mr. Schwartz to file a motion to seal his submission, to permit the Court to review his submission under the cloak of confidentiality until such a time as the Court renders a decision.


Dated: December 15, 2023
       New York, New York



_____
Barry Kamins

_____
John M. Leventhal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case No. 1:18-CR-602-(JMF)

MICHAEL COHEN,

Defendant.

## DECLARATION OF DAVID M. SCHWARTZ

Pursuant to 28 U.S. Code § 1746, I hereby declare as follows:

I am an attorney duly admitted to practice law before the Courts of the State of New York, and duly affirm the following under penalties of perjury:

1. I have spent my entire career practicing law as a litigator who has represented clients at all ends of the spectrum, from large, powerful companies to the least fortunate in our society. I am a former Assistant District Attorney in Brooklyn and served the People of the State of New York in the 1990's. I have tried many cases in multiple jurisdictions. I am admitted to all courts in the State of New York and Washington, D.C. and have appeared pro hac vice in many other jurisdictions.

2. On November 29th, 2023, I submitted a *pro bono* application on behalf of Mr. Michael Cohen. This was the fourth request I filed for Mr. Cohen for early termination of supervised release. On July 6, 2022, I first submitted a request, a second request was submitted on December 8, 2022, and a third on May 31, 2023. (Exhibit A)

3. The current submission contained much of the information contained in the submission of May 31, 2023, but it also included new information: (1) Mr. Cohen's recent testimony in People v. Trump, Index No. 452564/2022 (NY, Supreme Court) and (2) the recommendation for early termination of supervised release of Mr. Cohen's probation officer, Probation Officer Osman.

4. In preparing the current submission, on November 12, 2023, I sent Mr. Cohen a draft of my proposed letter to the Court. Notably, my original draft letter did not cite any cases. It was never my intention to cite any cases as I felt that the application was strong enough, based on all the facts and circumstances. The original draft letter sent to Mr. Cohen was dated May 30, 2023 (Exhibit B)

5. It was apparent and clear to me that E. Danya Perry, counsel for Mr. Cohen in prior proceedings[1], reviewed my original draft letter, dated May 30, 2023. Ms. Perry, a renowned and skilled trial lawyer, is the Founding Partner at Perry Law. She is a recognized white collar criminal defense attorney and commercial litigator who has represented various corporations and individuals in high-profile matters. Notably, she is a former Assistant United States Attorney in the Southern District and served as Deputy Chief of the Criminal Division.

6. On November 12, 2023, Michael Cohen sent me a redlined draft of the letter, ostensibly prepared by Ms. Perry. It contained comments and, specifically, a suggestion that "you should have a few in-district court cases where judge granted early termination." The comments were labeled "DP", which I believed were attributed to Danya Perry. (Exhibit C)

7. Along with the redline draft from Ms. Perry, I received a text from Mr. Cohen, with the notation, "sent to me from Danya". (Exhibit D)

---

[1] Ms. Perry has represented Mr. Cohen in the following cases: Cohen v. United States of America et al (1:21-cv-10774-LJL), Cohen v. Barr et al (1:20-cv-05614-AKH) and Michael Cohen (1:18-cr-00602-JMF-1)

8. I adopted Ms. Perry's redlines shortly thereafter, and changes to the draft were sent back and forth between my office and Mr. Cohen. It was my belief that Ms. Perry was reviewing these drafts as well.

9. On November 25, 2023, my office received three emails from Mr. Cohen with the three cases in question plus summaries of the cases. (Exhibit E) As Mr. Cohen had previously forwarded Ms. Perry's edits of the draft letter, and as Ms. Perry had suggested that case law be added to the letter, I believed that Mr. Cohen was now sending me cases that had been found by Ms. Perry. Prior to receiving these emails, Mr. Cohen communicated to me that cases would be provided by Ms. Perry.

10. Admittedly, because of Ms. Perry's reputation, I relied on her skills as an attorney and as someone who had been working with me in preparing this submission; as a result, I did not independently review the cases.

12. I failed to review what I thought was the research of another attorney.

13. I never contemplated that the cases cited were "non-existent."

14. On December 6, 2023, Ms. Perry filed a Notice of Appearance on behalf of Michael Cohen (Doc. # 91).

15. On December 8, 2023, Ms. Perry filed a Letter Motion addressed to Judge Jesse M. Furman requesting leave to reply to Government's Letter in Opposition to Defendant's Letter Motion for Termination of Supervised Release (Doc. # 92).

16. On December 8, 2023, Ms. Perry filed a Letter Reply to Response to Motion by Michael Cohen addressed to Judge Jesse M. Furman (Doc # 94).

17. On December 8, 2023, Ms. Perry filed a Letter Reply to Response to Motion by Michael Cohen addressed to Judge Jesse M. Furman (Doc # 95).

18.  As of December 12, I had not yet read the two December 8 replies filed by Ms. Perry.

19.  After I was served with the Show Cause Order on December 12, 2023, I spoke with Lilian M. Timmerman, a Partner at Perry Law. After I explained to her that I believed that her office had "found" the cases in question, she told me that Mr. Cohen had admitted to them that he had found the cases on Google.

20.  If I had believed that Mr. Cohen had found these cases, I would have researched them. It was my belief, however, that Mr. Cohen had sent me cases found by Ms. Perry.

21.  I am fully aware that I bear the responsibility for any submission on my letterhead and the inaccuracies contained in this filing are completely unacceptable.

22.  I sincerely apologize to the court for not checking these cases personally before submitting them to the court.

23.  I declare under penalty of perjury, that the foregoing is true and correct.


Executed on this 15th day of December 2023.


_____
                David M. Schwartz

# EXHIBIT A



## GERSTMAN SCHWARTZ LLP

ATTORNEYS AT LAW

July 6, 2022

**VIA CM/ECF & EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re:  United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850

Dear Judge Furman:

  Please be advised that the Law Offices of Gerstman Schwartz LLP represents Mr. Michael Cohen, for purposes of seeking your Honor's intervention in requesting that you discharge Mr. Cohen from Supervised Release.

  Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

  Obviously, given the profile of Mr. Cohen's prosecution, it is widely understood that Mr. Cohen endeavored to provide meaningful assistance to the government, at least as far as this term is colloquially understood.[1] There is no question that Mr. Cohen and his family have paid the price

---

[1] Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his notable contributions include:

1. Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.
2. New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.
3. Southern District of New York: Mr. Cohen met with the SDNY and Special Counsel's Office (SCO) of the Department of Justice before the entry of his plea in August 2018. Mr. Cohen participated in 7 voluntary interviews with both offices.
4. Special Counsel's Office: Mr. Cohen met with the SCO roughly 10 times regarding the Mueller probe – albeit the inquiries falling outside conventional framework in which courts routinely engage in.

United States Congress: Specifically, Mr. Cohen met with the House Oversight Committee on three occasions, the House Intelligence Committee on three occasions, the Senate Intelligence Committee on three occasions, and individual Members of Congress for countless hours preparing them for hearings.



for his transgressions. No doubt, it will also not be lost on this court that he has taken full responsibility for his actions.

We would respectfully venture further, that Mr. Cohen presents no risk of recidivism and is a model candidate for a cessation of Supervisory Release. Indeed "[i]n the federal courts, supervision is … a way to monitor the activities and behavior of people released to the community by the federal courts or paroling authorities….[and] … an opportunity to help offenders reintegrate into the community following a period of incarceration…The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition."[2]

It is clear that the goals of supervision have been fulfilled. Mr. Cohen has exceeded all of his court-imposed responsibilities, is a loving husband and father, presents no risk of recurrence, and generally does not require the social services support to appropriately reintegrate into society. In fact, continuing supervision is his only remaining hinderance in terms of being able to reassimilate into the community.

Mr. Cohen began serving his sentence of 36 months imprisonment and 3 years of Supervised Release on or about May 6, 2019. Mr. Cohen's petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, was dismissed on April 20, 2021 for procedural reasons. Specifically, the court articulated that his petition was denied because it was premature and not ripe for review considering the First Step Act was not fully implemented. Although the petition was rejected for the noted reasons, we ask this court to reconsider it as a factor in Mr. Cohen's current application for a discharge from Supervised Release. The instrumental arguments made in favor then should otherwise obtain now.[3]

While Mr. Cohen was imprisoned at Otisville, he earned numerous certificates upon completion of many programs that would have otherwise counted towards First Step Act points.[4] Because of the timing, Mr. Cohen was never credited with those points. These programs are just one barometer indicative of his rehabilitation which favor his discharge from Supervised Release. Furthermore, Mr. Cohen reached out to Darrin Howard, Regional Counsel of the Northeast Region

---

[2] https://www.uscourts.gov/services-forms/probation-and-pretrial-services/probation-and-pretrial-services-supervision
[3] Mr. Cohen's Habeas Corpus Petition enunciated that he had a right to time credits under the First Step Program and if not granted, he would spend more time in confinement than required under the law. This argument was premised as a denial of Mr. Cohen's fundamental due process rights. *See* Ex. A attached.
[4] *See* Ex. B attached.



of the Federal Bureau of Prisons, more than 30 times regarding his First Step Act points without receiving any correspondence.

Of course, as a matter of law, Judge John Koeltl's determination that Mr. Cohen's previous application for a Writ of Habeas Corpus was premature was spot on. However, over a year has passed since, and with this in mind, we respectfully request that this court abridge Mr. Cohen's term of Supervised Release that started on November 22, 2021.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's term of Supervised Release. Once again, it bears repeating that Mr. Cohen has fully acknowledged his crimes, and his participation with the government offices, as articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

It warrants noting that, Mr. Cohen paid his IRS tax deficiency prior to his sentencing and all fines and penalties have been paid. He had an additional 12 meetings with the Manhattan District Attorney's office and has committed no offenses while he was incarcerated or while he has been on home confinement. We also ask that you consider the extensive cooperation Mr. Cohen has given to prosecutors from various agencies as well as other governmental authorities which he has never received any credit for. Justice would be served in our humble assessment if you factor all the cooperation into this decision on our application for termination of Supervised Release.

Further, in sum and substance, Mr. Cohen has substantively complied with the spirit of the First Step Act. He successfully completed evidence-based recidivism reduction programming and was determined to be at a low risk for recidivating; thus, he is the definition of an Eligible Prisoner. To this end, it warrants noting that he received numerous Certificates at FCI Otisville including Doing Time with The Right Mind, Freedom from Drugs Program, Victim Impact Orientation Workshop, and the Intervention 2 Program.

Michael Cohen has clearly demonstrated that he has been rehabilitated, and given the fact that he has committed no further offenses; has been a model inmate in prison, home confinement and supervised release; has substantially cooperated with all government authorities; substantially complied with the First Step Act program (receiving no credit on technical grounds) we respectfully urge that Michael Cohen is the perfect candidate to be discharged from Supervised Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.



We appreciate Your Honor's consideration.

Respectfully submitted,

David M Schwartz, Esq.
Attorney for Michael Cohen

cc:    All counsel of record (via ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x:
                                                    :
MICHAEL D. COHEN,                                   :
                                                    :
                       Petitioner,                  :    No.
              v.                                     :
                                                    :
                                                    :
UNITED STATES OF AMERICA, and                       :
                                                    :
MICHAEL CARVAJAL, DIRECTOR                           :
OF THE FEDERAL BUREAU OF                             :
PRISONS                                             :
                       Respondents.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x:
```

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### PERSONAL INFORMATION

1.      Petitioner, Michael D. Cohen, is a New York resident that is, at the time of this

filing, currently on compassionate release from FCI Otisville Satellite camp due to the COVID-19

pandemic.

2.      The Respondents in this matter are the United States Government and Michael

Carvajal, the Director of the Federal Bureau of Prisons.

3.      No petition for a writ of habeas corpus has previously been filed in any court to

review Petitioner's case.

### DECISION OR ACTION BEING CHALLENGED

4.      Petitioner brings this instant Petition and challenges how his sentence is being

carried out, calculated, or credited by prison or parole authorities (for example, revocation or

calculation of good time credits).

1

5.    Petitioner is challenging the judgment of conviction entered by the Honorable William H. Pauley, III. of the United States District Court for the Southern District of New York (Foley Square).

6.    Petitioner's underlying criminal matter is docketed at 1:18-cr-00602-WHP-1 and the date of the judgment of conviction is August 21, 2018.

7.    Petitioner pled guilty to nine separate counts: (i) five counts of tax evasion, in violation of 26 U.S.C. § 7201; (ii) one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014; (iii) two counts of making unlawful campaign contributions, in violation of 52 U.S.C. § 30109(d)(1)(A); and (iv) one count of making a false statement to the Congress, in violation of 18 U.S.C. § 1001(a)(2).

8.    Petitioner pled guilty to the first eight counts on August 21, 2018, pursuant to a plea agreement.

9.    Petitioner pled guilty to the ninth count on November 29, 2018, pursuant to a plea agreement with the Special Counsel's Office. The cases were consolidated for sentencing.

10.    The Court imposed a sentence of 36 months' imprisonment on the charges in the SDNY case.

11.    The Court also imposed a concurrent sentence of two months' imprisonment on the charge in the Special Counsel's Office case.

12.    Enacted on December 21, 2018, the First Step Act (hereinafter "FSA" or "The Act") was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system.

13.    Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk

2

reduction incentives and rewards, and risk and recidivism reduction. HR Rep. No. 115-699 at 22

(2018). See United States v. Simmons, 375 F. Supp. 3d 379 (2nd Cir. 2019).

     14.    The Act states as follows:

Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the "System"), which shall be used to--

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that--

    (A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

    (B) to address the specific criminogenic needs of the prisoner; and

    (C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

See 18 U.S.C. 3632(a)(1)-(8).

15.    Upon entry, Federal Bureau of Prisons ("BOP") conducted the initial Risk and

Needs Assessment via the Prisoner Assessment Tool Targeting Estimated Risk and Need

("PATTERN") tool.

16.    Petitioner was determined to have a minimum risk of recidivism.

17.    Petitioner has been successfully participating in the Act's authorized Evidence-

Based Recidivism Reduction Programming and Productive Activities since his entrance into FCI

Otisville Satellite Camp.

18.    Petitioner, on November 27, 2019, had his second consecutive assessment

classifying him, again, as minimum risk recidivism level.

19.    The Act states:

(A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C.A. § 3632(d)(4)(A).

20.    As a result of Petitioner's risk assessment, he should receive 15 days of time

credit for each 30 days in the activities.

4

21.    The Act states further that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall be applied toward time in prerelease custody or supervised release.* The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id. (Emphasis added).

22.    Furthermore, under the federal sentencing statutes: "[i]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment ... the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date ... based on the application of time credits under Section 3632." 18 U.S.C. § 3521(g)(3).

23.    Petitioner's sentence included three (3) years of Supervised Release and under application of the Act, makes transfer to Supervised Release the highest application of earned time credits.

24.    Additionally, § 3632(d)(6) of the FSA provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible."

25.    Petitioner, as stated, received a three (3) year sentence of incarceration, in total, on all counts.

26.    Pursuant to The Act, Petitioner is entitled to fifty-four (54) days per sentenced year as good time credit; this means that Petitioner is entitled to one hundred and sixty-two (162) days credit for good time.

5

27.     Petitioner spent the following days incarcerated, all of which he would be entitled to credit for under the act, May 6, 2019 until May 21, 2020, then again from July 9, 2020 until July 24, 2020, for a total of three hundred and ninety-five (395) days.

28.     Petitioner is entitled to the full fifteen (15) day credit under the act, for a total of one hundred and ninety-seven (197) days.

29.     The total credit Petitioner is entitled to, when factoring in both his good time and his First Step credits, is three hundred and fifty-nine (359) days.

30.     Petitioner's release date, pursuant to these credits, is May 29, 2021.

31.     Petitioner has also accumulated more than seven hundred (700) hours of "time credits" as outlined and defined in § 3632 (d)(4)(C) of the FSA.

32.     Petitioner has completed the following classes while incarcerated, with the hours completed noted in parentheses behind each stated class: DTRM (24), Drug Education: Freedom from Drugs (15), Interventions 2 (60), Health/Fitness (3), Victim Impact (26), Threshold Program (72), P.M.A. (24) and Business Start-Up (16).

33.     Furthermore, Petitioner worked at Water Treatment and the Pipe Shop H.V.A.C. for a total of five hundred (500) hours.

34.     The applicable statutes provide no guidance as to how these hours are to be calculated towards credit towards Petitioner's sentence.

35.     At the present time, despite Petitioner performing the above actions and taking advantage of the time credits available under the Act, the Bureau of Prisons is not calculating the time credits owed to Petitioner or informing Petitioner of where he stands.

6

36.    The Bureau of Prisons has failed, despite repeated and numerous requests by Petitioner, through the appropriate and proper channels, to provide Petitioner with any calculation of time credits.

37.    As a result, Petitioner is unable to appropriately challenge the determination of the Bureau of Prisons, as they refuse to make any determination.

38.    This matter must be resolved in the near future because if the Bureau continues to fail in its duties, the Petitioner is likely to be incarcerated for longer than is proper under the statutes.

## EARLIER CHALLENGES OF THE DECISION OR ACTION

39.    Petitioner has filed an administrative grievance about this matter and the Respondents have continued to fail to make the required calculations.

40.    The issue is not that Petitioner disputes the Bureau of Prison's calculations of his First Step time credits, the issue is *that no agency or representative will provide him with any calculation whatsoever regarding his time credits.*

41.    Petitioner has submitted numerous requests to every arm of the Government he can, including the Department of Justice and Bureau of Prisons, in an effort to have them simply make some – or any – calculation of his credits.

42.    The Government, initially, steadfastly refused to even reply to Petitioner.

43.    Petitioner has submitted a BP-9 and other administrative forms, as well as emailed officials and representatives of the Government, in an effort to have the Government provide him with the official calculation of his time credits.

7

44. Petitioner was either ignored, told that "someone" (with no identity of who "someone" is) will look at it or that the calculations should have been done already and the Government is not sure why it has yet to be completed.

45. The failure to make the needed calculations was made worse by the fact that Petitioner provided the Bureau of Prisons the calculations and time credits as laid out above, thus, performing nearly all of the work for the Bureau of Prisons.

46. After all of the above, a representative from the Bureau of Prisons told Petitioner that he would receive his calculation by December 14, 2020.

47. December 14th came and went, and no calculation was provided.

48. On December 15, 2020 Petitioner received a letter from the Bureau of Prisons with their "calculations".

49. The decision of the Bureau of Prisons on Petitioner's calculation was that there is no calculation -- it stated that Petitioner was not entitled to any credits for his work performed at FCI Otisville -- addressing the issue of his five hundred (500) credit hours - but did not provide any calculation for his FSA time, pursuant to the act.

50. This "calculation" is nothing more than another delay tactic, as it goes against the plain language of the statute, as Petitioner is absolutely entitled to credit under the act, at the very least, fifteen (15) days a month.

51. Petitioner is at a loss as to why the Bureau of Prisons would provide him a calculation, late, that would purposefully focus on a narrow issue raised in Petitioners letter, rather than the most pressing issue -- Petitioner's fifteen (15) day a month credit calculation.

52. This stonewall tactic by the Government has functionally deprived Petitioner of any meaningful administrative process in this matter.

8

53.     The administrative process is to be used to challenge the decision of the Government, i.e. once the Government asserts Petitioner's time credits and ultimate adjusted release date, the administrative process would be used to challenge those determined time credits or release date.

54.     Petitioner is unable to make any meaningful use of the administrative process as the Government refuses to make any initial determination.

55.     Depending on the Bureau of Prisons' calculations, Petitioner could be eligible for release in a matter of weeks or months, making the harm suffered by Petitioner – incarceration past his release date – near immeasurable and potentially immediate.

56.     Furthermore, the Government has offered no guidance whatsoever regarding the calculation of Petitioner's time credits, as detailed above, making it possible that he has already served well past his release date, causing Petitioner further – and immediate – harm.

57.     The Government's above stated failure has effectively and completely locked Petitioner out of the administrative process, as Petitioner has no decision to appeal.

58.     Any attempt by Petitioner to engage the Government in an effort to have them calculate his First Step credits will be useless, as it will yield the same result as described above.

59.     Respondents have denied Petitioner's appeals and have taken no meaningful action.

60.     Petitioner cannot receive meaningful relief at the moment as the Respondents have failed to calculate his credits at all.

## MOTION UNDER 28 U.S.C. §2255

61.     Petitioner has challenged the validity of his sentence as imposed by previously filing a Motion under 28 U.S.C.  §2255.

9

62.   The Court denied the Petitioner's motion, but he did not raise the issues herein because they were not relevant to a motion under section 2255.

63.   This case does not concern immigration proceedings.

64.   As such, Petitioner is not seeking relief by filing appeals with the Board of Immigration Appeals.

### GROUNDS FOR RELIEF

65.   As shown above, the Petitioner has a right to time credits due to him under the First Step Program.

66.   If relief is not granted, Petitioner will likely spend more time in confinement than he is required to under the law.

67.   Such a result would be a fundamental denial of due process and a violation of Petitioner's rights

68.   Due process requires application of afforded statutory rights granted by Congress and stands for the principle that "[m]inimum due process rights attach to statutory rights." Dia v. Ashcroft, 353 F.3d 228, 239 (3rd Cir. 2003) (alteration in original) (quoting Marincas v. Lewis, 92 F.3d 195, 203 (3rd Cir. 1996)).

69.   A plaintiff must prove that he possessed a protected liberty (or property) interest and he was deprived of that interest without process to which he was constitutionally entitled. See Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).

70.   Here, Petitioner can show that he will potentially be wrongfully deprived of his liberty without relief.

10

## REQUEST FOR RELIEF

**WHEREFORE,** Petitioner prays that this Court grant the following relief:

(1) Issue an Order requiring the Bureau of Prisons to calculate and apply the proper credits owed to Petitioner under the statutes listed above;

(2) Award Petitioner reasonable costs and attorneys' fees; and

(3) Grant any other and further relief that this Court may deem fit and proper.

DATED: December 21, 2020

Respectfully submitted,

*/s/ Michael D. Cohen*
MICHAEL D. COHEN
1399 Franklin Avenue Ste 200
Garden City, NY 11530
(646) 853-0114
mdcohen212@gmail.com

11

# EXHIBIT B

# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion



### *MICHAEL COHEN*
86067-054

In recognition of his participation in the INTERVENTION 2 Program
here at FCI Otisville, he is presented with this certificate of completion.

This certificate is hereby issued this 20th day of February, 2020

E. M. Dariotis, Drug Treatment Specialist

Case 1:20-cv-10833-JGK   Document 9-5   Filed 03/15/21   Page 2 of 4

# Certificate of Completion

**Presented To**

## MICHAEL COHEN

86067-054

*This is to certify the above named individual has successfully completed the*
*Victim Impact 5 Week ORIENTATION Workshop*
*at the*
*Federal Correctional Facility Otisville, in Otisville, New York.*
*on this  27ᵗʰ day of November, 2019*







E. M. Danous
Drug Treatment Specialist
Staff Sponsor

# Certificate of Completion
# OF
# *Doing Time With The Right Mind*

*Cohen, Michael*
86067-054

In recognition of his participation in the DTRM Program – *EFFECTIVE ALTERNATIVES* Program here at FCI
Otisville Camp, he is presented with this Certificate of Completion.
This certificate is hereby issued this 3rd day of September, 2019

J. DeLeo,  Camp Counselor



# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion



**MICHAEL COHEN**
86067-054

In recognition of his participation in the Drug Education - Freedom From Drugs
Program here at FCI Otisville, he is presented with this certificate of completion of the program.

This certificate is hereby issued this 13th day of August, 2019

K. Francis-Reggin   By) (acting DAP-C)

Dr. J. Bowe, PsyD, Drug Abuse Program Coordinator

E. M. Dariotis, M.Ed., Drug Treatment Specialist

# EXHIBIT C



# GERSTMAN SCHWARTZ LLP
### ATTORNEYS AT LAW

December 7, 2022

**VIA CM/ECF & EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

The Government shall file a response to this motion no later than December 16, 2022. No reply will be permitted absent prior leave of Court. The Clerk of Court is directed to docket this endorsed document in both of the below-captioned cases. SO ORDERED.

December 8, 2022

Re:   United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850

Dear Judge Furman:

Please be advised that the Law Offices of Gerstman Schwartz LLP represents Mr. Michael Cohen, for purposes of seeking your Honor's intervention in requesting that you discharge Mr. Cohen from Supervised Release. On July 6, 2022, we made the same application to your honor in which you denied our application on July 15,2022, without prejudice as premature. We are now respectfully bringing the same application in which Mr. Cohen's term of supervised release commenced on November 22, 2022 and he has served over one year of his release.

Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

Obviously, given the profile of Mr. Cohen's prosecution, it is widely understood that Mr. Cohen endeavored to provide meaningful assistance to the government, at least as far as this term is colloquially understood.[1] There is no question that Mr. Cohen and his family have paid the price

---

[1] Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his notable contributions include:

1. Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.
2. New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.
3. Southern District of New York: Mr. Cohen met with the SDNY and Special Counsel's Office (SCO) of the Department of Justice before the entry of his plea in August 2018. Mr. Cohen participated in 7 voluntary interviews with both offices.
4. Special Counsel's Office: Mr. Cohen met with the SCO roughly 10 times regarding the Mueller probe – albeit the inquiries falling outside conventional framework in which courts routinely engage in.

**GERSTMANSCHWARTZ.COM**

Case 1:18-cr-00602-JNF   Document 193   Filed 10/09/23   Page 32 of 89



one barometer indicative of his rehabilitation which favor his discharge from Supervised Release. Furthermore, Mr. Cohen reached out to Darrin Howard, Regional Counsel of the Northeast Region of the Federal Bureau of Prisons, more than 30 times regarding his First Step Act points without receiving any correspondence.

Of course, as a matter of law, Judge John Koeltl's determination that Mr. Cohen's previous application for a Writ of Habeas Corpus was premature was spot on. However, over a year has passed since, and with this in mind, we respectfully request that this court abridge Mr. Cohen's term of Supervised Release that started on November 22, 2021.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's term of Supervised Release. Once again, it bears repeating that Mr. Cohen has fully acknowledged his crimes, and his participation with the government offices, as articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

It warrants noting that, Mr. Cohen paid his IRS tax deficiency prior to his sentencing and all fines and penalties have been paid. He had an additional 12 meetings with the Manhattan District Attorney's office and has committed no offenses while he was incarcerated or while he has been on home confinement. We also ask that you consider the extensive cooperation Mr. Cohen has given to prosecutors from various agencies as well as other governmental authorities which he has never received any credit for. Justice would be served in our humble assessment if you factor all the cooperation into this decision on our application for termination of Supervised Release.

Further, in sum and substance, Mr. Cohen has substantively complied with the spirit of the First Step Act. He successfully completed evidence-based recidivism reduction programming and was determined to be at a low risk for recidivating; thus, he is the definition of an Eligible Prisoner. To this end, it warrants noting that he received numerous Certificates at FCI Otisville including Doing Time with The Right Mind, Freedom from Drugs Program, Victim Impact Orientation Workshop, and the Intervention 2 Program.

Michael Cohen has clearly demonstrated that he has been rehabilitated, and given the fact that he has committed no further offenses; has been a model inmate in prison, home confinement and supervised release; has substantially cooperated with all government authorities; substantially complied with the First Step Act program (receiving no credit on technical grounds) we respectfully urge that Michael Cohen is the perfect candidate to be discharged from Supervised



Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.

       We appreciate Your Honor's consideration.

                        Respectfully submitted,

                        David M Schwartz, Esq.
                        Attorney for Michael Cohen

cc:     All counsel of record (via ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x:
                                                        :
MICHAEL D. COHEN,                                       :
                                                        :
                        Petitioner,                     :        No.
                v.                                      :
                                                        :
                                                        :
UNITED STATES OF AMERICA, and                           :
                                                        :
MICHAEL CARVAJAL, DIRECTOR                              :
OF THE FEDERAL BUREAU OF                                :
PRISONS                                                 :
                        Respondents.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x:
```

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### PERSONAL INFORMATION

1.     Petitioner, Michael D. Cohen, is a New York resident that is, at the time of this filing, currently on compassionate release from FCI Otisville Satellite camp due to the COVID-19 pandemic.

2.     The Respondents in this matter are the United States Government and Michael Carvajal, the Director of the Federal Bureau of Prisons.

3.     No petition for a writ of habeas corpus has previously been filed in any court to review Petitioner's case.

### DECISION OR ACTION BEING CHALLENGED

4.     Petitioner brings this instant Petition and challenges how his sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits).

1

5.      Petitioner is challenging the judgment of conviction entered by the Honorable William H. Pauley, III of the United States District Court for the Southern District of New York (Foley Square).

6.      Petitioner's underlying criminal matter is docketed at 1:18-cr-00602-WHP-1 and the date of the judgment of conviction is August 21, 2018.

7.      Petitioner pled guilty to nine separate counts: (i) five counts of tax evasion, in violation of 26 U.S.C. § 7201; (ii) one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014; (iii) two counts of making unlawful campaign contributions, in violation of 52 U.S.C. § 30109(d)(1)(A); and (iv) one count of making a false statement to the Congress, in violation of 18 U.S.C. § 1001(a)(2).

8.      Petitioner pled guilty to the first eight counts on August 21, 2018, pursuant to a plea agreement.

9.      Petitioner pled guilty to the ninth count on November 29, 2018, pursuant to a plea agreement with the Special Counsel's Office. The cases were consolidated for sentencing.

10.     The Court imposed a sentence of 36 months' imprisonment on the charges in the SDNY case.

11.     The Court also imposed a concurrent sentence of two months' imprisonment on the charge in the Special Counsel's Office case.

12.     Enacted on December 21, 2018, the First Step Act (hereinafter "FSA" or "The Act") was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system.

13.     Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk

2

reduction incentives and rewards, and risk and recidivism reduction. HR Rep. No. 115-699 at 22

(2018). See United States v. Simmons, 375 F. Supp. 3d 379 (2nd Cir. 2019).

14.     The Act states as follows:

Not later than 210 days after the date of enactment of this subchapter, the Attorney
General, in consultation with the Independent Review Committee authorized by the First
Step Act of 2018, shall develop and release publicly on the Department of Justice website
a risk and needs assessment system (referred to in this subchapter as the "System"),
which shall be used to--

(1) determine the recidivism risk of each prisoner as part of the intake process, and
classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious
misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming
that is appropriate for each prisoner and assign each prisoner to such programming
accordingly, and based on the prisoner's specific criminogenic needs, and in accordance
with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including
indicators of progress, and of regression, that are dynamic and that can reasonably be
expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or
productive activities based on the revised determination to ensure that--

        (A) all prisoners at each risk level have a meaningful opportunity to reduce their
        classification during the period of incarceration;

        (B) to address the specific criminogenic needs of the prisoner; and

        (C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in
evidence-based recidivism reduction programs or productive activities in accordance with
subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised
release in accordance with section 3624; and

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

See 18 U.S.C. 3632(a)(1)-(8).

15.     Upon entry, Federal Bureau of Prisons ("BOP") conducted the initial Risk and Needs Assessment via the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") tool.

16.     Petitioner was determined to have a minimum risk of recidivism.

17.     Petitioner has been successfully participating in the Act's authorized Evidence-Based Recidivism Reduction Programming and Productive Activities since his entrance into FCI Otisville Satellite Camp.

18.     Petitioner, on November 27, 2019, had his second consecutive assessment classifying him, again, as minimum risk recidivism level.

19.     The Act states:

**(A) In general.**--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
**(i)** A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
**(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C.A. § 3632(d)(4)(A).

20.     As a result of Petitioner's risk assessment, he should receive 15 days of time credit for each 30 days in the activities.

4

21.     The Act states further that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities ***shall be applied toward time in prerelease custody or supervised release.*** The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id. (Emphasis added).

22.     Furthermore, under the federal sentencing statutes: "[i]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment … the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date … based on the application of time credits under Section 3632." 18 U.S.C. § 3521(g)(3).

23.     Petitioner's sentence included three (3) years of Supervised Release and under application of the Act, makes transfer to Supervised Release the highest application of earned time credits.

24.     Additionally, § 3632(d)(6) of the FSA provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible."

25.     Petitioner, as stated, received a three (3) year sentence of incarceration, in total, on all counts.

26.     Pursuant to The Act, Petitioner is entitled to fifty-four (54) days per sentenced year as good time credit; this means that Petitioner is entitled to one hundred and sixty-two (162) days credit for good time.

27.    Petitioner spent the following days incarcerated, all of which he would be entitled to credit for under the act, May 6, 2019 until May 21, 2020, then again from July 9, 2020 until July 24, 2020, for a total of three hundred and ninety-five (395) days.

28.    Petitioner is entitled to the full fifteen (15) day credit under the act, for a total of one hundred and ninety-seven (197) days.

29.    The total credit Petitioner is entitled to, when factoring in both his good time and his First Step credits, is three hundred and fifty-nine (359) days.

30.    Petitioner's release date, pursuant to these credits, is May 29, 2021.

31.    Petitioner has also accumulated more than seven hundred (700) hours of "time credits" as outlined and defined in § 3632 (d)(4)(C) of the FSA.

32.    Petitioner has completed the following classes while incarcerated, with the hours completed noted in parentheses behind each stated class: DTRM (24), Drug Education: Freedom from Drugs (15), Interventions 2 (60), Health/Fitness (3), Victim Impact (26), Threshold Program (72), P.M.A. (24) and Business Start-Up (16).

33.    Furthermore, Petitioner worked at Water Treatment and the Pipe Shop H.V.A.C. for a total of five hundred (500) hours.

34.    The applicable statutes provide no guidance as to how these hours are to be calculated towards credit towards Petitioner's sentence.

35.    At the present time, despite Petitioner performing the above actions and taking advantage of the time credits available under the Act, the Bureau of Prisons is not calculating the time credits owed to Petitioner or informing Petitioner of where he stands.

36.     The Bureau of Prisons has failed, despite repeated and numerous requests by Petitioner, through the appropriate and proper channels, to provide Petitioner with any calculation of time credits.

37.     As a result, Petitioner is unable to appropriately challenge the determination of the Bureau of Prisons, as they refuse to make any determination.

38.     This matter must be resolved in the near future because if the Bureau continues to fail in its duties, the Petitioner is likely to be incarcerated for longer than is proper under the statutes.

## EARLIER CHALLENGES OF THE DECISION OR ACTION

39.     Petitioner has filed an administrative grievance about this matter and the Respondents have continued to fail to make the required calculations.

40.     The issue is not that Petitioner disputes the Bureau of Prison's calculations of his First Step time credits, the issue is *that no agency or representative will provide him with any calculation whatsoever regarding his time credits.*

41.     Petitioner has submitted numerous requests to every arm of the Government he can, including the Department of Justice and Bureau of Prisons, in an effort to have them simply make some -- or any -- calculation of his credits.

42.     The Government, initially, steadfastly refused to even reply to Petitioner.

43.     Petitioner has submitted a BP-9 and other administrative forms, as well as emailed officials and representatives of the Government, in an effort to have the Government provide him with the official calculation of his time credits.

44.     Petitioner was either ignored, told that "someone" (with no identity of who "someone" is) will look at it or that the calculations should have been done already and the Government is not sure why it has yet to be completed.

45.     The failure to make the needed calculations was made worse by the fact that Petitioner provided the Bureau of Prisons the calculations and time credits as laid out above, thus, performing nearly all of the work for the Bureau of Prisons.

46.     After all of the above, a representative from the Bureau of Prisons told Petitioner that he would receive his calculation by December 14, 2020.

47.     December 14th came and went, and no calculation was provided.

48.     On December 15, 2020 Petitioner received a letter from the Bureau of Prisons with their "calculations".

49.     The decision of the Bureau of Prisons on Petitioner's calculation was that there is no calculation – it stated that Petitioner was not entitled to any credits for his work performed at FCI Otisville – addressing the issue of his five hundred (500) credit hours - but did not provide any calculation for his FSA time, pursuant to the act.

50.     This "calculation" is nothing more than another delay tactic, as it goes against the plain language of the statute, as Petitioner is absolutely entitled to credit under the act, at the very least, fifteen (15) days a month.

51.     Petitioner is at a loss as to why the Bureau of Prisons would provide him a calculation, late, that would purposefully focus on a narrow issue raised in Petitioners letter, rather than the most pressing issue – Petitioner's fifteen (15) day a month credit calculation.

52.     This stonewall tactic by the Government has functionally deprived Petitioner of any meaningful administrative process in this matter.

8

53.   The administrative process is to be used to challenge the decision of the Government, i.e. once the Government asserts Petitioner's time credits and ultimate adjusted release date, the administrative process would be used to challenge those determined time credits or release date.

54.   Petitioner is unable to make any meaningful use of the administrative process as the Government refuses to make any initial determination.

55.   Depending on the Bureau of Prisons' calculations, Petitioner could be eligible for release in a matter of weeks or months, making the harm suffered by Petitioner – incarceration past his release date – near immeasurable and potentially immediate.

56.   Furthermore, the Government has offered no guidance whatsoever regarding the calculation of Petitioner's time credits, as detailed above, making it possible that he has already served well past his release date, causing Petitioner further – and immediate – harm.

57.   The Government's above stated failure has effectively and completely locked Petitioner out of the administrative process, as Petitioner has no decision to appeal.

58.   Any attempt by Petitioner to engage the Government in an effort to have them calculate his First Step credits will be useless, as it will yield the same result as described above.

59.   Respondents have denied Petitioner's appeals and have taken no meaningful action.

60.   Petitioner cannot receive meaningful relief at the moment as the Respondents have failed to calculate his credits at all.

### MOTION UNDER 28 U.S.C. §2255

61.   Petitioner has challenged the validity of his sentence as imposed by previously filing a Motion under 28 U.S.C. §2255.

62.     The Court denied the Petitioner's motion, but he did not raise the issues herein because they were not relevant to a motion under section 2255.

63.     This case does not concern immigration proceedings.

64.     As such, Petitioner is not seeking relief by filing appeals with the Board of Immigration Appeals.

## GROUNDS FOR RELIEF

65.     As shown above, the Petitioner has a right to time credits due to him under the First Step Program.

66.     If relief is not granted, Petitioner will likely spend more time in confinement than he is required to under the law.

67.     Such a result would be a fundamental denial of due process and a violation of Petitioner's rights

68.     Due process requires application of afforded statutory rights granted by Congress and stands for the principle that "[m]inimum due process rights attach to statutory rights." Dia v. Ashcroft, 353 F.3d 228, 239 (3rd Cir. 2003) (alteration in original) (quoting Marincas v. Lewis, 92 F.3d 195, 203 (3rd Cir. 1996)).

69.     A plaintiff must prove that he possessed a protected liberty (or property) interest and he was deprived of that interest without process to which he was constitutionally entitled. See Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).

70.     Here, Petitioner can show that he will potentially be wrongfully deprived of his liberty without relief.

10

## REQUEST FOR RELIEF

**WHEREFORE,** Petitioner prays that this Court grant the following relief:

(1) Issue an Order requiring the Bureau of Prisons to calculate and apply the proper credits owed to Petitioner under the statutes listed above;

(2) Award Petitioner reasonable costs and attorneys' fees; and

(3) Grant any other and further relief that this Court may deem fit and proper.

DATED: December 21, 2020

Respectfully submitted,

*/s/ Michael D. Cohen*
MICHAEL D. COHEN
1399 Franklin Avenue Ste 200
Garden City, NY 11530
(646) 853-0114
mdcohen212@gmail.com

11

# EXHIBIT B

# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion



**MICHAEL COHEN**
86067-054

In recognition of his participation in the INTERVENTION 2 Program here at FCI Otisville, he is presented with this certificate of completion.

This certificate is hereby issued this 20th day of February, 2020

E. M. Dariotis, Drug Treatment Specialist

Case 1:20-cv-10833-JGK   Document 9-5   Filed 03/15/21   Page 2 of 4

# Certificate of Completion



*Presented To*

## MICHAEL COHEN

*86067-054*

This is to certify the above named individual has successfully completed the
**Victim Impact 5 Week ORIENTATION Workshop**
*at the*
*Federal Correctional Facility Otisville, in Otisville, New York.*
*on this 27th day of November, 2019*







E. M. Dariotis
**Drug Treatment Specialist**
**Staff Sponsor**

# Certificate of Completion
## OF
## *Doing Time With The Right Mind*

### *Cohen, Michael*
86067-054

In recognition of his participation in the DTRM Program – *EFFECTIVE ALTERNATIVES* Program here at FCI
Otisville Camp, he is presented with this Certificate of Completion.
This certificate is hereby issued this 3rd day of September, 2019

J. DeLeo, Camp Counselor



# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion



**MICHAEL COHEN**
86067-054

In recognition of his participation in the Drug Education - Freedom From Drugs
Program here at FCI Otisville, he is presented with this certificate of completion of the program.

This certificate is hereby issued this 13th day of August, 2019

K. Francis-Rigoni, PsyD  (acting DAP-C)
Dr. J. Bowe, PsyD, Drug Abuse Program Coordinator

E. M. Dariotis, M.Ed., Drug Treatment Specialist

# DAVID M. SCHWARTZ, ESQ. LLM

*546 Fifth Avenue, 6ᵗʰ Floor, New York, NY 10036   c: 516.566.5425   E: david@davidschwartzesq.com*

May 31, 2023

**VIA CM/ECF & EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850

Dear Judge Furman:

Please be advised that David M Schwartz, Esq. represents Mr. Michael Cohen, for purposes of seeking your Honor's intervention in requesting that you discharge Mr. Cohen from Supervised Release. On December 6, 2022, we made the same application to your honor in which you denied our application on December 19, 2022, without prejudice as premature. The Court stated in that decision that "the question is close", but on balance the factors weighed in favor of the government. Your honor certainly left the door open for future applications and we are now respectfully renewing this same application. Mr. Cohen's term of supervised release commenced on November 22, 2021, and he has now served approximately two-thirds of his three-year term.

Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

Obviously, given the profile of Mr. Cohen's prosecution, it is widely understood that Mr. Cohen endeavored to provide meaningful assistance to the government, at least as far as this term is colloquially understood.[1] There is no question that Mr. Cohen and his family have paid the price for his transgressions. No doubt, it will also not be lost on this court that he has taken full responsibility for his actions.

---

Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his notable contributions include:

1.  Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.
2.  New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.
3.  Southern District of New York: Mr. Cohen met with the SONY and Special Counsel's Office (SCO) of the Department of Justice before the entry of his plea in August 2018. Mr. Cohen participated in seven voluntary interviews with both offices.
4.  Special Counsel's Office: Mr. Cohen met with the SCO roughly ten times regarding the Mueller probe—albeit the inquiries falling outside conventional framework in which courts routinely engage in.
5.  United States Congress: Specifically, Mr. Cohen met with the House Oversight Committee on three occasions, the House Intelligence Committee on three occasions, the Senate Intelligence Committee on three occasions, and individual Members of Congress for countless hours preparing them for hearings.

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
May 31, 2023
Page 2

Supervised Release is not intended to be further punishment, per a published opinion of the 7th Circuit dealing with supervised release[1]...1) the purpose of supervised release is not to inflict more punishment for the underlying crime; and 2) the "decompression state" between prison and full release is accomplished, then there is no reason to keep a defendant on supervision any longer. Prior 7th Circuit decisions have consistently held that there are factors that mark this decompression state and satisfy that requirement. As stated, the five purposes of supervision are:

1. Rehabilitation: has one completed all treatment and aftercare?
2. Deterrence: is one effectively deterred from committing future federal crimes?
3. Training and Treatment: has one had enough treatment and education to stay clean from crime and to keep stable employment?
4. Protection of the public: This leads to treatment, stability, and reduced risk of committing new crimes.
5. Reduction of recidivism: What is one's quantifiable risk to commit new or the same crimes?

If there is anyone who fits the 7th Circuit's profile of a candidate for termination of supervised release, it is Mr. Cohen. In the 19 months since his home confinement, he has shown time and again that he has met all the requirements of the decompression state listed above.

We would respectfully venture further that Mr. Cohen presents no risk of recidivism and is a model candidate for a cessation of Supervisory Release. Indeed "[i]n the federal courts, supervision is ... a way to monitor the activities and behavior of people released to the community by the federal courts or paroling authorities... [and] ... an opportunity to help offenders reintegrate into the community following a period of incarceration... The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition."[2]

The goals of supervision have been fulfilled. Mr. Cohen has exceeded all his court-imposed responsibilities, is a loving husband and father, presents no risk of recurrence, and generally does not require the social services support to appropriately reintegrate into society. In fact, continuing supervision is his only remaining hinderance in terms of being able to reassimilate into the community.

Mr. Cohen began serving his sentence of 36 months imprisonment and three years of Supervised Release on or about May 6, 2019. Mr. Cohen's petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, was dismissed on April 20, 2021, for procedural reasons. Specifically, the court articulated that his petition was denied because it was premature and not ripe for review considering the First Step Act was not fully implemented. Although the petition was rejected for the noted reasons, we ask this court to reconsider it as a factor in Mr. Cohen's current application for a discharge from Supervised Release. The instrumental arguments made in favor then should otherwise obtain now.[3]

---

[1] https://pcr-consultants.com/federal-supervised-release-is-not-punishment/

[2] http://www.uscourts.gov/services-forms/probation-and-pretrial-services/probation-and-pretrial-services-supervision

[3] Mr. Cohen's Habeas Corpus Petition enunciated that he had a right to time credits under the First Step Program and if not granted, he would spend more time in confinement than required under the law. This argument was premised as a denial of Mr. Cohen's fundamental due process rights. *See* Ex. A attached.

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
May 31, 2023
Page 3

While Mr. Cohen was imprisoned at Otisville, he earned numerous certificates upon completion of many programs that would have otherwise counted towards First Step Act points. Because of the timing, Mr. Cohen was never credited with those points. These programs are just one barometer indicative of his rehabilitation which favor his discharge from Supervised Release. Furthermore, Mr. Cohen reached out to Darrin Howard, Regional Counsel of the Northeast Region of the Federal Bureau of Prisons, more than 30 times regarding his First Step Act points without receiving any correspondence.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's term of Supervised Release. Once again, it bears repeating that Mr. Cohen has fully acknowledged his crimes, and his participation with the government offices, as articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

It warrants noting that, Mr. Cohen paid his IRS tax deficiency prior to his sentencing and all fines and penalties have been paid. He had an additional 12 meetings with the Manhattan District Attorney's office and has committed no offenses while he was incarcerated or while he has been in home confinement. We also ask that you consider the extensive cooperation Mr. Cohen has given to prosecutors from various agencies as well as other governmental authorities for which he has never received any credit for. Justice would be served, in our humble assessment, if you factor all the cooperation into this decision on our application for termination of Supervised Release.

It is also worth noting that Mr. Cohen has indeed faced hardship because of home confinement. Mr. Cohen's elderly parents, one of whom is a Holocaust survivor, live in Florida. Mr. Cohen needs to be able to spend more meaningful time with them as they're ageing at home. Not being able to get to his parents quickly, if they need him, weighs heavily on Mr. Cohen and he is very aware that the time they have left together may be limited. While it is true that Mr. Cohen has been allowed international travel, the onus of such travel is not a light one. International travel requires that Mr. Cohen be detained by INS upon re-entry into the United States and be held up to an hour while INS checks with DOJ and the Probation Office if he had the authorization to travel internationally. This has proven to be a stressful and frustrating experience, so much so that Mr. Cohen has turned down prestigious invitations to speak overseas, such as highlighted in the enclosed invitation from The Oxford Union in Great Britain (*See* Ex. C attached).

---

[4] See Ex. B attached
[5] See Ex. C attached

Honorable Jesse M. Furman
United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850
May 31, 2023
Page 4

Further, in sum and substance, Mr. Cohen has substantively complied with the spirit of the First Step Act. He successfully completed evidence-based recidivism reduction programming and was determined to be at a low risk for recidivating; thus, he is the definition of an Eligible Prisoner. To this end, it warrants noting that he received numerous Certificates at FCI Otisville including Doing Time with The Right Mind, Freedom from Drugs Program, Victim Impact Orientation Workshop, and the Intervention 2 Program.

Michael Cohen has clearly demonstrated that he has been rehabilitated, and given the fact that he has committed no further offenses; has been a model inmate in prison, home confinement and supervised release; has substantially cooperated with all government authorities; substantially complied with the First Step Act program (receiving no credit on technical grounds) we respectfully urge that Michael Cohen is the perfect candidate to be discharged from Supervised Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.

We appreciate Your Honor's consideration.

Respectfully submitted,

David M Schwartz, Esq.
Attorney for Michael Cohen

cc: All counsel of record (via ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x:
                                          :
MICHAEL D. COHEN,                         :
                                          :
                 Petitioner,              :        No.
            v.                            :
                                          :
                                          :
UNITED STATES OF AMERICA, and             :
                                          :
MICHAEL CARVAJAL, DIRECTOR                :
OF THE FEDERAL BUREAU OF                  :
PRISONS                                   :
                 Respondents.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x:
```

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### PERSONAL INFORMATION

1.    Petitioner, Michael D. Cohen, is a New York resident that is, at the time of this filing, currently on compassionate release from FCI Otisville Satellite camp due to the COVID-19 pandemic.

2.    The Respondents in this matter are the United States Government and Michael Carvajal, the Director of the Federal Bureau of Prisons.

3.    No petition for a writ of habeas corpus has previously been filed in any court to review Petitioner's case.

### DECISION OR ACTION BEING CHALLENGED

4.    Petitioner brings this instant Petition and challenges how his sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits).

1

5.      Petitioner is challenging the judgment of conviction entered by the Honorable William H. Pauley, III of the United States District Court for the Southern District of New York (Foley Square).

6.      Petitioner's underlying criminal matter is docketed at 1:18-cr-00602-WHP-1 and the date of the judgment of conviction is August 21, 2018.

7.      Petitioner pled guilty to nine separate counts: (i) five counts of tax evasion, in violation of 26 U.S.C. § 7201; (ii) one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014; (iii) two counts of making unlawful campaign contributions, in violation of 52 U.S.C. § 30109(d)(1)(A); and (iv) one count of making a false statement to the Congress, in violation of 18 U.S.C. § 1001(a)(2).

8.      Petitioner pled guilty to the first eight counts on August 21, 2018, pursuant to a plea agreement.

9.      Petitioner pled guilty to the ninth count on November 29, 2018, pursuant to a plea agreement with the Special Counsel's Office. The cases were consolidated for sentencing.

10.     The Court imposed a sentence of 36 months' imprisonment on the charges in the SDNY case.

11.     The Court also imposed a concurrent sentence of two months' imprisonment on the charge in the Special Counsel's Office case.

12.     Enacted on December 21, 2018, the First Step Act (hereinafter "FSA" or "The Act") was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system.

13.     Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk

reduction incentives and rewards, and risk and recidivism reduction. HR Rep. No. 115-699 at 22

(2018).  See United States v. Simmons, 375 F. Supp. 3d 379 (2nd Cir. 2019).

14.    The Act states as follows:

Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the "System"), which shall be used to--

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that--

(A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

(B) to address the specific criminogenic needs of the prisoner; and

(C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

3

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

See 18 U.S.C. 3632(a)(1)-(8).

15.     Upon entry, Federal Bureau of Prisons ("BOP") conducted the initial Risk and

Needs Assessment via the Prisoner Assessment Tool Targeting Estimated Risk and Need

("PATTERN") tool.

16.     Petitioner was determined to have a minimum risk of recidivism.

17.     Petitioner has been successfully participating in the Act's authorized Evidence-

Based Recidivism Reduction Programming and Productive Activities since his entrance into FCI

Otisville Satellite Camp.

18.     Petitioner, on November 27, 2019, had his second consecutive assessment

classifying him, again, as minimum risk recidivism level.

19.     The Act states:

**(A) In general.**--A prisoner, except for an ineligible prisoner under subparagraph (D),
who successfully completes evidence-based recidivism reduction programming or
productive activities, shall earn time credits as follows:
**(i)** A prisoner shall earn 10 days of time credits for every 30 days of successful
participation in evidence-based recidivism reduction programming or productive
activities.
**(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for
recidivating, who, over 2 consecutive assessments, has not increased their risk of
recidivism, shall earn an additional 5 days of time credits for every 30 days of successful
participation in evidence-based recidivism reduction programming or productive
activities.

18 U.S.C.A. § 3632(d)(4)(A).

20.     As a result of Petitioner's risk assessment, he should receive 15 days of time

credit for each 30 days in the activities.

4

21.     The Act states further that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities ***shall be applied toward time in prerelease custody or supervised release.*** The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id. (Emphasis added).

22.     Furthermore, under the federal sentencing statutes: "[i]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment ... the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date ... based on the application of time credits under Section 3632." 18 U.S.C. § 3521(g)(3).

23.     Petitioner's sentence included three (3) years of Supervised Release and under application of the Act, makes transfer to Supervised Release the highest application of earned time credits.

24.     Additionally, § 3632(d)(6) of the FSA provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible."

25.     Petitioner, as stated, received a three (3) year sentence of incarceration, in total, on all counts.

26.     Pursuant to The Act, Petitioner is entitled to fifty-four (54) days per sentenced year as good time credit; this means that Petitioner is entitled to one hundred and sixty-two (162) days credit for good time.

5

27.     Petitioner spent the following days incarcerated, all of which he would be entitled to credit for under the act, May 6, 2019 until May 21, 2020, then again from July 9, 2020 until July 24, 2020, for a total of three hundred and ninety-five (395) days.

28.     Petitioner is entitled to the full fifteen (15) day credit under the act, for a total of one hundred and ninety-seven (197) days.

29.     The total credit Petitioner is entitled to, when factoring in both his good time and his First Step credits, is three hundred and fifty-nine (359) days.

30.     Petitioner's release date, pursuant to these credits, is May 29, 2021.

31.     Petitioner has also accumulated more than seven hundred (700) hours of "time credits" as outlined and defined in § 3632 (d)(4)(C) of the FSA.

32.     Petitioner has completed the following classes while incarcerated, with the hours completed noted in parentheses behind each stated class: DTRM (24), Drug Education: Freedom from Drugs (15), Interventions 2 (60), Health/Fitness (3), Victim Impact (26), Threshold Program (72), P.M.A. (24) and Business Start-Up (16).

33.     Furthermore, Petitioner worked at Water Treatment and the Pipe Shop H.V.A.C. for a total of five hundred (500) hours.

34.     The applicable statutes provide no guidance as to how these hours are to be calculated towards credit towards Petitioner's sentence.

35.     At the present time, despite Petitioner performing the above actions and taking advantage of the time credits available under the Act, the Bureau of Prisons is not calculating the time credits owed to Petitioner or informing Petitioner of where he stands.

6

36.     The Bureau of Prisons has failed, despite repeated and numerous requests by Petitioner, through the appropriate and proper channels, to provide Petitioner with any calculation of time credits.

37.     As a result, Petitioner is unable to appropriately challenge the determination of the Bureau of Prisons, as they refuse to make any determination.

38.     This matter must be resolved in the near future because if the Bureau continues to fail in its duties, the Petitioner is likely to be incarcerated for longer than is proper under the statutes.

## EARLIER CHALLENGES OF THE DECISION OR ACTION

39.     Petitioner has filed an administrative grievance about this matter and the Respondents have continued to fail to make the required calculations.

40.     The issue is not that Petitioner disputes the Bureau of Prison's calculations of his First Step time credits, the issue is *that no agency or representative will provide him with any calculation whatsoever regarding his time credits.*

41.     Petitioner has submitted numerous requests to every arm of the Government he can, including the Department of Justice and Bureau of Prisons, in an effort to have them simply make some – or any – calculation of his credits.

42.     The Government, initially, steadfastly refused to even reply to Petitioner.

43.     Petitioner has submitted a BP-9 and other administrative forms, as well as emailed officials and representatives of the Government, in an effort to have the Government provide him with the official calculation of his time credits.

7

44.     Petitioner was either ignored, told that "someone" (with no identity of who "someone" is) will look at it or that the calculations should have been done already and the Government is not sure why it has yet to be completed.

45.     The failure to make the needed calculations was made worse by the fact that Petitioner provided the Bureau of Prisons the calculations and time credits as laid out above, thus, performing nearly all of the work for the Bureau of Prisons.

46.     After all of the above, a representative from the Bureau of Prisons told Petitioner that he would receive his calculation by December 14, 2020.

47.     December 14th came and went, and no calculation was provided.

48.     On December 15, 2020 Petitioner received a letter from the Bureau of Prisons with their "calculations".

49.     The decision of the Bureau of Prisons on Petitioner's calculation was that there is no calculation -- it stated that Petitioner was not entitled to any credits for his work performed at FCI Otisville -- addressing the issue of his five hundred (500) credit hours - but did not provide any calculation for his FSA time, pursuant to the act.

50.     This "calculation" is nothing more than another delay tactic, as it goes against the plain language of the statute, as Petitioner is absolutely entitled to credit under the act, at the very least, fifteen (15) days a month.

51.     Petitioner is at a loss as to why the Bureau of Prisons would provide him a calculation, late, that would purposefully focus on a narrow issue raised in Petitioners letter, rather than the most pressing issue -- Petitioner's fifteen (15) day a month credit calculation.

52.     This stonewall tactic by the Government has functionally deprived Petitioner of any meaningful administrative process in this matter.

8

53.    The administrative process is to be used to challenge the decision of the Government, i.e. once the Government asserts Petitioner's time credits and ultimate adjusted release date, the administrative process would be used to challenge those determined time credits or release date.

54.    Petitioner is unable to make any meaningful use of the administrative process as the Government refuses to make any initial determination.

55.    Depending on the Bureau of Prisons' calculations, Petitioner could be eligible for release in a matter of weeks or months, making the harm suffered by Petitioner – incarceration past his release date – near immeasurable and potentially immediate.

56.    Furthermore, the Government has offered no guidance whatsoever regarding the calculation of Petitioner's time credits, as detailed above, making it possible that he has already served well past his release date, causing Petitioner further – and immediate – harm.

57.    The Government's above stated failure has effectively and completely locked Petitioner out of the administrative process, as Petitioner has no decision to appeal.

58.    Any attempt by Petitioner to engage the Government in an effort to have them calculate his First Step credits will be useless, as it will yield the same result as described above.

59.    Respondents have denied Petitioner's appeals and have taken no meaningful action.

60.    Petitioner cannot receive meaningful relief at the moment as the Respondents have failed to calculate his credits at all.

### MOTION UNDER 28 U.S.C. §2255

61.    Petitioner has challenged the validity of his sentence as imposed by previously filing a Motion under 28 U.S.C. §2255.

62.     The Court denied the Petitioner's motion, but he did not raise the issues herein because they were not relevant to a motion under section 2255.

63.     This case does not concern immigration proceedings.

64.     As such, Petitioner is not seeking relief by filing appeals with the Board of Immigration Appeals.

### GROUNDS FOR RELIEF

65.     As shown above, the Petitioner has a right to time credits due to him under the First Step Program.

66.     If relief is not granted, Petitioner will likely spend more time in confinement than he is required to under the law.

67.     Such a result would be a fundamental denial of due process and a violation of Petitioner's rights

68.     Due process requires application of afforded statutory rights granted by Congress and stands for the principle that "[m]inimum due process rights attach to statutory rights." Dia v. Ashcroft, 353 F.3d 228, 239 (3rd Cir. 2003) (alteration in original) (quoting Marincas v. Lewis, 92 F.3d 195, 203 (3rd Cir. 1996)).

69.     A plaintiff must prove that he possessed a protected liberty (or property) interest and he was deprived of that interest without process to which he was constitutionally entitled. See Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).

70.     Here, Petitioner can show that he will potentially be wrongfully deprived of his liberty without relief.

## REQUEST FOR RELIEF

**WHEREFORE,** Petitioner prays that this Court grant the following relief:

(1) Issue an Order requiring the Bureau of Prisons to calculate and apply the proper credits owed to Petitioner under the statutes listed above;

(2) Award Petitioner reasonable costs and attorneys' fees; and

(3) Grant any other and further relief that this Court may deem fit and proper.

DATED: December 21, 2020

Respectfully submitted,

*/s/ Michael D. Cohen*
MICHAEL D. COHEN
1399 Franklin Avenue Ste 200
Garden City, NY 11530
(646) 853-0114
mdcohen212@gmail.com

11

# EXHIBIT B

# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion

### *MICHAEL COHEN*
### 86067-054



In recognition of his participation in the INTERVENTION 2 Program here at FCI Otisville, he is presented with this certificate of completion.

This certificate is hereby issued this 20th day of February, 2020

E. M. Dariotis, Drug Treatment Specialist

Case 1:20-cv-10833-JGK   Document 9-5   Filed 03/15/21   Page 2 of 4



# Certificate of Completion

**Presented To**

## MICHAEL COHEN

86067-054



*This is to certify the above named individual has successfully completed the*
*Victim Impact 5 Week ORIENTATION Workshop*
*at the*
*Federal Correctional Facility Otisville, in Otisville, New York.*
*on this 27th day of November, 2019*





E. M. Danous
Drug Treatment Specialist
Staff Sponsor

# Certificate of Completion
# OF
# *Doing Time With The Right Mind*

### *Cohen, Michael*
86067-054

In recognition of his participation in the DTRM Program – *EFFECTIVE ALTERNATIVES* Program here at FCI
Otisville Camp, he is presented with this Certificate of Completion.
This certificate is hereby issued this 3rd day of September, 2019

J. DeLeo,  Camp Counselor



# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion



**MICHAEL COHEN**
86067-054

In recognition of his participation in the Drug Education - Freedom From Drugs
Program here at FCI Otisville, he is presented with this certificate of completion of the program.

This certificate is hereby issued this 13th day of August, 2019

K Franjo - Ragan  By D  (acting DAP-C)

Dr. J. Bowe, PsyD, Drug Abuse Program Coordinator

E. M. Dariotis, M.Ed., Drug Treatment Specialist



# *the* OXFORD UNION

**Matthew Dick**
President
Direct: +44 (0) 1865 241 353
Mobile: +44 (0) 7510 079918
President@oxford-union.org

**Monday 20th March 2023**

Dear Mr Cohen,

I hope this letter finds you well. I am writing to you with an invitation to speak at the Oxford Union Society. This year the Union will be celebrating its bicentenary; 200 years ago, a group of Oxford students met in secret to found a society in which they could freely discuss the matters of religion and politics outlawed by the University. Throughout our history, we have played host to world leaders from US Presidents Reagan, Nixon, Carter, and Clinton, to Sir Winston Churchill, Malcolm X, HH the Dalai Lama, and HM Queen Elizabeth II and global icons like Sir Elton John, Diego Maradona, and Albert Einstein. We are immensely excited to celebrate our rich history whilst looking forwards to what the next two centuries will bring.

We would be honored if you would be a part of that celebration and contribute to our history. Across the course of our 'Trinity Term', we are planning a series of talks, addresses, Q&As, and interviews with fascinating and world-famous individuals. Our members and I would love to welcome you to our historic premises in the centre of the University of Oxford to address our members and participate in a 200 year old tradition. The term runs from the **24th April 2023** to the **17th June 2023** and we would be delighted to welcome you to Oxford on any weekday in that period.

Despite initially being close to Trump, you've become one of his most ardent critics in recent years. You shed light on how Trump violated election laws during his campaign, as well as the interference between his campaign teams and people affiliated to Vladimir Putin. Your book *Disloyal: A Memoir*, your podcast, and your YouTube series provide a refreshing insight into Trump and looming indictments. It would be a privilege to host you to discuss your life career, and your time in the world of law, business, and politics.

I would be happy to answer any questions you may have and facilitate your visit however possible. It would be a great honour to welcome you to Oxford and I sincerely hope you will be able to join us.

Please do not hesitate to contact me should you have any wish to discuss this invitation further. If you are interested, please let us know your availability by April 10th.

Yours sincerely,

*Matthew*

**Matthew Dick**

President
*Magdalen College*

# EXHIBIT B

May 30, 2023

**VIA CM/ECF & EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850

Dear Judge Furman:

Please be advised that the Law Offices of Gerstman Schwaitz LLP represents Mr. Michael
Cohen, for purposes of seeking your Honor's intervention in requesting that you discharge Mr.
Cohen from Supervised Release. On December 6, 2022, we made the same application to your
honor in which you denied our application on December 19, 2022, without prejudice as
premature. We are now respectfully bringing the same application in which Mr. Cohen's term of
supervised release commenced on November 22, 2022 and he has served over one year of his
release.

Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18
U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time
prior to the expiration or termination of the term of supervised release, pursuant to the provisions
of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions
applicable to the initial setting of the terms and conditions of post-release supervision[.]"

Obviously, given the profile of Mr. Cohen's prosecution, it is widely understood that Mr.
Cohen endeavored to provide meaningful assistance to the government, at least as far as this term
is colloquially understood.[1] There is no question that Mr. Cohen and his family have paid the price

---

[1] Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his
notable contributions include:

    I.    Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no
        obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.

    2.    New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and
        after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.

    3.    Southern District of New York: Mr. Cohen met with the SONY aod Special Counsel's Office (SCO) of the
        Department of Justice before the ently of his plea in August 2018. Mr. Cohen participated in 7 voluntary
        interviews with both offices.

    4.    Special Counsel's Office: Mr. Cohen met with the SCO roughly IO times regarding the Mueller probe -
        albeit the inquiries falling outside conventional framework in which courts routinely engage in.

    5.    United States Congress: Specifically, Mr. Cohen met with the House Oversight Committee on three occasions,
        the House Intelligence Committee on three occasions, the Senate Intelligence Committee on three occasions,
        and individual Members of Congress for countless hours preparing them for hearings.

for his transgressions. No doubt, it will also not be lost on this court that he has taken full responsibility for his actions.

We would respectfully venture further that Mr. Cohen presents no risk of recidivism and is a model candidate for a cessation of Supervisory Release. Indeed "[i]n the federal courts, supervision is ... a way to monitor the activities and behavior of people released to the community by the federal courts or paroling authorities....[and] ... an opportunity to help offenders reintegrate into the community following a period of incarceration... The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition."[2]

It is clear that the goals of supervision have been fulfilled. Mr. Cohen has exceeded all of his court-imposed responsibilities, is a loving husband and father, presents no risk of recurrence, and generally does not require the social services support to appropriately reintegrate into society. In fact, continuing supervision is his only remaining hinderance in terms of being able to reassimilate into the community.

Mr. Cohen began serving his sentence of 36 months imprisonment and 3 years of Supervised Release on or about May 6, 2019. Mr. Cohen's petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, was dismissed on April 20, 2021, for procedural reasons. Specifically, the court articulated that his petition was denied because it was premature and not ripe for review considering the First Step Act was not fully implemented. Although the petition was rejected for the noted reasons, we ask this court to reconsider it as a factor in Mr. Cohen's current application for a discharge from Supervised Release. The instrumental arguments made in favor then should otherwise obtain now.[3]

While Mr. Cohen was imprisoned at Otisville, he earned numerous certificates upon completion of many programs that would have otherwise counted towards First Step Act points.[4] Because of the timing, Mr. Cohen was never credited with those points. These programs are just

---

[2]   https://www.uscourts.gov/services-forms/probation-and-pretrial-services/probation-and-pretrial-services-supervision

[3] Mr. Cohen's Habeas Corpus Petition enunciated that he had a right to time credits under the First Step Program and if not granted, he would spend more time in confinement than required under the law. This argument was premised as a denial of Mr. Cohen's fundamental due process rights. *See* Ex. A attached.

[4] See Ex. B attached.

one barometer indicative of his rehabilitation which favor his discharge from Supervised Release. Furthermore, Mr. Cohen reached out to Danin Howard, Regional Counsel of the Northeast Region of the Federal Bureau of Prisons, more than 30 times regarding his First Step Act points without receiving any correspondence.

Of course, as a matter of law, Judge John Koeltl's determination that Mr. Cohen's previous application for a Writ of Habeas Corpus was premature was spot on. However, over a year has passed since, and with this in mind, we respectfully request that this court abridge Mr. Cohen's term of Supervised Release that started on November 22, 2021.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's term of Supervised Release. Once again, it bears repeating that Mr. Cohen has fully acknowledged his crimes, and his participation with the government offices, as articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

It warrants noting that, Mr. Cohen paid his IRS tax deficiency prior to his sentencing and all fines and penalties have been paid. He had an additional 12 meetings with the Manhattan District Attorney's office and has committed no offenses while he was incarcerated or while he has been in home confinement. We also ask that you consider the extensive cooperation Mr. Cohen has given to prosecutors from various agencies as well as other governmental authorities for which he has never received any credit for. Justice would be served in our humble assessment if you factor all the cooperation into this decision on our application for termination of Supervised Release.

It is also worth noting that Mr. Cohen has indeed faced hardship because of home confinement. Mr. Cohen's elderly parents, one of whom is a Holocaust survivor, live in Florida, and Mr. Cohen would relish being able to spend more meaningful time with them as they're aging at home. Not being able to get to his parents quickly if they need him weighs heavily on Mr. Cohen and he is very aware that the time they have left together could be short. While it is true that Mr. Cohen has been afforded international travel, the onus of such travel is not a light one. International travel requires that Mr. Cohen be detained by INS upon re-entry into the United States and be held up to an hour while INS check with DOJ and the Probation Office if he had the authorization to travel internationally. This has proven to be a stressful and frustrating experience, so much so that Mr. Cohen has turned down prestigious invitations to speak overseas, such as highlighted in the enclosed invitation from The Oxford Union in Great Britain.

Further, in sum and substance, Mr. Cohen has substantively complied with the spirit of the First Step Act. He successfully completed evidence-based recidivism reduction programming and was determined to be at a low risk for recidivating; thus, he is the definition of an Eligible Prisoner. To this end, it warrants noting that he received numerous Certificates at FCI Otisville including Doing Time with The Right Mind, Freedom from Drugs Program, Victim Impact Orientation Workshop, and the Intervention 2 Program.

Michael Cohen has clearly demonstrated that he has been rehabilitated, and given the fact that he has committed no further offenses; has been a model inmate in prison, home confinement and supervised release; has substantially cooperated with all government authorities; substantially complied with the First Step Act program (receiving no credit on technical grounds) we respectfully urge that Michael Cohen is the perfect candidate to be discharged from Supervised Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.

We appreciate Your Honor's consideration.

Respectfully submitted,

David M Schwartz, Esq.
Attorney for Michael Cohen

cc:     All counsel of record (via ECF)

# EXHIBIT C

May 30, 2023

<u>VIA CM/ECF & EMAIL</u>
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States v. Michael Cohen, 18-Cr-602 and 18-Cr-850</u>

Dear Judge Furman:

Please be advised that the Law Offices of Gerstman Schwaitz LLP represents Mr. Michael Cohen, for purposes of seeking your Honor's intervention in requesting that you discharge Mr. Cohen from Supervised Release. On December 6, 2022, we made the same application to your honor in which you denied our application on December 19, 2022, without prejudice as premature. We are now respectfully bringing renewing the this same application, in which given that Mr. Cohen's term of supervised release commenced on November 22, 2022 and he has now served over one approximately two-thirds [check] year of his three-year release term.

> **Commented [DP1]:** Note also made application in May 2023 - did judge make similar comments then?

Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

Obviously, given the profile of Mr. Cohen's prosecution, it is widely understood that Mr. Cohen endeavored to provide meaningful assistance to the government, at least as far as this term is colloquially understood.[1] There is no question that Mr. Cohen and his family have paid the price

> **Commented [DP2]:** Freshen up with # of times met w DANY

---

[1] Mr. Cohen proved to be an invaluable governmental asset by assisting authorities in various investigations. Some of his notable contributions include:

   I.    **Manhattan District Attorney's Office: Three meetings while in prison and 12 in total. Mr. Cohen had no obligation to meet with the Manhattan District Attorney's Office, and he received no benefit from doing so.**

   2.    **New York Attorney General's Office: Three meetings with Attorney General Letitia James both before and after Mr. Cohen's sentence. He voluntarily provided the NYAG with several important documents.**

   3.    **Southern District of New York: Mr. Cohen met with the SONY aod Special Counsel's Office (SCO) of the Department of Justice before the ently of his plea in August 2018. Mr. Cohen participated in 7 voluntary interviews with both offices.**

   4.    Special Counsel's Office: Mr. Cohen met with the SCO roughly IO times regarding the Mueller probe - albeit the inquiries falling outside conventional framework in which courts routinely engage in.

for his transgressions. ~~No doubt, it will also not be lost on this court that he~~ Mr. Cohen has taken ~~full~~ criminal responsibility for his actions and has suffered tremendously as a result.

> **Commented [DP3]:** Would catalogue some of the ways in which you've suffered, including the threats and retaliation

We would respectfully venture further that Mr. Cohen presents no risk of recidivism and is a model candidate for a cessation of Supervisory Release. Indeed "[i]n the federal courts, supervision is ... a way to monitor the activities and behavior of people released to the community by the federal courts or paroling authorities....[and] ... an opportunity to help offenders reintegrate into the community following a period of incarceration... The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition."[2]

> **Commented [DP4]:** Not sure what Ex B is, but you should have a few in-district court cases where judge granted early termination

It is clear that the goals of supervision have been fulfilled. Mr. Cohen has exceeded all of his court-imposed responsibilities, is a loving husband and father, presents no risk of recurrence, and generally does not require the social services support to appropriately reintegrate into the community. In fact, continuing supervision is his only remaining hinderance in terms of being able to reassimilate into the community.

Mr. Cohen began serving his sentence of 36 months imprisonment and 3 years of Supervised Release on or about May 6, 2019. Mr. Cohen's petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, was dismissed on April 20, 2021, for procedural reasons. Specifically, the court articulated that his petition was denied because it was premature and not ripe for review considering the First Step Act was not fully implemented. Although the petition was rejected for the noted reasons, we ask this court to reconsider it as a factor in Mr. Cohen's current application for a discharge from Supervised Release. The instrumental arguments made in favor then should otherwise obtain now.[3]

While Mr. Cohen was imprisoned at Otisville, he earned numerous certificates upon completion of many programs that would have otherwise counted towards First Step Act points.[4] Because of the timing, Mr. Cohen was never credited with those points. These programs are just

---

5.   United States Congress: Specifically, Mr. Cohen met with the House Oversight Committee on three occasions, the House Intelligence Committee on three occasions, the Senate Intelligence Committee on three occasions, and individual Members of Congress for countless hours preparing them for hearings.

[2]   https://www.uscourts.gov/services-fonns!probation-and-pret:rial-services/probation-and-pretrial-services-snnervision

[3] Mr. Cohen's Habeas Corpus Petition enunciated that he had a right to time credits under the First Step Program and if not granted, he would spend more time in confinement than required under the law. This argument was premised as a denial of Mr. ~~Cohents~~ Cohen's fundamental due process rights. *See* Ex. A attached.

[4] See Ex. B attached.

one barometer indicative of his rehabilitation which favor his discharge from Supervised Release. Furrnthermore, Mr. Cohen reached out to Danin Howard, Regional Counsel of the Northeast Region of the Federal Bureau of P1isons, more than 30 times regarding his First Step Act points without receiving any correspondence.

Of course, as a matter of law, Judge John Koeltl's determination that Mr. Cohen's previous application for a rW1it of Habeas Corpus was premature was spot on. However, over a year has passed since, and with this in mind, we respectfully request that this court abridge Mr. Cohen's termnn of Supervised Release that stated on November 22, 2021.

We are asking that you consider the totality of the circumstances surrounding the remainder of Mr. Cohen's tenn term of Supervised Release. Once again, it bears repeating that Mr. Cohen has fully acknowledged paid for his crimes, and his pa1ticipation with the government offices, as aiticulated articulated in Footnote 1, has provided substantial and meaningful assistance in other prosecutions and investigations. Given the volume and quality of evidence that Mr. Cohen has provided to authorities, at great personal expense, we believe that an early release would encourage similarly situated figures to take an active role in cooperating in high profile investigations that are rife with consequence.

It warrants noting that, Mr. Cohen paid his IRS tax deficiency prior to his sentencing and all fines and penalties have been paid. He had an additional 12 meetings with the Manhattan District Attorney's office and has committed no offenses while he was incarcerated or while he has been in home confinement. We also ask that you consider the extensive cooperation Mr. Cohen has given to prosecutors from various agencies as well as other governmental authorities for which he has never received any credit for it. Justice would be served in our humble assessment if you factor all the cooperation into this decision on our application for termination of Supervised Release.

It is also worth011b noting that Mr. Cohen has indeed faced hardship because of home confinement. Mr. Cohen's elderly parents, one of whom is a Holocaust survivor, live in Florida, and Mr. Cohen would relish being able to spend more meaningful time with them as they're aging at home. Not being able to get to his parents quickly if they need him weighs heavily on Mr. Cohen and he is very aware that the time they have left together could be short11. While it is true that Mr. Cohen has been afforded international travel, the onus of such travel is not a light one. International travel requires that Mr. Cohen be detained by INS upon re-entry into the United States and be held up to an hour while INS check with DOJ and the Probation Office if he had the authorization to travel internationally. This has proven to be a stressful and frustrating experience, so much so that Mr. Cohen has turned down prestigious invitations to speak overseas, such as highlighted in the enclosed invitation from The Oxford Union in Great Britain.

Further, in sum and substance, Mr. Cohen has substantively complied with the spirit of the First Step Act. He successfully completed evidence-based recidivism reduction programming and was dete,mined determined to be at a low risk for recidivating; thus, he is the definition of an Eligible Prisoner. To this end, it warrants noting that he received numerous Certificates at FCI Otisville including Doing Time with The Right Mind, Freedom from Drugs Program, Victim Impact Orientation Workshop, and the Intervention 2 Program.

Michael Cohen has clearly demonstrated that he has been rehabilitated, and given the fact that he has committed no further offenses; has been a model inmate in prison, home confinement and supervised release; has substantially cooperated with all government authorities; substantially complied with the First Step Act program (receiving no credit on technical grounds) we respectfully urge that Michael Cohen is the perfect candidate to be discharged from Supervised Release which would communicate to the wider community that justice is tempered by mercy and is proportionally administered.

We appreciate Your Honor's consideration.

Respectfully submitted,

David M Schwartz, Esq.
Attorney for Michael Cohen

cc:    All counsel ~~of reeeord~~of record
(via ECF)

# EXHIBIT D



# EXHIBIT E

**Jacquie Téllez**

**From:**       Michael Cohen █████████████
**Sent:**       Saturday, November 25, 2023 10:19 AM
**To:**         Jacquie Téllez
**Subject:**    Fwd:

**[EXTERNAL SENDER]**

Yours,

Michael D. Cohen

████████████████████████

---------- Forwarded message ---------
From: **Laura Cohen** ████████████████
Date: Sat, Nov 25, 2023 at 7:39 AM
Subject:
To: <dschwartz@gothamgr.com>

Here is a recent example of a 2nd Circuit Court decision granting early termination of supervised release: we should use this one instead of the 7th circuit

United States v. Figueroa-Flores, 64 F.4th 223 (2d Cir. 2022)

This case involved a defendant who had been convicted of possession with intent to distribute cocaine. He was sentenced to 60 months in prison, followed by five years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all of the conditions of his supervised release, had no history of criminal convictions or arrests, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

Factors that courts consider in granting early termination of supervised release

The factors that courts consider in granting early termination of supervised release are set forth in 18 U.S.C. § 3553(a). These factors include:

• The nature and seriousness of the offense

- The defendant's history of criminal convictions or arrests
- The defendant's compliance with the conditions of supervised release
- The defendant's progress toward rehabilitation
- The danger that the defendant poses to the community

In addition to these factors, courts may also consider other factors, such as the defendant's age, health, and family circumstances.

**Jacqueline Tellez**

| | |
|---|---|
| **From:** | Michael Cohen ████████████ |
| **Sent:** | Saturday, November 25, 2023 10:19 AM |
| **To:** | Jacquie Téllez |
| **Subject:** | Fwd: |

**[EXTERNAL SENDER]**

Yours,

Michael D. Cohen

████████████████

---------- Forwarded message ---------
From: **Laura Cohen** ████████████
Date: Sat, Nov 25, 2023 at 7:42 AM
Subject:
To: <dschwartz@gothamgr.com>

here is another example of a 2nd Circuit Court decision granting early termination of supervised release for a tax-related offense: almost identical fact pattern to mine of 36/36

United States v. Amato, 2022 WL 1669877 (2d Cir. May 10, 2022)

This case involved a defendant who had been convicted of tax evasion. He was sentenced to 36 months in prison, followed by three years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all of the conditions of his supervised release, had paid his full tax liability, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

**Jacqueline Tellez**

| | |
|---|---|
| **From:** | Michael Cohen ███████████ |
| **Sent:** | Saturday, November 25, 2023 10:19 AM |
| **To:** | Jacquie Téllez |
| **Subject:** | Fwd: |

<span style="color:red">**[EXTERNAL SENDER]**</span>

Yours,

Michael D. Cohen

███████████

---------- Forwarded message ---------
From: **Laura Cohen** ███████████
Date: Sat, Nov 25, 2023 at 7:40 AM
Subject:
To: <dschwartz@gothamgr.com>

here is another example of a 2nd Circuit Court decision granting early termination of supervised release:

United States v. Ortiz (No. 21-3391), 2022 WL 4424741 (2d Cir. Oct. 11, 2022)

This case involved a defendant who had been convicted of conspiracy to distribute cocaine base. He was sentenced to 120 months in prison, followed by five years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all of the conditions of his supervised release, had no history of criminal convictions or arrests, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.