

E. DANYA PERRY
(212) 213-3070 PHONE
dperry@danyaperrylaw.com EMAIL

December 28, 2023

**VIA EMAIL**[1]

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007
Furman_NYSDChambers@nysd.uscourts.gov

    Re:    *United States v. Michael Cohen*, 18 Cr. 602 (JMF)

Dear Judge Furman:

    Pursuant to the Court's December 18, 2023 Order (ECF No. 97), I write to address the substance of David Schwartz's response to the Order to Show Cause ("Mr. Schwartz's submission") and the privilege and sealing issues it raises. As the Court is aware, I represent Michael Cohen with respect to his reply letter in support of his motion for early termination of supervised release (ECF No. 95), and now also with respect to the Court's inquiry into the non-existent cases cited in Mr. Schwartz's initial motion (ECF No. 88).

    Mr. Schwartz's recollection of the events is largely consistent with Mr. Cohen's. While this response provides a few clarifications, we believe the Court could well find them to be immaterial. To summarize: Mr. Cohen provided Mr. Schwartz with citations (and case summaries) he had found online and believed to be real. Mr. Schwartz added them to the motion but failed to check those citations or summaries. As a result, Mr. Schwartz mistakenly filed a motion with three citations that—unbeknownst to either Mr. Schwartz or Mr. Cohen at the time—referred to non-existent cases. Upon later appearing in the case and reviewing the previously-filed motion, I discovered the problem and, in Mr. Cohen's reply letter supporting that motion, I alerted the Court to likely issues with Mr. Schwartz's citations and provided (real) replacement citations supporting the very same proposition. ECF No. 95 at 3. To be clear, Mr. Cohen did not know that the cases he identified were not real and, unlike his attorney, had no obligation to confirm as much. While there has been no implication to the contrary, it must be emphasized that Mr. Cohen did not engage in any misconduct.

---

[1] As explained herein, Mr. Cohen does not oppose the unsealing of Mr. Schwartz's December 15 submission and is prepared to file this submission on the public docket (with only the personal contact information in Mr. Cohen's Exhibits 1 and 2 and Mr. Schwartz's Exhibit E redacted). However, because this letter and the accompanying declaration quote Mr. Schwartz's submission—which is currently under seal—we are initially providing this submission to the Court by email only out of an abundance of caution to not disclose currently-sealed content on the public docket.

The Honorable Jesse M. Furman
December 28, 2023

    The privilege and sealing questions are also straightforward. Mr. Schwartz's submission
does reveal Mr. Cohen's privileged information, but Mr. Cohen is willing to waive privilege over
the limited specific disclosures in Mr. Schwartz's December 15 submission so that Mr. Schwartz
may provide what he clearly believes to be mitigating information to the Court and public. As
such, in the interest of transparency—especially in light of the extensive press coverage
surrounding the initial order to show cause—Mr. Cohen does not oppose the filing of Mr.
Schwartz's December 15 submission and of this submission on the public docket (with only the
personal contact information in Mr. Cohen's Exhibits 1 and 2 and Mr. Schwartz's Exhibit E
redacted).[2] In addition to potentially mitigating Mr. Schwartz's conduct, publicly disclosing the
full story clearly establishes Mr. Cohen's lack of wrongdoing.

    Above all, as Mr. Schwartz's submission already made clear, no one intended to mislead
the Court. Certainly Mr. Cohen should not be held to account for his attorney's failure to verify
the citations in his motion. Accordingly, we respectfully request that Mr. Schwartz's lapse in filing
a motion with invalid citations not be held against Mr. Cohen, and that, for the reasons detailed in
our reply letter (ECF No. 95), Mr. Cohen's meritorious motion for termination of supervised
release be granted.

## I.      The Substance of Mr. Schwartz's Submission

    As explained in Mr. Schwartz's submission and in Mr. Cohen's enclosed declaration, this
is a simple story of a client making a well-intentioned but poorly-informed suggestion; trusting—
as he was entitled to do—that his attorney would vet that suggestion before incorporating it; and
his attorney's mistaken failure to do so. Additional—likely inconsequential—clarifications to Mr.
Schwartz's description are provided below and in Mr. Cohen's declaration in response to the
Court's order.

---

[2] Mr. Cohen understands that unsealing these submissions will allow currently-privileged
information to become publicly available. Cohen Decl. ¶ 3. In acceding to the unsealing, however,
he is not waiving privilege over any other communications or information beyond that which is
explicitly and directly disclosed in the two submissions. Accordingly, all of Mr. Cohen's
communications with my firm—other than the single email conveying my topline comments
provided as Exhibit 1 to this submission to contextualize information already disclosed by
Mr. Schwartz—or any other attorney remain privileged, including communications about the
preparation of this submission, the reply letter supporting Mr. Schwartz's supervised release
termination motion, and all other matters. *See In re Von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987).

In disclosing a few additional privileged details herein, Mr. Cohen is not putting that privileged
information at issue or otherwise waiving privilege over any discrete subject matters; he is instead
merely responding to Mr. Schwartz's disclosures to ensure the Court has a fully contextualized
record from which to conduct its analysis. For the avoidance of doubt, Mr. Cohen intends to
continue protecting his privilege over all privileged communications not explicitly and directly
disclosed in Mr. Schwartz's December 15 submission and this response to it, and he does not
consent to disclosure or dissemination of any of those communications.

The Honorable Jesse M. Furman
December 28, 2023

## A. What Happened

Looking to assist his attorney, Mr. Cohen conducted open-source research for cases that reflected what he anecdotally knew to be true.[3] Specifically, he sought case law to illustrate that terminating his supervised release under these circumstances would be in line with how other courts have handled similar requests. Cohen Decl. ¶ 16. Unfortunately, the citations that Mr. Cohen found online refer to non-existent cases, and Mr. Schwartz submitted them, unchecked. Schwartz Decl. ¶¶ 21–22. However, it is worth noting that the underlying point indeed is not controversial—and has since been confirmed by the real cases and the study cited in the reply letter we filed on Mr. Cohen's behalf. ECF No. 95 at 3, n.5.

The invalid citations at issue—and many others that Mr. Cohen found but were not used in the motion—were produced by Google Bard, which Mr. Cohen misunderstood to be a super-charged search engine, not a generative AI service like Chat-GPT. Cohen Decl. ¶ 20. Mr. Cohen had used Google Bard to successfully identify accurate information in other contexts before and did not appreciate its unreliability as a tool for legal research. *Id*. Like most lay clients, Mr. Cohen does not have access to Westlaw or other standard legal research tools to verify any citations he finds online. *Id*. Instead, he trusted his attorney to verify them on his behalf. *Id*.

Mr. Cohen is not a practicing attorney and has no concept of the risks of using AI services for legal research (Cohen Decl. ¶ 20)—nor does he have an ethical obligation to verify the accuracy of his research. Mr. Schwartz, conversely, did have an obligation to verify the legal representations being made in a motion he filed. *See* Fed. R. Civ. P. 11; Rules of Professional Conduct (22 NYCRR 1200.0) Rule 1.1. Unfortunately, Mr. Schwartz did not fulfill that obligation—as he was quick to admit, to his credit. Schwartz Decl. ¶¶ 21–22.

Mr. Cohen sent Mr. Schwartz and his paralegal the citations and summaries on November 25. Cohen Decl. ¶ 15; Schwartz Ex. E. Mr. Schwartz and his team then added the citations and descriptions to the motion, went through several additional rounds of revisions (in which Mr. Schwartz was actively involved), and then filed the motion at Mr. Schwartz's direction. *See* Cohen Decl. ¶ 21. As Mr. Cohen's attorney and fiduciary, Mr. Schwartz had final sign-off on the submission and its content. Cohen Decl. ¶ 11. Unbeknownst to Mr. Cohen, Mr. Schwartz signed off on the motion without having ever checked the citations it contained. Cohen Decl. ¶ 22; Schwartz Decl. ¶¶ 21–22. In summary, Mr. Schwartz's inclusion of the invalid citations was a mistake driven by sloppiness, not malicious intent.

I appeared in this matter only after Mr. Schwartz had filed the November 29 motion—and after the government had opposed that motion. As I explained when seeking leave to reply to the government's opposition letter on Mr. Cohen's behalf (on the day I first appeared in this case), the government's letter had distorted and mischaracterized Mr. Cohen's testimony in *People v. Trump*,

---

[3] For example, Mr. Cohen sent Mr. Schwartz a real example of a court terminating the supervised release of someone Mr. Cohen knew—which Mr. Schwartz did not include in the brief. Ex. 2 (June 3, 2023 email attaching supervised release request). As Mr. Cohen told Mr. Schwartz, the termination request he attached was granted. *U.S. v. Robert Morrison*, 1:07-cr-00003-LAP, ECF No. 967 (S.D.N.Y. Apr. 18, 2023) (terminating supervised release effective immediately).

The Honorable Jesse M. Furman
December 28, 2023

Index No. 452564/2022 (Sup. Ct. N.Y. County)—a case in which I had represented Mr. Cohen. ECF No. 92 at 1. Initially, the reply letter aimed to "correct the record and provide the Court with accurate and additional information relevant to its consideration of Mr. Cohen's motion." *Id.*

In preparing that reply motion, however, I encountered (for the first time) the citations now at issue, which immediately struck me as being facially flawed.[4] Although the government's opposition had made no mention of invalid citations, my team and I then tried to locate the cases Mr. Schwartz had cited, searching on Westlaw, PACER, the Second Circuit's database of its decisions, and Google. When we were unable to verify the cases, we notified the Court of that fact (ECF No. 95 at 3 n.6) and instead cited different—real—cases that stood for the same proposition Mr. Schwartz had emphasized for the Court on Mr. Cohen's behalf: "[N]umerous courts in this District have granted early termination of supervised release in circumstances similar to Mr. Cohen's." ECF No. 95 at 3.

**B. What Did Not Happen**

Mr. Schwartz does not claim that Mr. Cohen told him that I provided the citations at issue. Instead, he recalls that, on some unspecified date, Mr. Cohen "communicated to [him]" that some unspecified cases "would be provided by Ms. Perry." Schwartz Decl. ¶ 9. Needless to say, I did not provide Mr. Cohen with any citations at all (nor does Mr. Schwartz in any way imply that I in fact did provide the citations in question). Moreover, though perhaps inconsequentially, Mr. Cohen's recollection differs from Mr. Schwartz's, and he is certain that he did not tell Mr. Schwartz that I would provide or had provided cases of any sort. Cohen Decl. ¶ 5–6.

As explained in Mr. Cohen's declaration, my sole involvement with the November 29 motion was giving Mr. Cohen very cursory notes on an early draft of the motion—weeks before the relevant citations were added. Cohen Decl. ¶ 12. I was never co-counsel to Mr. Schwartz and I was clear with Mr. Cohen about the limited extent of my involvement, telling him "I just made a few rather obvious observations – your lawyer (or you) need to freshen it up." *See id.*; Ex. 1 (Nov. 12, 2023 email sending marginal feedback to Mr. Cohen specifically for his and his attorney's implementation as they saw fit). Likewise, when Mr. Cohen passed my notes to Mr. Schwartz, he specified that the notes came from me (and they were identified as such in the Word document as well); conversely, when Mr. Cohen later sent Mr. Schwartz the case citations, he made no mention of me—for the simple fact that I had nothing to do with them. *Compare* Schwartz Ex. D (identifying me as the source of my quick notes) *with* Schwartz Ex. E (sending citations without any mention of me).

Nonetheless, Mr. Schwartz came to "believe" that the citations came from me (Schwartz Decl. ¶ 9) and that I had also reviewed each successive draft of his motion. *Id.* ¶ 8. Those beliefs are incorrect and I believe, far-fetched, as I had *no* involvement in any back-and-forth—not directly with Mr. Schwartz or his paralegal and not even indirectly through Mr. Cohen; but I am not aware of any reason to doubt the sincerity with which Mr. Schwartz held these erroneous

---

[4] Notwithstanding Mr. Schwartz's apparent mistaken assumptions, there is no actual dispute about the fact that I (and my firm) had no part in finding or sending the citations, or in Mr. Schwartz's decision to include (and not verify) the citations of non-existent cases. Schwartz Decl. ¶¶ 8–9.

The Honorable Jesse M. Furman
December 28, 2023

assumptions. Regardless, the substance of the misassumptions ultimately seems of little consequence. In the end, Mr. Schwartz admitted that he had a duty to check the citations before filing them under his name regardless of where they came from or if anyone else (counterfactually) had been involved. He did not, which he candidly concedes was a mistake. Schwartz Decl. ¶¶ 21–22.

Also unbeknownst to Mr. Cohen, this is not the first instance in which Mr. Schwartz has been less than meticulous about the accuracy of his citations. In his May 2023 letter to the Court—long before he could have believed that I had any background involvement—Mr. Schwartz (somewhat oddly) offered characterizations about the Seventh Circuit's approach to terminating supervised release claiming his account was "per a published opinion of the 7th circuit dealing with supervised release." ECF No. 84 at 2. In reality, Mr. Schwartz simply cited a blogpost—not a "published opinion" at all—which itself is thinly sourced and appears to overstate the rigidity of Seventh Circuit law. For example, the motion and blogpost both claim that "five purposes of supervision" are used to indicate satisfactory completion of supervised release's "decompression stage" but the undersigned has been unable to locate a discrete case substantiating that rigid framework in which the five purposes become "factors that mark [the completion of] this decompression state and satisfy that requirement [of completing a decompression state post-prison]." *Id*. (citing PCR Consultants, "Federal Supervised Release is not Punishment," https://pcr-consultants.com/federal-supervised-release-is-not-punishment/).

Further, even a quick read of the non-existent cases at issue here should have raised an eyebrow. For example, one of the citations purported to have a 2021 docket number, yet also purported to describe a matter in which a defendant had served a 120-month sentence before being placed on supervised release, the early termination of which had purportedly been affirmed by the Second Circuit—a chronological impossibility on its face.[5] Had Mr. Schwartz skimmed that citation before submitting it to the Court, he might have noticed something awry.

All of this is not to imply bad faith on Mr. Schwartz's part—of which there is no indication—but simply to note that Mr. Schwartz appears to have a history in this matter of inattentiveness to detail that cannot be attributed to reliance upon another attorney, and should not be imputed in any way to his client.

## II.    Privileged Information Revealed in Mr. Schwartz's Submission

Mr. Schwartz's submission reveals a limited amount of privileged information, including screenshots of certain correspondence, quotes from said correspondence, and other statements that implicitly reveal the content of Mr. Schwartz's communications with Mr. Cohen.

Despite the general prohibition on an attorney disclosing his client's privileged—and therefore confidential—information, New York Rule of Professional Conduct 1.6(b)(5)'s "right to

---

[5] Because criminal case numbers generally include the year in which the defendant was indicted, this citation suggests that the defendant was indicted in 2021, served a 120-month prison sentence before being placed on supervised release, had the supervised release terminated—and had that termination affirmed on appeal—all in the span of, at most, two years.

The Honorable Jesse M. Furman
December 28, 2023

a defense" exception arguably permits the limited disclosures Mr. Schwartz made in his submission. However, the suggestion by Mr. Schwartz's counsel that Rule 3.3(b)—the remedying fraud exception—somehow applies here is severely misguided.

### A. Rule 1.6(b)(5) Arguably Permits Mr. Schwartz's Disclosures

The only plausibly-applicable exception to Rule 1.6's confidentiality requirement is Rule 1.6(b)(5), which allows an attorney to disclose confidential information he "reasonably believes is necessary to establish a defense." Comment (10) of Rules of Professional Conduct (22 NYCRR 1200.0) Rule 1.6(b)(5).

Of course, even revealing confidential information could not give Mr. Schwartz a complete defense. After all, there is nothing Mr. Cohen could have said that would have changed (i) what Mr. Schwartz did (*i.e.*, filing a motion with invalid citations), or (ii) Mr. Schwartz's ethical duty to avoid doing what he did.

However, Mr. Schwartz's submission does outline a subjective mitigation theory based, in part, on the confidential information he disclosed. In essence, Mr. Schwartz argues that he made a series of misassumptions—based on misinterpretations of a few communications with Mr. Cohen—that show his mistake was the result of sloppiness, not bad faith or malicious intent. *See, e.g.*, Schwartz Decl. ¶¶ 9, 20. It is hard to say whether the confidential information disclosed is "necessary" to establish that mitigation theory, but Mr. Cohen does not wish to question the reasonableness of Mr. Schwartz's belief that it was. A reasonable belief in the necessity of the disclosure is sufficient for the disclosure to be permitted—actual necessity is not required. Comment (10) of Rules of Professional Conduct (22 NYCRR 1200.0) Rule 1.6(b)(5).

Further, given the Court's specific question to Mr. Schwartz about "what role, if any, Mr. Cohen played in drafting or reviewing the [November 29] motion before it was filed," (ECF No. 96 at 2), Mr. Cohen has no quarrel with the narrow disclosures Mr. Schwartz made in his submission, which he properly submitted under seal in any event.

### B. Rule 3.3(b) Does Not Permit Mr. Schwartz's Disclosures

Mr. Schwartz's counsel imply that Rule 3.3(b)—which authorizes disclosures of confidential information to the extent necessary to remedy criminal or fraudulent conduct related to a given proceeding—somehow permits the disclosures in Mr. Schwartz's submission. That theory makes no sense, for two reasons.

*First*, the potential fraud at issue—Mr. Schwartz's submission of non-existent cases—was fully remedied on December 8, 2023, when I alerted the Court to the invalid citations and instead cited real cases for the very same legal proposition. ECF No. 95 at 3 n.6. By the time Mr. Schwartz provided his submission on December 15, there were no remedial steps to take, so Rule 3.3(b) does not justify any disclosures.

*Second*, the confidential information revealed has nothing to do with remedying the potential "fraud on the court" Mr. Schwartz could have perpetrated. The only conduct that may

The Honorable Jesse M. Furman
December 28, 2023

have "compromise[d] the integrity of the judicial process" (Kamins & Leventhal Decl. ¶ 7) was
Mr. Schwartz's signing and filing of the motion, through which he made certain representations
to the Court about the legitimacy of the motion's content. Those representations—which were not
correct with respect to the three citations at issue—had nothing to do with Mr. Cohen and, by
extension, Mr. Cohen's confidential information is entirely irrelevant to the potential "fraud"
Mr. Schwartz inadvertently could have perpetrated, let alone a remedy to said fraud.

To the extent that the citation to Rule 3.3(b) implies that *Mr. Cohen* somehow engaged in
fraudulent conduct with respect to the Court, that implication would be baseless and meritless as
Mr. Cohen did not make any representations to the Court—only Mr. Schwartz did.

## III.   Unsealing the Submissions

As noted, Mr. Cohen does not oppose Mr. Schwartz's December 15 submission and this
response (collectively the "Submissions") both being unsealed and filed on the public docket.

However, given the significant public interest surrounding this matter—and the threats of
violence and other harassment consistently leveled against Mr. Cohen online—we respectfully
request that the contact information in Mr. Cohen's Exhibits 1 and 2 and Mr. Schwartz's Exhibit
E be redacted. Specific redactions to Exhibits 1 and 2 were already incorporated and we propose
redactions to Schwartz Exhibit E in the attached Exhibit 3 to this submission.

As relevant here, sealing and redaction requests are evaluated by balancing the presumptive
right of public access to judicial documents with other, competing considerations, "including the
danger of impairing law enforcement or judicial efficiency and the privacy interests of those
resisting disclosure." *U.S. v. Avenatti*, 550 F. Supp. 3d 36, 45 (S.D.N.Y. 2021) (Furman, J.).[6]
"'Higher values' [than the public's right of access], the preservation of which might warrant
sealing [or redaction] include personal privacy interests, public safety, or preservation of attorney-
client privilege." *Robinson v. De Niro*, 19-CV-9156-LJL-KHP, 2022 WL 2712827, at *1
(S.D.N.Y. July 13, 2022).

---

[6] More specifically, "the Second Circuit has established a three-part test for determining whether
documents may be placed under seal" or, in this case, redacted. *U.S. v. Avenatti*, 550 F. Supp. 3d
36, 45 (S.D.N.Y. 2021) (Furman, J.); *Doe v. U.S. Immigration & Customs Enf't*, 19-CV-8892,
2021 WL 3862708, at *2 (S.D.N.Y. Aug. 30, 2021) ("Plaintiffs' request to redact these documents
is subject to the three-part test set forth by the Second Circuit in *Lugosch v. Pyramid Co. of
Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006)."). Steps one and two require the Court to
determine whether the documents at issue are "judicial documents" and, if so, how much weight
to give to the presumption of public access to judicial documents given the relevance of the specific
content to be redacted. Although the Submissions are "judicial documents" because they are
"relevant to the exercise of judicial power," they are submitted for purposes "ancillary to the
court's core role in adjudicating a case" and therefore are subject to a lower presumption of public
access than evidence introduced at trial or in connection with dispositive motions. *Brown v.
Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). Additionally, the specific contact information Mr. Cohen
seeks to redact is entirely irrelevant to the Court's analysis, further lessening the presumption of
public access.

The Honorable Jesse M. Furman
December 28, 2023

The personal contact information Mr. Cohen seeks to redact is both central to his privacy and revealed only in privileged emails. Furthermore, the sensitive confidential information is at risk of being widely disseminated only because Mr. Cohen's attorney submitted privileged emails containing it, prompting Mr. Cohen to submit two other privileged emails to contextualize Mr. Schwartz's disclosure.

Given the importance of keeping the contact information confidential for maintaining both Mr. Cohen's privacy and safety and the complete irrelevance of that contact information to any of the Court's analysis, the competing considerations the Second Circuit has identified strongly support redacting the personal contact information in Mr. Cohen's Exhibits 1 and 2 and Mr. Schwartz's Exhibit E. *See, e.g.*, *New York v. Mayorkas*, 20-CV-1127 (JMF), 2021 WL 2850631, at *12 (S.D.N.Y. July 8, 2021) (noting order allowing party to redact "email addresses, telephone numbers, and other contact information").

## IV.    Conclusion

Mr. Schwartz made what is no doubt an embarrassing but clearly an inadvertent and ultimately (we submit) inconsequential mistake that was caught and—by providing real citations standing for the same proposition the invalid citations aimed to substantiate—fixed before it could mislead the Court. Mr. Cohen engaged in no misconduct and should not suffer any collateral damage from Mr. Schwartz's misstep. Indeed, he remains grateful to Mr. Schwartz, his longtime friend, and respectfully asks that the Court exercise its mercy and discretion with respect to Mr. Schwartz. Cohen Decl. ¶ 24.

We further respectfully request that Mr. Schwartz's mistake in filing a motion with invalid citations not be held against Mr. Cohen, and that, for the reasons detailed in our reply letter (ECF No. 95), Mr. Cohen's supervised release be terminated at this time.

Dated: December 28, 2023

Respectfully submitted,

E. Danya Perry
New York Bar No. 2839983
PERRY LAW
157 East 86th Street, 4th Floor
New York, NY 10028
Tel: (212) 213-3070
dperry@danyaperrylaw.com

*Attorney for Defendant Michael D. Cohen*

**Enclosed:** Michael Cohen Declaration and Exhibits 1 – 3

cc:      Counsel for David M. Schwartz

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v.

MICHAEL COHEN,

*Defendant.*

Case No. 18-CR-602 (JMF)

---

## <u>DECLARATION OF MICHAEL COHEN</u>

I, Michael Cohen, do attest and state as follows:

1.     On December 12, 2023, the Court entered an Order to Show Cause requiring my attorney, David M. Schwartz, Esq., to provide copies of cases he cited in a November 29 motion (ECF No. 88 at 3)[1]—or to show cause why he should not be sanctioned for citing non-existent cases and to explain "how the motion came to cite cases that do not exist and what role, if any, [I] played in drafting or reviewing the motion before it was filed." ECF No. 96 at 2.

2.     In his declaration submitted to the Court on December 15, 2023, Mr. Schwartz accepted responsibility for citing non-existent cases, explaining that he misunderstood the citations' origin, failed to verify that the cited cases existed, and, as a result, inadvertently filed a motion with invalid citations. In my view, it was in no way submitted with any bad intent to mislead the Court.

---

[1] For reasons unrelated to the citations now at issue, I eventually engaged separate counsel— E. Danya Perry, Esq.—to file a reply letter in further support of Mr. Schwartz's November 29 motion. In preparing that reply letter, Ms. Perry was unable to verify the citations in Mr. Schwartz's motion and promptly alerted me, the government, and the Court to that fact. ECF No. 95 at 3 n.6.

1

3.      To fully answer the Court's question about the drafting process for the November 29 motion, Mr. Schwartz's submission also disclosed a limited amount of my privileged information. To protect that privileged information, Mr. Schwartz asked that his explanation and accompanying documentation be sealed at least temporarily—a request the Court granted. ECF No. 97. In the interest of transparency and to allow Mr. Schwartz's mitigation information to be publicly revealed, I do not oppose Mr. Schwartz's initial submission—and my response to it— being unsealed and filed on the public docket with only my personal contact information redacted.

4.      Pursuant to the Court's December 18, 2023 order, I submit this separate declaration to "address [] the substance of Schwartz's filing." ECF No. 97 at 2.

5.      As explained below, my recollection largely aligns with Mr. Schwartz's recollection of the drafting process for the November 29, 2023 motion with one likely inconsequential (at least in my own view) deviation: I did not "communicate[] to [Mr. Schwartz] that cases would be provided by Ms. Perry." Schwartz Decl. ¶ 9.

6.      To be clear, Mr. Schwartz does not claim that I said Ms. Perry provided the citations to non-existent cases now at issue; he states only that he mistakenly assumed that she was involved because of other comments he recalls me making, at some point, about her providing some cases. Even that description is not quite right though: Ms. Perry was entirely uninvolved with the citations, and I never indicated otherwise. Regardless, in my own view, I do not believe that our conflicting recollections on this minor point in the larger string of Mr. Schwartz's misassumptions have bearing on the essence of what happened.

2

## I.      Background

7.      Throughout this case, including the various post-conviction proceedings now at issue, I have relied on counsel to handle each filing—and trusted their professional judgment on questions of law and strategy.

8.      I must rely on my attorneys in this matter because I was disbarred nearly five years ago; litigation of this sort was not a meaningful part of my practice before then; and I do not currently have access to Westlaw or a similar legal database to research or verify relevant caselaw. Recognizing my lack of applicable expertise, I never appeared *pro se* in this matter. Like any other client, I rely on counsel to competently represent me before the Court.

9.      Since July of 2022, Mr. Schwartz has represented me in this matter, and I have relied on him to guide me through the process of seeking to have my supervised release terminated before its current expiration date. Mr. Schwartz noticed an appearance on my behalf on July 6, 2022 (ECF No. 76) and filed letter motions regarding my supervised release on four separate occasions: July 6, 2022 (ECF No. 77); December 8, 2022 (ECF No. 81); May 31, 2023 (ECF No. 84); and November 29, 2023 (ECF No. 88).

10.      As I normally do with my attorneys, I periodically shared ideas and suggestions with Mr. Schwartz and his team when I thought they might be helpful. On each such occasion, however, I trusted that Mr. Schwartz would pursue and incorporate my ideas to the extent he thought they were appropriate and useful and set them aside to the extent he thought that they were not.

11.      My suggestions notwithstanding, as my fiduciary, Mr. Schwartz had final sign-off on each of those submissions.

## II.      The November 29, 2023 Motion

12.      When Mr. Schwartz sent me his initial draft of the motion now at issue, it seemed like a highly formulaic, cut-and-paste draft. To check my initial reaction about its deficiencies, I asked Ms. Perry—who had represented me in other matters but at the time did not represent me generally in this matter—to do a limited, top-line review.[2] In essence, I requested a gut check from her. She did so, sending her quick impressions with a cover note emphasizing the cursory nature of her feedback: "I just made a few rather obvious observations – your lawyer (or you) need to freshen it up. Hope this helps." Ex. 1 (Nov. 12, 2023 email). Those marginal notes were Ms. Perry's sole involvement with the November 29, 2023 submission.

13.      I then texted Ms. Perry's notes to my then-only attorney in this matter—Mr. Schwartz—asking if he would strengthen the motion before ultimately filing it. *See* Schwartz Ex. D (Nov. 12, 2023 text messages). In doing so, I explicitly identified the notes as coming from Ms. Perry.

14.      Unbeknownst to me until recently, Mr. Schwartz made a few inaccurate assumptions based on that single text exchange, including that Ms. Perry had reviewed each of his successive drafts, Schwartz Decl. ¶ 8, and that the citations to non-existent cases somehow came from Ms. Perry, Schwartz Decl. ¶ 9. I am not aware of any basis for his assumptions and had no idea he had made them until I read his December 15 submission.

15.      Some two weeks after sending Ms. Perry's topline edits, on November 25, I sent the citations at issue to Mr. Schwartz (and his paralegal) for his consideration. Schwartz Ex. E. Unlike the November 12 top-line comments from Ms. Perry—which I specifically identified as

---

[2] Ms. Perry and her firm did not represent me with respect to this matter in general until she agreed to represent me in submitting a reply brief, which came after the November 29, 2023 submission (ECF No. 88) and the government's opposition to it (ECF No. 90) had both been filed.

coming from Ms. Perry when I sent them to Mr. Schwartz—the emails conveying the case citations said nothing about Ms. Perry being involved. *Compare* Schwartz Ex. C (sending comments) *with* Schwartz Ex. E (sending citations). The citation emails made no mention of Ms. Perry because she was not involved with the citations at all.

16.     The citations I sent confirmed what I knew anecdotally to be true: Others in situations similar to mine have had their supervised release terminated early. Based on that personal knowledge, I did not believe that that proposition was controversial and, as later confirmed in my reply letter, it does not appear to be. *See, e.g.*, ECF No. 95 at 3 (citing cases).

17.     I now understand that, at some point, Mr. Schwartz developed the impression that I had "communicated to [him]" that some unspecified cases "would be provided by Ms. Perry," and that he also incorrectly assumed that Ms. Perry was somehow involved with the citations I sent on November 25. Schwartz Decl. ¶ 9.

18.     I do not know what communication gave Mr. Schwartz the impression that Ms. Perry would provide some cases—or why he assumed the November 25 citations were those cases—but I am confident that I never said, implied, suggested, or otherwise insinuated that Ms. Perry was in any way the source of the invalid citations now at issue. (And of course, Ms. Perry has nothing to do with those citations.) Indeed, the sole comment I made to Mr. Schwartz about Ms. Perry's minimal involvement was the single November 12 text message (Schwartz Ex. D) I sent him passing along Ms. Perry's top-line observations and asking Mr. Schwartz if he would strengthen the draft himself.

19.     To the contrary, I recall telling Mr. Schwartz's paralegal, who was helping prepare the motion, that I had found the November 25 citations—and many more like them—online.

20.     Specifically, the citations and descriptions came from Google Bard. As a non-lawyer, I have not kept up with emerging trends (and related risks) in legal technology and did not realize that Google Bard was a generative text service that, like Chat-GPT, could show citations and descriptions that looked real but actually were not. Instead, I understood it to be a super-charged search engine and had repeatedly used it in other contexts to (successfully) find accurate information online. I did not know that Google Bard could generate non-existent cases, nor did I have access to Westlaw or other standard resources for confirming the details of cases. Instead, I trusted Mr. Schwartz and his team to vet my suggested additions before incorporating them.

21.     After I provided the citations and descriptions to Mr. Schwartz on November 25, Mr. Schwartz (and his paralegal) made several additional rounds of edits to the motion in the days that followed. At no point did he or his paralegal raise any concerns about the citations I had suggested. On November 29, Mr. Schwartz filed the motion under his signature.

22.     It did not occur to me then—and remains surprising to me now—that Mr. Schwartz would drop the cases into his submission wholesale without even confirming that they existed. Accordingly, when I saw the citations and descriptions I had sent Mr. Schwartz quoted at length in the draft filing, I assumed that Mr. Schwartz had reviewed and verified that information and deemed it appropriate to submit to the Court.

23.     I deeply regret any problems Mr. Schwartz's filing may have caused and am grateful that my new attorney in this matter, Ms. Perry, caught this mistake and promptly alerted me, the government, and the Court to the same.

**III.    Conclusion**

24.     In conclusion, I respectfully ask the Court to exercise its discretion and mercy in this matter.

6

25.     His honest mistake notwithstanding, I am grateful for Mr. Schwartz's representation. Mr. Schwartz is a longtime friend and I know him to be a well-meaning and ethical person. I believe Mr. Schwartz's failure to check the citations was a product of inadvertence, not any intent to deceive, and I firmly believe that Mr. Schwartz genuinely understood the underlying proposition—that many defendants on supervised release have their supervision terminated early—to be uncontroversial and true.

26.     Additionally, Ms. Perry promptly caught and corrected Mr. Schwartz's mistake by citing other, real authorities for the same proposition for which Mr. Schwartz cited the non-existent cases (ECF No. 95 at 3), ensuring that Mr. Schwartz's invalid citations ultimately did not mislead the Court.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on December 28, 2023          Respectfully submitted,

_____

Michael Cohen

# EXHIBIT 1

**From:**      Danya Perry
**To:**        ████████████
**Subject:**   Early Termination of Release of Term - 05-30-23 (DRAFT)
**Date:**      Sunday, November 12, 2023 1:54:56 PM
**Attachments:** Early Termination of Release of Term - 05-30-23 (DRAFT).docx

I just made a few rather obvious observations – your lawyer (or you) need to freshen it up. Hope this
helps

# EXHIBIT 2

| From: | Michael Cohen |
|---|---|
| To: | Lilian Timmermann |
| Subject: | Fwd: |
| Date: | Tuesday, December 12, 2023 4:27:56 PM |
| Attachments: | 127133199855.pdf |

Yours,

Michael D. Cohen

███████████████

---------- Forwarded message ---------
From: **Michael Cohen** ███████████████
Date: Fri, Dec 8, 2023 at 9:51 PM
Subject: Fwd:
To: Danya Perry <dperry@danyaperrylaw.com>

Yours,

Michael D. Cohen

███████████████

---------- Forwarded message ---------
From: **Michael Cohen** ███████████████
Date: Sat, Jun 3, 2023 at 2:47 PM
Subject:
To: <david@davidschwartzesq.com>, <jtellez@gothamgr.com>

They let him off supervised release. Thought you would like to see and compare.

# EXHIBIT 3

# EXHIBIT E

**Jacquie Téllez**

**From:** Michael Cohen ▮▮▮▮▮▮▮▮
**Sent:** Saturday, November 25, 2023 10:19 AM
**To:** Jacquie Téllez
**Subject:** Fwd:

[EXTERNAL SENDER]

Yours,

Michael D. Cohen

---------- Forwarded message ---------
From: **Laura Cohen** ▮▮▮▮▮▮▮▮▮▮▮▮
Date: Sat, Nov 25, 2023 at 7:39 AM
Subject:
To: <dschwartz@gothamgr.com>

Here is a recent example of a 2nd Circuit Court decision granting early termination of supervised release: we should use this one instead of the 7th circuit

United States v. Figueroa-Flores, 64 F.4th 223 (2d Cir. 2022)

This case involved a defendant who had been convicted of possession with intent to distribute cocaine. He was sentenced to 60 months in prison, followed by five years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all of the conditions of his supervised release, had no history of criminal convictions or arrests, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

Factors that courts consider in granting early termination of supervised release

The factors that courts consider in granting early termination of supervised release are set forth in 18 U.S.C. § 3553(a). These factors include:

- The nature and seriousness of the offense

- The defendant's history of criminal convictions or arrests
- The defendant's compliance with the conditions of supervised release
- The defendant's progress toward rehabilitation
- The danger that the defendant poses to the community

In addition to these factors, courts may also consider other factors, such as the defendant's age, health, and family circumstances.

## Jacqueline Tellez

**From:** Michael Cohen ███████████████████████
**Sent:** Saturday, November 25, 2023 10:19 AM
**To:** Jacquie Téllez
**Subject:** Fwd:

**[EXTERNAL SENDER]**

Yours,

Michael D. Cohen

███████████████████████

---------- Forwarded message ---------
**From: Laura Cohen** ███████████████████████
Date: Sat, Nov 25, 2023 at 7:42 AM
Subject:
To: <dschwartz@gothamgr.com>

here is another example of a 2nd Circuit Court decision granting early termination of supervised release for a tax-related offense: almost identical fact pattern to mine of 36/36

United States v. Amato, 2022 WL 1669877 (2d Cir. May 10, 2022)

This case involved a defendant who had been convicted of tax evasion. He was sentenced to 36 months in prison, followed by three years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all of the conditions of his supervised release, had paid his full tax liability, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

**Jacqueline Tellez**

| | |
|---|---|
| **From:** | Michael Cohen ███████ |
| **Sent:** | Saturday, November 25, 2023 10:19 AM |
| **To:** | Jacquie Téllez |
| **Subject:** | Fwd: |

**[EXTERNAL SENDER]**

Yours,

Michael D. Cohen

███████

---------- Forwarded message ---------
From: **Laura Cohen** ███████
Date: Sat, Nov 25, 2023 at 7:40 AM
Subject:
To: <dschwartz@gothamgr.com>

here is another example of a 2nd Circuit Court decision granting early termination of supervised release:

United States v. Ortiz (No. 21-3391), 2022 WL 4424741 (2d Cir. Oct. 11, 2022)

This case involved a defendant who had been convicted of conspiracy to distribute cocaine base. He was sentenced to 120 months in prison, followed by five years of supervised release. After serving two years of his supervised release term, the defendant filed a motion for early termination. The district court granted the motion, finding that the defendant had complied with all of the conditions of his supervised release, had no history of criminal convictions or arrests, and had made significant progress in rehabilitating himself.

The Second Circuit affirmed the district court's decision. The court found that the district court had not abused its discretion in granting early termination, and that the defendant had met the burden of demonstrating that he was no longer a danger to the community.

1