UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

MICHAEL COHEN,

                      Defendant.

Case No. 1:18-CR-602-(JMF)

---

## REPLY DECLARATION OF DAVID M. SCHWARTZ

Pursuant to 28 U.S. Code § 1746, I hereby declare as follows:

I am an attorney duly admitted to practice law before the Courts of the State of New York, and duly affirm the following to be true under penalties of perjury:

1. This reply declaration is in response to a declaration filed by Michael Cohen dated December 28, 2023.

2. As indicated in my initial declaration, I served as pro bono counsel to Mr. Cohen in making a motion to this Court to discharge his supervised release. I take full responsibility for my November 29, 2023 submission to this Court on that motion, notwithstanding the fact that I fully believed that E. Danya Perry, Esq., a long-time lawyer for Mr. Cohen, had provided the case citations in question.

3. The purpose of my initial declaration to this Court was to provide, the key facts surrounding how the case citations at issue ended up in my November 29th letter, and to relay the facts, in as much detail as possible, in compliance with the Court's Order to Show Cause

issued on December 12, 2023. The submission of these cases was an honest mistake, and when I included the citations in my letter to the court, I was certain that the cases were submitted by E. Danya Perry, Esq. through Michael Cohen. I had no intention to deceive the Court.

4. Mr. Cohen and his attorney, Ms. Perry, acknowledge that the facts recited in my initial declaration largely align with Mr. Cohen's recollection of the events.[1] Nonetheless, this reply declaration is in response to certain points made in Mr. Cohen's submission to the Court.

5. I was admitted to the Bar of the State of New York in December of 1993. During the past 30 years, I have served on many boards and committees, and I perform community service on a consistent basis. I have been honored by numerous organizations for my work as a lawyer and I know I have fought hard for every client over the past 30 years. In 30 years of practice, I have never been disciplined by a grievance committee in any of the jurisdictions in which I practice.

6. I work in a law office in which Westlaw and Lexis/Nexis are readily available. I would never, and certainly did not, use any type of Artificial Intelligence tool to draft my motion papers on behalf of Mr. Cohen (nor would I do so for any other client). In fact, after reading Mr. Cohen's declaration, I found out for the first time that he used Google Bard to find these cases. I can assure this Court that I had never heard of this program and our attorneys only use Westlaw or Lexis/Nexis for their legal research.

7. I realize that I made a serious error when I trusted Mr. Cohen to be the conduit between myself and his other attorney, Ms. Perry.

---

[1] In his declaration, Mr. Cohen makes a limited waiver of the attorney-client privilege in setting forth information that could be pertinent to the issues before this Court. My declaration contains further information consistent with that waiver.

8. Mr. Cohen made it very clear to me that he was using Ms. Perry to enhance the November 29th submission; he confirmed that he sent her the initial draft.

9. Ms. Perry sent redline changes to the initial draft that were fairly detailed and made comments on that document, as reflected in Exhibit C to my initial declaration. Her comments in the margin were preceded by her initials "DP." Her edits and comments were not merely "topline" or "cursory" comments as Mr. Cohen and Ms. Perry suggest. Significantly, the comments included Ms. Perry's recommendation that we "should" add "in-district" cases to further enhance the motion — a fact not highlighted in Mr. Cohen's submission.

10. Ms. Perry relied on Mr. Cohen to forward her redline changes to me, which he did by text dated Sunday, November 12, 2023 (Exhibit D to my initial declaration). As a result, Ms. Perry also relied on Mr. Cohen to serve as the conduit to communicate her comments to me.

11. When I first drafted the motion seeking to discharge Mr. Cohen's supervised release, I did not believe we needed to include any cases because every set of facts at issue on these types of motions is different and the Court has full discretion as to whether to grant early termination of supervised release. Thus, the legal issue presented was not a novel one that would require citations to prior discharge decisions. Nonetheless, I accepted Ms. Perry's recommendation to add such cases, given her status as a noted white-collar lawyer.

12. After receiving the redline changes from Ms. Perry, through Mr. Cohen, I spoke with Mr. Cohen via telephone, as I did frequently. On those calls, he reiterated to me that Ms. Perry "would be" providing the cases.[2] I was in error in failing to communicate with Ms. Perry directly to confirm this.

---

[2] Ms. Perry states in her letter that I did not contend that Mr. Cohen told me the case citations had come from Ms. Perry. But as indicated above, he had told me ahead of time that she would be providing them.

13. I believe the submission that was presented to this Court on November 29th on behalf of Mr. Cohen would have been compelling even without the use of cases, as Ms. Perry had suggested. It is unfortunate that I allowed Mr. Cohen to serve as a conduit for information from Ms. Perry to implement her recommendations. In fact, had I stopped this triangular flow of information, none of these unfortunate events would have happened in the first place.

14. At page four of her letter, Ms. Perry refers to my prior, "less than meticulous" attention to detail, in citing a blog on supervised release in an earlier filing. I am not sure what relevance that has to the issue before the Court. The blog accurately described the approach which the 7th Circuit had used and, again, a court has full discretion on whether to grant termination of supervised release.

15. My declaration to this Court is very detailed and I will not respond in-kind to the various personal comments she has made about me.

16. Ms. Perry gave me no prior notice of her submission alerting the Court to the suspect citations. I understand that when asked by my attorneys why she failed to alert me about the fictitious citations before notifying the Court, Ms. Perry told them that she was going to contact me, but Mr. Cohen wanted to notify me himself. Ms. Perry apparently relied on Mr. Cohen to do that. But Mr. Cohen did not notify me about the citation issue. If Ms. Perry had notified me, instead of using Mr. Cohen as a conduit, I would certainly have withdrawn these citations immediately.

17. Ms. Perry refers to this situation as embarrassing and on this point she is correct. Of all the wonderful moments I have had in my lengthy career as an attorney and an advocate, this is certainly not my finest moment. Ms. Perry also alludes to press coverage of this matter and I

want this Court to know that my only embarrassment is in my role as an officer of this Court. Whatever press reports exist about these events are completely irrelevant. It is important to me that I can give this Court the facts as to exactly what took place and how the cases in question ended up in my November 29th filing with this Court.

18. Unfortunately, it appears to me that when Mr. Cohen submitted cases to me, he was submitting them to his friend of many years and neglected to focus on the fact that I am an officer of the court. The lines here were clearly blurred between friendship and attorney/client. This was particularly the case given that I was acting for Mr. Cohen on a pro bono basis, having done so based on our lengthy friendship. If he had been more cognizant of my duties as a lawyer, I believe that he certainly would have been open and honest with me as to the origin of these case citations. Nonetheless, Mr. Cohen has stated that his use of these case citations was an unintentional mistake and I believe that to be true.

19. I have learned from the various mistakes that were made in this lamentable set of circumstances. I will never again rely on a client to serve as the conduit between another attorney and myself on key matters such as this. I will make doubly sure to verify any document that has my name on it and spend the time to ensure that every single case citation is checked and will not rely on research provided by an attorney outside my law firm, no matter how experienced he or she is, without checking it independently.

20. I have also learned much from this situation about the possibility of inaccuracies in information that search engines, such as Google Bard, can provide. As indicated, I do not use such sources for legal research myself but, nonetheless, I will be certain to check for these sources when legal information is provided to me by others in the future.

21. This entire episode is an unfortunate confluence of circumstances. I certainly accept responsibility for what happened here. I am deeply sorry that these citations were submitted to the Court in a filing signed by me. I cannot turn back the clock, but I can certainly make sure that something of this nature never happens again. Again, I had no intention to deceive the Court.

22. I pride myself on fulfilling my oath as a lawyer with integrity and to the highest standards possible. It is an honor and privilege to be an officer of this Court and in this case, I failed in my obligations to this Court by filing a brief containing the citations received from Mr. Cohen.

23. I agree with Ms. Perry and Mr. Cohen that there was no ill intention on anyone's part and that a series of unfortunate mistakes were made and, again, the mistakes were made in a court filing made by me. I take full responsibility for the inaccuracies in that document and sincerely apologize to the Court.

Executed on this 3rd day of January 2024.

David M. Schwartz