

750 Lexington Avenue, 9th Flr
New York NY 10022
(631) 506-8464
ai@cerebel.law

January 3, 2023

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square New York, NY 10007
Furman_NYSDChambers@nysd.uscourts.gov

**RE:  United States v. Michael Cohen, Case No. 1:18-CR-602 (JHF)**

Dear Judge Furman,

     As the founder of a New York based Legal AI services and technology company which could be impacted by recent developments in the above referenced case (as to whether sanctions should be imposed), I submit this Letter Motion[1] to provide information and perspective to the Court on the possible broader consequences of sanctions perceived as directly or indirectly attributed to the use of Generative AI software ("GenAI").

     **Mata v. Avianca**: In a lengthy Amicus Brief proposed this past June in a comparable sanctions matter (Mata v. Avianca, Inc., 22-cv-1461 (PKC), D.E. [50](#) & [51](#)) assessing monetary fines for citing non-existent cases and filing inauthentic case summaries, I: i) described my interests in such consequences, ii) outlined my relevant expertise, iii) reviewed the technology underlying products like Google Bard (including the enabling science, training, iterative development, capabilities, shortcoming, legal use cases, safety measures, and prompt documentation), iv) argued the attorney's faith in generated legal research was colorably reasonable under the circumstances that existed at that time, and v) cautioned that public interest would be best served if sanctions considered potential effects on a) the bar and access to justice for litigants, b) making of deterrent court rules, c) hasty preemption of legislation governing court procedure, and d) further development of technologies implicated in the conduct.

     **Distinguishing Errors**: In both matters, "fake citations" made their way into an affirmed pleading after being originated by naive use of a GenAI application for legal research– in Mata by a licensed attorney preparing a motion, in the instant case unknowingly by a former attorney assisting their own defense counsel's motion practice.  There are significant differences in the course of error made by the attorney here, most of which have the effect of reducing the severity

---

[1] It is well established that "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings" (Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) and that the role is to assist "in cases of general public interest by making suggestions to the court and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J., 940 F.2d 792, 808 (3d Cir. 1991).  Even when parties are represented by competent counsel, courts permit briefing from an amicus when, as in the instant matter, the amicus has an interest that may be affected by the decision but does not entitle the amicus to intervene or has unique information or a new perspective that can help the court beyond what the parties can provide. Ryan v. Commodity Futures Trading Comm'n, 125 F.3d 1062, 1064 (7th Cir. 1997), Best Payphones, Inc. v. Dobrin, 410 F. Supp. 3d 457, 465 n.3 (E.D.N.Y. 2019).

of affect–- specifically, the subject attorney did not also submit fake summaries, fail to comply with a court request for text of cited decisions, nor conduct the specious legal research; co-counsel proactively identified errors, not the counterparty or the court; and the particular language models implicated differ, Google's vs OpenAI's.  However, many of the same cautions articulated in the Mata Amicus Brief apply to the sanctions consideration now before the Court.

**Concern:** Given the notoriety of this case, there are valid concerns about how a sanctions ruling could impede the public benefits of innovation.  This is especially so since Rule 11(c)(4) enables the Court to issue sanctions that may serve to "deter… comparable conduct by others similarly situated."  As in RE: Pennie & Edmonds LLP, No. 02-7177, 2003 WL 1191197 (2d Cir. Mar. 14, 2003) wherein the majority opined that severe Rule 11 sanction regimes can have the effect of deterring legitimate actions by counsel in the interest of clients "out of apprehension that their conduct will erroneously be deemed improper." and too lenient regimes can "embolden them to [take] improper [actions] on behalf of clients" (in that case, to "make improper submission"), here a harsh regime would dissuade attorneys and litigants from adopting technologies that improve the quality and efficiency of counsel and broaden the means for parties to better educate themselves on the law.

**Proliferation of Chilling Standing Orders**: Indeed, in the wake of the Mata sanctions, over a dozen standing orders have been issued by federal district court judges relating to use of GenAI, representing a hodgepodge of inconsistent disclosure, certification, and prohibitive rules which have collectively provoked fear, not clarity[2].  I therefore respectfully suggest that when considering or framing sanctions that could form the basis for refinement or expansion of standing order or local rules across districts, the Court focus on  conduct in a technology neutral manner and note the following:

**Rapid Improvement Due to Iterative Development**: Mr. Cohen and his attorney Mr. Schwartz declare that the false citations brought to the Court's attention by Cohen attorney Ms. Perry originated from use of Google Bard[3] prior to November 25, 2023 (Cohen Declaration, D. 104, P. 15 and Cohen Emails, D. 103, Exhibit E).  Of potential relevance to the Court's consideration of any directives that name or are crafted to suit use of any particular technology, is the fact Bard, in the month since, has already been updated and improved significantly.[4]  Similarly in the Avianca matter, the faulty research was performed with GPT-3.5 which had been replaced by GPT-4 by the time sanctions were being considered.  This rapid evolution speaks to

---

[2] Exhibit A: Table comparing federal court judicial standings orders on AI illustrates the mosaic of rules by summarizing fundamental requirements (as maintained at cerebel.law, Jan 2, 2024).

[3] Unlike Google's 25 year old search engine which in May incorporated Search Generative Experience ("SGE"), an experimental retrieval-augmented generation ("RAG") application that uses Large Language Model ("LLM") inference to enhance traditional web search results delivered at www.google.com, Bard is accessed at bard.google.com and purely infers prompt-elicited content from its LLM's training data, often, when used wisely as a search tool, yielding highly relevant reproductions or close approximations.

[4] Google Bard was first made available to the general public in March 2023 employing LaMDA language model, was upgraded in May with PaLM model, was integrated in September with popular apps Gmail, Youtube, and Maps, and *since December 6, 2023 has been powered by a fine tuned version of Gemeni Pro*, a version of Google's newest state-of-the-art of model which it claims exhibits more advanced reasoning, planning, and understanding and is positioning as competitive with GPT-4's performance.

the iterative and ever evolving nature of technology.  And highlights challenges for any rulemaking that opts to focus on specific technology, rather than on conduct or resulting work product.  What applies today, may very easily not apply tomorrow.

**Seamless Ubiquity**: There are an increasing number of ways GenAI is being incorporated in the everyday workflows of lawyers and nonlawyers, such as in general purpose search engines, grammar checkers, and cloud office suites[5] and in domain specific research and document preparation applications like Lexis+ AI, Thomson Reuters' Casetext's CoCounsel, Harvey AI, and CereBel's GPTs.  Such tools greatly increase the productivity, efficiency, relevance, and accuracy of research and many other legal tasks.  Improved safety measures continue to reduce even further the risk of error.  One can easily imagine the ready availability of features that will scan and validate the accuracy of citations contained in generated content.  Collectively, these developments promise to democratize access to effective legal research and procedure and facilitate the federal judiciary and bar's mandate to seek "just, speedy, and inexpensive" resolution of cases[6].

**Sufficiency of Existing Conduct Rules**: Given the rapidly emerging ubiquity and seamlessness of GenAI, compelling attorneys to certify use of specific technologies may become impossible or moot.  Progress should be allowed to continue with reliance on sound professional judgment and education.  While valid concerns have been raised about citation errors, privacy, privileged communication, and bias, there have been very few reported errors and no judicial decisions wrongly made on the basis of hallucinated citations or misused GenAI.  Here, blunder was caught by diligent lawyering before the Court was significantly impacted, demonstrating that existing rules governing conduct and compelling accuracy are sufficient to protect successful integration of technology in the proper administration of justice.

Please let me know if I can be of any assistance to the Court in providing additional information or expertise.

Respectfully submitted,

Gregory C. Belmont
Pro se
On behalf of myself and CereBel Legal Intelligence

CC: All counsel via email

---

[5] Google and Microsoft recently launched integration of their generative AI technologies in their popular online office application suites.

[6] "Legal research may soon be unimaginable without it. AI obviously has great potential to dramatically increase access to key information for lawyers and non-lawyers alike," and, in regard to increasing access to justice, "These tools have the welcome potential to smooth out any mismatch between available resources and urgent needs in our court system," writes Chief Justice John G. Roberts, Jr. in the "2023 Year-End Report on the Federal Judiciary" (December 31, 2023).

**Exhibit A: Select Federal Court Judicial Standing Orders on Artificial Intelligence**

| Judge* / Court | Restrictiveness | Primary Focus | Cert Accuracy | Maintain Record | Disclose AI Use | Tool & Use | Other | URL |
|---|---|---|---|---|---|---|---|---|
| J Araceli Martínez-Olguín<br>N.D. California | Moderate | Accuracy | ✓ | ✓ | | | | Link |
| J Leslie Kobayashi<br>District of Hawaii | Moderate | Accuracy, Disclosure | ✓ | | ✓ | ✓ | | Link |
| CJ Derrick Watson, et al.<br>District of Hawaii | Moderate | Accuracy | ✓ | | | | Declaration for Unverified Sources, Excludes Basic Research Tools | Link |
| MJ Jeffrey Cole<br>N.D. Illinois | Moderate | Disclosure, Accuracy | ✓ | | ✓ | ✓ | Certification of Authority Analysis | Link |
| MJ Gabriel Fuentes<br>N.D. Illinois | Moderate | Disclosure | | | ✓ | ✓ | | Link |
| J Iain D. Johnston<br>N.D. Illinois | Less | Compliance | | | | | Compliance with Federal and Ethical Rules | Link |
| CJ Stephen R. Clark<br>E.D. Missouri | High | Prohibition | | | | | Prohibition of AI-Drafted Filings for Pro Se Parties | Link |
| J Evelyn Padin<br>District of New Jersey | Moderate | Disclosure, Accuracy | ✓ | | ✓ | | | Link |
| J Arun Subramanian<br>S.D. New York | Moderate | Accuracy | ✓ | | | | Counsel Responsibility for Accuracy, Personal Confirmation | Link |
| J Michael Newman<br>S.D. Ohio | High | Prohibition | | | | | Prohibition of AI Use in Court Filings, Possible Sanctions | Link |
| MJ Jason A. Robertson<br>E.D. Oklahoma | Moderate | Disclosure, Accuracy | ✓ | | ✓ | ✓ | | Link |
| J,CJ S. Hall, J J. Loyd<br>W.D. Oklahoma, Bankr | Moderate | Disclosure, Confidentiality | | | ✓ | | Confidentiality & Disclosure for AI-Drafted Text | Link |
| J. Scott L. Palk<br>W.D. Oklahoma | Moderate | Disclosure, Accuracy | ✓ | | ✓ | ✓ | | Link |
| J Gene E.K. Pratter<br>E.D. Pennsylvania | Moderate | Disclosure, Accuracy | ✓ | | ✓ | | | Link |
| SDJ Michael M. Baylson<br>E.D. Pennsylvania | Moderate | Disclosure, Accuracy | ✓ | | ✓ | | | Link |
| CJ Rodney Gilstrap<br>E.D. Texas | Moderate | Accuracy | ✓ | | | | Counsel Responsibility for Accuracy | Link |
| J Stacey G. C. Jernigan<br>N.D. Texas, Bankruptcy | Moderate | Accuracy | ✓ | | | | Verification of Accuracy for AI-Drafted Content | Link |
| J Matthew J. Kacsmaryk<br>N.D. Texas | Moderate | Accuracy | ✓ | | | | Certification of Human Review for AI-Drafted Content | Link |
| J Brantley Starr<br>N.D. Texas | Moderate | Accuracy | ✓ | | | | Certification of Human Review for AI-Drafted Content | Link |
| J Stephen Vaden<br>Court of Intrntnl Trade | Moderate | Confidentiality | | | ✓ | | Confidentiality & Disclosure for AI-Drafted Text | Link |

Compiled with data from Bloomberg Law and assistance of GPT-4. Illustrative only; should not be relied upon in practice without confirming updated rules. Maintained at www.cerebel.law/links/ai_standing_orders_1223. (*Judicial titles abbreviated for brevity.)